**EXHIBIT B**

**Proposed PA Interim Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
                :

In re:                 :    Chapter 11
                :

CARBONLITE HOLDINGS LLC, *et al.*,[1]   :    Case No. 21-10527 (JTD)
                :

       Debtors.        :    (Joint Administration Requested)
                :

                :    **Re:  Docket No. [__]**
---------------------------------------------------------- x

**INTERIM ORDER PURSUANT TO SECTIONS 105, 361, 362, 363, 364, 503 AND 507 OF THE BANKRUPTCY CODE (I) AUTHORIZING CARBONLITE P, LLC AND CARBONLITE P HOLDINGS LLC TO OBTAIN SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING; (II) GRANTING (A) LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (B) ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES; (III) AUTHORIZING THE USE OF CASH COLLATERAL; (IV) MODIFYING THE AUTOMATIC STAY; (V) <u>SCHEDULING A FINAL HEARING; AND (VI) GRANTING RELATED RELIEF</u>**

Upon the motion (the "***Motion***")[2] of CarbonLite P, LLC and CarbonLite P Holdings LLC (collectively, the "***PA Debtors***, and collectively with the other above-captioned debtors and debtors in possession, the "***Debtors***") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), 503, and 507 of chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rules 4001-2 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), requesting, among other things:

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: CarbonLite Holdings LLC (8957); CarbonLite Industries LLC (3596); CarbonLite P Holdings LLC (8957); CarbonLite P LLC (5453); CarbonLite PI Holdings LLC (8957); CarbonLite Pinnpack LLC (8957); CarbonLite Recycling Holdings LLC (8957); CarbonLite Sub-Holdings, LLC (8957); Pinnpack P, LLC (8322); CarbonLite Recycling LLC (3727); and Pinnpack Packaging LLC (9948).  The address of the Debtors' corporate headquarters is 10250 Constellation Blvd., Los Angeles, CA 90067.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, the First Day Declaration, or the DIP Credit Agreement, as applicable.

(i)    authorization for the Borrower (as defined below) to obtain postpetition financing pursuant to the DIP Facility (as defined below), and for CarbonLite P Holdings LLC, as Guarantor (as defined in the DIP Credit Agreement (as defined below)), to guarantee unconditionally and subject to the terms and limitations set forth in the DIP Credit Agreement in all respects, the Borrower's obligations under the DIP Facility, consisting of a senior secured superpriority multi-draw term loan facility (the "***DIP Facility***"), on the terms and conditions substantially in the form annexed hereto as **Exhibit A** (as the same may be amended, restated, amended and restated, supplemented, waived, extended, or otherwise modified from time to time, the "***DIP Credit Agreement***," together with any other related agreements, documents, security agreements, pledge agreements, or intercreditor agreements, including this Interim Order and the Final Order (each as defined below), collectively, the "***DIP Documents***"), by and among CarbonLite P, LLC (the "***Borrower***"), CarbonLite P Holdings LLC (together with the Borrower, the "***DIP Loan Parties***"), UMB Bank, N.A. ("***UMB***"), as administrative agent and collateral agent (in such capacities, the "***DIP Agent***"), and the lenders party thereto from time to time (the "***DIP Lenders***," and, together with the DIP Agent, the "***DIP Secured Parties***"), consisting of: (a) a new money term loan facility in an aggregate principal amount of up to $25,000,000 (the "***New Money DIP Facility***," the commitments under the New Money DIP Facility, the "***New Money DIP Commitments***," and the loans made under the New Money DIP Facility, the "***New Money DIP Loans***"), and (b) a roll-up facility (the "***Roll-Up Facility***," and the loans deemed made under the Roll-Up Facility, the "***Roll-Up Loans***," and the Roll-Up Loans together with the New Money DIP Loans, the "***DIP Loans***"), which will "roll-up" 2019 Bonds of each DIP Lender or its designated affiliate(s) into Roll-Up Loans on a basis of $2.00 dollars for each $1.00 dollar of New Money DIP Loan made by such DIP Lender, pursuant to which, (1)

upon entry of this interim order (this "***Interim Order***") and satisfaction or waiver of the other conditions set forth herein and in the DIP Documents, the Borrower shall (x) make a single draw of New Money DIP Commitments in the principal amount of $14,000,000 (the "***Initial Draw***") and (y) borrow (or be deemed to borrow) Roll-Up Loans in an aggregate principal amount of $28,000,000; and (2) upon entry of the Final Order and satisfaction or waiver of the other conditions set forth therein and in the DIP Documents, (x) make a final draw of the full remaining amount of the New Money DIP Commitments, and (y) borrow (or be deemed to borrow) Roll-Up Loans in an aggregate principal amount of $22,000,000;

(ii)     authorization for the DIP Loan Parties to execute, deliver, and enter into the DIP Documents, and to perform all of the DIP Loan Parties' respective obligations thereunder, and such other and further acts as may be required in connection with the DIP Documents;

(iii)     authorization for the DIP Loan Parties to pay the principal, interest, fees, expenses and other amounts payable to the DIP Secured Parties pursuant to and in accordance with the DIP Documents, including, without limitation, any principal, interest, fees, commitment fees, administrative agent fees, backstop fees, audit fees, closing fees, service fees, facility fees, or other fees, costs, expenses, charges, and disbursements of the respective DIP Secured Parties (including the reasonable fees, expenses and other charges of each of the DIP Secured Parties' attorneys, advisors, accountants, and other consultants), any obligations in respect of indemnity claims, whether contingent or absolute, in each case, to the extent constituting  obligations of a Borrower and/or a Guarantor of any kind under the DIP Documents (such obligations, the "***DIP Obligations***");

(iv)     authorization for the DIP Loan Parties, immediately upon entry of this Interim Order, to use proceeds of the DIP Facility (collectively, the "***DIP Loan Proceeds***") as expressly

provided in the DIP Documents and solely in accordance with this Interim Order and the Budget

(as defined below) (subject to permitted variances and other exclusions set forth in the DIP

Documents and this Interim Order) to:

       (a)     pay costs, fees, and expenses related to the Debtors' cases (collectively, the "***Chapter 11 Cases***") of the DIP Loan Parties and in connection with the DIP Facility, including, without limitation, payments of interest, fees and expenses owed to the DIP Lenders and the DIP Agent;

       (b)     make permitted adequate protection payments in respect of the Prepetition Obligations (as defined below) as provided for in this Interim Order; and

       (c)     provide financing for working capital and general corporate purposes (including capital expenditures) of the Borrower;

       (v)     the grant and approval of superpriority administrative expense claim status in the

Chapter 11 Cases of the PA Debtors, pursuant to sections 364(c)(1), 503(b)(1) and 507(b) of the

Bankruptcy Code, to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, in

respect of all DIP Obligations, subject only to the Carve-Out (as defined below);

       (vi)     authorization to grant the DIP Secured Parties valid, enforceable, non-avoidable,

automatically and fully perfected DIP Liens (as defined below) in all DIP Collateral (as defined

below), including, without limitation, all property constituting Prepetition Collateral (as defined

below), and any Cash Collateral (as such term is defined in section 363(a) of the Bankruptcy

Code and further defined below), to secure the DIP Obligations, which DIP Liens shall be

subject only to Permitted Liens (as defined below) and the Carve-Out;

       (vii)     authorization for the DIP Loan Parties to use, among other things, solely in

accordance with the Budget (subject to permitted variances and other exclusions set forth in the

DIP Documents and this Interim Order) and the limitations provided herein and in the DIP

Documents, any Cash Collateral in which any of the Prepetition Secured Parties (as defined

below) may have an interest, and the granting of adequate protection solely to the extent of any

4

postpetition diminution in the value of their respective interests in the Prepetition Collateral, including, without limitation, as a result of (a) the incurrence of the DIP Obligations, (b) the DIP Loan Parties' use of Cash Collateral, (c) the subordination of the Prepetition Obligations to the Carve-Out, (d) any other diminution in value of the Prepetition Collateral arising from the DIP Loan Parties' use, sale, or disposition of such Prepetition Collateral or the proceeds thereof, (e) the priming of the Prepetition Liens (as defined below) by the DIP Liens on the Prepetition Collateral, and (f) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, "***Diminution in Value***");

(viii)    the modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the other DIP Documents to the extent hereinafter set forth;

(ix)    subject to entry of the Final Order granting such relief, a waiver of (a) any rights of the Debtors' and their Estates' (as defined below) ability to surcharge pursuant to section 506(c) of the Bankruptcy Code against any DIP Collateral and the Prepetition Collateral; (b) any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code; and (c) any rights of the Debtors under the equitable doctrine of marshaling or any other similar doctrine with respect to any DIP Collateral or Prepetition Collateral;

(x)    the United States Bankruptcy Court for the District of Delaware's (the "***Court***") waiver of any applicable stay (including under Bankruptcy Rules 4001(a)(3) and 6004) and providing for immediate effectiveness of this Interim Order;

(xi)    the scheduling of a final hearing on the Motion (the "***Final Hearing***") to consider entry of a final order granting the relief requested in the Motion on a final basis (the "***Final Order***"), and approving the form of notice with respect to the Final Hearing; and

(xii)    granting the PA Debtors such other and further relief as is just and proper.

The initial hearing on the Motion having been held by the Court on March [●], 2021 (the *"**Interim Hearing**"*), and upon the record made by the PA Debtors at the Interim Hearing, including the Motion, the *Declaration of Brian Weiss in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. [●]] (the "***First Day Declaration***") and the *Declaration of Richard W. Morgner in Support of the Debtors' Motions for Entry of Interim and Final Orders (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (D) Granting Adequate Protection to Prepetition Secured Parties, (E) Modifying the Automatic Stay, (F) Scheduling a Final Hearing, and (G) Granting Related Relief* (the "***Morgner Declaration***") [Docket No. [●]]; any exhibits filed in connection with the foregoing, and the filings and pleadings filed in these Chapter 11 Cases, the Court having found that the interim relief requested in the Motion is fair and reasonable and is in the best interests of the DIP Loan Parties, the PA Debtors' bankruptcy estates (as defined under section 541 of the Bankruptcy Code, the "***Estates***"), their stakeholders and other parties in interest, and represents a sound exercise of the DIP Loan Parties' business judgment and is essential for the continued operation and maintenance of the DIP Loan Parties' businesses; it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the DIP Loan Parties and their Estates pending the Final Hearing; and appropriate and adequate notice of the Motion, the interim relief requested therein, and the Interim Hearing (the "***Notice***") having been given under the circumstances; and the Notice having been served by the PA Debtors in accordance with Bankruptcy Rules 4001 and 9014 and the Local Rules on: (a) the Office of the United States Trustee for the District of

Delaware (the "**U.S. Trustee**"); (b) the Internal Revenue Service; (c) the United States Securities and Exchange Commission; (d) the creditors listed on the Debtors' consolidated list of thirty creditors holding the largest unsecured claims; (e) counsel to the DIP Agent and the Prepetition Trustee (as defined below); (f) counsel to the Prepetition ABL Lender; (g) counsel to the Prepetition Term Agent; (h) counsel to the DIP Term Agent; (i) counsel to the DIP ABL Lender; (j) all parties which, to the best of the PA Debtors' knowledge, information, and belief, have asserted or may assert a lien in the PA Debtors' assets; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"); and the opportunity for the Interim Hearing on the Motion was appropriate in connection with the Motion and no other notice need be provided; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A. <u>Petition Date</u>. On March [●], 2021 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate and maintain their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No chapter 11 trustee or examiner has been appointed in any of the Chapter 11 Cases.

B. <u>Jurisdiction and Venue</u>. The Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the*

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

*United States District Court for the District of Delaware*, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Local Rule 9013-1(f), the PA Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 and Local Rules 4001-2 and 9013-1.

C.      <u>Committee Formation</u>.  As of the date hereof, no official committee of unsecured creditors under section 1102 of the Bankruptcy Code (the "***Committee***") or any other statutory committee has been appointed in the Chapter 11 Cases.

D.      <u>Notice</u>.  The Notice was given in the manner described in the Motion.  Under the circumstances, the Notice given by the PA Debtors of the Motion, the Interim Hearing, and the relief granted under this Interim Order constitutes due and sufficient notice thereof.

E.      <u>Parties' Acknowledgments, Agreements, and Stipulations</u>.  In requesting the DIP Facility and use of Cash Collateral, and in exchange for and as a material inducement to the DIP Secured Parties and the Prepetition Secured Parties for agreeing to provide, or consent to, the DIP Facility, access to Cash Collateral, and subordination of the Prepetition Liens, as provided herein, and as a condition to providing financing under the DIP Facility and consenting to the use of Cash Collateral as set forth herein, subject to the rights of the parties-in-interest (other than the DIP Loan Parties) set forth in paragraph 13 of this Interim Order, the DIP Loan Parties permanently and irrevocably admit, stipulate, acknowledge, and agree, as follows:

(i)    <u>Prepetition Bonds</u>.

