# EXHIBIT A

## Proposed Interim Order

*Final Version*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- x
:
In re:                                                   :    Chapter 11
                                                         :
CARBONLITE HOLDINGS LLC, *et al.*,[1]                    :    Case No. 21-10527 (JTD)
                                                         :
              Debtors.                                   :    (Joint Administration Requested)
                                                         :
                                                         :    **Re:  Docket No.**
-------------------------------------------------------- x

## INTERIM ORDER (I) AUTHORIZING CA DEBTORS TO (A) OBTAIN POSTPETITION FINANCING, (B) GRANT SENIOR SECURED LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (C) UTILIZE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; (III) MODIFYING AUTOMATIC STAY; (IV) SCHEDULING FINAL HEARING; AND (V) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**"),[2] of CarbonLITE Holdings, LLC ("**Holdings**") and

certain of its affiliated debtors and debtors in possession that are listed on **Exhibit A** hereto

(together with Holdings, the "**CA Debtors**" and, collectively with the other above-captioned

debtors and debtors in possession, the "**Debtors**") in the above-captioned chapter 11 cases of the

CA Debtors (the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363, 364(c)(l),

364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of title 11 of the United States Code

(the "**Bankruptcy Code**"), rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**"), and rule 4001-2 of the Local Rules of Bankruptcy Practice

and Procedure of the United States Bankruptcy Court for the District of Delaware

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: CarbonLite Holdings LLC (8957); CarbonLite Industries LLC (3596); CarbonLite P Holdings LLC (8957); CarbonLite P LLC (5453); CarbonLite PI Holdings LLC (8957); CarbonLite Pinnpack LLC (8957); CarbonLite Recycling Holdings LLC (8957); CarbonLite Sub-Holdings, LLC (8957); Pinnpack P, LLC (8322); CarbonLite Recycling LLC (3727); and Pinnpack Packaging LLC (9948).  The address of the Debtors' corporate headquarters is 10250 Constellation Blvd., Los Angeles, CA 90067.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion and DIP Credit Agreements (as defined below), as applicable.

(the "**Local Rules**"), for entry of an interim order (this "**Interim Order**") and a Final Order (as defined below), among other things:

(i)    authorizing the CA Debtors to obtain senior secured postpetition financing on a superpriority basis in the aggregate principal amount of $65,484,035.34 (the "**DIP Term Facility**," and all amounts extended or deemed to be outstanding under the DIP Term Facility, the "**DIP Term Loans**"), consisting of (a) a $20,000,000 new money delayed-draw term loan facility ("**New Money DIP Term Loans**") and (b) subject to entry of the Final Order, $45,484,035.34 (the "**Term Roll-Up Amount**") of DIP Term Loans resulting from a partial "roll-up" of outstanding obligations under the Prepetition Term Credit Agreement[3] (as defined below), pursuant to the terms and conditions of that certain *Senior Secured Super-Priority Debtor-in-Possession Term Loan Credit Agreement* (as the same may be amended, restated, supplemented, waived, or otherwise modified from time to time, the "**DIP Term Credit Agreement**"), by and among Holdings, as borrower (the "**DIP Term Borrower**"), each of the entities listed on **Exhibit A** hereto, as guarantors (the "**DIP Term Guarantors**" and, together with the DIP Borrower, the "**DIP Term Loan Parties**"), and Orion Energy Partners Investment Agent, LLC ("**Orion**"), as administrative agent and collateral agent (in such capacities, the "**DIP Term Agent**") for and on behalf of itself and the lenders party thereto (collectively, including the DIP Term Agent, the "**DIP Term Lenders**"), substantially in the form of **Exhibit B** attached to the Motion;

(ii)    authorizing the CA Debtors to execute and deliver the DIP Term Credit Agreement and any other agreements, instruments, pledge agreements, guarantees, fee letters,

---

[3] The Term Roll-Up Amount consists of (i) $40,000,000 of Tranche A Loans (as defined herein), and (ii) $5,484,035.34 of Tranche C Loans (as defined herein).

control agreements related thereto, and other Loan Documents (as defined in the DIP Term Credit Agreement) and documents related thereto, including any intercreditor agreements, security agreements, and notes (in each case, as amended, restated, supplemented, waived, or modified from time to time, collectively, with the DIP Term Credit Agreement, the "**DIP Term Documents**"), and to perform such other acts as may be necessary or desirable in connection with the DIP Term Documents;

(iii)    authorizing the CA Debtors to borrow $7,000,000 in New Money DIP Term Loans under the DIP Term Facility (the "**Interim Term Amount**"), during the period before the entry of the Final Order (the "**Interim Financing Period**"), upon entry of this Interim Order to avoid immediate and irreparable harm;

(iv)    granting the DIP Term Facility and all obligations owing thereunder and under, or secured by, the DIP Term Documents to the DIP Term Agent and DIP Term Lenders (collectively, and including all "Obligations" as described in the DIP Term Credit Agreement, the "**DIP Term Obligations**") allowed superpriority administrative expense claim status in each of the Chapter 11 Cases and any Successor Cases (as defined below);

(v)    authorizing the CA Debtors to obtain senior secured postpetition asset-based revolving financing on a superpriority basis in the aggregate principal amount of $18,500,000 (the "**DIP ABL Facility**," inclusive of all Prepetition ABL Obligations (as defined below), the "**DIP ABL Loans**") (together with the DIP Term Facility, collectively, the "**DIP Facilities**"), pursuant to that certain Prepetition ABL Credit Agreement  (as defined below), by and among CarbonLite Industries LLC ("**CL Industries**"), CarbonLite Pinnpack, LLC ("**CL Pinnpack**"), Pinnpack Packaging, LLC ("**Pinnpack**" and together collectively "**DIP ABL Borrowers**"), Carbonlite PI Holdings, LLC ("**CL PI Holdings**"), as a DIP ABL Guarantor (together with the

3

DIP ABL Borrowers, "the **DIP ABL Loan Parties**", together with the DIP Term Loan Parties, the "**DIP Loan Parties"**)), and Bank Leumi USA (the "**Prepetition ABL Lender**"), as ratified and amended by that certain Ratification and Amendment Agreement, dated as of March [ ● ], 2021 (the "**Ratification Agreement**"), by and among the DIP ABL Loan Parties and Bank Leumi USA (the "**DIP ABL Lender**") a copy of which is attached as **Exhibit C** to the Motion (as amended, supplemented or otherwise modified from time to time in accordance with the terms and conditions set forth herein, the "**DIP ABL Credit Agreement**"), consisting of (a) up to an aggregate amount of $7,000,000 in postpetition Revolving Loans advanced during the Interim Financing Period ("**Interim DIP ABL Loans**") and (b) subject to entry of the Final Order, the balance of the DIP ABL Facility shall be made available, with all then-remaining Prepetition ABL Obligations, following the application of payments described below, deemed to be DIP ABL Obligations, pursuant to the terms and conditions of the DIP ABL Credit Agreement (and, together with the DIP Term Credit Agreement, the "**DIP Credit Agreements**"));

      (vi)   authorizing the CA Debtors to execute and deliver the DIP ABL Credit Agreement, which ratifies and amends the Prepetition ABL Credit Agreement, and any other agreements, instruments, pledge agreements, guarantees, fee letters, control agreements related thereto, and other Loan Documents (as defined in the DIP ABL Credit Agreement) and documents related thereto, including any intercreditor agreements, security agreements, and notes (in each case, as amended, restated, supplemented, waived, or modified from time to time, and collectively, with the DIP ABL Credit Agreement, the "**DIP ABL Loan Documents**" and, together with the DIP Term Documents, the "**DIP Documents**"), and to perform such other acts as may be necessary or desirable in connection with the DIP ABL Loan Documents;

4

(vii)    authorizing the CA Debtors to borrow $7,000,000 in Interim DIP ABL Loans under the DIP ABL Facility (together with the Interim Term Amount, the "**Interim Amounts**") upon entry of this Interim Order to avoid immediate and irreparable harm;

(viii)    authorizing the CA Debtors to remit all collections, asset proceeds and payments received in respect of Prepetition ABL Priority Collateral (as defined below) and DIP ABL Priority Collateral (as defined below) during the Interim Financing Period to the DIP ABL Lender for application, or deemed application, first to all Prepetition ABL Obligations (as defined below) until such obligations are fully repaid, and then to the repayment of all DIP ABL Obligations (as defined below), in accordance with the DIP ABL Credit Agreement and the other DIP ABL Loan Documents.

(ix)    granting the DIP ABL Facility and all obligations owing thereunder and under, or secured by, the DIP ABL Loan Documents, to the DIP ABL Lender (collectively, and including all "Obligations" as described in the DIP ABL Credit Agreement, the "**DIP ABL Obligations**" and, together with the DIP Term Obligations, the "**DIP Obligations**") allowed superpriority administrative expense claim status in each of the Chapter 11 Cases and any Successor Cases;

(x)    granting each of (a) the DIP Term Agent, for the benefit of itself and the DIP Term Lenders and the other Secured Parties (as defined in the DIP Term Credit Agreement) under the applicable DIP Term Documents and (b) the DIP ABL Lender (as defined in the DIP ABL Credit Agreement) under the applicable DIP ABL Loan Documents, automatically perfected security interests in and liens on all of the DIP Collateral (as defined below), including all property constituting "cash collateral" as defined in section 363(a) of the Bankruptcy Code of the CA Debtors ("**Cash Collateral**"), which liens shall have the priorities set forth herein;

5

(xi)    authorizing and directing the CA Debtors to pay the principal, interest, premiums, fees, expenses, and other amounts payable under the DIP Documents as such become earned, due and payable, including continuing commitment fees, closing fees, audit fees, appraisal fees, valuation fees, liquidator fees, structuring fees, administrative agent's fees, the fees and disbursements of each of the DIP Term Agent's, DIP Term Lenders', and DIP ABL Lender's attorneys, advisors, accountants, and other consultants, all to the extent provided in, and in accordance with, the DIP Documents;

(xii)    authorizing the CA Debtors to use the Prepetition Collateral (as defined below), including the Cash Collateral of the Prepetition Term Secured Parties (as defined below) under the Prepetition Term Documents (as defined below) and of the Prepetition ABL Secured Parties (as defined below) under the Prepetition ABL Documents ( as defined below), and providing adequate protection to the Prepetition Term Secured Parties and Prepetition ABL Secured Parties for, among other things, any diminution in value resulting from the imposition of the automatic stay, the CA Debtors' use, sale, or lease of the Prepetition Collateral, including Cash Collateral, the priming of the CA Prepetition Secured Parties' (as defined below) respective interests in the Prepetition Collateral (including by the Carve-Out (as defined below)) ("**Diminution in Value**") of their respective interests in the Prepetition Collateral, including the Cash Collateral as contemplated hereunder;

(xiii)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order;

(xiv)    granting a waiver of any applicable stay (including under Bankruptcy Rules 4001(a)(3) and 6004) and providing for immediate effectiveness of this Interim Order;

(xv)    effective upon entry of the Final Order, the waiver of the CA Debtors' right to assert claims to surcharge against the DIP Collateral, pursuant to section 506(c) of the Bankruptcy Code, to the extent set forth below;

(xvi)    scheduling a final hearing (the "**Final Hearing**") to consider the relief requested in the Motion and approving the form of notice with respect to the Final Hearing; and

(xvii)    granting related relief.

This Court having considered the Motion, the exhibits attached thereto, the *Declaration of Brian Weiss in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. [●]], the *Declaration of Richard W. Morgner in Support of the Debtors' Motions for Entry of Interim and Final Orders (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (D) Granting Adequate Protection to Prepetition Secured Parties, (E) Modifying the Automatic Stay, (F) Scheduling a Final Hearing, and (G) Granting Related Relief* [Docket No. [●], and the evidence submitted and arguments made at the interim hearing held on [ ● ], 2021 (the "**Interim Hearing**"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and all applicable Local Rules and finding the opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by this Court; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the CA Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the CA Debtors, their estates, and all parties-in-interest, and is essential for the continued

US-DOCS\121074909.8

6482443.2

operation of the CA Debtors' businesses and the preservation of the value of the CA Debtors' assets; and it appearing that the CA Debtors' entry into the DIP Credit Agreements and the other DIP Documents is a sound and prudent exercise of the CA Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THIS COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

A.    **Petition Date**.  On [ ● ], 2021 (the "**Petition Date**"), each of the CA Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.

B.    **Debtors in Possession**.  The CA Debtors have continued in the management and operation of their businesses and properties as CA Debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.    **Jurisdiction and Venue**.  This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Cases and proceedings with respect to the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    **Committee Formation**.  As of the date hereof, the United States Trustee for the District of Delaware (the "**U.S. Trustee**") has not yet appointed an official committee of

---

[4] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

US-DOCS\121074909.8

6482443.2

unsecured creditors in the Chapter 11 Cases (a "**Committee**") pursuant to section 1102 of the Bankruptcy Code.

E.     **Basis for Relief**.     The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 9013 and 9014, Local Rules 2002-1, 4001-1(b), 4002-1(i), and 9013-1, and the Complex Case Procedures.

F.     **Notice**.   Notice of the Motion and the Interim Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

G.     **CA Debtors' Stipulations**.  As an inducement to the Prepetition Secured Parties to make the financial accommodations under the DIP Credit Agreements, and without prejudice to the rights of parties in interest, including any Committee, as set forth in paragraph 37 below, the CA Debtors admit, stipulate, acknowledge, and agree as follows (paragraphs G(i) through G(xii) below are referred to herein, collectively, as the "**Stipulations**"):

(i)     *Prepetition Term Facility*.   Pursuant to that certain Credit Agreement, dated as of August 2, 2019 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "**Prepetition Term Credit Agreement**" and, collectively with the Loan Documents (as defined in the Prepetition Term Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as amended, restated, supplemented, waived, or otherwise modified from time to time, the "**Prepetition Term Documents**")    among    (a) Holdings    (in    such    capacity, the "**Prepetition Term Borrower**"), (b) Orion, as administrative agent and collateral agent

(in such capacities, the "**Prepetition Term Agent**"), (c) the guarantors thereunder (the "**Prepetition Term Guarantors**" and, together with the Prepetition Term Borrower, the "**Prepetition Term Obligors**"), and (d) the lenders party thereto (the "**Prepetition Term Lenders**" and, collectively with the Prepetition Term Agent, the "**Prepetition Term Secured Parties**"), the Prepetition Term Lenders provided term loans to the Prepetition Term Borrower (the "**Prepetition Term Facility**").

(ii)    *Prepetition Term Obligations*.  As of the Petition Date, the Prepetition Term Obligors were indebted to the Prepetition Term Secured Parties under the Prepetition Term Documents in respect of outstanding Term Loans (as defined in the Prepetition Term Credit Agreement) in an aggregate principal amount of not less than $96,850,313.66 under the Prepetition Term Facility (the "**Prepetition Term Loans**"), plus interest accrued and accruing thereon, together with all costs, fees, termination fees, fees and expenses (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees, financial advisors' fees, and related expenses and disbursements of the Prepetition Term Agents' attorneys, advisors, accountants, and other consultants, and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Term Obligors' obligations pursuant to the Prepetition Term Documents, and any other "Obligations" as defined therein (collectively, the "**Prepetition Term Obligations**").  The Prepetition Term Loans more specifically comprise $86,116,278.32 in an aggregate principal amount of Tranche A Loans, (B) $5,250,000 in an aggregate principal amount of Tranche B Loans, and (C) $5,484,035.34 in an aggregate principal amount of Tranche C Loans (each as defined in the Prepetition Term Credit Agreement and, the Tranche A Loans and Tranche C

10

Loans together, the "**Prepetition Term A/C Loans**"), together with all such interest, fees and expenses pursuant to the Prepetition Term Documents as set forth in the preceding sentence.

(iii)    *Prepetition Term Liens and Prepetition Term Priority Collateral*.  As more fully set forth in the Prepetition Term Documents, before the Petition Date, the Prepetition Term Borrower and the Prepetition Term Guarantors granted to the Prepetition Term Agent, for the benefit of itself and the Prepetition Term Lenders, a security interest in and continuing lien (the "**Prepetition Term Liens**") on substantially all of their assets and property (with certain exceptions set out in the Prepetition Term Documents), including (a) a first-priority security interest in and continuing lien on Term Loan Priority Collateral (as defined in the Prepetition Intercreditor Agreement (as defined below)) and proceeds, products, and rents thereof (collectively, the "**Prepetition Term Priority Collateral**") and (b) a second priority security interest in and continuing lien on ABL Priority Collateral (as defined in the Prepetition Intercreditor Agreement) and all proceeds, products, accessions, rents, and profits thereof, in each case, whether then owned or existing or thereafter acquired or arising (collectively, the "**Prepetition ABL Priority Collateral**" and, together with the Prepetition Term Priority Collateral, the "**Prepetition Collateral**"), subject in the case of (b) only to the liens of the Prepetition ABL Lender (as defined below) on the Prepetition ABL Priority Collateral and Prepetition Term Permitted Prior Liens (as defined below).