(a)    Pennsylvania Economic Development Financing Authority (the "***Issuer***") and UMB, as trustee (in such capacity, the "***Prepetition Trustee***"), are parties to that certain Indenture of Trust, dated as of June 1, 2019 (as amended by that certain First Supplemental Indenture of Trust, dated as of September 1, 2020, and as further amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "***Prepetition Indenture***" and, collectively, with all other agreements, documents, and instruments executed and/or delivered with, to or in favor of the Prepetition Secured Parties, including, without limitation, the Loan Agreement (as defined below), all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, documents, and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto, the "***Prepetition Documents***") pursuant to which (1) the Solid Waste Disposal Revenue Bonds (CarbonLite P, LLC Project), Series 2019 (the "***2019 Bonds***" and, the holders of the 2019 Bonds, the "***2019 Prepetition Bondholders***") were issued in an aggregate principal amount of $61,800,000, and (2) the Subordinate Solid Waste Disposal Revenue Bonds (CarbonLite P, LLC Project), Series 2020 (the "***2020 Bonds***" and, together with the 2019 Bonds, the "***Bonds***" and, the holders of Bonds, the "***Prepetition Bondholders***" and, the Prepetition Bondholders together with the Prepetition Trustee, the "***Prepetition Secured Parties***") were issued in an aggregate principal amount of $10,000,000.  The Issuer loaned the proceeds of the Bonds to the Borrower pursuant to that certain Loan Agreement, dated as of June 1, 2019 (as amended by that certain First Amendment to Loan Agreement, dated as of September 1, 2020, and as further amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "***Loan Agreement***") to finance the acquisition, construction and equipping

of a post-consumer beverage container processing facility in Reading, Pennsylvania (the "***Facility***").  Payment of the Bonds is guaranteed by CarbonLite P Holdings LLC (together with the Borrower, the "***Prepetition Obligors***").  As of the Petition Date, the Prepetition Obligors were justly and lawfully indebted and liable, without defense, challenge, objection, claim, counterclaim, or offset of any kind, in (i) the aggregate principal amount of not less than $61,800,000 in respect of outstanding principal amount of the 2019 Bonds, plus any accrued and unpaid interest, fees, expenses, and disbursements (including, without limitation, any attorneys', advisors', accountants', appraisers', financial advisors', and other consultants' fees and expenses, in each case that are chargeable or reimbursable under the Prepetition Documents), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Obligors' obligations pursuant to the Prepetition Documents, including, for the avoidance of doubt, all interest, fees, costs, and other charges allowable under section 506(b) of the Bankruptcy Code (collectively, the "***Prepetition 2019 Obligations***"), and (ii) the aggregate principal amount of not less than $10,000,000 in respect of outstanding principal amount of the 2020 Bonds, plus any accrued and unpaid interest, fees, expenses, and disbursements (including, without limitation, any attorneys', advisors', accountants', appraisers', financial advisors', and other consultants' fees and expenses, in each case that are chargeable or reimbursable under the Prepetition Documents), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Obligors' obligations pursuant to the Prepetition Documents, including, for the avoidance of doubt, all interest, fees, costs, and other charges allowable under section 506(b) of the Bankruptcy Code

(collectively, the "***Prepetition 2020 Obligations***" and, together with the Prepetition 2019 Obligations, the "***Prepetition Obligations***").  The Bonds are secured by first priority security interests in and liens on substantially all assets of the DIP Loan Parties (such assets secured by the Prepetition Obligations being referred to herein as the "***Prepetition Collateral***," and, such security interests and liens on the Prepetition Collateral, the "***Prepetition Liens***").

      (b)    <u>Prepetition Collateral</u>.  To secure the Prepetition Obligations, the Prepetition Obligors entered into certain guaranty and collateral agreements and certain other security documents governing the Prepetition Secured Parties' security interests in the Prepetition Collateral (such agreements, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, and together with any ancillary collateral documents, including, without limitation, any related mortgages and deeds of trust, the "***Prepetition Collateral Documents***").  Pursuant to the Prepetition Collateral Documents, the Prepetition Obligors granted to the Prepetition Trustee, for the benefit of itself and the Prepetition Bondholders, the Prepetition Liens on the Prepetition Collateral.

      (c)    <u>Prepetition Obligations</u>.  The Prepetition Obligations owing to the Prepetition Secured Parties constitute legal, valid, and binding obligations of the Prepetition Obligors, enforceable against them in accordance with their terms, and neither the Prepetition Obligations nor any portion thereof owing to the Prepetition Secured Parties is subject to avoidance, recharacterization, attack, effect, reduction, set-off, offset, counterclaim, cross-claim, recoupment, rejection, defenses, disallowance, impairment, recovery, subordination (whether equitable, contractual, or otherwise), or any other claim or challenge pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity, including in any Successor Cases (as defined below).

11

(d)    <u>Prepetition Liens</u>.  The Prepetition Liens granted to the Prepetition Trustee, for the benefit of itself and the Prepetition Bondholders: (1) constitute legal, valid, binding, enforceable, and properly perfected security interests in and liens on the Prepetition Collateral, (2) were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and (3) are not subject to any defense, counterclaim, recharacterization, subordination (whether equitable, contractual, or otherwise), avoidance, recovery, attack, recoupment, rejection, reduction, set-off, disallowance, impairment, counterclaim, cross-claim, defense or claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity.

(ii)    <u>No Challenges/Claims</u>.    No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or the Prepetition Obligations exist, and neither the Prepetition Liens nor the Prepetition Obligations, or any portion of either of the foregoing, is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable, contractual, or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  The DIP Loan Parties and their Estates have no valid Claims (as such term is defined in section 101(5) of the Bankruptcy Code), objections, challenges, causes of action, and/or choses in action against any of the Prepetition Secured Parties or any of their respective members, shareholders, affiliates, agents, attorneys, advisors, professionals, officers, directors or employees related to the respective Prepetition Documents, the Prepetition Obligations, the Prepetition Liens, or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553

(inclusive), or 558 of the Bankruptcy Code or applicable state law equivalents. The Prepetition Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code; *provided*, that the value of the Prepetition Collateral as of the Petition Date and whether the Prepetition Obligations are fully secured within the meaning of section 506 of the Bankruptcy Code shall be reserved notwithstanding the Stipulations (as defined below).

(iii)    <u>Indemnity</u>. Each of the DIP Secured Parties and the Prepetition Secured Parties has acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by it in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens and the Prepetition Adequate Protection Liens (as defined below), any challenges or objections to the DIP Facility or the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing. Accordingly, pursuant to the terms of the Prepetition Documents, each of the Prepetition Secured Parties and the DIP Secured Parties shall be and hereby is indemnified and held harmless by the DIP Loan Parties in respect of any claim or liability incurred in respect thereof or in any way related thereto; *provided*, that no such parties will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence or willful misconduct. No exception or defense exists in contract, law, or equity as to any obligation set forth, as the case may be, in this paragraph E(iii), in the Prepetition Documents, or in the DIP Documents, to the DIP Loan Parties' obligation to indemnify and/or hold harmless the Prepetition Secured Parties or the DIP Secured Parties, as the case may be.

(iv)   <u>Release</u>.  Subject to paragraph 13 of this Interim Order, each of the DIP Loan Parties, their Estates and the Prepetition Obligors, on their own behalf and on behalf of each of their past, present and future predecessors, successors, heirs, subsidiaries, and assigns have agreed to provide releases to each of the Released Parties (as defined below) as provided in paragraph 30 of this Interim Order.

(v)   <u>Cash Collateral</u>.  The DIP Loan Parties admit, stipulate, acknowledge, and agree that all of the cash of the Prepetition Obligors, wherever located, and all cash equivalents, including any cash in deposit accounts of the Prepetition Obligors, whether as Prepetition Collateral, as income, proceeds, products, rents, issues, or profits of Prepetition Collateral, or otherwise, constitutes "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "***Cash Collateral***").

F.   <u>Findings Regarding the Postpetition Financing and Use of Cash Collateral</u>.

(i)   <u>Request for Postpetition Financing</u>.  The DIP Loan Parties have requested from each of the DIP Secured Parties, and the DIP Secured Parties are willing, subject to the terms of this Interim Order, the other DIP Documents, and satisfaction of the conditions set forth in the DIP Credit Agreement, to extend the DIP Loans on the terms and conditions set forth in this Interim Order and the other DIP Documents.

(ii)   <u>Need for Postpetition Financing and Use of Cash Collateral</u>.  The DIP Loan Parties do not have sufficient liquidity, including Cash Collateral, to operate and maintain their Pennsylvania business in the ordinary course of business without the financing requested in the Motion.  The DIP Loan Parties' ability to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, to pay certain fees and expenses as set forth herein, and to otherwise fund their operations and other efforts and activities is essential to the

DIP Loan Parties' continued viability as the DIP Loan Parties seek to maximize the value of the assets of the Estates for the benefit of all creditors of the DIP Loan Parties.  The ability of the DIP Loan Parties to obtain sufficient working capital and liquidity through the proposed postpetition financing arrangements with the DIP Secured Parties and the use of Cash Collateral as set forth in this Interim Order, the DIP Credit Agreement, and the other DIP Documents is vital to the preservation and maintenance of the going concern value of each DIP Loan Party.  Accordingly, the DIP Loan Parties have an immediate need to obtain the postpetition financing and to use Cash Collateral as set forth in this Interim Order to, among other things, permit the orderly continuation of the operation and maintenance of their Pennsylvania business, minimize the disruption to their business operations and other efforts and activities, and preserve and maximize the value of the assets of the DIP Loan Parties' Estates to maximize the recovery to all creditors of the Estates.

(iii)   No Credit Available on More Favorable Terms.  The DIP Loan Parties are unable to procure financing in the form of unsecured credit allowable as an administrative expense under sections 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code or in exchange for the grant of a superpriority administrative expense, or liens on property of the Estates not subject to a lien pursuant to sections 364(c)(1), 364(c)(2), or 364(c)(3) of the Bankruptcy Code.  As the PA Debtors assert in the Motion, the First Day Declaration, and in the Morgner Declaration, and as demonstrated at the Interim Hearing, the DIP Loan Parties would not be able to obtain the necessary postpetition financing on more favorable terms than the financing offered by each of the DIP Secured Parties pursuant to the DIP Documents.  In light of the foregoing, the DIP Loan Parties have reasonably and properly concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to the DIP Loan Parties at

this time, and is in the best interests of the DIP Loan Parties, their Estates, and all of their stakeholders.

(iv)     <u>Budget</u>.

(a)     The DIP Loan Parties have prepared and delivered to the DIP Agent and the DIP Lenders an initial budget, a copy of which is attached hereto as **<u>Exhibit B</u>**. For purposes hereof: (1) "***Budget***" means the Initial Budget or, if an Updated Budget (each as defined below) is delivered pursuant to the DIP Credit Agreement, the then most recent Updated Budget, (2) "***Initial Budget***" means a 17-week cash flow forecast in a form satisfactory to the Required Lenders (as defined in the DIP Credit Agreement) delivered on or prior to the Petition Date, setting forth all forecasted receipts and disbursements of the DIP Loan Parties on a weekly basis during the 17-week period commencing on the Petition Date, which shall include, among other things, available cash, revenue, cash flow, trade payables, ordinary course expenses, total expenses, capital expenditures, vendor disbursements, liquidity, net operating cash flow and net cash flow, fees and expenses related to the DIP Facility and the Chapter 11 Cases (including, for the avoidance of doubt, professional fees), working capital and other general corporate financial needs, (2) "***Updated Budget***" means, if requested by the Required Lenders (as defined in the DIP Credit Agreement) in accordance with the terms of the DIP Credit Agreement, a 13-week cash flow forecast covering the 13-week period commencing on the first day of the week in which such 13-week cash flow forecast is delivered, setting forth all forecasted receipts and disbursements of the DIP Loan Parties on a weekly basis during such 13-week period, which shall include, among other things, available cash, revenue, cash flow, trade payables, ordinary course expenses, total expenses, capital expenditures, vendor disbursements, liquidity, net operating cash flow and net cash flow, fees and expenses related to the DIP Facility and the

16

Chapter 11 Cases (including, for the avoidance of doubt, professional fees), working capital and other general corporate financial needs; *provided*, that it being understood that if the Required Lenders (as defined in the DIP Credit Agreement) do not approve such Updated Budget within five (5) business days after the delivery thereof, the then-existing Budget shall continue to constitute the applicable Budget and shall continue to be effective, including for testing purposes, until such time as such Updated Budget is approved by the Required Lenders (as defined in the DIP Credit Agreement); and (2) "***Permitted Variances***" means (i) all variances that are favorable to the financial condition and the interests of the DIP Loan Parties and the interests of the DIP Lenders, and (ii) any variance that is unfavorable to the financial condition and the interests of the DIP Loan Parties or the interests of the DIP Lenders and does not exceed (x) with respect to operating disbursements (excluding professional fees and expenses and adequate protection claims), 10%, tested weekly on the last business day of each week after the Petition Date (each, a "***Variance Testing Date***") on a cumulative basis since the Petition Date (or, in the event an Updated Budget is provided and is approved by the Required Lenders (as defined in the DIP Credit Agreement), on a cumulative basis since the date of such Updated Budget), (y) with respect to receipts, 15%, tested weekly on each Variance Testing Date, tested on a cumulative basis since the Petition Date (or, in the event an Updated Budget is provided and is approved by the Required Lenders (as defined in the DIP Credit Agreement), on a cumulative basis since the date of such Updated Budget), and (z) with respect to shipments of pellet pounds sold, 10%, tested weekly on each Variance Testing Date on a non-cumulative basis, in each case, based upon the most recent Budget.Additional variances, if any, from the Budget, and any proposed changes to the Budget, shall be subject to the written consent of the Required Lenders (as defined in the DIP Credit Agreement).