(iv)    *Prepetition ABL Facility*.  Pursuant to that certain Credit Agreement, dated as of September 16, 2019 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "**Prepetition ABL Credit Agreement**" and, collectively with the Prepetition Loan Documents (as defined in the Prepetition ABL Credit Agreement) and any other agreements, documents, and instruments executed and/or delivered with, to, or in favor of

Prepetition ABL Lender in connection therewith, including, without limitation, all security agreements, notes, instruments, guarantees, Uniform Commercial Code financing statements, each as amended, restated, supplemented, waived, or otherwise modified from time to time, the "**Prepetition ABL Documents**" and, together with the Prepetition Term Documents, the "**Prepetition Documents**") among (a) CL Industries, CL PinnPack, and PinnPack (the "**Prepetition ABL Borrowers**"), (b) Leumi, as Lender (in such capacities, the "**Prepetition ABL Lender**"), and (c) the guarantors thereunder (in such capacities, the "**Prepetition ABL Guarantors**" and, together with the Prepetition ABL Borrowers, the "**Prepetition ABL Obligors**"), the Prepetition ABL Lender (the "**Prepetition ABL Secured Party**", together with the Prepetition Term Secured Parties, the "**CA Prepetition Secured Parties**") provided revolving loans to the Prepetition ABL Borrowers on a secured basis (the "**Prepetition ABL Facility**" and, together with the Prepetition Term Facility, the "**Prepetition Secured Facilities**").

(v)     *Prepetition ABL Obligations*.  As of the Petition Date, the Prepetition ABL Obligors were indebted to the Prepetition ABL Lender under the Prepetition ABL Loan Documents, in respect of outstanding Revolving Loans (as defined in the Prepetition Credit Agreement) in the aggregate principal amount of not less than $7,784,755.94   under the Prepetition ABL Facility (the "**Prepetition ABL Loans**"), plus interest accrued and accruing thereon, together with all costs, fees, termination fees, fees and expenses (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees, financial advisors' fees, and related expenses and disbursements), treasury, cash management obligations including "Bank Product Obligations" (as defined in the Prepetition ABL Credit Agreement), indemnification obligations, guarantee obligations, and other charges, amounts, and costs of whatever nature owing, whether

12

or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition ABL Borrowers' or the Prepetition ABL Guarantors' obligations pursuant to, or secured by, the Prepetition ABL Documents (collectively, the "**Prepetition ABL Obligations**" and, together with the Prepetition Term Obligations, the "**Prepetition Obligations**").

> (vi)    *Prepetition ABL Liens and Prepetition ABL Priority Collateral*.  As more fully set forth in the Prepetition ABL Loan Documents, as of the Petition Date, the Prepetition ABL Borrowers and the Prepetition ABL Guarantors granted to the Prepetition ABL Lender, security interests in and continuing liens (the "**Prepetition ABL Liens**" and, together with the Prepetition Term Liens, the "**Prepetition Liens**") upon substantially all of their assets and properties (with certain exceptions set out in the Prepetition ABL Documents) including (a) a first-priority security interest in and continuing lien on Prepetition ABL Priority Collateral and (b) a second priority security interest in and continuing lien on Prepetition Term Priority Collateral, subject in the case of (b) only to the liens of the Prepetition Term Agent on the Prepetition Term Priority Collateral and Prepetition ABL Permitted Prior Liens (as defined below).

> (vii)    *Priority of Prepetition Liens; Prepetition Intercreditor Agreement.*  The Prepetition Term Agent and the Prepetition ABL Lender entered into that certain Intercreditor Agreement, dated as of September 16, 2019 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "**Prepetition Intercreditor Agreement**"), to govern the respective rights, interests, obligations, priority, and positions of the Prepetition Term Secured Parties and Prepetition ABL Secured Parties with respect to the assets and properties of certain of the CA Debtors.  The Prepetition Intercreditor Agreement is a valid and enforceable

13

"subordination agreement" under section 510(a) of the Bankruptcy Code and is, as of the Petition Date, and shall continue to be as provided herein binding on all parties thereto.

(viii) *Validity, Perfection, and Priority of Prepetition Term Liens and Prepetition Term Obligations.*  The CA Debtors acknowledge and agree that, as of the Petition Date, (a)  the Prepetition Term Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Term Agent on behalf of the Prepetition Term Lenders for fair consideration and reasonably equivalent value; (b) the Prepetition Term Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to (1) the Prepetition ABL Liens on the Prepetition ABL Priority Collateral, and (2) certain liens otherwise permitted by the Prepetition Term Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Term Liens as of the Petition Date or were valid non-avoidable senior liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, the "**Prepetition Term Permitted Prior Liens**"); (c) the Prepetition Term Obligations constitute legal, valid, binding, and non-avoidable obligations of the CA Debtors enforceable in accordance with the terms of the applicable Prepetition Term Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Term Liens or Prepetition Term Obligations exist, and no portion of the Prepetition Term Liens or Prepetition Term Obligations is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the CA Debtors and their estates have no claims, objections, challenges, causes of action, or choses in action, including avoidance claims

under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Term Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the Prepetition Term Facility; (f) the CA Debtors have waived, discharged, and released any right to challenge any of the Prepetition Term Obligations, the priority of the CA Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition Term Obligations; and (g) the Prepetition Term Obligations constitute allowed, secured claims against the CA Debtors within the meaning of sections 502 and 506 of the Bankruptcy Code; *provided,* that the value of the Prepetition Term Liens at the Petition Date and whether the Prepetition Term Obligations are fully secured within the meaning of Section 506 of the Bankruptcy Code shall be reserved notwithstanding the Stipulations.

(ix) *Validity, Perfection, and Priority of Prepetition ABL Liens and Prepetition ABL Obligations.* The CA Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition ABL Obligations are fully secured by the Prepetition ABL Liens on the Prepetition ABL Priority Collateral, (b) the Prepetition ABL Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition ABL Secured Parties for fair consideration and reasonably equivalent value; (c) the Prepetition ABL Liens are senior in priority over any and all other liens on the Prepetition Collateral, subject only to (1) the Prepetition Term Liens on the Prepetition Term Priority Collateral, and (2) certain liens otherwise permitted by the Prepetition ABL Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition ABL Liens as of the Petition Date or were valid non-avoidable senior liens that are perfected subsequent to the Petition Date as permitted

15

by section 546(b) of the Bankruptcy Code, the "**Prepetition ABL Permitted Prior Liens**" and, together with the Prepetition Term Permitted Prior Liens, the "**Permitted Prior Liens**"); (d) the Prepetition ABL Obligations constitute legal, valid, binding, and non-avoidable obligations of the CA Debtors enforceable in accordance with the terms of the applicable Prepetition ABL Loan Documents; (e) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition ABL Liens or Prepetition ABL Obligations exist, and no portion of the Prepetition ABL Liens or Prepetition ABL Obligations is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (f) the CA Debtors and their estates have no claims, objections, challenges, causes of action, or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against the Prepetition ABL Secured Party or any of its respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the Prepetition ABL Facility; (g) the CA Debtors have waived, discharged, and released any right to challenge any of the Prepetition ABL Obligations, the priority of the CA Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition ABL Obligations; and (h) the Prepetition ABL Obligations constitute allowed, secured claims against the CA Debtors within the meaning of sections 502 and 506 of the Bankruptcy Code.

(x)     *Indemnification.*  The CA Prepetition Secured Parties have acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Facilities and the use of Cash Collateral, including in

16

respect of the granting of the DIP Liens and the Adequate Protection Liens (each as defined below), any challenges or objections to the DIP Facilities or the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing.  Accordingly, pursuant to the terms of the Prepetition Documents, the CA Prepetition Secured Parties shall be and hereby are indemnified and held harmless by the CA Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto; *provided* that no such parties will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence, actual fraud, or willful misconduct.  No exception or defense exists in contract, law, or equity as to any obligation set forth, as the case may be, in this paragraph G(x), in the Prepetition Documents, or in the DIP Documents, to the CA Debtors' obligation to indemnify and hold harmless the CA Prepetition Secured Parties.

(xi)    *No Challenges/Claims*.  No offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  The CA Debtors and their estates have no valid Claims (as such term is defined in section 101(5) of the Bankruptcy Code), objections, challenges, causes of action, or choses in action against any of the CA Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees with respect to the Prepetition Documents, the Prepetition Obligations, the Prepetition Liens, or otherwise, whether arising at law or at equity, including, without limitation, any challenge,

17

recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code, or applicable state law equivalents.

(xii)    *Releases*.  The CA Debtors hereby stipulate and agree that they forever and irrevocably release, discharge, and acquit the CA Prepetition Secured Parties, and, subject to entry of the Final Order, the DIP Term Agent, the DIP ABL Lender and all current and future DIP Lenders, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, and agents, past, present, and future, and their respective heirs, predecessors, successors, and assigns, each solely in their capacities as such (collectively, the "**Releasees**"), of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, reasonable attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever relating to, as applicable, this Interim Order, the DIP Facilities, the DIP Documents, the Prepetition Secured Facilities, the Prepetition Documents, and the transactions contemplated hereunder or thereunder including, without limitation, (a) any so-called "lender liability" or equitable subordination or recharacterization claims or defenses, (b) any and all claims and causes of action arising under the Bankruptcy Code, and (c) any and all claims and causes of action with respect to the validity, priority, perfection, or avoidability of the liens or claims of the CA Prepetition Secured Parties, the DIP Term Agent, the DIP ABL Lender, or the DIP Term Lenders; *provided, however,* the foregoing release shall not apply with respect to any act or omission of a Releasee that constitutes gross negligence, actual fraud, or willful misconduct. The CA Debtors further waive and release any defense, right of counterclaim, right of set-off, or deduction to the payment of the Prepetition Obligations or the DIP Obligations that the CA

US-DOCS\121074909.8

6482443.2

Debtors may now have or may claim to have against the Releasees arising out of, connected with, or relating to any and all acts, omissions, or events occurring before this Court's entry of this Interim Order.

(xiii)  *No Control.*  The CA Debtors hereby stipulate and agree that none of the DIP Term Agent, the DIP ABL Lender, the Prepetition Term Agent, the Prepetition Term Lenders, or the Prepetition ABL Lender control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition Loan Documents.

H.    **Cash Collateral**.  All of the CA Debtors' cash, including any cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes or will constitute Cash Collateral of the CA Prepetition Secured Parties and DIP Lenders, as applicable.

I.    **Prepetition Intercreditor Agreement**.  Without limiting the effectiveness and enforceability of any intercreditor agreements entered into on or after the Petition Date (which shall be enforceable in accordance with their terms), pursuant to section 510 of the Bankruptcy Code, the Prepetition Intercreditor Agreement and any other applicable intercreditor or subordination provisions contained in any of the other Prepetition Documents (i) shall remain in full force and effect, (ii) shall continue to govern the relative priorities, rights, and remedies of the applicable CA Prepetition Secured Parties (including the relative priorities, rights, and remedies of such parties with respect to the replacement liens, administrative expense claims, and superpriority administrative expense claims granted or the amounts payable by the CA

19

Debtors under this Interim Order or otherwise), and (iii) shall not be deemed to be amended, altered, or modified by the terms of this Interim Order or the DIP Documents unless expressly set forth herein or therein.

> J.      **Findings Regarding Postpetition Financing and Use of Cash Collateral**.

> (i)      *Request for Postpetition Financing and Use of Cash Collateral*.  The CA Debtors seek authority to (a) enter into the DIP Facilities and incur the DIP Obligations on the terms described herein and in the DIP Documents and (b) use Cash Collateral on the terms described herein, in each case, to administer the Chapter 11 Cases and fund their operations.  At the Final Hearing, the CA Debtors will seek final approval of the DIP Facilities and use of Cash Collateral pursuant to a proposed final order (the "**Final Order**").  Notice of the Final Hearing and the proposed Final Order will be provided in accordance with this Interim Order.

> (ii)      *Priming of Prepetition Liens*.  The priming of the Prepetition Liens under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Documents and as provided herein, will enable the CA Debtors to obtain the DIP Facilities and to continue to operate their business during the pendency of the Chapter 11 Cases, to the benefit of their estates and creditors.  The CA Prepetition Secured Parties are entitled to receive adequate protection as set forth in this Interim Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, solely to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral).

> (iii)      *Need for Postpetition Financing and Use of Cash Collateral*.  The CA Debtors have a need to use Cash Collateral on an interim basis and to obtain credit in an amount equal to the Interim Amounts pursuant to the DIP Facilities in order to, among other things, enable the orderly continuation of their operations and to administer and preserve the value of

20

their estates.  The ability of the CA Debtors to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, and otherwise finance their operations requires the availability of working capital from the DIP Facilities and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the CA Debtors, their estates, and parties-in-interest.  The CA Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business before the entry of the Final Order without the authorization to use Cash Collateral and to borrow the Interim Amounts.

(iv)    *No Credit Available on More Favorable Terms*.  The DIP Facilities are the best source of debtor-in-possession financing available to the CA Debtors.  Given their current financial condition, financing arrangements, and capital structure, the CA Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facilities.  The CA Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The CA Debtors have also been unable to obtain (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the CA Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the CA Debtors and their estates that is subject to a lien.  Financing on a postpetition basis on better terms is not available without granting the DIP Term Agent, for the benefit of themselves and the DIP Term Lenders, and the DIP ABL Lender (1) perfected security interests in and liens (each as provided herein) on the DIP Collateral, with the priorities set forth herein; (2) superpriority claims; and (3) the other protections set forth in this Interim Order.

21

(v)    *Use of Cash Collateral and Proceeds of DIP Facilities*.  As a condition to entry into the DIP Credit Agreements, the extension of credit under the DIP Facilities, and the authorization to use the Prepetition Collateral, including Cash Collateral, the DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender and the CA Prepetition Secured Parties require, and the CA Debtors have agreed, that proceeds of the DIP Facilities and the CA Prepetition Secured Parties' Cash Collateral shall be used in a manner consistent with the terms and conditions of this Interim Order and the DIP Documents and in accordance with an approved budget (as such budget may be modified from time to time consistent with the terms of the DIP Documents and subject to such variances and exclusions as permitted in the DIP Documents, and as set forth in paragraphs 17 and 18 hereof, the "**Budget**") solely for the purposes set forth in the DIP Documents and this Interim Order, including (a) ongoing working capital and other general corporate purposes of the CA Debtors and (b) permitted payment of costs of administration of the Chapter 11 Cases.

(vi)    *Budget.*  The CA Debtors have prepared and delivered to DIP Term Agent and the DIP ABL Lender an initial Budget, which is attached hereto as **Schedule 1**.  Such Budget has been (a) thoroughly reviewed by the CA Debtors and their management and sets forth, among other things, the projected cash receipts and disbursements of the CA Debtors for the periods covered thereby, and (b) approved by the DIP ABL Lender and the DIP Term Agent. The CA Debtors represent that the Budget is achievable in accordance with the terms of the DIP Documents and this Interim Order.  The DIP Term Agent, DIP ABL Lender and DIP Term Lenders are relying upon the CA Debtors' compliance with the Budget in accordance with Section 5.20 of the DIP Term Credit Agreement and Section 4.3 of the Ratification Agreement,

US-DOCS\121074909.8

6482443.2

the other DIP Documents, and this Interim Order in determining to enter into the post-petition financing arrangements provided for herein.

(vii)    *Application of Proceeds of DIP Collateral.*  As a condition to entry into the DIP Credit Agreements, the extension of credit under the DIP Facilities, and authorization to use Cash Collateral, the CA Debtors, the DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender, and the CA Prepetition Secured Parties have agreed that as of and commencing on the date of the Interim Hearing, the CA Debtors shall utilize the proceeds of the DIP Collateral in accordance with the Budget and this Interim Order.

(viii)    *Roll-up Loans.*  Without any further action by the CA Debtors or any other party, upon entry of the Final Order (a) the Term Roll-up Amount shall be converted into DIP Term Loans, and (b) the then-remaining outstanding balance of the Prepetition ABL Loans (which have not already been rolled up) shall be converted into DIP ABL Loans.  The conversion (or "roll-up") shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the Prepetition Term Lenders and Prepetition ABL Lenders to provide postpetition liquidity and permit access to Cash Collateral, and not as payments under, adequate protection for, or otherwise on account of, any Prepetition Obligations.  The conversion and "roll-up" of Prepetition Term Loans into DIP Term Loans and Prepetition ABL Loans into DIP ABL Loans will enable the CA Debtors to obtain urgently needed financing that will allow them to free up liquidity to fund the chapter 11 process.