(b)    The DIP Secured Parties are relying upon the DIP Loan Parties' agreement to comply with the terms set forth in the DIP Credit Agreement, the Budget, this Interim Order, and the other DIP Documents in determining to enter into the postpetition financing arrangements provided for herein and to consent to the DIP Loan Parties' use of Cash Collateral as set forth herein.

(v)    <u>Certain Conditions to the DIP Facility</u>.  The DIP Lenders' willingness to make the DIP Loans is conditioned upon, among other things: (a) the DIP Loan Parties obtaining Court approval to enter into the DIP Documents and to incur all of the obligations thereunder, and to confer upon the DIP Secured Parties all applicable rights, powers, and remedies thereunder and under this Interim Order; (b) the DIP Loan Parties obtaining Court approval of and compliance with the Milestones (as defined in the DIP Credit Agreement), which are hereby approved in all respects; (c) the provision of adequate protection of the Prepetition Secured Parties' interests in the Prepetition Collateral pursuant to sections 361, 363, and 364 of the Bankruptcy Code; (d) the DIP Secured Parties being granted, as security for the prompt payment of the DIP Obligations, superpriority perfected security interests in and liens upon substantially all property and assets of the DIP Loan Parties, including, without limitation, a valid and perfected security interest in and lien upon all of the following now existing or hereafter arising or acquired property and assets: (1) all property and assets comprising Prepetition Collateral, and (2) all property and assets comprising DIP Collateral; and (e) the DIP Secured Parties being granted, pursuant to section 364 of the Bankruptcy Code, superpriority administrative expense claims as set forth in this Interim Order on account of the DIP Obligations.

(vi)    <u>Business Judgment and Good Faith Pursuant to Section 364(e)</u>.  Any credit extended, loans made, and other financial accommodations extended to the DIP Loan

Parties by the DIP Secured Parties, including, without limitation, pursuant to this Interim Order, have been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Facility, the DIP Liens, and the DIP Superpriority Claims (as defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise.

        (vii)    Sections 506(c) and 552(b). The PA Debtors have agreed as a condition to obtaining financing under the DIP Facility and the use of Cash Collateral as set forth in this Interim Order that as a material inducement to the DIP Secured Parties to agree to provide the DIP Facility and the Prepetition Secured Parties' consent to the use of Cash Collateral as set forth in this Interim Order, and in exchange for (a) the DIP Secured Parties' willingness to provide the DIP Facility to the extent set forth herein, (b) the DIP Secured Parties' and the Prepetition Secured Parties' agreement to subordinate their liens and superpriority claims to the Carve-Out, and (c) the consensual use of Cash Collateral consistent with the Budget, the terms of the DIP Credit Agreement, and the terms of this Interim Order, each of the DIP Secured Parties, and the Prepetition Secured Parties are, subject to entry of the Final Order granting such relief, entitled to receive a waiver of (a) any rights of the Debtors' and their Estates' ability to surcharge pursuant to section 506(c) of the Bankruptcy Code against any DIP Collateral and the Prepetition Collateral; (b) any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code; and (c) any rights of the Debtors under the equitable doctrine of marshaling or any other similar doctrine with respect to any DIP Collateral or Prepetition Collateral.

(viii)   <u>Good Cause</u>.   Good cause has been shown for the entry of this Interim Order.  The relief requested in the Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the DIP Loan Parties, their creditors, and their Estates, as its implementation will, among other things, provide the DIP Loan Parties with the necessary liquidity to (a) minimize disruption to the DIP Loan Parties' businesses, on-going operations and other applicable activities and efforts, (b) preserve and maximize the value of the DIP Loan Parties' Estates for the benefit of all the PA Debtors' creditors, and (c) avoid immediate and irreparable harm to the DIP Loan Parties, their creditors, their businesses, their employees, and their assets.  The terms of the DIP Facility and this Interim Order are fair and reasonable, reflect each DIP Loan Party's exercise of its business judgment, and are supported by reasonably equivalent value and fair consideration.  The DIP Facility and this Interim Order are the product of reasonable, arms'-length, good faith negotiations between the DIP Loan Parties, the DIP Secured Parties, and the Prepetition Secured Parties.

(ix)   <u>Roll-up Loans</u>.   Without any further action by the DIP Loan Parties or any other party, 2019 Bonds of each DIP Lender or its designated affiliates shall be "rolled-up" into Roll-Up Loans on the basis of $2.00 dollars for each $1.00 dollar of New Money DIP Loan made by such DIP Lender.  The conversion (or "roll-up") shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the 2019 Prepetition Bondholders to provide new-money liquidity and permit access to Cash Collateral, and not as payments under, adequate protection for, or otherwise on account of, any Prepetition Obligations.  The conversion and "roll-up" of 2019 Bonds into Roll-Up Loans will enable the DIP Loan Parties to obtain urgently needed financing that will allow them to free up liquidity to fund the chapter 11 process.

(x)    <u>Adequate Protection</u>.    The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363, 364, and 507(b) of the Bankruptcy Code, to receive adequate protection against any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral), as set forth in this Interim Order.

(xi)    <u>Immediate Entry</u>.    Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and for waiver of any otherwise applicable stay (including under Bankruptcy Rules 4001(a)(3) and 6004) of the effectiveness of this Interim Order.    Absent immediate entry and effectiveness of this Interim Order, the DIP Loan Parties' businesses, properties, and Estates will be immediately and irreparably harmed.

(xii)    <u>Interim Hearing</u>.    Notice of the Interim Hearing and the relief requested in the Motion has been provided by the PA Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to the Notice Parties.    The PA Debtors have made reasonable efforts to afford the best notice possible under the circumstances and no other notice is required for the relief to be granted in this Interim Order.

Based upon the foregoing, and upon the record made before the Court at the Interim Hearing and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

**I.**    ***Authorization and Conditions to Financing and Use of Cash Collateral.***

1.    <u>Motion Granted</u>.    The Motion is granted on an interim basis to the extent provided in this Interim Order.    Any objections to the entry of this Interim Order that have not been withdrawn, waived, resolved, or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.

2.    <u>Authorization of DIP Financing and Use of Cash Collateral</u>.

(a)    The DIP Loan Parties are hereby authorized and empowered to execute and deliver the DIP Documents and to immediately borrow, incur, and guarantee (as applicable), DIP Loans, pursuant to the terms and conditions of the DIP Documents, this Interim Order, and the Budget, in an aggregate principal amount of up to $14,000,000 in New Money DIP Loans and $28,000,000 in Roll-Up Loans, with the Initial Draw to be made upon entry of this Interim Order and satisfaction or waiver of the other conditions set forth herein, in the other DIP Documents, and in accordance with the Budget.

(b)    The DIP Loan Parties are hereby authorized to (i) borrow under the DIP Facility and use Cash Collateral during the period commencing on the date of this Interim Order through and including the earlier to occur of (x) the date of entry of the Final Order, and (y) the occurrence of a DIP Termination Event (as defined below) solely in accordance with, and for the purposes permitted by, this Interim Order, the other DIP Documents, and the Budget, (ii) pay all interest, costs, fees, and other amounts and obligations accrued or accruing under the DIP Credit Agreement and the other DIP Documents, all pursuant to the terms and conditions of this Interim Order, the Budget, the DIP Credit Agreement, and the other DIP Documents, and (iii) consummate the "roll-up" into Roll-Up Loans (subject to the Carve-Out).

(c)    Subject to and upon entry of the Final Order, all Roll-Up Loans shall be deemed to be DIP Obligations.

3.    <u>Financing Documents</u>.

(a)    *Authorization*.  The DIP Loan Parties are hereby authorized to enter into, execute, deliver, and perform all obligations under the DIP Documents.  No obligation, payment, transfer, or grant of security hereunder or under the DIP Documents shall be stayed, restrained,

voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable state, federal, or foreign law (including, without limitation, under chapter 5 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Voidable Transactions Act, Uniform Fraudulent Conveyance Act, or similar statute or foreign law), or be subject to any defense, reduction, setoff, counterclaim, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), cross-claims, or any other challenge under the Bankruptcy Code or any applicable law, rule, or regulation by any person or entity.

(b)     *Approval; Evidence of Borrowing Arrangements*.   All terms, conditions, and covenants set forth in the DIP Documents (including, without limitation, the DIP Credit Agreement) are approved and shall be binding on the DIP Loan Parties.   All such terms, conditions, and covenants shall be sufficient and conclusive evidence of (i) the borrowing arrangements by and among the DIP Loan Parties, the DIP Agent, and the DIP Lenders, and (ii) each DIP Loan Party's agreement to comply with, all the terms, conditions, and covenants of the DIP Credit Agreement and the other DIP Documents for all purposes, including, without limitation, to the extent applicable, the payment of all DIP Obligations arising thereunder, including, without limitation, all principal, interest, fees, and other expenses, including, without limitation, all of the DIP Agent's and each DIP Secured Party's closing, arranger, and administrative fees, consultant fees, professional fees, attorney's fees and legal expenses, to the extent set forth in the DIP Documents.   Upon effectiveness thereof, the DIP Documents shall evidence the DIP Obligations, which DIP Documents and DIP Obligations shall be valid, binding, and enforceable against the DIP Loan Parties, their Estates, and any successors thereto, including, without limitation, any trustee appointed in any of these Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these Chapter 11 Cases

(collectively, the "**Successor Cases**"), and their creditors and other parties-in-interest, in each case, in accordance with the terms of this Interim Order and the other DIP Documents.

(c)     *Payment of DIP Fees and Other Expenses*.  Any and all fees and expenses payable pursuant to the DIP Documents (collectively, any and all such fees and expenses, the "**DIP Fees**") are hereby approved and the DIP Loan Parties are hereby authorized and directed to pay, in cash and on a current basis, all reasonable and documented out-of-pocket costs, disbursements, and expenses of the DIP Agent and the DIP Secured Parties incurred at any time, as provided by this Interim Order and the other DIP Documents; *provided*, *however*, that any financing fee purportedly earned or to be earned by the Debtors' investment banker shall not be paid, if at all, until after the entry of the Final Order and upon approval by the Court of such fee after a motion and hearing.  The DIP Fees shall not be subject to any offset, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever.

(d)     *Amendments to DIP Documents*.  Subject to the terms and conditions of the DIP Documents, the DIP Loan Parties and the DIP Secured Parties may make amendments, modifications, or supplements to any DIP Document, and the DIP Agent (acting at the direction of the Required Lenders (as defined in the DIP Credit Agreement) if so required by the DIP Documents) and any requisite DIP Lenders may waive any provisions in the DIP Documents, without further approval of the Court; *provided*, that any such amendments, modifications, or supplements to any DIP Documents that operate to increase the aggregate commitments, the rate of interest payable thereunder (other than the application of default interest), or existing fees or add new fees thereunder (excluding, for the avoidance of doubt, any amendment, consent or waiver fee) other than as currently provided in the DIP Documents (collectively, the "**Material DIP Amendments**"), shall be filed with the Court, and the DIP Loan Parties shall provide prior

24

written notice of the Material DIP Amendment to (i) counsel to the DIP Agent and the Prepetition Trustee; (ii) counsel to the Prepetition Secured Parties; (iii) counsel to the Committee, or, in the event no such Committee is appointed at the time of such Material DIP Amendment, the 30 largest unsecured creditors; (iv) the U.S. Trustee; (v) counsel to the DIP Term Agent; and (vi) counsel to the DIP ABL Lender; *provided*, *further*, that the consent of the foregoing parties will not be necessary to effectuate any such amendment, modification or supplement, except that any Material DIP Amendment that is subject to an objection filed within three (3) business days following receipt of such Material DIP Amendment must be approved by the Court.  For the avoidance of doubt, the DIP Loan Parties must receive written consent as to any Material DIP Amendment prior to filing notice thereof with the Court (i) from the DIP Secured Parties, and (ii) from the Prepetition Trustee, for any amendment, modification, supplement, or waiver that materially adversely affects any rights of any Prepetition Secured Parties hereunder or the treatment of the Prepetition Obligations hereunder.