K.    **Adequate Protection**.

(i)    The Prepetition Term Agent, for the benefit of the Prepetition Term Secured Parties, is entitled to receive adequate protection of their interests in the Prepetition Collateral, including, without limitation, the Cash Collateral, pursuant to sections 361, 363, and

507(b) of the Bankruptcy Code.  The Prepetition Term Secured Parties will receive (a) to the extent of any Diminution in Value of their interests in the Prepetition Collateral, Term Adequate Protection Liens (as defined below) with the relative priorities set forth on **Exhibit B** hereto and Term 507(b) Claims (as defined below); (b) current payment of reasonable and documented fees and expenses and other disbursements as set forth in paragraph 13 herein; and (c) financial and other reporting, in each case, as set forth in paragraph 13 herein.

(ii)    The Prepetition ABL Lender is entitled to receive adequate protection of its interests in the Prepetition Collateral, including, without limitation, the Cash Collateral, pursuant to sections 361, 363, and 507(b) of the Bankruptcy Code.  The Prepetition ABL Lender will receive (a) to the extent of any Diminution in Value of its interests in the Prepetition Collateral, ABL Adequate Protection Liens (as defined below) with the relative priorities set forth on **Exhibit B** hereto and ABL 507(b) Claims (as defined below); (b) current payment of reasonable and documented fees and expenses and other disbursements as set forth in paragraph 14 herein; and (c) financial and other reporting, in each case, as set forth in paragraph 14 herein.

L.    **Sections 506(c) and 552(b)**.  In light of (i) the DIP Term Agent's, the DIP ABL Lender's and the DIP Term Lenders' agreement to extend the DIP Facilities to the CA Debtors, including without limitation, that their liens and superpriority claims shall be subject to the Carve-Out (except as otherwise provided in paragraph 30(i), which shall apply to every reference in this Interim Order to the Carve-Out); (ii) the CA Prepetition Secured Parties' agreement to permit the use of Cash Collateral, including, without limitation, that their respective liens and claims, including any adequate protection liens and claims, shall be subject to the Carve-Out and in certain respects subordinate to the DIP Liens as set forth herein; and (iii) the DIP Term Agent's, the DIP Term Lenders', the DIP ABL Lender's, and the CA Prepetition Secured

24

Parties' agreement to the payment (in accordance with the Budget (subject to the Permitted Variances (as defined below)) and subject to the terms and conditions of this Interim Order and the DIP Documents) of certain expenses of administration of the Chapter 11 Cases, (a) upon entry of a Final Order, the CA Prepetition Secured Parties are entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code and (b) upon entry of a Final Order, the DIP Term Agent, the DIP ABL Lender,  the DIP Term Lenders, and the CA Prepetition Secured Parties are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

       M.    **Good Faith of DIP Term Agent, DIP ABL Lender, DIP Term Lenders, and CA Prepetition Secured Parties**.

       (i)    Based upon the pleadings and proceedings of record in the Chapter 11 Cases, (a) the extensions of credit under the DIP Facilities are fair and reasonable, are appropriate for secured financing to CA Debtors in possession, are the best available to the CA Debtors under the circumstances, reflect the CA Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration; (b) the terms and conditions of the DIP Facilities and the use of the Cash Collateral have been negotiated in good faith and at arm's length among the CA Debtors, the DIP Term Agent, the DIP ABL Lender, the DIP Term Lenders, and the CA Prepetition Secured Parties, with the assistance and counsel of their respective advisors; (c) the use of Cash Collateral, including, without limitation, pursuant to this Interim Order, has been allowed in "good faith" within the meaning of section 364(e) of the Bankruptcy Code; (d) any actions under the DIP Documents, including credit to be extended, loans to be made, and other financial accommodations to be extended to the CA Debtors, by the DIP Term Agent, the DIP ABL

25

Lender, the DIP Term Lenders, and the CA Prepetition Secured Parties, including, without limitation, pursuant to this Interim Order, have been allowed, advanced, extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code by the DIP Term Agent, the DIP ABL Lender, the DIP Term Lenders, and the CA Prepetition Secured Parties in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code; and (e) the DIP Facilities, the DIP Liens, the DIP Superpriority Claims (as defined below), the Adequate Protection Liens (as defined below), and the 507(b) Claims (as defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

(ii)    Absent an order of this Court and the provision of Adequate Protection Obligations and Adequate Protection Liens (each as defined below), consent of the CA Prepetition Secured Parties is required for the CA Debtors' use of Cash Collateral and other Prepetition Collateral. The CA Prepetition Secured Parties have consented, or are deemed pursuant to the Prepetition Documents to have consented, or have not objected, to the CA Debtors' use of Cash Collateral and other Prepetition Collateral and to the CA Debtors' entry into the DIP Documents in accordance with and subject to the terms and conditions in this Interim Order and the DIP Documents.

N.    **Good Cause**. The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the CA Debtors, their creditors and their estates, as its implementation will, among other things, provide the CA Debtors with the necessary liquidity to (1) minimize disruption to the CA Debtors' businesses and operations, (2) preserve and maximize the value of the CA Debtors' Estates for the benefit of all the CA

Debtors' creditors, and (3) avoid immediate and irreparable harm to the CA Debtors, their creditors, their businesses, their employees, and their assets.

O.    **Immediate Entry**.   Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

P.    **Interim Hearing**.   Notice of the Interim Hearing and the relief requested in the Motion has been provided by the CA Debtors, whether by facsimile, electronic mail, overnight courier, or hand delivery to certain parties in interest, including the Notice Parties (as defined in the Motion).   The CA Debtors have made reasonable efforts to afford the best notice possible under the circumstances, and no other notice is required in connection with the relief set forth in this Interim Order.

Based upon the foregoing findings and conclusions, the Motion, and the record before this Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    <u>DIP Facilities Approved on Interim Basis</u>.   The Motion is granted on an interim basis as set forth herein.   The DIP Facilities, in amounts equal to the Interim Amounts, are hereby authorized and approved to the extent set forth herein, and the use of Cash Collateral on an interim basis is authorized, in each case subject to the terms and conditions set forth in the DIP Documents and this Interim Order.   All objections to this Interim Order, to the extent not withdrawn, waived, settled, or resolved, are hereby denied and overruled.   This Interim Order shall become effective immediately upon its entry.

2.    <u>Authorization of DIP Facilities</u>.   The DIP Facilities are hereby approved as set forth herein.   The CA Debtors are expressly and immediately authorized and empowered to

27

execute and deliver the DIP Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Documents, including, without limitation, to deliver all instruments, certificates, agreements, and documents that may be required or necessary for the performance by the CA Debtors under the DIP Facilities and the creation and perfection of the DIP Liens.  The CA Debtors are hereby authorized and directed to pay, in accordance with this Interim Order, the principal, interest, premiums, fees, payments, expenses, and other amounts set forth in the DIP Documents as such amounts become due and payable, without need to obtain further Court approval, whether or not such fees arose before, on, or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, to implement all applicable reserves, and to take any other actions that may be necessary or appropriate, all as provided in this Interim Order or the DIP Documents.  All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations, or otherwise, will be deposited and applied as required by this Interim Order and the DIP Documents.   Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the CA Debtors, enforceable against each of the CA Debtors and their estates in accordance with their terms.  The CA Debtors are hereby authorized and directed to pay, in accordance with this Interim Order, the principal, interest, fees, payments, expenses, and other amounts set forth in  in the DIP Documents as such amounts become due and without need to obtain further Court approval, including, without limitation, backstop, closing, arrangement or commitment fees, administrative agent's fees and collateral agent's fees (including all fees and other amounts owed to the DIP Term Agent and the DIP ABL Lender), the reasonable fees and disbursements of counsel and other professionals, whether or not such fees arose before, on, or after the Petition

28

Date, in accordance with this Interim Order or the DIP Documents.  Upon entry of the Final

Order, (a) all Prepetition ABL Obligations, whether or not such Prepetition ABL Obligations

have been rolled into DIP ABL Obligations during the Interim Financing Period, shall be

deemed to be DIP ABL Obligations, and (b) the Term Roll-up Amount shall be deemed to be

DIP Term Obligations.  The CA Debtors are authorized to repay all DIP Obligations in

accordance with the DIP Credit Agreements, the other DIP Documents and this Interim Order.

3.     <u>Authorization to Borrow</u>.  To prevent immediate and irreparable harm to the CA

Debtors' estates, from the entry of this Interim Order through and including the earliest to occur

of (a) entry of the Final Order or (b) the DIP Termination Date (as defined below), and subject to

the terms, conditions, and limitations on availability set forth in the DIP Documents and this

Interim Order, the CA Debtors are hereby authorized to (i) borrow (in the form of DIP Term

Loans) under the DIP Term Facility in an aggregate outstanding principal amount equal to the

Interim Term Amount and (ii) borrow (in the form of DIP ABL Loans) under the DIP ABL

Facility in an aggregate outstanding principal amount equal to the Interim ABL Amount.

4.     <u>Amendment of DIP Documents</u>.  The DIP Documents may from time to time be

amended, modified, or supplemented by the parties thereto without further order of this Court if

the amendment, modification, or supplement is (a) non-material and (b) in accordance with the

DIP Documents.  In the case of a material amendment, modification, or supplement to the DIP

Documents, the CA Debtors shall (i) provide notice (which may be provided through electronic

mail or facsimile) to counsel to any Committee (if appointed), the U.S. Trustee, the DIP Term

Agent, the DIP ABL Lender, and the CA Prepetition Secured Parties, the TX/PA DIP Agent and

the Prepetition Trustees, and (ii) obtain approval of this Court.

5.      <u>Payment of Prepetition ABL Obligations</u>.   The CA Debtors are authorized to repay all Prepetition ABL Obligations in accordance with the DIP ABL Credit Agreement, the other DIP ABL Loan Documents and this Interim Order.   The CA Debtors are authorized to make all payments and transfers of estate property to the DIP ABL Lender as provided for, permitted and/or required under the DP ABL Credit Agreement and the other DIP ABL Loan Documents.   All proceeds of the Prepetition ABL Priority Collateral received by the Prepetition ABL Lender or the DIP ABL Lender, as applicable, and any other amounts or payments received by the DIP ABL Lender in respect of the Prepetition ABL Loans or the DIP ABL Loans, may be applied or deemed to be applied by the DIP ABL Lender, in its discretion, first to the indefeasible repayment of the Prepetition ABL Obligations, and then in repayment of the DIP ABL Obligations, all in accordance with the DIP ABL Credit Agreement, the other DIP ABL Loan Documents and this Interim Order.

6.      <u>Continuation of Prepetition ABL Procedures</u>.   In accordance with the Cash Management Order and the DIP ABL Loan Documents, all prepetition practices and procedures for the payment and collection of proceeds of the DIP ABL Priority Collateral (including the turnover of relevant cash to the DIP ABL Lender), including any lockbox or blocked depository bank account arrangements, are hereby approved and shall continue without interruption after the commencement of the Cases.

7.      <u>DIP Obligations</u>.  The DIP Documents and this Interim Order shall constitute and evidence the validity and binding effect of the DIP Obligations, which shall be enforceable against the CA Debtors, their estates, and any successors thereto, including, without limitation, any trustee appointed in the Chapter 11 Cases or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings

superseding or related to any of the foregoing (collectively, the "**Successor Cases**").  Upon entry of this Interim Order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the CA Debtors to the DIP Term Agent, DIP ABL Lender, or any of the DIP Term Lenders, in each case, under the DIP Documents or this Interim Order or secured by the DIP Liens, including, without limitation, all principal, accrued and unpaid interest, costs, fees, expenses, and other amounts owing under the DIP Documents.  The DIP Obligations shall be due and payable, and the use of Cash Collateral shall automatically cease, in each case, without notice or demand on the DIP Termination Date, except as provided in paragraph 26 herein and subject to the requirements of the Carve-Out.  Subject to paragraph 37, as applicable, no obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Documents (including any DIP Obligation or DIP Liens, but excluding any adequate protection provided to the CA Prepetition Secured Parties hereunder) shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under chapter 5 of the Bankruptcy Code, section 724(a) of the Bankruptcy Code, or any other provision with respect to avoidance actions under the Bankruptcy Code or applicable state law equivalents) or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

8.    <u>DIP Liens</u>.

(a)    As security for the DIP Obligations, effective immediately upon entry of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the

31

Bankruptcy Code, the DIP Term Agent, for the benefit of itself and the DIP Term Lenders, and the DIP ABL Lender, are hereby granted valid, binding, continuing, enforceable, non-avoidable, and automatically and properly perfected security interests and liens on all real and personal property, whether now existing or hereafter arising and wherever located, tangible or intangible, of each of the CA Debtors (the **"DIP Collateral"**), including, without limitation (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments (including, without limitation, promissory notes), documents, securities (whether or not marketable) and investment property (in each case, together with all securities accounts and security entitlements related thereto, all financial assets carried therein, and all commodity accounts and commodity contracts related thereto), hedge agreements, furniture, fixtures, equipment (including documents of title), goods, vehicles, franchise rights, trade names, trademarks, service marks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including, without limitation, tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany obligations, fee interests in real property owned by the CA Debtors, books, records, ledger cards, files, correspondence, customer lists, blueprints, technical specifications, manuals, computer software, computer printouts, tapes, disks and other electronic storage media and related data processing software related to the foregoing, and accessions, products, rents, profits, and proceeds of the foregoing, wherever located, including insurance or other proceeds; (b) all owned real property interests and all real property leases and proceeds thereof; (c) actions

32

brought under section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral; (d) subject to entry of a Final Order, the proceeds of any avoidance actions (such actions, **"Avoidance Actions"**) brought pursuant to chapter 5 of the Bankruptcy Code or section 724(a) of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code or applicable state law equivalents (the **"Avoidance Action Proceeds"**); *provided,* that no liens shall attach to Avoidance Actions; (e) subject to entry of the Final Order, the proceeds of any exercise of the CA Debtors' rights under section 506(c) and 550 of the Bankruptcy Code; and (f) all assets of the DIP Loan Parties that do not constitute DIP Term Priority Collateral or DIP ABL Priority Collateral (each as defined below) and are not otherwise subject to valid, perfected, enforceable, and unavoidable security interests or liens in existence as of the Petition Date or valid liens perfected (but not granted) after the Petition Date (to the extent such perfection in respect of a prepetition claim is expressly permitted under the Bankruptcy Code) (the **"Unencumbered Collateral"**); in each case subject and subordinate to the Carve-Out and the Permitted Prior Liens, as set forth in this Interim Order and in accordance with the priorities set forth in **Exhibit B** hereto (all such liens and security interests granted to the DIP Term Agent, for their benefit and for the benefit of the DIP Term Lenders, and to the DIP ABL Lender, pursuant to this Interim Order and the DIP Documents, the **"DIP Liens"**).

(b)    For the avoidance of doubt, (i) the DIP Term Priority Accounts (as defined in the DIP Term Credit Agreement) shall at all times solely constitute DIP Term Priority Collateral and (ii) each of the DIP Additional Accounts shall constitute DIP Term Priority Collateral or DIP ABL Priority Collateral, as the case may be, subject to and in accordance with the Prepetition Intercreditor Agreement as specified in paragraph 52 below.