    4.    <u>Continuation of Prepetition Procedures</u>.  Except to the extent expressly set forth in the Prepetition Documents, the DIP Documents, or in other "first day" orders, all prepetition practices and procedures for the collection and disbursement of proceeds of the Prepetition Collateral, including the Account Control Agreements (as such term is defined in the Prepetition Documents) and any other similar lockbox or blocked depository bank account arrangements, are hereby approved and shall continue without interruption, consistent with the Court's order authorizing the Debtors' use of their cash management system.

    (a)    *Funding Account*.  Notwithstanding the foregoing, except as otherwise specified in the DIP Credit Agreement, the proceeds of the New Money DIP Loans when made shall be funded or credited to a non-interest bearing account in the name of the DIP Agent and

subject to the sole dominion and control of the DIP Agent (the "***Funding Account***"). The Borrower may, subject to conditions precedent specified in the DIP Credit Agreement, withdraw or apply funds from the Funding Account solely to pay (x) one or more disbursements set forth as a line item in the then effective Budget in an amount not to exceed the amount for such line item set forth in the then effective Budget (subject to Permitted Variances thereto), (y) any fees or other amounts due and payable to the DIP Lenders or the DIP Agent, or (z) such other amounts that are due and payable under the DIP Documents. For the avoidance of doubt, the DIP Loans shall be outstanding and accrue interest at the rate set forth in the DIP Credit Agreement notwithstanding that the proceeds thereof may be held in the Funding Account. The Funding Account shall be an account of the DIP Agent maintained at UMB and will not constitute property of the Debtors or their Estates.

5.    <u>Indemnification</u>.  The DIP Loan Parties are authorized to indemnify and hold harmless the DIP Agent, each DIP Secured Party, and, solely in their capacities as such, each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders and employees, past, present and future, and their respective heirs, predecessors, successors and assigns, in accordance with, and subject to, the DIP Documents.

**II.**    ***Postpetition Liens; Superpriority Administrative Claim Status.***

6.    <u>Postpetition Liens</u>.

(a)    *Postpetition DIP Liens*.  To secure performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of any and all DIP Obligations of the DIP Loan Parties to the DIP Secured Parties of whatever kind, nature, or description, whether absolute or contingent, now existing or hereafter arising, effective and perfected upon the date of

this Interim Order and without the necessity of the execution, recordation or filing by the DIP Loan Parties or the DIP Agent of any mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents or instruments, any notation of certificates of title for a titled good or the possession or control by the DIP Agent of, or over, any DIP Collateral, the following security interests and liens are hereby granted to the DIP Agent, for the benefit of itself and the respective DIP Lenders (all property identified in clauses (i)–(iv) below being collectively referred to as the "*DIP Collateral*"), subject only to payment of the Carve-Out and Permitted Liens (all such liens and security interests granted to the DIP Agent, for the benefit of itself and the DIP Lenders, pursuant to this Interim Order and the DIP Documents, the "*DIP Liens*").

(i)    Liens on Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all tangible and intangible pre- and postpetition real or personal property of the DIP Loan Parties, whether existing on the Petition Date or thereafter acquired, and the proceeds, products, rents and profits thereof, that, on or as of the Petition Date or permitted by section 546(b) of the Bankruptcy Code, is not subject to a valid, perfected and non-avoidable lien, including any property or assets that are not subject to the liens and security interests created under the Prepetition Collateral Documents under any of the Prepetition Documents, which, for the avoidance of doubt, shall include any claim or cause of action of the PA Debtors, except those arising under or pursuant to chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law (including any other avoidance actions under the Bankruptcy Code) (collectively, the "*Avoidance Actions*"). Notwithstanding the foregoing, subject to entry of the Final Order, the proceeds or property

recovered from Avoidance Actions, whether by judgment, settlement, or otherwise (the "***Avoidance Proceeds***") shall constitute DIP Collateral.

(ii)    <u>Liens Priming Certain Prepetition Secured Parties' Liens</u>. Pursuant to section 364(d)(1) of the Bankruptcy Code, and subject and subordinate in all respects to the Carve-Out, a valid, binding, continuing, enforceable, fully-perfected first priority priming security interest in and lien upon all pre- and postpetition property of the DIP Loan Parties, regardless of where located, regardless of whether or not any liens on such assets are voided, avoided, invalidated, lapsed or unperfected, which security interest and lien shall prime the Prepetition Liens.

(iii)    <u>Liens Junior to Certain Other Liens</u>. Pursuant to section 364(c)(3) of the Bankruptcy Code, and subject and subordinate in all respects to the Carve-Out, a valid, binding, continuing, enforceable, fully-perfected junior security interest in and lien upon all pre- and postpetition property of the DIP Loan Parties that, on or as of the Petition Date, is subject to valid, perfected and non-avoidable senior liens or valid and non-avoidable senior liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, in each case other than the Prepetition Liens; *provided*, that nothing in the foregoing shall limit the rights of the DIP Secured Parties under the DIP Documents to the extent such liens are not permitted thereunder.

(iv)    <u>Liens Senior to Certain Other Liens</u>. The DIP Liens shall not be (A) subject or subordinate to or made *pari passu* with (1) any lien or security interest that is avoided and preserved for the benefit of the DIP Loan Parties and their Estates under section 551 of the Bankruptcy Code, (2) unless otherwise provided for in the DIP Documents or in this

Interim Order, or unless otherwise required by applicable non-bankruptcy law, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties, or (3) any intercompany or affiliate liens of the DIP Loan Parties or security interests of the DIP Loan Parties; or (B) subordinated to or made *pari passu* with any other lien or security interest granted by the PA Debtors under section 363 or 364 of the Bankruptcy Code.

(b)     *DIP Lien Priority in DIP Collateral*.  The DIP Liens on the DIP Collateral securing the DIP Obligations shall be first and senior in priority to all other interests and liens of every kind, nature, and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or security interests granted in favor of third parties in conjunction with sections 363, 364, or any other section of the Bankruptcy Code or other applicable law; *provided*, *however*, that the DIP Liens shall be subject to the Carve-Out and Permitted Liens.[4]

(c)     *Postpetition Lien Perfection*.  This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens, the Prepetition Adequate Protection Liens, and the other security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, control agreements with any financial institution(s) party to a control agreement or

---

[4]      For purposes of this Interim Order, "***Permitted Liens***" shall mean (i) any liens that are senior by operation of law (including any such liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or that were, as of the Petition Date, valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens; and (ii) any liens permitted under the Prepetition Documents.

other depository account consisting of DIP Collateral, or requirement to register liens on any

certificates of title (a "***Perfection Act***").  Notwithstanding the foregoing, if the DIP Agent or the

Prepetition Trustee, as applicable, shall, in its sole discretion, elect for any reason to file, record,

or otherwise effectuate any Perfection Act, then the DIP Agent or the Prepetition Trustee, as

applicable, is authorized to perform such act, and the DIP Loan Parties are authorized and

directed to perform such act to the extent necessary or required by this Interim Order, the other

DIP Documents, or the Prepetition Documents, which act or acts shall be deemed to have been

accomplished as of the date and time of entry of this Interim Order notwithstanding the date and

time actually accomplished, and, in such event, the subject filing or recording office is

authorized to accept, file, or record any document in regard to such act in accordance with

applicable law.  The DIP Agent or the Prepetition Trustee, as applicable, may choose to file,

record, or present a certified copy of this Interim Order in the same manner as a Perfection Act,

which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording

office is authorized to accept, file, or record such certified copy of this Interim Order in

accordance with applicable law.  Should the DIP Agent or the Prepetition Trustee, as applicable,

so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in

connection with such attempt shall in any way limit, waive, or alter the validity, enforceability,

attachment, priority, or perfection of the postpetition liens and security interests granted herein

by virtue of the entry of this Interim Order.

        (d)     To the extent that any applicable non-bankruptcy law otherwise would

restrict the granting, scope, enforceability, attachment, or perfection of any liens and security

interests granted and created by this Interim Order (including the DIP Liens and the Prepetition

Adequate Protection Liens) or otherwise would impose filing or registration requirements with

respect to such liens and security interests, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal or foreign law, and the judicial power and authority of the Court; *provided*, *however*, that nothing herein shall excuse the DIP Loan Parties from payment of any local or recording fees or taxes, if any, required in connection with such liens. By virtue of the terms of this Interim Order, to the extent that the DIP Agent or the Prepetition Trustee, as applicable, has filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the DIP Loan Parties, such filings shall be deemed to properly perfect its liens and security interests granted and confirmed by this Interim Order without further action by the DIP Agent or the Prepetition Trustee, as applicable.

(e)     Except as provided in this Interim Order, the DIP Liens, the DIP Superpriority Claims, the Prepetition Adequate Protection Liens, and the Prepetition Adequate Protection Claims (as defined below) (i) shall not be made subject to or *pari passu* with (A) any lien, security interest, or claim heretofore or hereinafter granted by the PA Debtors in any of these Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the DIP Loan Parties, their Estates, any trustee, or any other estate representative appointed or elected in these Chapter 11 Cases or any Successor Cases and/or upon the dismissal of any of these Chapter 11 Cases or any Successor Cases; (B) any lien that is avoided and preserved for the benefit of the DIP Loan Parties and their Estates under section 551 of the Bankruptcy Code or otherwise; and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code.

7.     <u>DIP Loan Superpriority Administrative Expenses</u>.  Subject only to the Carve-Out, on account of all DIP Obligations now existing or hereafter arising pursuant to this Interim

31

Order, the other DIP Documents, or otherwise, the DIP Agent, for the benefit of itself and the DIP Lenders, is granted an allowed superpriority administrative expense claim against the PA Debtors pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities, and indebtedness of the DIP Loan Parties, whether now in existence or hereafter incurred by the DIP Loan Parties, and over any and all administrative expenses or priority claims against the DIP Loan Parties of the kind specified in, or ordered pursuant to, *inter alia*, sections 105, 326, 328, 330, 331, 364(c)(1), 365, 503(a), 503(b), 506(c) (subject to entry of the Final Order granting such relief), 507(a), 507(b), 546(c), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof (including, subject to entry of the Final Order granting such relief, the Avoidance Proceeds) (the "***DIP Superpriority Claims***").

       8.   <u>Carve-Out</u>.

       (a)   <u>Generally.</u>  As used in this Interim Order, the "***Carve-Out***" means the sum of the following, in all respects solely with respect to the DIP Loan Parties: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code plus interest at the statutory rate (without regard to the Carve-Out Trigger Notice (as defined below) and without being subject to any budget (collectively, the "***Statutory Fees***")); (ii) all reasonable and documented fees and out-of-pocket expenses incurred by a trustee under section 726(b) of the Bankruptcy Code and allowed by the Court in an amount not to exceed

$25,000 (without regard to the Carve-Out Trigger Notice); (iii) to the extent allowed by the Court at any time, whether by interim order, procedural order, or otherwise, all accrued and unpaid fees, costs, and out-of-pocket expenses incurred by persons or firms retained by the Debtors (including Force Ten Partners LLC) pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "***Debtor Professionals***") and any Committee pursuant to section 328 or 1103 of the Bankruptcy Code (collectively, the "***Committee Professionals***" and, together with the Debtor Professionals, the "***Professional Persons***," and such fees, costs, and out-of-pocket expenses of each Professional Person as and when allowed solely to the extent related to the DIP Loan Parties, the "***Allowed Professional Fees***") at any time on or prior to the Carve-Out Trigger Date (as defined below), whether allowed by the Court prior to or after the Carve-Out Trigger Date, to the extent that such fees, costs, and out-of-pocket expenses are provided for in the Budget, less the aggregate amount of all retainers held by Professional Persons as of the Carve-Out Trigger Date (the amounts set forth in clauses (i) through (iii), the "***Pre-Carve Out Trigger Notice Cap***"); and (iv) Allowed Professional Fees in an aggregate amount not to exceed $250,000 incurred on and after the Carve-Out Trigger Date, to the extent allowed by the Court at any time, whether by interim order, procedural order, or otherwise, but excluding any "success" or "transaction" fees payable to any financial advisor or investment banker, allocated $200,000 to the Debtor Professionals and $50,000 to the Committee Professionals (the amounts set forth in this clause (iv) being the "***Post-Carve Out Trigger Notice Cap***" and, together with the Pre-Carve Out Trigger Notice Cap, the "***Carve-Out Cap***"); *provided*, that under no circumstances shall any success, completion or similar fees be paid from the Carve-Out following delivery of a Carve-Out Trigger Notice unless such fee was earned and payable before the Carve-Out Trigger Date; *provided*, *further*, that nothing herein shall be

construed to impair the ability of any party to object to the fees, expenses, reimbursement, or compensation described in the Carve-Out Cap on any grounds.  For purposes of the foregoing, "***Carve-Out Trigger Notice***" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent to the DIP Loan Parties, their lead restructuring counsel, the U.S. Trustee, and counsel to the Committee (if any), counsel to the DIP Agent, counsel to the DIP Term Agent, and counsel to the DIP ABL Lender, which notice (x) may be delivered only following the occurrence and during the continuation of a DIP Termination Event, and (y) shall state that the Post-Carve Out Trigger Notice Cap has been invoked (the day on which a Carve-Out Trigger Notice is received by the parties above, the "***Carve-Out Trigger Date***").  So long as the Carve-Out Trigger Notice has not been delivered as provided above, the DIP Loan Parties shall be permitted to (x) make disbursements to the Pre-Carve Out Trigger Notice Reserve (as defined below) on amounts set forth in the Budget for Professional Persons related solely to the DIP Loan Parties at the times and in the amounts contemplated thereby, and (y) pay Allowed Professional Fees, including on an interim basis, in accordance with the Budget as they become due and payable, including from amounts held in the Pre-Carve Out Trigger Notice Reserve.  For the avoidance of doubt, notwithstanding anything to the contrary contained in this Interim Order, nothing in this Interim Order or any Budget shall be construed as a cap or limitation on the amount of Statutory Fees that are due and payable by the DIP Loan Parties.