9.      <u>DIP Lien Priority</u>.  The following DIP Liens are hereby granted and shall have the priorities set forth on **<u>Exhibit B</u>** hereto:

(a)      pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Term Facility and the DIP ABL Facility shall be secured by liens on all Unencumbered Collateral;

(b)      pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Term Facility and the DIP ABL Facility shall be secured by liens on each of the CA Debtors present and future assets and properties that are subject to any validly perfected, enforceable, and unavoidable security interest or lien in existence as of the Petition Date that are senior in priority on such Other Encumbered Collateral to the Prepetition Term Liens (the "**<u>Other Encumbered Collateral</u>**" and such security interests or liens, the "**<u>Other Liens</u>**");

(c)      pursuant to section 364(d)(1) of the Bankruptcy Code, (i) the DIP Term Facility shall be secured by liens on DIP Collateral that constitutes, or, but for the commencement of the Chapter 11 Cases, would have constituted, Prepetition Term Priority Collateral or proceeds or products thereof (the "**<u>DIP Term Priority Collateral</u>**") and on DIP Collateral that constitutes, or, but for the commencement of the Chapter 11 Cases would have constituted, Prepetition ABL Priority Collateral or proceeds or products thereof (the "**<u>DIP ABL Priority Collateral</u>**"), and (ii) the DIP ABL Facility shall be secured by liens on DIP Collateral that constitutes, or, but for the commencement of the Chapter 11 Cases, would have constituted, DIP ABL Priority Collateral or proceeds or products thereof, and Prepetition Term Priority Collateral or proceeds or products thereof that the DIP ABL Lender would have had a lien on under Prepetition ABL Documents but for the commencement of the Chapter 11 Cases;

34

(d)     other than as set forth herein (including with respect to the Carve-Out) or permitted under the DIP Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases or any Successor Cases, upon the conversion of any of the Chapter 11 Cases to any Successor Case, or upon the dismissal of any of the Chapter 11 Cases or Successor Cases.  The DIP Liens shall not be subject to any of sections 510, 549, or 550 of the Bankruptcy Code (subject, as applicable, to the Challenge Deadline (as defined below) and related provisions set forth in paragraph 37 herein).  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

10.     <u>Superpriority Claims</u>.  Subject and subordinate to the Carve-Out,  upon entry of this Interim Order, the DIP Term Agent, on its own behalf and on behalf of the DIP Term Lenders, and the DIP ABL Lender are hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims against each of the CA Debtors in the Chapter 11 Cases and any Successor Cases (collectively, the "**DIP Superpriority Claims**") for all DIP Obligations (a) with priority over any and all administrative expense claims and unsecured claims against the CA Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113, or 1114 of the Bankruptcy Code or any other provision of the Bankruptcy Code and (b) which shall at all times be senior to the rights of the CA Debtors and their estates, and any successor

35

trustee or other estate representative to the extent permitted by law. The DIP Superpriority Claims granted in favor of the DIP Term Agent and the DIP ABL Lender shall be of equal priority.

11. <u>No Obligation to Extend Credit</u>. The DIP Lenders shall have no obligation to make any loan or advance or to issue, amend, renew, or extend any letters of credit or bankers' acceptance under the DIP Documents unless (and subject to the occurrence of the Closing Date (as defined in the DIP Credit Agreements, the "**Closing Date**")) all of the conditions precedent to the making of such extension of credit or the issuance, amendment, renewal, or extension of such letter of credit or bankers' acceptance under the applicable DIP Documents and this Interim Order have been satisfied in full or waived by the DIP Term Agent and the DIP ABL Lender, as applicable, in accordance with the terms of the applicable DIP Credit Agreement.

12. <u>Use of Proceeds of DIP Facilities</u>. From and after the Petition Date, the CA Debtors shall use proceeds of borrowings under the DIP Facilities only for the purposes specifically set forth in this Interim Order and the DIP Documents, and, in each case, in compliance with the Budget (subject to any Permitted Variances (as defined in the DIP Credit Agreements, the "**Permitted Variances**")) and the terms and conditions in this Interim Order and the DIP Documents.

13. <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Interim Order and the DIP Documents, and in accordance with the Budget (subject to the Permitted Variances), the CA Debtors are authorized to use Cash Collateral until the DIP Termination Date; *provided, however*, that during the Remedies Notice Period (as defined below), subject to the Carve-Out, the CA Debtors may use Cash Collateral solely to meet payroll obligations and pay expenses necessary to avoid immediate and irreparable harm to the CA

36

Debtors' estates, in accordance with the Budget (subject to the Permitted Variances). Nothing in this Interim Order shall authorize the disposition of any assets of the CA Debtors or their estates outside the ordinary course of business, or any CA Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order (including with respect to the Carve-Out), the DIP Facilities, the DIP Documents, or by an order of this Court, and in accordance with the Budget (subject to the Permitted Variances).

14.    <u>Adequate Protection for Prepetition Term Secured Parties</u>.    Subject to the Investigation (as defined below), the Prepetition Term Secured Parties are entitled, pursuant to sections 361, 362, 363(c)(2), 363(e), and 507 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral (the "**Term Adequate Protection Obligations**"). As adequate protection, the Prepetition Term Secured Parties are hereby granted the following:

(a)    <u>Term Adequate Protection Liens</u>. As security for the payment of the Term Adequate Protection Obligations, the Prepetition Term Agent (for itself and for the benefit of the Prepetition Term Lenders) is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution by the CA Debtors of security agreements, pledge agreements, mortgages, financing statements, or other agreements) a valid, perfected replacement security interest in and lien on all of the DIP Collateral, including, subject to entry of the Final Order, Avoidance Action Proceeds (the "**Term Adequate Protection Liens**"), to the extent of any Diminution in Value of the Prepetition Term Secured Parties' interests in the Prepetition Collateral, subject and subordinate only to (i) the Carve-Out, (ii) the Permitted Prior Liens, (iii) as to all DIP Collateral constituting DIP Term Priority Collateral, the DIP Term Liens and the Prepetition Term Liens, (iv) as to all DIP Collateral constituting DIP

37

ABL Priority Collateral, the DIP ABL Liens, the Prepetition ABL Liens, the ABL Adequate

Protection Liens, and the DIP Term Liens, (v) as to the Unencumbered Collateral, the DIP Term

Liens and the DIP ABL Liens, and (vi) as to the Other Encumbered Collateral, the Other Liens,

the DIP Term Liens and the DIP ABL Liens, and the Prepetition Term Liens and the Prepetition

ABL Liens.

(b)     Term Section 507(b) Claims.  The Term Adequate Protection Obligations

shall constitute superpriority claims against each of the CA Debtors as provided in section 507(b)

of the Bankruptcy Code (the "**Term 507(b) Claims**"), to the extent of any Diminution in Value

of the Prepetition Term Secured Parties' interests in the Prepetition Collateral, with priority in

payment over any and all administrative expenses of the kinds specified or ordered pursuant to

any provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 328, 330,

331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, or 1114 of the Bankruptcy

Code, whether incurred in the Chapter 11 Cases or in any Successor Cases, subject and

subordinate only to (i) the Carve-Out and (ii) the DIP Superpriority Claims granted in respect of

the DIP Obligations, and *pari passu* with the ABL 507(b) Claims; *provided*, that, for the

avoidance of doubt, the Term 507(b) Claims shall have no recourse to, and shall not be payable

from, any of the TX/PA Collateral.

(c)     Term Adequate Protection Payments.  The CA Debtors are authorized and

directed to pay, as adequate protection, in the form of payment in cash all accrued and unpaid

fees and reasonable and documented disbursements incurred by the Prepetition Term Agent and

its advisors, including Latham & Watkins LLP, as counsel, Young Conaway Stargatt & Taylor,

LLP, as local counsel, and AlixPartners, LLP, as financial advisor, in each case whether accrued

before, on, or after the Petition Date.  The payment of the fees, expenses and disbursements set

forth in this paragraph (to the extent incurred after the Petition Date) shall be subject to paragraph 37 and the review process set forth in paragraph 33.

(d)    Information.  The CA Debtors shall concurrently deliver to the Prepetition Term Agent and its legal advisors all information, reports, documents, and other material that the CA Debtors provide to the DIP Lenders pursuant to the DIP Documents, this Interim Order, and the Final Order, subject to any applicable confidentiality provisions contained in the Prepetition Term Credit Agreement.

15.    Adequate Protection for Prepetition ABL Secured Party.  Subject to the Investigation, the Prepetition ABL Secured Party is entitled, pursuant to sections 361, 362, 363(c)(2), 363(e), and 507 of the Bankruptcy Code, to adequate protection of its interests in the Prepetition    Collateral,    including    the    Cash    Collateral (the "**ABL Adequate Protection Obligations**" and, together with the Term Adequate Protection Obligations, the "**Adequate Protection Obligations**").  As adequate protection, the Prepetition ABL Secured Party is hereby granted the following:

(a)    ABL Adequate Protection Liens.  As security for the payment of the ABL Adequate Protection Obligations, the Prepetition ABL Lender is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution by the CA Debtors of security agreements, pledge agreements, mortgages, financing statements, or other agreements) a valid, perfected replacement security interest in and lien on all DIP Collateral (the "**ABL Adequate Protection Liens**" and, together with the Term Adequate Protection Liens, the "**Adequate Protection Liens**"), to the extent of any Diminution in Value of the Prepetition ABL Secured Party's interests in the Prepetition Collateral, subject and subordinate only to (i) the Permitted Prior Liens, (ii) with respect to DIP Collateral that

39

constitutes DIP Term Priority Collateral, the DIP Term Liens, the Prepetition Term Liens, the Term Adequate Protection Liens and the DIP ABL Liens, (iii) as to all DIP Collateral constituting DIP ABL Priority Collateral, the DIP ABL Liens and the Prepetition ABL Liens, the ABL Adequate Protection Liens, and the DIP Term Liens, (iv) with respect to the Unencumbered Collateral, the DIP Term Liens and the DIP ABL Liens, and (vi) as to the Other Encumbered Collateral, the Other Liens, the DIP Term Liens and the DIP ABL Liens, and the Prepetition Term Liens and the Prepetition ABL Liens.

(b)      ABL Section 507(b) Claims.  The ABL Adequate Protection Obligations shall constitute superpriority claims against each of the CA Debtors as provided in section 507(b) of the Bankruptcy Code (the "**ABL 507(b) Claims**" and, together with the Term 507(b) Claims, the "**507(b) Claims**"), to the extent of any Diminution in Value of the Prepetition ABL Secured Party's interests in the Prepetition Collateral, with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, or 1114 of the Bankruptcy Code, whether incurred in the Chapter 11 Cases or in any Successor Cases, subject and subordinate only to (i) the DIP Superpriority Claims granted in favor of the DIP Obligations, and *pari passu* with the Term 507(b) Claims; *provided*, that, for the avoidance of doubt, the ABL 507(b) Claims shall have no recourse to, and shall not be payable from, any of the TX/PA Collateral.

(c)      ABL Adequate Protection Payments.  The CA Debtors are authorized and directed to pay, as adequate protection, in the form of payment in cash, all accrued and unpaid fees and reasonable and documented disbursements, including Otterbourg, P.C., as counsel, Richards Layton & Finger, as local counsel, and Paladin Management Corp, as financial

consultant, incurred by the Prepetition ABL Lender, whether accrued before, on, or after the Petition Date. The payment of the fees, expenses and disbursements set forth in this paragraph (to the extent incurred after the Petition Date) shall be subject to paragraph 37 and the review process set forth in paragraph 33.

(d)    <u>Information</u>. The CA Debtors shall concurrently deliver to the Prepetition ABL Lender all information, reports, documents, and other materials that the CA Debtors provide to the DIP Lenders pursuant to the DIP Documents, this Interim Order, and the Final Order, subject to any applicable confidentiality provisions contained in the Prepetition ABL Credit Agreement.

16.    <u>Adequate Protection Reservation</u>. Subject to the Carve-Out, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to any CA Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Chapter 11 Cases or any Successor Cases. The receipt by any CA Prepetition Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of such CA Prepetition Secured Parties are adequately protected. Further, this Interim Order shall not prejudice or limit the rights of any CA Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection, subject in all respects to the terms and limitations of the Prepetition Intercreditor Agreement.

17.    <u>Budget Maintenance</u>. The CA Debtors shall use the proceeds of all borrowings under the DIP Facilities and Cash Collateral in accordance with the Budget, subject in all respects to the Permitted Variances. The Budget annexed hereto as **<u>Schedule 1</u>** shall constitute the initial Budget, which shall be updated from time to time in accordance with the DIP Credit

41

Agreements. A copy of any updated Budget shall be delivered to the legal and financial advisors to the Committee (if appointed) and the U.S. Trustee following such Budget's approval by the DIP Term Agent and DIP ABL Lender.

18.     <u>Budget and Reporting Compliance</u>. The CA Debtors shall at all times comply with the Budget, subject to the Permitted Variances, and the CA Debtors shall provide all reports and other information as required in the DIP Credit Agreements (subject to the grace periods provided therein). The CA Debtors' failure to comply with the Budget (subject to the Permitted Variances) or to provide the reports and other information required in the DIP Credit Agreements shall constitute an Event of Default (as defined below), following the expiration of any applicable grace period set forth in the applicable DIP Credit Agreement.

19.     <u>Modification of Automatic Stay</u>. The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to (a) permit the CA Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claims, and 507(b) Claims; (b) permit the CA Debtors to perform such acts as the DIP Term Agent, DIP ABL Lender, and the CA Prepetition Secured Parties each may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the CA Debtors to incur all liabilities and obligations to the DIP Term Agent, the DIP ABL Lender, the DIP Term Lenders, and the CA Prepetition Secured Parties under the DIP Documents, the DIP Facilities, and this Interim Order, as applicable; and (d) authorize the CA Debtors to pay, and the DIP Term Agent, DIP ABL Lender, the DIP Term Lenders, and the CA Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Interim Order.

20.     <u>Perfection of DIP Liens and Adequate Protection Liens</u>.  This Interim Order shall

be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens

granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity

of filing or recording any financing statement, mortgage, notice, or other instrument, or

document which may otherwise be required under the law or regulation of any jurisdiction or the

taking of any other action (including, for the avoidance of doubt, entering into any deposit

account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy

law) the DIP Liens or the Adequate Protection Liens or to entitle the DIP Term Agent, the DIP

ABL Lender, the DIP Term Lenders, and the CA Prepetition Secured Parties to the priorities

granted herein.  Notwithstanding the foregoing, each of the DIP Term Agent, the DIP ABL

Lender, the Prepetition ABL Lender and the Prepetition Term Agent are authorized to file or

record, as they may determine in their sole discretion to be necessary or advisable, such

financing statements, security agreements, mortgages, notices of liens, and other similar

documents to perfect their respective liens in accordance with applicable non-bankruptcy law,

and all such financing statements, mortgages, notices, and other documents shall be deemed to

have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or

recordation shall be necessary or required in order to create or perfect the DIP Liens or the

Adequate Protection Liens.  The CA Debtors are authorized and directed to execute and deliver,

promptly upon demand to the DIP Term Agent, the Prepetition Term Agent, the DIP ABL

Lender, and the Prepetition ABL Lender all such financing statements, mortgages, notices, and

other documents as the DIP Term Agent, the Prepetition Term Agent, the DIP ABL Lender, or

the Prepetition ABL Lender, as applicable, may reasonably request.  Each of the DIP Term

Agent, the Prepetition Term Agent, the DIP ABL Lender, and the Prepetition ABL Lender,  in

43

their discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument, and all applicable officials are hereby directed to accept a photocopy of this Interim Order for filing or recordation for such purpose. To the extent any of the Prepetition Term Agent or the Prepetition ABL Lender are the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements, or any other Prepetition Loan Documents or are listed as loss payee or additional insured under any of the CA Debtors' insurance policies, the DIP Term Agent and the DIP ABL Lender shall also be deemed to be the secured party or the loss payee or additional insured, as applicable, under such documents. The Prepetition Term Agent and the Prepetition ABL Lender, as applicable, shall serve as agents for the DIP Term Agent and the DIP ABL Lender for purposes of perfecting the DIP Liens on all DIP Collateral that is of a type such that, without giving effect to the Bankruptcy Code and this Interim Order, perfection of a lien thereon may be accomplished only by possession or control by a secured party.

21.    Credit Bidding.  In connection with any sale process authorized by this Court, whether effectuated through sections 363, 725, or 1123 of the Bankruptcy Code, each of the DIP Term Agent, the DIP ABL Lender, the DIP Term Lenders, and the CA Prepetition Secured Parties may credit bid up to the full amount of their respective outstanding DIP Obligations and/or the relevant Prepetition Obligations, as applicable, in each case including any accrued and unpaid interest, expenses, fees, and other obligations for their respective collateral (each such bid, a "**Credit Bid**"), without the need for further Court order authorizing the same pursuant to section 363(k) of the Bankruptcy Code, subject in each case to the Prepetition Intercreditor

Agreement and the priorities set forth herein, without limiting the rights of the TX/PA DIP Agent and the Prepetition Trustees under the TX/PA DIP Orders.

22.    <u>Proceeds of Subsequent Financing</u>.  If the CA Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in the Chapter 11 Cases or any Successor Cases shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d) of the Bankruptcy Code at any time before the indefeasible repayment in full of all DIP Obligations and the termination of the DIP Term Agent's, the DIP ABL Lender's, and the DIP Term Lenders' obligation to extend credit under the DIP Facilities, including subsequent to the confirmation of any plan with respect to any or all of the CA Debtors (if applicable), then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Term Agent or the DIP ABL Lender, as applicable, to be applied in accordance with the Prepetition Intercreditor Agreement, this Interim Order, and the DIP Documents.  Nothing in the paragraph shall limit any rights of the TX/PA DIP Agent and the Prepetition Trustees under the TX/PA DIP Orders.