(b)     Carve-Out Reserves.

(i)     On the Carve-Out Trigger Notice Date, the Carve-Out Trigger Notice (x) shall be deemed a draw request and notice of borrowing by the DIP Loan Parties for loans to be made under the DIP Facility in an amount equal to the sum of (1) the amounts set forth in paragraphs 8(a)(i) and 8(a)(ii) above, plus (2) unpaid amounts of the Allowed

Professional Fees (if any), up to the Carve-Out Cap, less any amounts previously funded for Professional Persons at the times and in the amounts contemplated under the Budget (any such amounts actually advanced shall constitute DIP Obligations), and (y) shall also constitute a demand to the DIP Loan Parties to utilize all cash on hand as of such date (including in the Funding Account) and any available cash thereafter held by any DIP Loan Party to fund a reserve in an amount equal to the sum of the amounts set forth in paragraphs 8(a)(i)– 8(a)(iii) above (which cash amounts actually utilized or reserved (including from cash on hand) shall reduce, on a dollar for dollar basis, the draw requests and applicable DIP Obligations pursuant to the foregoing sentence of this paragraph 8(c)(i)).  The DIP Loan Parties shall deposit and hold such amounts in a segregated account held by lead bankruptcy counsel for the DIP Loan Parties in trust exclusively to pay such unpaid Allowed Professional Fees and amounts set forth in paragraphs 8(a)(i) and 8(a)(ii) (the "***Pre-Carve Out Trigger Notice Reserve***").  For the avoidance of doubt, the Pre-Carve Out Trigger Notice Reserve shall comprise three separate and independent reserves made up of the following: (A) a reserve to pay the obligations set forth in paragraph 8(a)(i) above; (B) a reserve to pay the obligations set forth in paragraph 8(a)(ii) above, and (C) a reserve to pay the obligations set forth in paragraph 8(a)(iii) above.

(ii)     On the Carve-Out Trigger Notice Date, the Carve-Out Trigger Notice shall also be deemed a request by the DIP Loan Parties for loans to be made under the DIP Facility from the Funding Account in an amount equal to any unfunded portion of the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP Obligations), and shall also constitute a demand to the DIP Loan Parties to utilize all cash on hand as of such date (including in the Funding Account) and any available cash thereafter held by any DIP Loan Party, after the funding in full of the Pre-Carve Out Trigger Notice Reserve, to

fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (which cash amounts actually utilized or reserved (including from cash on hand) shall reduce, on a dollar for dollar basis, the draw requests. The DIP Loan Parties shall deposit and hold such amounts in a segregated account held by lead bankruptcy counsel for the DIP Loan Parties in trust exclusively to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "***Post-Carve Out Trigger Notice Reserve***" and, together with the Pre-Carve Out Trigger Notice Reserve, the "***Carve-Out Reserves***").

(c)    <u>Application of Carve-Out Reserves</u>.

(i)    All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in paragraphs 8(a)(i)–8(a)(iii) above (the "***Pre-Carve Out Amounts***"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full. If the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to subparagraph (iii) below, all remaining funds in the Pre-Carve Out Trigger Notice Reserve shall be distributed to the DIP Agent on account of the DIP Loans.

(ii)    All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in paragraph 8(a)(iv) above (the "***Post-Carve Out Amounts***"). If the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to sub-paragraph (iii) below, all remaining funds in the Post-Carve Out Trigger Notice Reserve shall be distributed to the DIP Agent on account of the DIP Loans.

(iii)    Notwithstanding anything to the contrary in the DIP Documents, the Prepetition Documents, or this Interim Order, if either of the Carve-Out Reserves is not funded in full in the amounts set forth in paragraph 8(b) above, then any excess funds in one of the Carve-Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve

Out Amounts, respectively, shall be used to fund the other Carve-Out Reserve to the extent of any shortfall in funding prior to making any payments set forth in paragraphs 8(c)(i) or 8(c)(ii) above.

(iv)    Notwithstanding anything to the contrary in the DIP Documents, the Prepetition Documents, or this Interim Order, following delivery of a Carve-Out Trigger Notice, the DIP Agent and the Prepetition Trustee shall not sweep or foreclose on cash (including cash in the Funding Account and cash received as a result of the sale or other disposition of any assets) of the DIP Loan Parties in excess of the amount necessary to fully fund the Carve-Out Reserves until the Carve-Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve-Out Reserves, with any excess paid as provided in paragraphs 8(c)(i) and (c)(ii) above.

(v)    Except to the extent expressly provided by further order of the Court, the DIP Loan Parties may use funds held in the Carve-Out Reserves only to pay Allowed Professional Fees, to pay the other amounts included in the Carve-Out in the manner set forth in this Interim Order, and to distribute remaining funds in the Carve-Out Reserves pursuant to paragraphs 8(c)(i), (ii) and (iii), and not for any other purpose.

(vi)    For the avoidance of doubt, until the indefeasible payment in full in cash of the DIP Obligations occurs or the DIP Facility is otherwise terminated, this Interim Order shall remain in full force and effect, including with respect to the DIP Loan Parties' use of Cash Collateral, the Carve-Out, and all related provisions in respect thereof, and the Prepetition Trustee shall assume any rights and obligations that the DIP Agent previously had with respect to the Carve-Out.

(d)    <u>Other Priority Matters</u>.

(i)    For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order, the DIP Documents, or the Prepetition Documents, the Carve-Out shall be senior to the DIP Obligations, the Prepetition Obligations, and any other claims arising under or in connection with the DIP Documents or the Prepetition Documents (and any and all security interests and liens securing such claims), the DIP Superpriority Claims, the liens and claims securing the DIP Facility, the Prepetition Adequate Protection Liens, the Prepetition Adequate Protection Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations, the Prepetition Adequate Protection Claims, or the Prepetition Obligations; *provided*, that the Carve-Out Reserves shall constitute the sole and primary source for payment of Allowed Professional Fees entitled to benefit from the Carve-Out, and any lien priorities or superpriority claims granted pursuant to this Interim Order to secure payment of the Carve-Out shall be limited to any shortfall in funding of the Carve-Out Reserves.

(ii)    Notwithstanding anything to the contrary in the DIP Documents, the Prepetition Documents, or this Interim Order, but subject in all respects to paragraph 8, the DIP Loan Parties' authority to use proceeds from the DIP Facility, the DIP Collateral, and/or Cash Collateral (including from the Funding Account) solely on account of and to timely pay Allowed Professional Fees and Statutory Fees and the other obligations benefitting from the Carve-Out shall in no way be limited or deemed limited by any Budget.

(e)    No Direct Obligation To Pay Allowed Professional Fees.  None of the DIP Secured Parties or the Prepetition Secured Parties shall be responsible for the direct payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order, the Final Order, or otherwise shall be construed to obligate any of

38

the DIP Secured Parties or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)      Payment of Allowed Professional Fees Prior to the Carve-Out Trigger Date.  Any payment or reimbursement of Allowed Professional Fees prior to the Carve-Out Trigger Date will not reduce the Carve-Out.

(g)      Reservation of Rights.  Nothing herein shall be construed to impair the right or ability of any party to object to the fees, expenses, reimbursement or other compensation described with respect to these Carve-Out provisions.

9.      Adequate Protection for the Prepetition Secured Parties.

(a)      *Adequate Protection for Prepetition Secured Parties*.  The Prepetition Secured Parties are entitled, pursuant to sections 361, 363(e), 364(d)(1), 503(b), 507(a), and 507(b) of the Bankruptcy Code and effective as of the Petition Date, to adequate protection of their respective interests in the Prepetition Collateral, including any Cash Collateral, in an amount equal to the aggregate Diminution in Value of the Prepetition Secured Parties' interests in the Prepetition Collateral from and after the Petition Date.  On account of such adequate protection and solely to the extent of any Diminution in Value, the Prepetition Secured Parties are hereby granted the following, in each case subject to the Carve-Out (collectively, the "***Adequate Protection Obligations***"):

(i)      Prepetition Adequate Protection Liens.  Effective and perfected upon the date of this Interim Order and without the necessity of any Perfection Act, valid and perfected postpetition replacement security interests in and liens upon the DIP Collateral (the

"***Prepetition Adequate Protection Liens***"), subject and subordinate only to the Carve-Out, the Permitted Liens, and the DIP Liens.

(ii)     Adequate Protection Payments.   All interest on the Bonds under the Prepetition Indenture, including accrued and unpaid interest as of the Petition Date and interest accruing thereafter, which interest shall accrue at the non-default rate as set forth in the Prepetition Indenture and be payable in-kind in arrears on a monthly basis on the last business day of each month by being capitalized.   For purposes of clarification, the accrued and unpaid interest as of the Petition Date with respect to the 2019 Bonds to be converted into Roll-Up Loans will not be rolled into such Roll-Up Loans but shall be paid to the 2019 Prepetition Bondholders pursuant to this paragraph.

(iii)     Adequate Protection Superpriority Claims.   Allowed superpriority administrative expense claims against the PA Debtors pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (the "***Prepetition Adequate Protection Claims***"), which shall be allowed claims against each of the DIP Loan Parties (jointly and severally), with priority (except as otherwise provided herein) over any and all administrative expenses and all other claims against the DIP Loan Parties now existing or hereafter arising, of any kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 365, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment.   The Prepetition Adequate Protection Claims shall be payable from and have recourse to all prepetition and postpetition property of the DIP Loan Parties (including, subject to entry of the Final Order granting such relief, Avoidance Proceeds),

subject to the Carve-Out, the Permitted Liens, the DIP Obligations, and the DIP Superpriority Claims.

(b)   *Reporting*.   The DIP Loan Parties shall timely provide the Prepetition Secured Parties with (i) reasonable access to the DIP Loan Parties' facilities, management, books, and records required under the Prepetition Documents, and (ii) copies of all financial reporting provided to the DIP Agent and DIP Lenders pursuant to the DIP Documents substantially simultaneously with such delivery to the DIP Lenders.

(c)   *Fees and Expenses*.   As additional adequate protection, the DIP Loan Parties shall pay in cash (i) within three (3) business days of entry of this Interim Order, all accrued and unpaid reasonable prepetition fees and expenses of the Prepetition Secured Parties (including all reasonable fees and expenses of Arnold & Porter Kaye Scholer LLP ("*A&P*"), as primary counsel, Ankura Consulting Group, LLC ("*Ankura*"), as financial advisor, Longino Public Finance LLC ("*Longino*"), as public finance advisor, and Troutman Pepper Hamilton Sanders LLP ("*Troutman*"), as local counsel), and (ii) after entry of this Interim Order, monthly payments in cash of the reasonable and documented postpetition costs, fees, and expenses of the Prepetition Secured Parties (including fees and expenses of (A) one primary counsel (which shall be A&P) and one local counsel (which shall be Troutman), and (B) other advisors retained by the Prepetition Secured Parties (which shall be Ankura and Longino) in accordance with the Prepetition Documents.   All payments of professional fees, expenses, and disbursements authorized under this paragraph 9(c) shall be made by the DIP Loan Parties as provided below unless, and except only to the extent, objected to by the DIP Loan Parties, the Committee, and the U.S. Trustee, within ten (10) business days (which time period may be extended by the applicable professional) (the "*Review Period*") after the receipt by such parties of invoices

therefor (the "*Invoiced Fees*") and without the necessity of filing formal fee applications. The invoices for such Invoiced Fees shall include the total aggregate number of hours billed and a summary description of services provided and the expenses incurred by the applicable professional (which shall not be required to contain time entries); *provided*, *however*, that any such invoice may be redacted to protect privileged, confidential, or proprietary information. The DIP Loan Parties, the Committee, and the U.S. Trustee may object to any portion of the Invoiced Fees (the "*Disputed Invoiced Fees*") within the Review Period by filing with the Court a motion or other pleading, on at least ten (10) business days' prior written notice to the submitting party of any hearing on such motion or other pleadings, setting forth the specific objections to the Disputed Invoiced Fees. The DIP Loan Parties shall pay (1) any Invoiced Fees that are not Disputed Invoiced Fees within five (5) business days after expiration of the Review Period; and (2) any Disputed Invoiced Fees within five (5) business days after approval by the Court by a final order requiring payment of any previously Disputed Invoiced Fees. Subject to paragraph 13 hereof, payments of any amounts set forth in this paragraph are not subject to recharacterization, avoidance, subordination, or disgorgement. No attorney or advisor to the DIP Agent, the DIP Lenders, or the Prepetition Trustee shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

(d)     Reservation of Rights Regarding Adequate Protection.     Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties; *provided*, that the Prepetition Secured Parties may request further or different adequate

protection, and the Debtors or any other party in interest with standing may contest any such request.