23.    <u>Maintenance of DIP Collateral</u>.  Until the indefeasible payment in full of all DIP Obligations, all Prepetition Obligations, and the termination of the DIP Term Agent's, the DIP ABL Lender's, and the DIP Term Lenders' obligation to extend credit under the DIP Facilities, the CA Debtors shall (a) insure the DIP Collateral as required under the DIP Facilities or the Prepetition Documents, as applicable; (b) maintain the cash management system in effect as of the Petition Date, as modified by any order entered by this Court; and (c)(i) maintain accurate records of all transfers (including intercompany transactions) within the cash management system so that all postpetition transfers and transactions shall be adequately and promptly

45

documented in, and readily ascertainable from, their books and records, and (ii) provide reasonable access to such records to the DIP Term Agent and DIP ABL Lender.

24.    <u>Disposition of DIP Collateral</u>.  The CA Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral other than in the ordinary course of business without the prior written consent of the DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender, the Prepetition Term Secured Parties, and the Prepetition ABL Secured Parties, as applicable, (and no such consent shall be implied, from any other action, inaction, or acquiescence by the DIP Term Agent, DIP ABL Lender, the DIP Lenders, or the CA Prepetition Secured Parties), except as otherwise provided for in the DIP Documents or as ordered by the Court, and subject in all respects to the DIP Intercreditor Agreement.

25.    <u>Inventory</u>.  Debtors shall not, without the consent of the ABL DIP Lender, (a) enter into any agreement to return any inventory to any of their creditors for application against any pre-petition indebtedness under any applicable provision of section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to section 553(b)(1) of the Bankruptcy Code or otherwise.

26.    <u>DIP Termination Date</u>.  On the DIP Termination Date, which, for the avoidance of doubt, shall include the "Maturity Date" under each DIP Credit Agreement, subject to the Carve-Out, (a) all DIP Obligations shall be immediately due and payable, all commitments to extend credit under the DIP Facilities will terminate, other than as required in paragraph 37 with respect to the Carve-Out; (b) all authority to use Cash Collateral shall cease, other than as required in paragraph 37 with respect to the Carve-Out; *provided, however*, that during the Remedies Notice Period, subject to the Carve-Out, the CA Debtors may use Cash Collateral

46

solely to meet payroll obligations and pay expenses necessary to avoid immediate and irreparable harm to the CA Debtors' estates, in accordance with the Budget, or as otherwise agreed by the DIP Term Agent and the DIP ABL Lender, subject to the Prepetition Intercreditor Agreement and this Interim Order; and (c) subject to paragraph 30, the DIP Term Agent, the DIP ABL Lender, and the DIP Term Lenders shall be otherwise entitled to exercise rights and remedies under the DIP Documents in accordance with this Interim Order and subject to the Prepetition Intercreditor Agreement.

27.    <u>Events of Default</u>.  The occurrence of any of the following events, unless waived by each of the DIP Term Agent and the DIP ABL Lender in writing and in accordance with the terms of the DIP Credit Agreements, shall constitute an event of default (collectively, the "**Events of Default**") under this Interim Order:  (a) the failure of the CA Debtors to perform or comply with, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order; or (b) the occurrence of an "Event of Default" under either of the DIP Credit Agreements.  Upon the indefeasible payment in full in cash of the DIP Obligations (a "**DIP Repayment**"), the foregoing Events of Default may be waived by the CA Prepetition Secured Parties as set forth in the Prepetition Documents and subject to the Prepetition Intercreditor Agreement.

28.    <u>Rights and Remedies Upon Event of Default</u>.  Immediately upon the occurrence and during the continuation of an Event of Default or the "Maturity Date" under the applicable DIP Credit Agreement, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order of this Court, but subject to the terms of this Interim Order, (a) each of the DIP Term Agent and the DIP ABL Lender may declare (i) all outstanding DIP Obligations owing under the respective DIP Documents to be

47

immediately due and payable, (ii) the termination of any further commitment to extend credit to

the CA Debtors to the extent any such commitment remains under the respective DIP Facilities,

(iii) termination of the respective DIP Facilities and the respective DIP Documents as to any

future liability or obligation of the applicable DIP Term Agent, the DIP ABL Lender and the DIP

Term Lenders, without affecting any of the DIP Liens or the DIP Obligations, and (iv) that the

application of the Carve-Out has occurred through the delivery of the Carve-Out Trigger Notice

(as defined below) to the CA Debtors; and (b) subject to the provisions in paragraph 26, the

Prepetition Term Agent and the Prepetition ABL Lender may declare the termination of the CA

Debtors' ability to use Cash Collateral (any such declaration shall be referred to as a "**DIP**

**Termination Declaration**" and the date on which a DIP Termination Declaration is delivered

shall be referred to as the "**DIP Termination Date**").  A DIP Termination Declaration shall be

delivered by electronic mail (or other electronic means) to counsel to the CA Debtors, counsel to

a Committee (if appointed), counsel to each of the DIP Term Agent and the DIP ABL Lender

(and to each other), counsel to each of the Prepetition Term Agent and the Prepetition ABL

Lender (and to each other), counsel to the TX/PA DIP Agent, counsel to the Prepetition Trustees,

and the U.S. Trustee.  The automatic stay is hereby modified so that five (5) business days after

the date a DIP Termination Declaration is delivered (such five-day period, the "**Remedies Notice**

**Period**"), the DIP Term Agent, the DIP Term Lenders, and the DIP ABL Lender shall be entitled

to exercise their rights and remedies in accordance with their respective DIP Documents (as

applicable), this Interim Order, and the Prepetition Intercreditor Agreement, subject in all

respects to the Carve-Out.  During the Remedies Notice Period, the CA Debtors or a Committee

(if appointed) or any party in interest shall be entitled to seek an emergency hearing from this

Court, and upon and after delivery of the DIP Termination Declaration, each of DIP Term Agent

and/or DIP ABL Lender delivering such DIP Termination Declaration shall be deemed to have consented to such emergency hearing.  Unless this Court orders otherwise, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order as to the DIP Term Agent, the DIP Term Lenders, and the DIP ABL Lender.  Following the expiration of the Remedies Notice Period, the DIP Term Agent, the DIP ABL Lender, and any liquidator or other professional will have the right to access and utilize, at no cost or expense, any trade names, trademarks, copyrights, or other intellectual property of the Debtors to the extent necessary or appropriate in order to sell, lease, or otherwise dispose of any of the DIP Collateral, including pursuant to any Court-approved sale process.

29.    Upon the occurrence and during the continuation of an Event of Default, without limiting any of the other rights and remedies of the DIP Term Agent and the DIP ABL Lender, and subject to, and in accordance with, the DIP Documents (as applicable), this Interim Order, and the Prepetition Intercreditor Agreement, the DIP Term Agent, the DIP ABL Lender, and any agent thereof, may enter upon any leased or licensed premises of the CA Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon, shall be entitled to all of the CA Debtors' rights and privileges as lessee or licensee, provided, however, that the DIP Term Agent (on behalf of the applicable DIP Term Lenders) and the ABL DIP Lender shall pay only rent and additional rent, fees, royalties, or other monetary obligations of the CA Debtors that first arise after the written notice referenced above from the DIP Term Agent and/or the DIP ABL Lender and that accrue during the period of such occupancy or use by DIP Term Agent and/or the DIP ABL Lender calculated on a per diem basis. For the avoidance of doubt, (a) all of the CA Debtors' obligations under any applicable lease or license shall not be affected, limited, or otherwise modified by the rights granted to the DIP Term Agent and the DIP ABL Lender

49

pursuant to this paragraph and (b) any affected landlords, lienholders, and/or licensors shall retain all remedies available under applicable non-bankruptcy law. Nothing herein shall require the CA Debtors, the DIP Term Agent, the DIP ABL Lender or the other DIP Secured Parties, to assume any lease under Bankruptcy Code section 365(a) as a precondition to the rights afforded to the DIP Term Agent, the DIP ABL Lender and the other DIP Secured Parties herein.

      30.    <u>Carve-Out</u>.

      (a)    As used in this Interim Order, the term "**Carve-Out**" means the sum of: (i) all fees required to be paid to the Clerk of this Court and to the U.S. Trustee under 28 U.S.C. § 1930(a) plus interest at the statutory rate (without regard to the Carve-Out Trigger Notice, as defined below); (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the Carve-Out Trigger Notice); (iii) to the extent allowed at any time, whether by interim or final compensation order, procedural order, or otherwise, all unpaid fees and expenses (including any monthly or success or transaction fee payable to estate professionals) (the "**Allowed Professional Fees**") incurred by persons or firms retained by the DIP Loan Parties pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**CA Debtor Professionals**") and, subject to the amounts set forth in the Budget, the Committee (if any) pursuant to section 328 or 1103 of the Bankruptcy Code (the "**Committee Professionals**" and, together with the CA Debtor Professionals, the "**Professional Persons**") at any time before or on the first business day following delivery by the DIP Term Agent or the DIP ABL Lender of a Carve-Out Trigger Notice, in each case for work attributable to or fairly allocated to the DIP Loan Parties rather than other Debtors, whether allowed by this Court before or after delivery of a Carve-Out Trigger Notice (the amounts set forth in clauses (i) through (iii), the "**Pre-Carve-Out Trigger Notice Cap**"); and (iv) Allowed

50

Professional Fees of Professional Persons in an aggregate amount not to exceed $500,000 incurred after the first business day following the date of delivery by the DIP Term Agent of the Carve-Out Trigger Notice (such date, the "**Trigger Date**"), allocated $400,000 to the Debtors Professionals and $100,000 to the Committee Professionals, to the extent allowed at any time, whether by interim order, procedural order, or otherwise; but excluding any "success" or "transaction" fees payable to any financial advisor or investment banker, (the amounts set forth in clause (iv) above and this clause (v) being the "**Post-Carve-Out Trigger Notice Cap**" and, together with the Pre-Carve-Out Trigger Notice Cap, the "**Carve-Out Cap**"); *provided* that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement, or compensation described in the Carve-Out Cap on any other grounds.

(b)    For purposes of the foregoing, "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the DIP Term Agent to the DIP Loan Parties, their lead restructuring counsel, the U.S. Trustee, counsel to the Committee (if any), the DIP ABL Lender and counsel to each of the DIP Term Agent, the DIP ABL Lender and the TX/PA DIP Agent, following the occurrence and during the continuation of an Event of Default (as defined herein) and acceleration of the obligations under either of the DIP Facilities, stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

(c)    On the day on which a Carve Out Trigger Notice is given by the DIP Term Agent to the DIP Loan Parties with a copy to the DIP ABL Lender  and its counsel and to counsel to the Committee (if any) (the "**Termination Declaration Date**"), the Carve-Out Trigger Notice shall constitute a demand to the DIP Loan Parties to utilize (i) first, all cash in the DIP Term Priority Accounts and DIP Additional Accounts, notwithstanding anything in the DIP Term Documents to the contrary, including with respect to the existence of a default or an Event

51

of Default, the failure of the CA Debtors to satisfy any or all of the conditions precedent for the withdrawal of funds from the DIP Term Priority Accounts and DIP Additional Accounts, including any milestone or entry of the Final Order, or any termination of the commitments under the DIP Term Facility, and (ii) second, to the extent the cash set forth in clause (i) is insufficient, any available cash thereafter generated by the CA Debtors from the sale of DIP Term Priority Collateral, and to deposit into the segregated account held by lead bankruptcy counsel for the DIP Loan Parties (the "**Escrow Account**") an amount equal to the Carve-Out Cap, less any amounts previously funded for Professional Persons at the times and in the amounts contemplated under the Budget, and hold in trust to pay such amounts benefiting from the Carve-Out.

(d)      The funds on deposit in the Escrow Account shall only be available to satisfy the obligations set forth in the definition of Carve-Out herein, and the DIP Term Agent, the DIP Term Lenders, and the Prepetition Term Secured Parties (x) shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of assets) of the CA Debtors to the extent necessary to fund the Escrow Account as provided above and (y) shall have a security interest only upon any residual amount in the Escrow Account available following satisfaction in cash in full of all obligations benefiting from the Carve-Out as further described in clause (f) below.

(e)      All funds in the Escrow Account shall be used first to pay all obligations benefitting from the Pre-Carve-Out Trigger Notice Cap, until paid in full, and then the obligations benefitting from the Post-Carve-Out Trigger Notice Cap.  If, after paying all amounts set forth in the definition of Carve-Out, the Escrow Account has not been reduced to zero, all remaining funds in the Escrow Account that are funded pursuant to paragraph 30(c) out of the

US-DOCS\121074909.8

6482443.2

proceeds of DIP Term Priority Collateral or the DIP Funding Account, shall be distributed to the DIP Term Agent on account of the DIP Term Loans.

(f)      Notwithstanding anything to the contrary in this Interim Order, the failure of the Escrow Account to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve-Out.  None of the DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender, or the CA Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Persons incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender, or the CA Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the CA Debtors have sufficient funds to pay such compensation or reimbursement.   Any payment or reimbursement made on or after the occurrence of the Trigger Date in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

(g)      Proceeds from the DIP Facilities not to exceed the Investigation Budget Amount (as defined below) may be used on account of professional fees and expenses of Committee Professionals in connection with the Investigation, which obligations will benefit from the Carve-Out in an amount not to exceed the Investigation Budget Amount to the extent unpaid as of the delivery of a Carve-Out Trigger Notice.

(h)      For the avoidance of doubt, if a DIP Repayment occurs or the DIP Facilities are otherwise terminated, this Interim Order shall remain in full force and effect, including with respect to the CA Debtors' use of Cash Collateral, the Carve-Out, and all related

53

provisions in respect thereof, and the Prepetition Term Agent shall assume any rights and obligations that the DIP Term Agent previously had with respect to the Carve-Out.

(i)     Notwithstanding anything to the contrary set forth in this Interim Order, none of the DIP ABL Liens, DIP ABL Superpriority Claims, the ABL Adequate Protection Liens or the ABL 507(b) Claims shall be subject or subordinate to the Carve-Out.

31.     <u>Limitations on Use of DIP Proceeds, Cash Collateral, and Carve-Out</u>.  Subject to the written consent of the DIP Term Agent and the DIP ABL Lender, no portion of the Carve-Out, the proceeds of any DIP Term Loans or DIP ABL Loans, or any Cash Collateral may be used to (or support any other party to) litigate, object to, contest, or challenge in any manner or raise any defenses to the debt, collateral position, liens, or claims of any of the DIP Term Lenders, the DIP Term Agent, the DIP ABL Lender, the TX/PA DIP Secured Parties, the CA Prepetition Secured Parties, or the TX/PA Prepetition Secured Parties, whether by challenging the validity, extent, amount, perfection, priority, or enforceability of the indebtedness under the DIP Facilities, the TX/PA DIP Facilities, the Prepetition Term Credit Agreement, the Prepetition ABL Credit Agreement, or the Prepetition Indentures, or the validity, extent, perfection, priority, or enforceability of any mortgage, security interest, or lien with respect thereto or any other rights or interests or replacement liens with respect thereto or any other rights or interests of any of the DIP Term Lenders, the DIP Term Agent, the DIP ABL Lender, the TX/PA DIP Secured Parties, the CA Prepetition Secured Parties, the TX/PA Prepetition Secured Parties, or by seeking to subordinate or recharacterize the DIP Facilities (or amounts outstanding thereunder), the TX/PA DIP Facilities, the Prepetition Term Credit Agreement (or amounts outstanding thereunder), the Prepetition ABL Credit Agreement (or amounts outstanding thereunder), or the Prepetition Indentures (or the amounts thereunder), or to disallow or avoid any claim, mortgage,

security interest, lien, or replacement lien or by asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against any of the DIP Term Lenders, the TX/PA DIP Lenders, the DIP Term Agent, the DIP ABL Lender, the TX/PA DIP Agent, the CA Prepetition Secured Parties, or the TX/PA Prepetition Secured Parties, or any of their respective officers, directors, agents, or employees; *provided, however,* that the Carve-Out and such collateral proceeds and loans under the DIP Documents may be used for allowed fees and expenses, in an amount not to exceed $75,000 (the "**Investigation Budget Amount**") incurred solely by a Committee (if appointed), in investigating (but not prosecuting or challenging) the Stipulations (the "**Investigation**") before the Challenge Deadline (as defined below).  In addition, none of the Carve-Out, proceeds of DIP Term Loans, proceeds of the DIP ABL Loans, nor any Cash Collateral shall be used in connection with (a) preventing, hindering or delaying any of the DIP Term Lenders', the DIP Term Agent's, the DIP ABL Lender's, or the CA Prepetition Secured Parties' enforcement or realization upon the DIP Collateral or the exercise of rights by the DIP Term Agent, the DIP ABL Lender, or the CA Prepetition Secured Parties once an Event of Default has occurred and is continuing, (b) using or seeking to use Cash Collateral or selling or otherwise disposing of the DIP Collateral other than as provided herein, (c) using or seeking to use any insurance proceeds related to the DIP Collateral without the consent of the DIP Term Agent, the DIP ABL Lender, or the CA Prepetition Secured Parties, as applicable; or (d) incurring Indebtedness (as defined in the DIP Term Credit Agreement and the ABL Credit Agreement) other than in accordance with the Budget or other than as permitted in the DIP Documents; *provided* that the foregoing limitations shall not prevent the DIP Loan Parties and their professionals, or any other party in interest, from being heard on whether an Event of Default has occurred and is continuing.