**III.** ***Default; Waivers; Rights and Remedies; Relief from Stay.***

10.    <u>DIP Termination Events</u>.  The occurrence of an "Event of Default" under and as defined in each of the DIP Credit Agreement shall constitute a "DIP Termination Event" hereunder (each, a "***DIP Termination Event***"), unless waived in writing by the applicable DIP Secured Parties in accordance with the applicable DIP Documents.

11.    <u>Rights and Remedies upon a DIP Termination Event</u>.

(a)    Immediately upon the occurrence and during the continuation of a DIP Termination Event, the DIP Agent shall be entitled to, and any automatic stay, whether arising under section 362 of the Bankruptcy Code or otherwise, is hereby modified, without further notice to, hearing of, or order from the Court, to the extent necessary to permit the DIP Agent to, upon the delivery of written notice (which may include electronic mail) to the DIP Remedies Notice Parties (as defined below): (i) declare all DIP Obligations owing under the DIP Documents to be immediately due and payable; (ii) terminate, reduce, or restrict any commitment to extend additional credit to the DIP Loan Parties to the extent any such commitment remains (including provision of any letters of credit); (iii) terminate the DIP Facility and any DIP Documents as to any future liability or obligation of the DIP Secured Parties thereunder, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; (iv) terminate and/or revoke the DIP Loan Parties' rights, if any, under this Interim Order and the DIP Documents to use any Cash Collateral (except to fund the Carve-Out Reserves); (v) invoke the right to charge interest at the default rate under the DIP Documents; (vi) freeze monies or balances in the DIP Loan Parties' accounts (except to fund the Carve-Out Reserves); (vii) otherwise enforce any and all rights against the DIP Collateral in the possession

of the applicable DIP Agent, including, without limitation, disposition of the DIP Collateral solely for application towards the Carve-Out and the DIP Obligations in accordance with their respective priorities; and (viii) take any other actions or exercise any other rights or remedies with respect to the DIP Collateral permitted under this Interim Order, the DIP Documents, or applicable law; *provided*, that prior to the exercise of any right in clauses (vii) and (viii) of this paragraph, the DIP Agent shall be required to provide five (5) days' written notice to counsel to the Debtors, counsel to the DIP Lenders, counsel to the Prepetition Trustee, counsel to the DIP Term Agent, counsel to the DIP ABL Lender, counsel to any Committee, and the U.S. Trustee (the "***DIP Remedies Notice Parties***") of the DIP Agent's intent to exercise its rights and remedies (the "***DIP Remedies Notice Period***").

(b)     Unless otherwise ordered by the Court during the DIP Remedies Notice Period, the DIP Agent shall be deemed to have received relief from the automatic stay, and may foreclose on all or any portion of the DIP Collateral, collect accounts receivable, and apply the proceeds thereof to the DIP Obligations, occupy the DIP Loan Parties' premises to sell or otherwise dispose of the DIP Collateral, or otherwise exercise all rights and remedies available against the DIP Collateral permitted by the DIP Documents and by applicable law or equity, without further notice to, hearing of, or order from the Court, and without restriction or restraint by any stay under sections 105 or 362 of the Bankruptcy Code, or otherwise.

(c)     The DIP Loan Parties (i) shall reasonably cooperate with the DIP Agent in its exercise of rights and remedies, whether against the DIP Collateral or otherwise, and (ii) unless the Court orders otherwise, may not contest or challenge the exercise of any such rights or remedies other than to dispute whether a DIP Termination Event has in fact occurred.

(d)     Unless otherwise ordered by the Court during the DIP Remedies Notice Period, upon the occurrence and during the continuation of a DIP Termination Event, without limiting any of the other rights and remedies of the DIP Agent, and subject to, and in accordance with, the DIP Documents and this Interim Order, (i) the DIP Agent and any liquidator or other professional will have the right to access and utilize, at no cost or expense, any trade names, trademarks, copyrights, or other intellectual property of the DIP Loan Parties to the extent necessary or appropriate to sell, lease, or otherwise dispose of any of the DIP Collateral, including pursuant to any Court-approved sale process, and (ii) enter upon any leased or licensed premises of the DIP Loan Parties for the purpose of exercising any remedy with respect to the DIP Collateral located thereon, and shall be entitled to all of the DIP Loan Parties' rights and privileges as lessee or licensee.  For the avoidance of doubt, (x) all of the DIP Loan Parties' obligations under any applicable lease or license shall not be affected, limited, or otherwise modified by the rights granted to the DIP Agent pursuant to this paragraph, and (y) any affected landlords, lienholders, and/or licensors shall retain all remedies available under applicable non-bankruptcy law.  Nothing herein shall require the DIP Loan Parties, the DIP Agent or the other DIP Secured Parties to assume any lease or license under section 365(a) as a precondition to the rights afforded to the DIP Agent and the other DIP Secured Parties herein.

12.     Modification of Automatic Stay.  The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application, or order of the Court to the extent necessary to (i) permit the DIP Agent and the Prepetition Trustee to perform any act authorized or permitted under or by virtue of this Interim Order, the DIP Credit Agreement, or the other DIP Documents, as applicable, including, without limitation, to (A) implement the postpetition

financing arrangements authorized by this Interim Order, (B) take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral, (ii) assess, charge, collect, advance, deduct and receive payments with respect to the Prepetition Obligations and DIP Obligations (or any portion thereof), including, without limitation, all interest, fees, costs, and expenses permitted under any of the DIP Documents and apply such payments to the Prepetition Obligations, and (iii) subject to the Remedies Notice Period, take any action and exercise all rights and remedies provided to it by this Interim Order, the other DIP Documents, or applicable law.

IV.   *Representations and Covenants.*

13.   Effect of Stipulations.

(a)   *Binding on the DIP Loan Parties.*  The DIP Loan Parties' stipulations, admissions, agreements, and releases contained in this Interim Order, including, without limitation, in paragraph E hereof (collectively, the "***Stipulations***"), shall be binding upon the DIP Loan Parties in all circumstances and for all purposes.

(b)   *Binding on Third Parties.*  The Stipulations shall be binding upon all other parties in interest, including, without limitation, any Debtor other than the DIP Loan Parties, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases (including the Committee, if any) and any other person or entity acting or seeking to act on behalf of the Debtors' Estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless each of the following three criteria are satisfied:

(i)   Challenge Period.  Such committee, trustee, or any other party in interest (subject to in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), in each case, with standing and requisite authority granted by the Court, has timely commenced an adversary proceeding or other appropriate contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph 13(b)(i)) by no

later than the date that is seventy-five (75) days from the entry of this Interim Order (the "***Challenge Period***").

(ii)   <u>Challenge Proceeding</u>.   Such adversary proceeding or other appropriate contested matter (A) objects to or challenges the amount, validity, perfection, enforceability, priority or extent of the Prepetition Obligations or the Prepetition Liens, or any portion thereof, or (B) otherwise asserts or prosecutes any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, a "***Challenge Proceeding***") against the Prepetition Secured Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "***Representative***," and, collectively, the "***Representatives***") in connection with matters related to the Prepetition Documents, the Prepetition Obligations, the Prepetition Liens, and the Prepetition Collateral.

(iii)   <u>Final Non-Appealable Order</u>.   There is a final non-appealable order in favor of the plaintiff or movant in any such Challenge Proceeding; *provided*, that any pleadings filed in any Challenge Proceeding shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released, and barred.

(c)   *Failure to File Challenge Proceeding*.   For the avoidance of doubt, a party in interest's commencement of a timely Challenge Proceeding shall preserve the Challenge Period only with respect to such party in interest commencing the Challenge Proceeding and only to the extent of the express content of the pleading commencing such Challenge Proceeding.   If no such Challenge Proceeding is timely and properly filed during the Challenge Period, or to the extent the Court does not rule in favor of the plaintiff or movant in any such Challenge Proceeding that is timely and properly filed during the Challenge Period, then: (i) the Stipulations shall be binding on all parties in interest, including, without limitation, the Committee and any trustee; (ii) the obligations of the Prepetition Obligors under the Prepetition Documents, including the Prepetition Obligations, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, reduction, defense, setoff or avoidance, for all purposes in these Chapter 11 Cases and any Successor Cases; (iii) the

Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, counterclaim, recharacterization, subordination, or avoidance; (iv) the Prepetition Obligations and the Prepetition Liens shall not be subject to any other or further claim or challenge by the Debtors, the Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' Estates; and (v) any defenses, claims, causes of action, counterclaims, and offsets by the Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' Estates, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties arising out of or relating to the Prepetition Documents shall be deemed forever waived, released and barred.  If any such Challenge Proceeding is timely filed during the Challenge Period, the Stipulations shall nonetheless remain binding and preclusive (as provided in this paragraph 13) on the Debtors, the Committee, and on any other person or entity, except to the extent that such Stipulations were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in this Interim Order vests or confers on any Person (as such term is defined in section 101(41) of the Bankruptcy Code), including the Committee or any non-statutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their Estates, including, without limitation, Challenge Proceedings with respect to the Prepetition Documents, the Prepetition Obligations, or the Prepetition Liens.  Any motion seeking standing shall attach a draft complaint or other pleading that sets forth such claim or cause of action or other Challenge Proceeding, and

any claim or cause of action or other Challenge Proceeding not included therein shall be deemed forever waived, released, and barred.

**V.**     *Other Rights and DIP Obligations.*

14.     <u>No Modification or Stay of this Interim Order</u>.  The DIP Secured Parties have acted in good faith in connection with the DIP Facility and this Interim Order, their reliance on this Interim Order is in good faith, and the DIP Secured Parties are entitled to the protections of section 364(e) of the Bankruptcy Code.

15.     <u>Rights of Access and Information</u>.  The DIP Loan Parties shall comply with the rights of access and information afforded to the DIP Secured Parties under the DIP Documents and the Prepetition Secured Parties under the Prepetition Documents.

16.     <u>Power to Waive Rights; Duties to Third Parties</u>.

(a)     Subject to the terms of the DIP Documents, the DIP Agent shall have the right (acting at the direction of the Required Lenders (as defined in the DIP Credit Agreement) if so required by the applicable DIP Documents) to waive any of the terms, rights, and remedies provided or acknowledged in this Interim Order that are in favor of the DIP Lenders (as applicable, the "***DIP Lender Rights***"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Rights; *provided*, that the DIP Agent shall obtain the prior written consent of the Prepetition Trustee for any waiver that affects any rights of the Prepetition Secured Parties hereunder or any treatment of the Prepetition Obligations.  Any waiver by the DIP Agent of any DIP Lender Rights shall not be, nor shall it constitute, a continuing waiver unless otherwise expressly provided therein.  Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject the DIP Agent or any DIP Lender to any liability to any other party, nor cause or enable any party other than the DIP Loan Parties

to rely upon or in any way seek to assert such delay in or failure to exercise or enforce any DIP Lender Right as a defense to any obligation owed by the DIP Loan Parties to the DIP Agent or any DIP Lender.

(b)     The Prepetition Trustee shall have the right (acting at the direction of Prepetition Bondholders of a majority in aggregate principal amount of the Bonds Outstanding (as such terms are defined in the Prepetition Indenture) if so required by the applicable Prepetition Documents) to waive any of the terms, rights, and remedies provided or acknowledged in this Interim Order that are in favor of the Prepetition Secured Parties (as applicable, the "***Prepetition Bondholder Rights***"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Prepetition Bondholder Rights; *provided*, that the Prepetition Trustee shall obtain the prior written consent of the DIP Agent for any waiver that affects any rights of the DIP Secured Parties hereunder or any treatment of the DIP Obligations.   Any waiver by the Prepetition Trustee of any Prepetition Bondholder Rights shall not be, nor shall it constitute, a continuing waiver unless otherwise expressly provided therein.   Any delay in or failure to exercise or enforce any Prepetition Bondholder Right shall neither constitute a waiver of such Prepetition Bondholder Right, subject the Prepetition Trustee or any Prepetition Bondholder to any liability to any other party, nor cause or enable any party other than the Prepetition Obligors to rely upon or in any way seek to assert such delay in or failure to exercise or enforce any Prepetition Bondholder Right as a defense to any obligation owed by the Prepetition Obligors to any Prepetition Secured Party.