US-DOCS\121074909.8

6482443.2

32.    <u>Good Faith Under Section 364(e) of Bankruptcy Code; No Modification or Stay of Interim Order</u>.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court of competent jurisdiction, the DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender, and the CA Prepetition Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  Any such modification, amendment, or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim, or priority authorized or created hereby, unless such authorization and the incurring of such debt, or the granting of such priority or lien, is stayed pending appeal.

33.    <u>Payment of Fees and Expenses</u>.  The CA Debtors are authorized and directed to pay all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the DIP Term Agent, the DIP Term Lenders and the DIP ABL Lender in connection with the DIP Facilities, as provided in the DIP Documents, whether incurred before, on, or after the Petition Date.  Any time that professionals of the DIP Term Agent, the DIP Term Lenders and the DIP ABL Lender  seek payment of fees and expenses from the CA Debtors, each professional shall provide summary copies of its fee and expense statements or invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work-product doctrine) to the U.S. Trustee and counsel to the Committee (if

56

appointed) contemporaneously with the delivery of such fee and expense statements to the CA Debtors.  The CA Debtors, any Committee, or the U.S. Trustee may, within 10 days of receipt of a statement, dispute the payment of any portion of such invoiced fees and expenses (the "**Disputed Invoiced Fees**") by notifying the submitting party in writing setting forth the specific objections to the Disputed Invoiced Fees (to be followed by the filing with the Court, if necessary, of a motion or other pleading, with at least 10 days prior written notice to the submitting party of any hearing on such motion or other pleading).  If no objection is timely made to a statement, then the CA Debtors shall pay in full in cash such invoiced fees and expenses the following business day.  If an objection is timely made to a statement, the CA Debtors shall promptly pay in full in cash all such invoiced fees and expenses other than the Disputed Invoiced Fees.  Notwithstanding the foregoing, the CA Debtors are authorized and directed to pay on the Closing Date all reasonable and documented fees, costs, and out-of-pocket expenses of the DIP Term Agent, the DIP Term Lenders or the DIP ABL Lender incurred on or before such date without the need for any professional engaged by either of the DIP Term Agent, the DIP Term Lenders or the DIP ABL Lender to first deliver a copy of its invoice as provided for herein.  No attorney or advisor to either of the DIP Term Agent, the DIP Term Lenders or the DIP ABL Lender shall be required to file an application seeking compensation for services or reimbursement of expenses with this Court.  Subject to paragraph 37 herein, any and all fees, costs, and expenses paid before the Petition Date by any of the CA Debtors to the (a) the DIP Term Agent, the DIP Term Lenders or the DIP ABL Lender in connection with the DIP Facilities and (b) CA Prepetition Secured Parties in connection with the Chapter 11 Cases, are hereby approved in full.

34.     <u>Proofs of Claim</u>.  The DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender, and the CA Prepetition Secured Parties will not be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases for any claim allowed herein.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or Successor Cases to the contrary, each of the Prepetition Term Agent and the Prepetition ABL Lender is hereby authorized and entitled, in their sole discretion, to file a master proof of claim on behalf of the Prepetition Term Secured Parties and the Prepetition ABL Secured Party, as applicable, in each of the Chapter 11 Cases or Successor Cases.  Any proof of claim filed by the Prepetition Term Agent or the Prepetition ABL Lender shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition Term Secured Parties or the Prepetition ABL Secured Party, respectively.  The provisions of this paragraph 34 and each master proof of claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in the Chapter 11 Cases or to assert that the amount of its claim is different from that set forth on the applicable master proof of claim.  The master proofs of claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the CA Debtors to the applicable CA Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the applicable Prepetition Secured Party.

35.     <u>No Direct Responsibility for Fees or Disbursements</u>.  None of the DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender, or the CA Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases.

Nothing in this Interim Order, the Final Order, or otherwise shall be construed to obligate any of the DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender, or the CA Prepetition Secured Parties in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the DIP Loan Parties have sufficient funds to pay such compensation or reimbursement.

36.    <u>Payment of Compensation</u>.  So long as an unwaived Event of Default has not occurred, the CA Debtors shall be permitted to (a) make disbursements to the Escrow Account on account of amounts set forth in the Budget for Professional Persons at the times and in the amounts contemplated thereby, and (b) pay fees and expenses allowed and payable by final order (that has not been vacated or stayed, unless the stay has been vacated) under sections 328, 330, 331, and 363 of the Bankruptcy Code, as the same may be due and payable, in accordance with the DIP Documents and subject to the Budget, including from amounts held in the Escrow Account.

37.    <u>Effect of Stipulations on Third Parties</u>.

(a)    *Generally*.  The Stipulations shall be binding on the CA Debtors, any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee for any of the DIP Loan Parties or any other estate representative appointed in the Chapter 11 Cases or any Successor Cases) in all circumstances and for all purposes.  The Stipulations shall also be binding on all creditors and other parties in interest and all of their respective successors and assigns, including, without limitation, a Committee (if appointed) and any other person or entity acting or seeking to act on behalf of the DIP Loan Parties' estates in all circumstances and for all purposes, unless (i) the Committee or a party in interest (in each case, to the extent requisite standing is obtained pursuant to an order of this Court entered before the Challenge Deadline)

has timely commenced an appropriate proceeding or contested matter required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph 36) by the Challenge Deadline challenging any of the Stipulations (each such proceeding or contested matter, a "**Challenge**") and (ii) there is entered a final non-appealable order in favor of the plaintiff in any such timely filed Challenge; *provided* that any pleadings filed in any Challenge (or in any application to extend the Challenge Deadline) shall set forth with specificity the basis for such Challenge (and any Challenges not so specified before the Challenge Deadline shall be deemed forever, waived, released, and barred).  This Court may fashion any appropriate remedy following a successful Challenge.

(b)     If any such Challenge is timely and properly filed before the Challenge Deadline, the Stipulations shall nonetheless remain binding and preclusive (as provided in paragraph 37(a) hereof) on the Committee (if appointed) and on any other person or entity, the DIP Loan Parties and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the DIP Loan Parties in the Chapter 11 Cases or any Successor Cases), except to the extent that such Stipulations were expressly and successfully challenged by such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.  If any such Challenge is timely and properly filed before the Challenge Deadline and remains pending and the Chapter 11 Cases are converted to chapter 7, the chapter 7 trustee may continue to prosecute such Challenge on behalf of the CA Debtors' estates; *provided* that if the Challenge Deadline has elapsed and no timely and properly filed Challenge has been commenced either before or after conversion of the Chapter 11 Cases to chapter 7 cases, or any Challenge has been resolved before the conversion of the Chapter 11

US-DOCS\121074909.8

6482443.2

Cases to chapter 7 cases, the chapter 7 trustee shall be bound by the Stipulations or such resolution, as applicable; *provided further* that if a chapter 7 trustee is appointed before the expiration of the Challenge Deadline, such trustee shall have until the expiration of the Challenge Deadline to commence a Challenge.

(c)    The "**Challenge Deadline**" shall be 75 days after the entry of this Interim Order, as such deadline may be extended (x) subject to the terms of the this Interim Order, in writing before the expiration of the Challenge Deadline (which writing may be in the form of email by counsel) from time to time in the sole discretion of the Prepetition Term Agent (with respect to the Prepetition Term Liens and Prepetition Term Obligations or the adequate protection afforded to the Prepetition Term Secured Parties) and Prepetition ABL Lender (with respect to the Prepetition ABL Liens and Prepetition ABL Obligations or the adequate protection afforded to the Prepetition ABL Secured Party) or (y) by this Court for good cause shown upon an application for an extension filed and served by a party in interest, pursuant to an order entered before the expiration of the Challenge Deadline; *provided*, that an extension pursuant to the foregoing clause (y) shall only be applicable as to such party in interest and the particular Challenge set forth in such application.  Nothing in this Interim Order vests or confers on any entity (as defined in the Bankruptcy Code), including the Committee (if appointed) or any non-statutory committees appointed or formed in the Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the CA Debtors or their estates, including, without limitation, Challenges with respect to the Stipulations, and all rights to object to such standing are expressly reserved.

(d)    *Binding Effect*.    To the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such Challenge does not result in a final

61

and non-appealable judgment or order that is inconsistent with any of the Stipulations, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Stipulations shall, pursuant to this Interim Order, become irrevocably binding on any person, entity, or party in interest in the Chapter 11 Cases, as well as their successors and assigns, and in any Successor Case for all purposes and shall not be subject to further challenge or objection.  Notwithstanding anything to the contrary herein, if any Challenge is properly and timely commenced by a party in interest, the Stipulations shall nonetheless remain binding on all other parties in interest.  For the avoidance of doubt, initiation of a timely and procedurally proper Challenge shall preserve the Challenge only with respect to the party initiating such Challenge (and such Challenge shall be limited to the Challenge identified with specificity before the expiration of the Challenge Deadline).  To the extent any Challenge is timely and properly commenced and is unsuccessful, the CA Prepetition Secured Parties shall be entitled to, as adequate protection, payment of the related costs and expenses, including, but not limited to, reasonable and documented attorneys' fees, incurred in defending themselves against any unsuccessful Challenge.

38.    <u>No Third-Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

39.    <u>Section 506(c) Claims</u>.  Subject to entry of the Final Order, except to the extent of the Carve-Out, no costs or expenses of administration that have been or may be incurred in the Chapter 11 Cases at any time shall be charged against the DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender, the DIP Collateral, the Prepetition Term Agent, the Prepetition Term Lenders, the Prepetition ABL Lender, or the Prepetition Collateral pursuant to sections 105

or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Term Agent, the DIP ABL Lender, the Prepetition Term Agent, or the Prepetition ABL Lender, as applicable, and no such consent shall be implied from any action, inaction, or acquiescence by any party.

40.     <u>No Marshaling / Applications of Proceeds</u>.  Subject to entry of the Final Order, the DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender, the Prepetition Term Agent, the Prepetition Term Lenders, and the Prepetition ABL Lender shall at no time be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral.

41.     <u>Section 552(b)</u>.  Subject to entry of the Final Order, the Prepetition Term Agent, the Prepetition Term Lenders, the Prepetition ABL Agent, and the Prepetition ABL Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception thereunder shall not apply to any of them.

42.     <u>Collateral Rights</u>.  Until all DIP Obligations shall have been indefeasibly paid and satisfied in full in cash in accordance with the terms of the DIP Credit Agreements and the other Loan Documents, no other party shall foreclose on any DIP Collateral in respect of any junior lien or claim.

43.     <u>DIP Released Parties</u>.  Subject to entry of the Final Order, the CA Debtors hereby absolutely and unconditionally release and forever discharge and acquit the DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors,

63

successors and assigns, each in such capacity (collectively, the "**DIP Released Parties**") from any and all obligations and liabilities to the CA Debtors (and their successors and assigns) and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation, or by contract, of every nature and description, in each case, arising in connection with or relating to the DIP Facilities, the DIP Liens, or any of the DIP Documents; *provided*, that nothing herein shall relieve the DIP Released Parties from fulfilling their obligations under the DIP Documents and this Interim Order.

44.     <u>Limits on Lender Liability</u>.  Subject to entry of the Final Order (and, with respect to the Prepetition Documents and the Prepetition Secured Parties, subject to paragraph 36), nothing in this Interim Order, any of the DIP Documents, the Prepetition Documents, or any other documents related thereto, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender, or the CA Prepetition Secured Parties of any liability for any claims arising from any activities by the CA Debtors in the operation of their businesses or in connection with the administration of the Chapter 11 Cases or any Successor Cases.  The DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender, and the CA Prepetition Secured Parties shall not, solely by reason of having made loans under the DIP Facilities, authorizing the use of Cash Collateral or performing any act authorized by the DIP Documents, be deemed in control of the operations of the CA Debtors or

US-DOCS\121074909.8

6482443.2

to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the CA Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).  Nothing in this Interim Order or the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender or any of the CA Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the CA Debtors.

45.     Insurance Proceeds and Policies.   Upon entry of this Interim Order and to the fullest extent provided by applicable law, the DIP Term Agent (on behalf of the DIP Term Lenders), the DIP ABL Lender, the Prepetition Term Agent (on behalf of the Prepetition Term Lenders), and the Prepetition ABL Lender, shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the CA Debtors that in any way relates to the DIP Collateral.

46.     Joint and Several Liability.   Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the CA Debtors' estates, it being understood, however, that the DIP Loan Parties shall be jointly and severally liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and of the DIP Documents.

47.     Rights Preserved.   Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, subject to, as applicable, the Prepetition Documents, the Prepetition Intercreditor Agreement, and the DIP Documents: (a) the DIP Term Agent's, DIP Term Lenders', the DIP

65

ABL Lender's, and the CA Prepetition Secured Parties' rights to seek any other or supplemental relief; (b) any of the rights of any of the DIP Term Agent, DIP Term Lenders, the DIP ABL Lender, and the CA Prepetition Secured Parties under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay imposed by section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender, or the CA Prepetition Secured Parties.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the CA Debtors', a Committee's (if appointed), or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Interim Order.

48.    No Waiver by Failure to Seek Relief.  Subject to the Prepetition Intercreditor Agreement, the failure of the DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender, or the CA Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Documents, the Prepetition Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender, or the CA Prepetition Secured Parties.

US-DOCS\121074909.8

6482443.2

49.    <u>Binding Effect of Interim Order</u>.  Immediately upon entry on the docket of this Court, the terms and provisions of this Interim Order shall become binding upon the CA Debtors, the DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender, the CA Prepetition Secured Parties, all other creditors of any of the CA Debtors, any Committee, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases, any Successor Cases, or upon dismissal of any Chapter 11 Case or Successor Case.

50.    <u>No Modification of Interim Order</u>.  Until and unless the DIP Obligations and the Prepetition Obligations (other than contingent obligations with respect to then unasserted claims) have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facilities which survive such discharge by their terms), and all commitments to extend credit under the DIP Facilities have been terminated, the CA Debtors shall not seek or consent to, directly or indirectly, any modification, stay, vacatur, or amendment to this Interim Order without the prior written consent of the DIP Term Agent, the DIP ABL Lender, the Prepetition Term Agent, and the Prepetition ABL Lender, which consent shall be granted subject to the terms of the Prepetition Intercreditor Agreement and this Interim Order, as applicable, and no such consent shall be implied by any action or inaction of the DIP Term Agent, the DIP ABL Lender, or the Prepetition Term Agent or the Prepetition ABL Lender.