17.   <u>No Unauthorized Disposition of Collateral; Use of Cash Collateral</u>.   The Debtors shall not sell, transfer, lease, encumber, use, or otherwise dispose of any portion of the DIP

Collateral (including inventory and Cash Collateral) or any of the equity interests in any DIP Loan Party, other than pursuant to the terms of this Interim Order, as permitted by the other DIP Documents, or as otherwise ordered by the Court, and the DIP Loan Parties are authorized to use Cash Collateral solely in a manner consistent with this Interim Order, the Budget and the other DIP Documents (including Permitted Variances and exclusions to the Budget permitted thereunder). Cash Collateral shall not be used (i) to finance or otherwise fund any investigation (including discovery proceedings), initiation or prosecution of any adversary action, suit, arbitration, proceeding, application, motion or other litigation of any type adverse to the DIP Secured Parties, the DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender, the Prepetition Secured Parties, the CA Prepetition Secured Parties, or any member thereof, or their respective rights and remedies under or in respect of the DIP Facility, the Prepetition Documents or any interim or final order with respect to the DIP Facility and the Adequate Protection Obligations, (ii) in connection with challenging, invalidating, disallowing, recharacterizing, setting aside, avoiding, subordinating (other than to the Carve-Out), in whole or in part, or taking or attempting to take any other action to render unenforceable, the liens, claims, interests and adequate protection of the DIP Secured Parties, the DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender, the Prepetition Secured Parties, and the CA Prepetition Secured Parties including, for the avoidance of doubt, (a) objecting to or contesting the validity, extent, amount, perfection, priority, or enforceability of the DIP Obligations, the DIP Liens, the DIP Term Obligations (as defined in the CA DIP Motion), the DIP ABL Obligations (as defined in the CA DIP Motion), or the liens under the DIP Term Facility and the DIP ABL Facility (each as defined in the CA DIP Motion), or (b) objecting to or contesting the validity, extent, amount, perfection, priority, or enforceability of the Prepetition Obligations, the Prepetition Liens, the Prepetition

51

Term Obligations (as defined in the CA DIP Motion), the Prepetition ABL Obligations (as defined in the CA DIP Motion), the Prepetition Term Liens (as defined in the CA DIP Motion), or the Prepetition ABL Liens (as defined in the CA DIP Motion), under the Prepetition Documents and the Term/ABL Prepetition Documents, as applicable, (iii) for any purpose that is prohibited under the Bankruptcy Code, this Interim Order, or the Final Order, and (iv) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body, which payment is not provided for in the Budget, without the prior written consent of the Required Lenders (as defined in each of the DIP Credit Agreement or the Prepetition Documents); *provided*, that none of the foregoing shall limit the payment of Professional Fees or Statutory Fees that benefit from the Carve-Out, as and when allowed (including on an interim basis).  Notwithstanding the foregoing, no more than $50,000 of the proceeds of the DIP Facility, DIP Collateral, or Cash Collateral may be used by any Committee in connection with the investigation, but not litigation, of the validity, enforceability, perfection, priority, or extent of the Prepetition Liens, the Prepetition Obligations, or the other Stipulations.

18.    No Waiver.  The failure of the DIP Agent, the DIP Lenders, the Prepetition Trustee, or the Prepetition Bondholders to seek relief or otherwise exercise their rights and remedies under this Interim Order, the other DIP Documents, the DIP Facility, or the Prepetition Documents, as applicable, shall not constitute a waiver of any of the DIP Agent's, the DIP Lenders', the Prepetition Trustee's, or the Prepetition Bondholders' rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the DIP Agent, the DIP Lenders, the Prepetition Trustee, or the Prepetition Bondholders under the Bankruptcy Code or under non-bankruptcy law, including, without

limitation, the rights of the DIP Agent, the DIP Lenders, the Prepetition Trustee, or the Prepetition Bondholders to: (a) request conversion of the Chapter 11 Cases to cases under chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan; or (c) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lenders or the Prepetition Bondholders.

19.    <u>Proceeds of Subsequent Financing</u>.  If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in the Chapter 11 Cases or any Successor Cases shall obtain credit or incur debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code at any time before the indefeasible repayment in full of all DIP Obligations and the termination of the DIP Agent's and DIP Lenders' obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to any or all of the Debtors (if applicable), then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied in accordance with this Interim Order, the interim order approving the CA DIP Motion, the DIP Documents, the DIP Term Documents, and the DIP ABL Documents.

20.    <u>Maintenance of Collateral</u>.  Unless the DIP Agent, acting at the direction of the Required Lenders (as defined in the DIP Credit Agreement), otherwise consents in writing, until (i) the payment in full or otherwise acceptable satisfaction of all DIP Obligations, and (ii) the termination of the DIP Agent's and the DIP Lenders' obligations to extend credit under the DIP Facility, the DIP Loan Parties shall comply with the covenants contained in the DIP Documents regarding the maintenance and insurance of the DIP Collateral.  Upon entry of this Interim Order and to the fullest extent provided by applicable law, the DIP Agent (on behalf of the applicable

DIP Lenders) shall be, and shall be deemed to be, without any further action or notice, named as an additional insured and loss payee on each insurance policy maintained by the DIP Loan Parties that in any way relates to the DIP Collateral.

21.   <u>Reservation of Rights</u>.   The terms, conditions, and provisions of this Interim Order are in addition to and without prejudice to the rights of each DIP Secured Party and each Prepetition Secured Party, as applicable, to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Documents, the Prepetition Documents, or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral or granting of any interest in the DIP Collateral or the Prepetition Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Estates.

22.   <u>Binding Effect; Dismissal</u>.

(a)   All of the provisions of this Interim Order and the other DIP Documents, the DIP Obligations, all liens, and claims granted hereunder in favor of each of the DIP Secured Parties and the Prepetition Secured Parties, and any and all rights, remedies, privileges, immunities and benefits in favor of the DIP Secured Parties and the Prepetition Secured Parties set forth herein, including, without limitation, the Stipulations, subject to paragraph 13 hereof (without each of which the DIP Secured Parties would not have entered into or provided funds under the DIP Documents and the Prepetition Secured Parties would not have consented to the priming of the Prepetition Liens as set forth herein and use of Cash Collateral provided for

hereunder), provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective and enforceable as of the Petition Date immediately upon entry of this Interim Order and not subject to any stay of execution or effectiveness (all of which are hereby waived), notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, shall continue in full force and effect, and shall survive entry of any other order or action, including, without limitation, any order which may be entered confirming any chapter 11 plan providing for the refinancing, repayment, or replacement of the DIP Obligations, converting one or more of the Chapter 11 Cases to any other chapter under the Bankruptcy Code, dismissing one or more of the Chapter 11 Cases, approving any sale of any or all of the DIP Collateral or the Prepetition Collateral, or vacating, terminating, reconsidering, revoking, or otherwise modifying this Interim Order or any provision hereof; *provided*, that in the event a Final Order is entered, the terms and conditions of such Final Order shall control over this Interim Order.

(b)      Nothing in these Chapter 11 Cases may impair the DIP Superpriority Claims, the Prepetition Adequate Protection Claims, and the DIP Secured Parties' and the Prepetition Secured Parties' respective liens on and security interests in the DIP Collateral and the Prepetition Collateral, respectively, and all other claims, liens, adequate protection, and other rights granted pursuant to the terms of this Interim Order, which shall continue in full force and effect, notwithstanding any dismissal of one or more of the Chapter 11 Cases, until the DIP Obligations and the Prepetition Obligations are indefeasibly paid and satisfied in full. Notwithstanding any such dismissal, the Court shall retain jurisdiction for the purposes of enforcing all such claims, liens, protections, and rights referenced in this paragraph and otherwise in this Interim Order.

(c)    Except as set forth in this Interim Order, in the event the Court modifies, reverses, vacates, or stays any of the provisions of this Interim Order or any of the other DIP Documents, such modifications, reversals, vacatur, or stays shall not affect the (i) validity, priority, or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Trustee, as applicable, of the effective date of such modification, reversal, vacatur, or stay, (ii) validity, priority, or enforceability of the DIP Liens, the DIP Superpriority Claims, the Prepetition Adequate Protection Liens, and the Prepetition Adequate Protection Claims, or (iii) rights or priorities of any DIP Secured Party or Prepetition Secured Party pursuant to this Interim Order with respect to the DIP Collateral or any portion of the DIP Obligations.  All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted pursuant hereto, including the liens and priorities granted herein.

(d)    This Interim Order shall be binding upon the Debtors, all parties in interest in the Chapter 11 Cases, and their respective successors and assigns, including, without limitation, (i) any trustee or other fiduciary appointed in the Chapter 11 Cases or any Successor Cases, and (ii) any liquidator, receiver, administrator, or similar such person or entity appointed in any jurisdiction or under any applicable law.  This Interim Order shall also inure to the benefit of the Debtors, the DIP Secured Parties, the Prepetition Secured Parties, and each of their respective successors and assigns.

23.    <u>Discharge</u>.  The DIP Obligations and the obligations of the DIP Loan Parties with respect to adequate protection hereunder, including granting the Prepetition Adequate Protection Liens and the Prepetition Adequate Protection Claims, shall not be discharged by the entry of an

order confirming any plan of reorganization in any of these Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or each of the DIP Agent (acting at the written direction of the Required Lenders (as defined in the DIP Credit Agreement)) or the Prepetition Trustee (acting at the direction of Prepetition Bondholders of a majority in aggregate principal amount of the Bonds Outstanding (as such terms are defined in the Prepetition Indenture)) otherwise consents in writing.

24.   <u>No Priming of the Prepetition Obligations</u>.   Notwithstanding anything to the contrary herein, from and after the entry of this Interim Order, absent the express written consent of the Prepetition Bondholders, no Debtor shall seek authorization from the Court to obtain or incur any indebtedness or enter into an alternative financing facility other than the DIP Facility (a "***Competing DIP Facility***") seeking to impose liens on any Prepetition Collateral ranking on a *pari passu* or priming basis with respect to the Prepetition Liens held by the Prepetition Secured Parties; *provided*, *however*, that nothing herein shall preclude the Debtors from seeking authorization to incur any indebtedness or enter into any Competing DIP Facility that provides for the payment in full of the DIP Obligations and the Prepetition Obligations at the initial closing of such Competing DIP Facility.

25.   <u>Section 506(c) Waiver</u>.   Subject to entry of the Final Order granting such relief, no costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of value by the DIP Secured Parties upon the DIP Collateral, or by the Prepetition Secured Parties upon the Prepetition Collateral, as applicable) shall be charged against the DIP Secured Parties or the Prepetition Secured Parties,

or any of the DIP Obligations, the Prepetition Obligations, the DIP Collateral, or the Prepetition Collateral pursuant to section 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the affected DIP Secured Parties and/or the affected Prepetition Secured Parties, in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve-Out or the approval of any budget hereunder).

26.     Section 552(b) Waiver.  Subject to entry of the Final Order, the Debtors have agreed as a condition to obtaining financing under the DIP Facility and using Cash Collateral as provided in this Interim Order that the Prepetition Secured Parties are and shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and that the "equities of the case" exception under section 552(b) shall not apply to the DIP Secured Parties, the DIP Obligations, the Prepetition Secured Parties, or the Prepetition Obligations.

27.     No Marshaling/Application of Proceeds.  Subject to entry of the Final Order granting such relief, in no event shall the DIP Secured Parties or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral, as applicable, and all proceeds shall be received and applied in accordance with the DIP Documents and the Prepetition Documents, as applicable.

28.     Payment of DIP Lender Fees and Expenses.  The DIP Loan Parties shall pay (i) the reasonable and documented fees and expenses reimbursable under the DIP Facility, the DIP Credit Agreement, or the other DIP Documents, as applicable, whether incurred before or after the Petition Date, and (ii) all reasonable and documented out-of-pocket costs and expenses of the DIP Agent and the DIP Lenders including, without limitation, reasonable and documented fees

and disbursements of counsel in connection with the enforcement or preservation of any rights under the DIP Facility, the DIP Credit Agreement, or the other DIP Documents.  With respect to payment of fees and expenses incurred from and after the Petition Date, the DIP Agent and the DIP Lenders shall comply with the procedures set forth in paragraph 9 hereof.

29.     <u>Limits on Lender Liability</u>.

(a)     In determining to make any loan under the DIP Credit Agreement, authorizing the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Secured Parties and the Prepetition Secured Parties, as applicable, shall not be deemed to (i) be in control of the operations of the Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of the Debtors, so long as such party's actions do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute), or (ii) owe any fiduciary duty to any of the Debtors.  Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Secured Parties or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective Affiliates (as such term is defined in section 101(2) of the Bankruptcy Code).

(b)      Nothing in this Interim Order or the other DIP Documents shall permit the Debtors to violate 28 U.S.C. § 959(b).