51.    <u>Intercreditor Agreements</u>.  The CA Debtors, the DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender, and the CA Prepetition Secured Parties, as applicable, shall each be bound by, and the DIP Facilities shall in all respects be governed by, and subject to, all the terms, provisions, conditions and restrictions set forth in the Prepetition Intercreditor Agreement, except as otherwise modified by this Interim Order, including the following:

67

(a)      in the event that Proceeds of Collateral are received from (or are otherwise attributable to the value of a sale or other disposition (whether voluntary or involuntary) ("**Disposition**") of Collateral that directly or indirectly involves some or all of the ABL Priority Collateral and some or all of the Term Loan Priority Collateral, the portion of such Proceeds that shall be allocated as Proceeds of ABL Priority Collateral for purposes of this Interim Order shall be an amount not less than the sum of (i) the book value (determined in accordance with GAAP as applied thereto for purposes of the DIP ABL Credit Facility) of any ABL Priority Collateral consisting of inventory that is the subject of such Disposition, determined as of the date of such Disposition, (ii) the book value (determined in accordance with GAAP as applied thereto for purposes of the DIP ABL Credit Facility) of any ABL Priority Collateral consisting of accounts and other payment intangibles that are the subject of such Disposition, determined as of the date of such Disposition, and (iii) the greater of the book value (determined in accordance with GAAP as applied thereto for purposes of the DIP ABL Credit Facility) or Hard Costs (as defined in the Prepetition ABL Credit Agreement) with respect to the RCF Priority Equipment (as defined in the Prepetition Intercreditor Agreement), determined as of the date of such Disposition; and

(b)      In the event that the DIP Term Agent agrees to extend any sale milestone set forth in any of Section 5.22(b)-(h) of the DIP Term Loan Agreement from the date of such milestone set forth in the DIP Term Loan Agreement (as in effect on the date hereof), DIP ABL Lender shall consent to the same extension of the same sale milestone set forth in Section 4.4(c)-(i) of the Ratification Agreement (as in effect on the date hereof) that corresponds to such milestone in the DIP Term Loan Agreement, as applicable; *provided,* that, (i) the aggregate number of days of all of such extensions shall not exceed thirty (30) days from the date of such

68

milestones as set forth in the Ratification Agreement (as in effect on the date hereof) and (ii) the Excess Availability at each of CL Industries and Pinnpack shall, during each such extension period, be in an amount not less than $1.00 at any time.

52.     Interim Order Controls.  In the event of any inconsistency between the terms and conditions of the DIP Documents and this Interim Order, the provisions of this Interim Order shall control.

53.     Discharge.  Subject to entry of the Final Order, the DIP Obligations and the obligations of the CA Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted), on or before the effective date of such plan of reorganization, or each of the DIP Term Agent, the DIP ABL Lender, the DIP Term Lenders, the Prepetition Term Agent, and the Prepetition ABL Lender, as applicable, has otherwise agreed in writing.

54.     Survival.  Subject to entry of the Final Order (in the case of clause (a) below), the provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or any Successor Cases.  The terms and provisions of this Interim Order shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases

69

notwithstanding the entry of any orders described in clauses (a) (subject to entry of the Final Order) and clauses (b)-(d) above, and all claims, liens, security interests, and other protections granted to the DIP Term Agent, the DIP Term Lenders, the DIP ABL Lender, and the CA Prepetition Secured Parties pursuant to this Interim Order and the DIP Documents shall maintain their validity and priority as provided by this Interim Order until:  (i) in respect of the DIP Facilities, all the DIP Obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted); and (ii) in respect of the Prepetition Term Facility, all of the Prepetition Term Obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted); and (iii) in respect of the Prepetition ABL Facility, all of the Prepetition ABL Obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted).  Subject to entry of the Final Order, the terms and provisions concerning the indemnification of the DIP Term Agent, the DIP Term Lenders, and the DIP ABL Lender shall continue in the Chapter 11 Cases, in any Successor Cases, following dismissal of the Chapter 11 Cases or any Successor Cases, following termination of the DIP Documents and the indefeasible repayment of the DIP Obligations.

55.    Payments Held in Trust.  Except as expressly permitted in this Interim Order or the DIP Credit Agreements, and subject to the Carve-Out, in the event that any person or entity receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral, or receives any other payment with respect thereto from any other source before all DIP Obligations have been satisfied in full in accordance with the DIP Credit Agreements, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Term

70

Agent, the DIP Term Lenders, and the DIP ABL Lender and shall immediately turn over such proceeds to the DIP Term Agent or the DIP ABL Lender, or as otherwise instructed by this Court, for application in accordance with the DIP Credit Agreements, the Intercreditor Agreement, and this Interim Order.

56.    <u>Replacement Agent</u>.   Notwithstanding the resignation or replacement of any collateral agent or administrative agent, including any of the Prepetition Agents, the Prepetition Liens on the Prepetition Collateral shall remain continuously and properly perfected, notwithstanding the transfer of control, possession, or title of any Prepetition Collateral to a new collateral or administrative agent.

57.    <u>Headings</u>.   Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

58.    <u>Final Hearing</u>.   The Final Hearing to consider entry of the Final Order and final approval of the DIP Facilities is scheduled for **[ ● ], 2021, at [ ● ] (ET)** before the Honorable [ ● ], United States Bankruptcy Judge at the United States Bankruptcy Court for the District of Delaware.   On or before [ ● ], 2021, the CA Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "**<u>Final Hearing Notice</u>**"), together with copies of this Interim Order and the Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed before such date a request for notices with this Court; (c) the Debtors, c/o Force Ten Partners LLC, 20341 Southwest Birch Street, Suite 220, Newport Beach, CA 92660 (Attn: Brian Weiss (bweiss@force10partners.com)); (d) proposed counsel to the Debtors, (i) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801) (Attn: James E. O'Neill (joneill@pszjlaw.com) and Steven W. Golden,

US-DOCS\121074909.8

6482443.2

(sgolden@pszjlaw.com)) and (ii) Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067-4003 (Attn: Jeffrey W. Dulberg (jdulberg@pszjlaw.com)); (e) counsel to the DIP Term Agent, DIP Term Lenders and Prepetition Term Secured Parties, Latham & Watkins LLP, 355 South Grand Avenue, Suite 100, Los Angeles, CA 90071-3104 (Attn: Jeff Bjork (jeff.bjork@lw.com)), Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 6061(Attn: Jim Ktsanes (james.ktsanes@lw.com)), Latham & Watkins LLP, 885 Third Avenue, New York, NY (Attn: Andrew Ambruoso (andrew.ambruoso@lk.com)); (f) counsel to the DIP ABL Lender and Prepetition ABL Secured Parties, Otterbourg, P.C., 230 Park Avenue, New York, NY 10169-0075 (Attn: Andrew M. Kramer (akramer@otterbourg.com) and David E. Morse (dmorse@otterbourg.com)); (g) the Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Joseph McMahon (joseph.mcmahon@usdoj.gov)); (h) counsel for a Committee (if appointed); (i) the Securities and Exchange Commission; (j) the Internal Revenue Service, and (k) counsel to the TX/PA DIP Agent and the Prepetition Trustees, (i) Arnold & Porter Kaye Scholer LLP, 70 W. Madison Street, Suite 4200, Chicago, IL 60602 (Attn: Michael D. Messersmith (michael.messersmith@arnoldporter.com) and Sarah Gryll (sarah.gryll@arnoldporter.com)) and (ii) Troutman Pepper Hamilton Sanders LLP, 1313 N. Market Street, Suite 5100, Wilmington, Delaware 19801 (Attn: David Stratton (david.stratton@troutman.com)).    The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of this Court no later than on **[ ● ], 2021, at 4:00 p.m. (EST)**, which objections shall be served so as to be received on or before such date by:

[ ● ].  In the event no objections to entry of the Final Order on the Motion are timely received, the Court may enter such Final Order without need for the Final Hearing.

59.    <u>Retention of Jurisdiction</u>.  This Court has and will retain jurisdiction to enforce the terms of, any and all matters arising from or related to the DIP Facilities and this Interim Order.

US-DOCS\121074909.8

6482443.2

## EXHIBIT A

**CA Debtors**

CarbonLite Holdings, LLC
CarbonLITE Sub-Holdings LLC
CarbonLITE PI Holdings LLC
CarbonLITE Industries  LLC
CarbonLITE PinnPack LLC
PinnPack Packaging LLC
Pinnpack P, LLC

**EXHIBIT B**

**Lien Priority Ranking**

| Priority On DIP Collateral | Term Priority Collateral | ABL Priority Collateral | Unencumbered Collateral (including Avoidance Action Proceeds) | Other Encumbered Collateral |
|---|---|---|---|---|
| 1 | Carve-Out | DIP ABL Liens | DIP Term Liens (subject to Carve-Out); DIP ABL Liens | Other Liens |
| 2 | DIP Term Liens | Prepetition ABL Liens; ABL Adequate Protection Liens | Term Adequate Protection Liens; ABL Adequate Protection Liens | DIP Term Liens (subject to Carve-Out);  DIP ABL Liens |
| 3 | Prepetition Term Liens; Term Adequate Protection Liens | Carve-Out | | Prepetition Term Liens; Term Adequate Protection Liens; Prepetition ABL Liens; ABL Adequate Protection Liens |
| 4 | DIP ABL Liens | DIP Term Liens | | |
| 5 | Prepetition ABL Liens; ABL Adequate Protection Liens | Prepetition Term Liens; Term Adequate Protection Liens | | |

## SCHEDULE 1

**Initial Budget**

**CarbonLITE Industries, LLC**

| In US$ unless otherwise noted / Week Ending | Week 1 03/14/21 | Week 2 03/21/21 | Week 3 03/28/21 | Week 4 04/04/21 | Week 5 04/11/21 | Week 6 04/18/21 | Week 7 04/25/21 | Week 8 05/02/21 | Week 9 05/09/21 | Week 10 05/16/21 | Week 11 05/23/21 | Week 12 05/30/21 | Week 13 06/06/21 | Week 14 06/13/21 | Week 15 06/20/21 | Week 16 06/27/21 | Week 17 07/04/21 | Week 18 07/11/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts** | | | | | | | | | | | | | | | | | | |
| Collections | 31,503 | 0 | 226,468 | 1,626,516 | 49,854 | 565,689 | 0 | 2,464,571 | 734,244 | 232,000 | 0 | 3,600,912 | 556,452 | 0 | 232,000 | 0 | 5,169,895 | 0 |
| Application of Customer Deposit | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 31,503 | 0 | 226,468 | 1,626,516 | 49,854 | 565,689 | 0 | 2,464,571 | 734,244 | 232,000 | 0 | 3,600,912 | 556,452 | 0 | 232,000 | 0 | 5,169,895 | 0 |
| **Manufacturing Expenditures** | | | | | | | | | | | | | | | | | | |
| Raw Materials | 298,921 | 298,921 | 298,921 | 325,762 | 345,894 | 345,894 | 345,894 | 345,894 | 345,894 | 345,894 | 345,894 | 345,894 | 345,894 | 345,894 | 345,894 | 345,894 | 345,894 | 345,894 |
| Flake Purchases | 0 | 0 | 0 | 19,879 | 34,789 | 34,789 | 34,789 | 34,789 | 82,362 | 201,294 | 201,294 | 201,294 | 201,294 | 292,003 | 307,122 | 307,122 | 307,122 | 307,122 |
| Chemicals | 27,842 | 27,842 | 27,842 | 34,458 | 39,421 | 39,421 | 39,421 | 42,404 | 49,862 | 49,862 | 49,862 | 49,862 | 55,550 | 56,498 | 56,498 | 56,498 | 56,498 | 56,498 |
| Other Manufacturing | 42,155 | 42,155 | 42,155 | 143,843 | 59,686 | 59,686 | 59,686 | 155,873 | 75,495 | 75,495 | 75,495 | 75,495 | 175,777 | 85,543 | 85,543 | 85,543 | 177,213 | 85,543 |
| Freight (In & Out) | 29,364 | 29,364 | 29,364 | 36,342 | 41,575 | 41,575 | 41,575 | 44,722 | 52,587 | 52,587 | 52,587 | 52,587 | 58,587 | 59,586 | 59,586 | 59,586 | 59,586 | 59,586 |
| | 398,282 | 398,282 | 398,282 | 560,285 | 521,365 | 521,365 | 521,365 | 671,254 | 725,133 | 725,133 | 725,133 | 725,133 | 927,812 | 854,643 | 854,643 | 854,643 | 946,313 | 854,643 |
| **Operating Expenditures** | | | | | | | | | | | | | | | | | | |
| Payroll, taxes, & 401k | 127,827 | 293,885 | (9,578) | 293,885 | 127,827 | 293,885 | (9,578) | 293,885 | 127,827 | 293,885 | 127,827 | 156,480 | 127,827 | 293,885 | 127,827 | 156,480 | 127,827 | 293,885 |
| Health Insurance | 0 | 119,139 | 0 | 0 | 0 | 0 | 119,139 | 0 | 0 | 0 | 119,139 | 0 | 0 | 0 | 0 | 119,139 | 0 | 0 |
| Facility Rent and Related | 0 | 0 | 0 | 310,847 | 0 | 0 | 0 | 259,786 | 0 | 0 | 0 | 0 | 259,786 | 0 | 0 | 0 | 259,786 | 0 |
| Utilities | 0 | 387,422 | 0 | 0 | 0 | 387,422 | 0 | 0 | 0 | 511,422 | 0 | 0 | 0 | 0 | 511,422 | 0 | 0 | 0 |
| Business Insurance | 0 | 33,345 | 0 | 0 | 0 | 33,345 | 0 | 0 | 0 | 33,345 | 0 | 0 | 0 | 0 | 33,345 | 0 | 0 | 0 |
| Other G&A | 44,752 | 44,752 | 44,752 | 44,752 | 44,752 | 44,752 | 44,752 | 44,752 | 44,752 | 44,752 | 44,752 | 44,752 | 44,752 | 44,752 | 44,752 | 44,752 | 44,752 | 44,752 |
| HPC Management Fee | 0 | 33,959 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 33,959 | 0 | 0 | 0 | 0 | 33,959 | 0 | 0 | 0 |
| | 172,579 | 912,502 | 35,174 | 649,484 | 172,579 | 793,363 | 154,312 | 598,423 | 172,579 | 917,363 | 291,717 | 201,232 | 432,364 | 338,637 | 751,305 | 320,370 | 432,364 | 338,637 |
| **Capital Expenditures** | | | | | | | | | | | | | | | | | | |
| PP&E (Maintenance) | 0 | 0 | 83,333 | 0 | 0 | 0 | 83,333 | 0 | 0 | 0 | 0 | 0 | 83,333 | 0 | 0 | 0 | 83,333 | 0 |
| PP&E (Expansion) | 0 | 0 | 350,000 | 2,143,260 | 0 | 0 | 500,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 0 | 433,333 | 2,143,260 | 0 | 0 | 583,333 | 0 | 0 | 0 | 0 | 0 | 83,333 | 0 | 0 | 0 | 83,333 | 0 |
| **Restructuring** | | | | | | | | | | | | | | | | | | |
| Vendor and Utility Deposits | 1,419,028 | 0 | 0 | 0 | 511,422 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 503b9 Claims | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Cures | 317,406 | 0 | 0 | 0 | 0 | 0 | 0 | 336,300 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Force 10 Partners | 38,889 | 38,889 | 38,889 | 38,889 | 38,889 | 38,889 | 38,889 | 38,889 | 38,889 | 38,889 | 38,889 | 38,889 | 38,889 | 38,889 | 38,889 | 38,889 | 38,889 | 38,889 |
| Pachulski Stang Ziehl & Jones LLP | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 |
| Jefferies | 170,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 |
| Reed Smith | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 |
| UCC Counsel | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 |
| UCC Financial Advisor | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 |
| Tax Advisors | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Noticing Agent | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 |
| Latham & Watkins LLP (Legal Orion) | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 |
| Alix Partners (FA Orion) | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 |
| Bank Leumi (Legal & FA) | 0 | 0 | 0 | 0 | 0 | 112,500 | 0 | 0 | 0 | 112,500 | 0 | 0 | 0 | 0 | 112,500 | 0 | 0 | 112,500 |
| U.S. Trustee Fee | 0 | 0 | 0 | 0 | 0 | 56,416 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 210,129 |
| | 2,147,443 | 246,009 | 246,009 | 246,009 | 757,431 | 414,925 | 246,009 | 582,309 | 246,009 | 358,509 | 246,009 | 246,009 | 250,696 | 250,696 | 363,196 | 250,696 | 246,009 | 429,226 |
| **Cash Flow Before Financing** | (2,686,801) | (1,556,793) | (886,329) | (1,972,522) | (1,401,521) | (1,163,964) | (1,505,019) | 612,585 | (409,477) | (1,769,005) | (1,262,859) | 2,345,205 | (1,054,421) | (1,443,977) | (1,737,144) | (1,509,043) | 3,545,209 | (1,622,506) |
| **Financing Cash Flow** | | | | | | | | | | | | | | | | | | |
| Bank Leumi Interest Payments | (135,000) | 0 | 0 | (42,217) | 0 | 0 | 0 | (58,807) | 0 | 0 | 0 | 0 | (76,212) | 0 | 0 | 0 | (85,124) | (168,799) |
| DIP Interest Payments & Fees | (116,417) | (2,310) | 0 | (242,290) | 0 | (2,310) | 0 | (72,160) | 0 | (2,310) | 0 | 0 | (78,767) | 0 | (2,310) | 0 | (86,304) | (34,471) |
| Bank Leumi Line of Credit Activity (Borrow)/Repay | (674,931) | (548,021) | (574,798) | (382,300) | (994,659) | (775,049) | (336,589) | (817,425) | 495,883 | (412,708) | (839,615) | (1,036,815) | 2,023,960 | (1,206,418) | (1,175,744) | (978,544) | (1,058,254) | 2,989,158 |
| **Change in Cash** | (2,263,287) | (1,011,082) | (311,532) | (1,874,728) | (406,862) | (391,225) | (1,168,430) | 1,299,044 | (905,359) | (1,358,607) | (423,244) | 3,382,020 | (3,233,359) | (237,559) | (563,711) | (530,500) | 4,432,036 | (4,814,932) |
| **DIP Loan Disbursements from DIP Funding Account** | 2,113,287 | 1,011,082 | 311,532 | 1,874,728 | 406,862 | 391,225 | 1,168,430 | 0 | 0 | 964,925 | 423,244 | 0 | 0 | 88,897 | 563,711 | 530,500 | 0 | 382,896 |
| **Beginning Cash** | 300,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 1,449,042 | 543,682 | 150,000 | 150,000 | 3,532,020 | 298,662 | 150,000 | 150,000 | 150,000 | 4,582,036 |
| **Ending Cash** | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 1,449,042 | 543,682 | 150,000 | 150,000 | 3,532,020 | 298,662 | 150,000 | 150,000 | 150,000 | 4,582,036 | 150,000 |