(c)      As to the United States, its agencies, departments, or agents, nothing in this Interim Order or the other DIP Documents shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

30.      <u>Release</u>.  Subject to paragraph 13 of this Interim Order, each of the DIP Loan Parties, their Estates, and the Prepetition Obligors, on their own behalf and on behalf of each of their past, present and future predecessors, successors, heirs, subsidiaries, and assigns, hereby forever, unconditionally, permanently, and irrevocably release, discharge, and acquit each of the DIP Secured Parties and each of the Prepetition Secured Parties, and (in such capacity) each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "***Released Parties***") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, arising under, in connection with, or relating to (i) the Prepetition Obligations and the DIP Obligations, or (ii) the DIP Documents and the Prepetition Documents, as applicable, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all Claims (as such term is defined in section 101(5) of the Bankruptcy Code) and any and all causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, setoff rights,

objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the Prepetition Obligations and the DIP Obligations, the Prepetition Documents and the DIP Documents, or the Prepetition Liens and the DIP Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the Prepetition Obligations and the DIP Obligations that the DIP Loan Parties now have or may claim to have against the Released Parties, arising under, in connection with, based upon, or related to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of this Interim Order.  The DIP Loan Parties are authorized in any payoff letter or similar agreement into which they enter upon payment in full of the DIP Obligations to provide a waiver and release substantially similar to the waiver and release set forth in this paragraph 30 of the DIP Agent and the applicable DIP Lenders and their respective related parties.

31.    Survival.    The provisions of this Interim Order, the validity, priority, and enforceability of the DIP Liens, the DIP Superpriority Claims, the Prepetition Adequate Protection Liens, the Prepetition Adequate Protection Claims, and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, entry of any order that may be entered (a) confirming any plan of reorganization in any of these Chapter 11 Cases, (b) converting any or all of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any or all of these Chapter 11 Cases, (d) terminating the joint

administration of these Chapter 11 Cases or any other act or omission, (e) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents), or (f) pursuant to which the Court abstains from hearing any of these Chapter 11 Cases.  The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections (as applicable) granted to the DIP Secured Parties and the Prepetition Secured Parties pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in any of these Chapter 11 Cases, following dismissal of any of these Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until (i) in respect of the DIP Facility, all of the DIP Obligations, pursuant to this Interim Order and the other DIP Documents, have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms) and all commitments to extend credit under the DIP Facility are terminated, and (ii) in respect of the Prepetition Obligations, all of the Adequate Protection Obligations owed to the Prepetition Secured Parties provided for in this Interim Order and under the Prepetition Documents have been indefeasibly paid in full in cash.

32.   <u>Proofs of Claim</u>.  In order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' Estates, neither the Prepetition Trustee nor the other Prepetition Secured Parties will be required to file proofs of claim in the Chapter 11 Cases or any Successor Cases, and the Stipulations herein shall be deemed to constitute a timely filed proof of claim.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including, without limitation, administrative claims) in any of the Chapter 11 Cases or any Successor Cases shall not apply to the Prepetition Secured Parties with respect to the Prepetition Obligations and the Adequate Protection

Obligations or the DIP Secured Parties with respect to the DIP Obligations.  Notwithstanding the foregoing, the Prepetition Trustee, on behalf of itself and the Prepetition Secured Parties, is hereby authorized and entitled, at the direction of the Prepetition Bondholders of a majority in aggregate principal amount of the Bonds Outstanding (as such terms are defined in the Prepetition Indenture), to file (and amend and/or supplement) in the Debtors' lead Chapter 11 Case—*In re CarbonLite Holdings LLC,* (Case No. 21-[●]—(●)) a single master proof of claim in the Chapter 11 Cases for any claims arising under the Prepetition Documents and hereunder (a "***Master Proof of Claim")***.  Upon the filing of a Master Proof of Claim (if any), which shall be deemed asserted against each of the Prepetition Obligors, the Prepetition Secured Parties and each of their respective successors and assigns shall be deemed to have filed a proof of claim against each of the Prepetition Obligors of any type or nature whatsoever with respect to the Prepetition Documents, and the claim of each Prepetition Secured Party (and each of its respective successors and assigns) shall be treated as if such entity had filed a separate proof of claim in each of the applicable Chapter 11 Cases.  A Master Proof of Claim, if filed, shall not be required to identify the name of any Prepetition Secured Party, whether any Prepetition Secured Party acquired its claim from another party and the identity of any such party or be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims.  The provisions of this paragraph 32 and the Master Proof of Claim are intended solely for the purpose of administrative convenience.  A Master Proof of Claim, if filed, shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Prepetition Obligors to the Prepetition Secured Parties, which instruments,

agreements or other documents will be provided upon written request to counsel to the Prepetition Trustee.

33.    <u>Protections of Rights of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties</u>.  The DIP Loan Parties (and their legal and financial advisors in the case of clauses (ii) through (iv) below) will, whether or not the DIP Obligations (excluding contingent indemnification obligations for which no claim has been asserted) have been indefeasibly paid in full in cash, (i) maintain books, records, and accounts to the extent and as required by the DIP Documents and the Prepetition Documents (and subject to the applicable grace periods set forth therein); (ii) reasonably cooperate with, consult with, and provide to the DIP Agent and the Prepetition Trustee all such information and documents that any or all of the Debtors are obligated (including upon reasonable request by any of the DIP Agent or the Prepetition Trustee) to provide under the DIP Documents, the Prepetition Documents, or the provisions of this Interim Order; (iii) authorize their independent certified public accountants, financial advisors, investment bankers, and consultants to reasonably cooperate and consult with the DIP Agent (and, so long as an Event of Default has occurred and is continuing, each DIP Lender) and the Prepetition Trustee; (iv) upon reasonable advance notice during regular business hours, permit the DIP Agent, the DIP Lenders, and the Prepetition Trustee to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective non-privileged books and records, to tour the Debtors' business premises and other properties, and to discuss their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants, and other professional advisors (other than legal counsel) as and to the extent required by the DIP Documents and the Prepetition Documents; (v) permit the DIP Agent and the Prepetition Trustee

to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations, and assets; and (vi) upon reasonable advance notice during regular business hours, permit the DIP Agent and the Prepetition Trustee to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations, and liquidation valuations at reasonable times in respect of any or all of the DIP Collateral or the Prepetition Collateral, in accordance with the DIP Documents and the Prepetition Documents.

34.   Credit Bidding.  Subject to section 363(k) of the Bankruptcy Code and the express written direction of the Required Lenders (as defined in the DIP Credit Agreement) and the terms of the DIP Documents, the DIP Agent, on behalf of itself and the DIP Lenders, shall have the right to credit bid, in accordance with the DIP Documents, up to the full amount of the DIP Obligations in any sale of the DIP Collateral (or any portion thereof) constituting property or assets of the DIP Loan Parties, whether such sale is effectuated pursuant to section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.  Subject to section 363(k) of the Bankruptcy Code and the express direction of the Prepetition Bondholders of a majority in aggregate principal amount of the Bonds Outstanding (as such terms are defined in the Prepetition Indenture) and the terms of the Prepetition Documents, the Prepetition Trustee, on behalf of itself and the other Prepetition Secured Parties, shall have the right to credit bid, in accordance with the Prepetition Documents, up to the full amount of the Prepetition Obligations (including any claims for Diminution in Value) in any sale of the Prepetition Collateral (or any portion thereof) constituting property or assets of the DIP Loan Parties.

35.    <u>CA Exercise of Remedies</u>.

(a)    For the avoidance of doubt, any exercise of rights or remedies by the DIP Term Agent, the DIP Term Lenders, the Prepetition Term Agent, the Prepetition Term Lenders, the DIP ABL Lender, or the Prepetition ABL Lender as applicable, against a CA Debtor or any collateral securing the DIP Term Obligations (as defined in the CA DIP Motion), the DIP ABL Obligations (as defined in the CA DIP Motion), the Prepetition Term Obligations (as defined in the CA DIP Motion), or the Prepetition ABL Obligations (as defined in the CA DIP Motion), including the equity of any direct or indirect parent of a DIP Loan Party shall have no effect on (or release, terminate, or reduce in any respect) (a) the debt obligations of any DIP Loan Party, or (b) the liens on, or security interests in, any property or assets of any DIP Loan Party, which shall remain in full force and effect.

(b)    For the avoidance of doubt, any credit bid by any other party in interest for the equity of any direct or indirect parent of a DIP Loan Party shall have no effect on (or release, terminate, or reduce in any respect) (a) the debt obligations of any DIP Loan Party, or (b) the liens on, or security interests in, any property or assets of any DIP Loan Party, which shall remain in full force and effect.

36.    <u>No Third Party Rights</u>.  Except as specifically provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

37.    <u>No Avoidance</u>.  No obligations incurred or payments or other transfers made by or on behalf of the DIP Loan Parties on account of the DIP Facility shall be avoidable or recoverable from the DIP Secured Parties under any section of the Bankruptcy Code, or any other federal, state, or other applicable law; *provided*, that nothing in this paragraph is intended

to limit or curtail the provisions of paragraph 13 hereof, with respect to the Prepetition Obligations.

38. <u>Reliance on Order</u>.  All postpetition advances under the DIP Documents are made in reliance on this Interim Order.

39. <u>No Modification of Interim Order</u>.  Until and unless the DIP Obligations and the Prepetition Obligations (other than contingent obligations with respect to then unasserted claims) have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtors shall not seek or consent to, directly or indirectly, any modification, stay, vacatur, or amendment to this Interim Order without the prior written consent of the DIP Agent and the Prepetition Trustee, and no such consent shall be implied by any action or inaction of the DIP Agent or the Prepetition Trustee.

40. <u>Payments Free and Clear</u>.  Any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Secured Parties or the Prepetition Trustee on behalf of the Prepetition Secured Parties, pursuant to the provisions of this Interim Order, any subsequent order of the Court or the DIP Documents, shall, subject to the terms of this paragraph 40, be irrevocable, received free and clear of any claims, charges, assessments, or other liabilities, including, without limitation, subject to entry of the Final Order granting such relief, any such claims or charges arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code or section 552(b) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the Debtors, and in the case of payments made or proceeds remitted after the delivery of a Carve-Out Trigger Notice, subject to the Carve-Out in all respects.

41.     <u>Limited Effect</u>.  In the event of a conflict between the terms and provisions of any of the DIP Documents and this Interim Order, the terms and provisions of this Interim Order shall govern.

42.     <u>Headings</u>.  Paragraph headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

43.     <u>Bankruptcy Rules</u>.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

44.     <u>General Authorization</u>.  The PA Debtors, the DIP Secured Parties, and the Prepetition Secured Parties are authorized to take any and all actions necessary to effectuate the relief granted in this Interim Order.

45.     <u>Retention of Exclusive Jurisdiction</u>.  The Court shall retain exclusive jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Interim Order, the DIP Credit Agreement, and the other DIP Documents.

46.     <u>Final Hearing</u>.  The final hearing (the "***Final Hearing***") on the Motion shall be held on [_____, 2021, at____:_____ .m], prevailing Eastern Time.  On or before five (5) business days prior to the Final Hearing at 4:00 p.m. Eastern Time, any objections or responses to entry of a final order on the Motion shall be filed with the Court, and served on: (i) the Debtors, c/o Force Ten Partners LLC, 20341 Southwest Birch Street, Suite 220, Newport Beach, CA 92660 (Attn: Brian Weiss (bweiss@force10partners.com)); (ii) proposed counsel to the Debtors, (a) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801) (Attn: James E. O'Neill (joneill@pszjlaw.com) and Steven W. Golden, (sgolden@pszjlaw.com)) and (b) Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067-4003 (Attn:

Jeffrey W. Dulberg (jdulberg@pszjlaw.com)); (iii) counsel to the DIP Agent and the Prepetition Trustee, (a) Arnold & Porter Kaye Scholer LLP, 70 W. Madison Street, Suite 4200, Chicago, Illinois 60602 (Attn: Michael D. Messersmith (michael.messersmith@arnoldporter.com) and Sarah Gryll (sarah.gryll@arnoldporter.com)) and (b) Troutman Pepper Hamilton Sanders LLP, 1313 N. Market Street, Suite 5100, Wilmington, Delaware 19801 (Attn: David Stratton (david.stratton@troutman.com)); (iv) counsel to the DIP ABL Lender and Prepetition ABL Secured Parties, Otterbourg, P.C., 230 Park Avenue, New York, NY 10169-0075 (Attn: Andrew M. Kramer (akramer@otterbourg.com) and David E. Morse (dmorse@otterbourg.com)); (v) counsel to the DIP Term Agent and Prepetition Term Secured Parties, Latham & Watkins LLP, 355 South Grand Avenue, Suite 100, Los Angeles, CA 90071-3104 (Attn: Jeff Bjork (jbjork@lw.com)); (vi) the Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Joseph McMahon (joseph.mcmahon@usdoj.gov)); (vii) counsel for a Committee (if appointed); (viii) the Securities and Exchange Commission; and (ix) the Internal Revenue Service.  In the event no objections to entry of the Final Order on the Motion are timely received, the Court may enter such Final Order without need for the Final Hearing.

## Exhibit A

**DIP Credit Agreement**

## <u>Exhibit B</u>

**Initial Budget**