**PinnPack Packaging, LLC**

| In US$ unless otherwise noted / Week Ending | Week 1 03/14/21 | Week 2 03/21/21 | Week 3 03/28/21 | Week 4 04/04/21 | Week 5 04/11/21 | Week 6 04/18/21 | Week 7 04/25/21 | Week 8 05/02/21 | Week 9 05/09/21 | Week 10 05/16/21 | Week 11 05/23/21 | Week 12 05/30/21 | Week 13 06/06/21 | Week 14 06/13/21 | Week 15 06/20/21 | Week 16 06/27/21 | Week 17 07/04/21 | Week 18 07/11/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts** | | | | | | | | | | | | | | | | | | |
| Collections | 257,376 | 524,659 | 648,294 | 582,455 | 325,943 | 249,270 | 1,097,595 | 1,057,864 | 677,554 | 844,960 | 775,747 | 757,587 | 794,328 | 984,510 | 652,805 | 823,620 | 811,146 | 811,146 |
| | 257,376 | 524,659 | 648,294 | 582,455 | 325,943 | 249,270 | 1,097,595 | 1,057,864 | 677,554 | 844,960 | 775,747 | 757,587 | 794,328 | 984,510 | 652,805 | 823,620 | 811,146 | 811,146 |
| **Manufacturing Expenditures** | | | | | | | | | | | | | | | | | | |
| Raw Materials | 315,556 | 338,488 | 245,448 | 338,801 | 302,721 | 303,767 | 310,171 | 394,756 | 261,753 | 330,245 | 336,697 | 325,243 | 251,727 | 315,672 | 329,583 | 258,665 | 377,944 | 297,603 |
| Other Manufacturing | 56,740 | 60,863 | 44,134 | 111,047 | 54,432 | 54,620 | 55,772 | 121,109 | 47,066 | 59,381 | 60,541 | 58,482 | 95,391 | 56,761 | 59,262 | 46,510 | 118,086 | 53,513 |
| Freight (In & Out) | 71,284 | 76,465 | 55,447 | 76,535 | 68,385 | 68,621 | 70,068 | 89,176 | 59,130 | 74,602 | 76,060 | 73,473 | 56,865 | 71,311 | 74,453 | 58,433 | 85,378 | 67,229 |
| | 443,580 | 475,816 | 345,029 | 526,384 | 425,538 | 427,009 | 436,010 | 605,041 | 367,949 | 464,228 | 473,298 | 457,197 | 403,982 | 443,744 | 463,298 | 363,608 | 581,407 | 418,344 |
| **Operating Expenditures** | | | | | | | | | | | | | | | | | | |
| Payroll, taxes, & 401k | 156,498 | 326,843 | 208,306 | 264,143 | 156,498 | 299,143 | 208,306 | 264,143 | 156,498 | 299,143 | 156,498 | 315,950 | 156,498 | 264,143 | 191,498 | 315,950 | 156,498 | 264,143 |
| Health Insurance | 0 | 63,600 | 0 | 0 | 0 | 63,600 | 0 | 0 | 0 | 63,600 | 0 | 0 | 0 | 63,600 | 0 | 0 | 63,600 | 0 |
| Facility Rent and Related | 0 | 0 | 0 | 123,059 | 0 | 0 | 0 | 123,059 | 0 | 0 | 0 | 123,059 | 0 | 0 | 0 | 123,059 | 0 | 0 |
| Utilities | 0 | 219,000 | 0 | 0 | 0 | 219,000 | 0 | 0 | 0 | 219,000 | 0 | 0 | 0 | 0 | 219,000 | 0 | 0 | 0 |
| Business Insurance | 0 | 10,471 | 0 | 0 | 0 | 10,471 | 0 | 0 | 0 | 10,471 | 0 | 0 | 0 | 0 | 10,471 | 0 | 0 | 0 |
| Other G&A | 62,847 | 62,847 | 62,847 | 62,847 | 62,847 | 62,847 | 62,847 | 62,847 | 62,847 | 62,847 | 62,847 | 62,847 | 62,847 | 62,847 | 62,847 | 62,847 | 62,847 | 62,847 |
| HPC Management Fee | 0 | 20,360 | 0 | 0 | 0 | 20,360 | 0 | 0 | 0 | 20,360 | 0 | 0 | 0 | 0 | 20,360 | 0 | 0 | 0 |
| | 219,346 | 703,121 | 271,153 | 450,049 | 219,346 | 611,821 | 334,753 | 450,049 | 219,346 | 611,821 | 282,946 | 378,797 | 342,405 | 326,990 | 504,177 | 442,397 | 342,405 | 326,990 |
| **Capital Expenditures** | | | | | | | | | | | | | | | | | | |
| PP&E (Maintenance) | 0 | 41,667 | 0 | 0 | 0 | 41,667 | 0 | 0 | 0 | 41,667 | 0 | 0 | 0 | 0 | 41,667 | 0 | 0 | 0 |
| PP&E (Expansion) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | 0 | 41,667 | 0 | 0 | 0 | 41,667 | 0 | 0 | 0 | 41,667 | 0 | 0 | 0 | 0 | 41,667 | 0 | 0 | 0 |
| **Restructuring** | | | | | | | | | | | | | | | | | | |
| Vendor and Utility Deposits | 631,111 | 0 | 0 | 0 | 219,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 503b9 Claims | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Cures | 563,553 | 0 | 0 | 0 | 0 | 0 | 0 | 129,613 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Force 10 Partners | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 |
| Pachulski Stang Ziehl & Jones LLP | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 |
| Jefferies | 140,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 0 |
| Reed Smith | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 2,941 | 0 |
| UCC Counsel | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 11,765 | 0 |
| UCC Financial Advisor | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 5,882 | 4,688 | 4,688 | 4,688 | 4,688 | 0 |
| Tax Advisors | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Noticing Agent | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 | 5,208 |
| Latham & Watkins LLP (Legal Orion) | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 95,294 | 0 |
| Alix Partners (FA Orion) | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 17,647 | 0 |
| Bank Leumi (Legal & FA) | 0 | 0 | 0 | 0 | 0 | 112,500 | 0 | 0 | 0 | 112,500 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 112,500 |
| U.S. Trustee Fee | 0 | 0 | 0 | 0 | 0 | 47,087 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 18,577 |
| | 1,574,284 | 244,620 | 244,620 | 244,620 | 463,620 | 404,207 | 244,620 | 374,233 | 244,620 | 357,120 | 244,620 | 244,620 | 249,308 | 249,308 | 361,808 | 249,308 | 244,620 | 236,286 |
| **Cash Flow Before Financing** | (1,979,834) | (940,564) | (212,508) | (638,598) | (782,560) | (1,235,433) | 82,212 | (371,458) | (154,361) | (629,876) | (225,116) | (323,028) | (201,367) | (35,532) | (718,144) | (231,693) | (357,287) | (170,474) |
| **Financing Cash Flow** | | | | | | | | | | | | | | | | | | |
| Bank Leumi Interest Payments & Fees | (50,000) | 0 | 0 | (28,522) | 0 | 0 | 0 | (35,116) | 0 | 0 | 0 | 0 | 0 | (32,966) | 0 | 0 | (32,166) | (61,423) |
| DIP Interest Payments & Fees | (93,583) | (1,857) | 0 | (194,766) | 0 | (1,857) | 0 | (58,006) | 0 | (1,857) | 0 | 0 | (63,317) | 0 | (1,857) | 0 | (69,376) | (27,710) |
| Bank Leumi Line of Credit Activity (Borrow)/Repay | (306,525) | (450,169) | (271,591) | 30,731 | (223,129) | (364,678) | (432,069) | 275,432 | 62,351 | 21,037 | 18,139 | (54,369) | (45,525) | 141,550 | 167,648 | (143,790) | 151,740 | (111,720) |
| **Change in Cash** | (1,816,892) | (492,252) | 59,083 | (892,617) | (559,431) | (872,612) | 514,281 | (740,013) | (216,712) | (652,770) | (243,255) | (268,659) | (252,124) | (177,082) | (887,649) | (87,903) | (610,569) | (147,888) |
| **DIP Loan Disbursements from DIP Funding Account** | 1,796,050 | 492,252 | 0 | 833,533 | 559,431 | 872,612 | 0 | 225,733 | 216,712 | 652,770 | 243,255 | 268,659 | 252,124 | 177,082 | 887,649 | 87,903 | 610,569 | 147,888 |
| **Beginning Cash** | 170,842 | 150,000 | 150,000 | 209,083 | 150,000 | 150,000 | 150,000 | 664,281 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 |
| **Ending Cash** | 150,000 | 150,000 | 209,083 | 150,000 | 150,000 | 150,000 | 664,281 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 |

**CA DIP Term Loan**

| In US$ unless otherwise noted / Week Ending | Total | Week 1 03/14/21 | Week 2 03/21/21 | Week 3 03/28/21 | Week 4 04/04/21 | Week 5 04/11/21 | Week 6 04/18/21 | Week 7 04/25/21 | Week 8 05/02/21 | Week 9 05/09/21 | Week 10 05/16/21 | Week 11 05/23/21 | Week 12 05/30/21 | Week 13 06/06/21 | Week 14 06/13/21 | Week 15 06/20/21 | Week 16 06/27/21 | Week 17 07/04/21 | Week 18 07/11/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CA DIP - Total** | Total | | | | | | | | | | | | | | | | | | |
| DIP Upfront Fee | (600,000) | (210,000) | - | - | (390,000) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| (-) Admin Fee | (16,667) | | (4,167) | | | | (4,167) | | | | (4,167) | | | | | (4,167) | | | - |
| (+) DIP Term Loan Advances* | 18,500,000 | 7,000,000 | - | - | 8,000,000 | - | - | - | - | - | - | - | - | - | 3,500,000 | - | - | - | - |
| (-) DIP Interest | (537,167) | | | - | (47,056) | - | | - | (130,167) | - | | - | - | (142,083) | | - | - | (155,681) | (62,181) |
| **CA DIP Financing Cash Flows** | 17,346,167 | 6,790,000 | (4,167) | - | 7,562,944 | - | (4,167) | - | (130,167) | - | (4,167) | - | - | (142,083) | 3,500,000 | (4,167) | - | (155,681) | (62,181) |
| | | | | | | | | | | | | | | | | | | | |
| **Pro Rata Allocation by Plant** | Total | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | |
| **Riverside Allocation of CA DIP** | | | | | | | | | | | | | | | | | | | |
| DIP Upfront Fee | (332,621) | (116,417) | - | | (216,204) | - | - | | | | - | | | - | - | - | | - | - |
| (-) Admin Fee | (9,239) | | (2,310) | - | | | (2,310) | | | | (2,310) | | | | | (2,310) | | | - |
| (+) DIP Term Advances* | 10,255,821 | 3,880,581 | - | - | 4,434,949 | - | - | | - | | - | | | - | 1,940,290 | - | | - | - |
| (-) DIP Interest | (297,788) | | - | - | (26,086) | - | | - | (72,160) | - | | - | - | (78,767) | | - | - | (86,304) | (34,471) |
| **Riverside - Allocated CA DIP Fin. CF** | 9,616,171 | 3,764,163 | (2,310) | - | 4,192,660 | - | (2,310) | - | (72,160) | - | (2,310) | - | - | (78,767) | 1,940,290 | (2,310) | - | (86,304) | (34,471) |
| | | | | | | | | | | | | | | | | | | | |
| **PinnPack Allocation of CA DIP** | | | | | | | | | | | | | | | | | | | |
| DIP Upfront Fee | (267,379) | (93,583) | - | | (173,796) | - | - | | | | - | | | - | - | - | | - | - |
| (-) Admin Fee | (7,427) | | (1,857) | - | | | (1,857) | | | | (1,857) | | | | | (1,857) | | | - |
| (+) DIP Term Advances* | 8,244,179 | 3,119,419 | - | - | 3,565,051 | - | - | | - | | - | | | - | 1,559,710 | - | | - | - |
| (-) DIP Interest | (229,378) | | - | - | (20,969) | - | | - | (58,006) | - | | - | - | (63,317) | | - | - | (69,376) | (27,710) |
| **PinnPack - Allocated CA DIP Fin. CF** | 7,729,995 | 3,025,837 | (1,857) | - | 3,370,285 | - | (1,857) | - | (58,006) | - | (1,857) | - | - | (63,317) | 1,559,710 | (1,857) | - | (69,376) | (27,710) |

*To the DIP Funding Account, to be disbursed as needed per these budgets for operations

| | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**CarbonLITE Industries, LLC - Weekly Sales and Pounds Sold**

| | Week 1 03/14/21 | Week 2 03/21/21 | Week 3 03/28/21 | Week 4 04/04/21 | Week 5 04/11/21 | Week 6 04/18/21 | Week 7 04/25/21 | Week 8 05/02/21 | Week 9 05/09/21 | Week 10 05/16/21 | Week 11 05/23/21 | Week 12 05/30/21 | Week 13 06/06/21 | Week 14 06/13/21 | Week 15 06/20/21 | Week 16 06/27/21 | Week 17 07/04/21 | Week 18 07/11/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue Forecast** | | | | | | | | | | | | | | | | | | |
| Sales ($) | $676,233 | $676,233 | $676,233 | $839,343 | $961,676 | $961,676 | $961,676 | $1,035,421 | $1,219,783 | $1,219,783 | $1,219,783 | $1,219,783 | $1,359,879 | $1,383,228 | $1,383,228 | $1,383,228 | $1,383,438 | $1,383,596 |
| Pellets Sold (lbs) | 978,797 | 978,797 | 978,797 | 1,211,396 | 1,385,846 | 1,385,846 | 1,385,846 | 1,490,723 | 1,752,915 | 1,752,915 | 1,752,915 | 1,752,915 | 1,952,887 | 1,986,216 | 1,986,216 | 1,986,216 | 1,986,216 | 1,986,216 |

**PinnPack Packaging, LLC Weekly Sales and Pounds Sold**

| | Week 1 03/14/21 | Week 2 03/21/21 | Week 3 03/28/21 | Week 4 04/04/21 | Week 5 04/11/21 | Week 6 04/18/21 | Week 7 04/25/21 | Week 8 05/02/21 | Week 9 05/09/21 | Week 10 05/16/21 | Week 11 05/23/21 | Week 12 05/30/21 | Week 13 06/06/21 | Week 14 06/13/21 | Week 15 06/20/21 | Week 16 06/27/21 | Week 17 07/04/21 | Week 18 07/11/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue Forecast** | | | | | | | | | | | | | | | | | | |
| Sales ($) | $786,986 | $844,178 | $612,140 | $844,960 | $754,977 | $757,587 | $773,557 | $984,510 | $652,805 | $823,620 | $839,711 | $811,146 | $627,798 | $787,277 | $821,970 | $645,102 | $942,580 | $742,213 |
| Volume Sold (lbs) | 500,882 | 537,282 | 389,600 | 537,780 | 480,509 | 482,171 | 492,335 | 626,597 | 415,481 | 524,198 | 534,439 | 516,259 | 399,566 | 501,067 | 523,148 | 410,579 | 599,911 | 472,386 |