# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | Chapter 11 |
| **CarbonLITE Holdings LLC, *et al.*,** | Lead Case No. 21-10527 (JTD)<br>Jointly Administered |
| **Debtors.** | Honorable John T. Dorsey<br>Hearing Date: April 20, 2021 at 10:00 a.m.<br>Obj. Deadline: April 8, 2021 |

## MOTION OF ANCHOR FIRE PROTECTION CO. INC. TO COMPEL ASSUMPTION OR REJECTION OF EXECUTORY CONTRACT AND FOR ALLOWANCE OF ADMINISTRATIVE EXPENSES AND IMMEDIATE PAYMENT OR IN THE ALTERNATIVE FOR ADEQUATE PROTECTION

Anchor Fire Protection Co. Inc. ("Anchor") by and through its undersigned counsel, hereby files this motion to compel CarbonLITE Holdings LLC and the other jointly-administered debtors ("Debtor") to assume or reject the executory contract with Anchor, and for allowance and immediate payment of postpetition administrative expenses, or in the alternative for adequate protection (the "Motion") and states as follows:

### Relief Requested

1. Pursuant to section 365(d)(2) of the title 11 of the United States Code (the "Bankruptcy Code") and Rules 6006, 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Anchor seeks entry of an order compelling the Debtor to assume or reject the unexpired executory contract with Anchor.

2. Pursuant to sections 503(b)(1)(a), 507(a)(2) of the Bankruptcy Code and Local Rule 9013-1, if the contract is not assumed, Anchor seeks entry of an order allowing its administrative expense claim and directing the Debtor to make immediate payment of that claim.

4842-1515-7217

3. Solely in the event that the contract is rejected or this Court does not grant the relief above, Anchor seeks as alternative relief adequate protection of its secured claim pursuant to sections 361, 363(e) of the Bankruptcy Code.

**Jurisdiction And Venue**

4. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. §157(b). Venue of these cases and this Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. Anchor consents pursuant to Rule 9013-1(f) of the Local Rules to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6. The statutory bases for the relief requested herein are 11 U.S.C. §§ 361, 363, 365, 503, 506, 507, 553, Bankruptcy Rules 3012, 6006, 9014 and Local Rule 9013-1.

**Background**

7. On November 4, 2020, Anchor entered into a contract (the "Contract") for construction administration and management services. A true and correct copy of the Contract is attached as **Exhibit A**.

8. The Contract contemplated that Anchor would create and install a custom fire protection sprinkler system at the Debtor's location as 4030 Pottsville Pike, Reading PA 19605.

9. The Contract required the Debtor to make incremental payments totaling $233,780.00 on a set schedule as work was completed. See Ex. A at 11.

4
4842-1515-7217

10. Pursuant to the Contract, the Debtor was supposed to make its first payment on or before November 30, 2020. Id.

11. The Debtor made the first incremental payment of $50,000.00 on December 9, 2020. See check attached as **Exhibit B**.

12. A second incremental payment of $90,000.00 attributable to "material and pipe fabrication" was due on December 30, 2020. The Debtor made a late, partial payment of this installment, paying $45,000.00 on February 18, 2021.

13. Anchor has continued to perform pursuant to the Contract, fabricating the custom parts necessary for installation of the sprinkler system.

14. The Debtor has not made any subsequent payments to Anchor.

15. On March 8, 2021, the Debtor and its affiliated entities filed voluntary petitions in this Court, commencing the instant bankruptcies.

16. These bankruptcies were jointly administered under lead case In re CarbonLITE Holdings LLC, Case No. 21-10527-JTD. See DI #64.

17. Anchor has not completed installation of the sprinkler system due to the Debtor's nonpayment, as permitted by the Contract ¶14.5.

18. Pursuant to the Contract, Anchor has material unperformed duties to complete fabrication of all custom systems, and install them.

19. Pursuant to the Contract, the Debtor has material unperformed duties to make payments and provide Anchor access to its facility to install the sprinkler system.

20. The sprinkler system is necessary to bring the Debtor's facility in line with applicable fire codes and regulations, and the Debtor cannot obtain a permanent certificate of occupancy without it.

21. Postpetition, the Debtor employee responsible for coordinating the installation with Anchor contacted Anchor and requested that Anchor begin installation of the sprinkler system.

22. The Contract provides that Anchor "shall be entitled to an equitable adjustment of the Contract Price" if work is delayed for any cause beyond Anchor's control. Id. at ¶11.1.

23. That equitable adjustment is the "reasonable cost and delay resulting from shutdown, delay and start-up" (the "Adjustment"). Id. at 14.5.

24. The Contract provides that payments must be made within twenty (20) days of the dates set out for incremental payments. Id. at ¶14.2.

25. The Contract further provides that "payments due but unpaid shall bear interest from the date payment is due at the prime rate." Id. at 14.9. The applicable prime rate is 3.25%, as set out in the Wall Street Journal's federal funds rate as of the date of this Motion.

26. The Contract further provides that the Debtor and Anchor shall use litigation, not arbitration, to resolve any disputes between them related to the performance of the Contract. Id. at ¶18.4.

27. The prevailing party in such action "shall be entitled to recover from the other party reasonable attorney's fees, costs and expenses incurred by the prevailing party in connection with such dispute resolution process." Id. at 18.5.

## Basis For Relief

### A. Assumption or Rejection

28. Pursuant to 11 U.S.C. §365(d)(2), a trustee, and by extension a chapter 11 debtor-in-possession, "may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the

court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease."

29. Pursuant to 11 U.S.C. §365(b)(1), if a debtor-in-possession is in default under an executory contract, the debtor may not assume the contract unless the debtor "cures or provides adequate assurances that the [DIP] will promptly cure, such default," "compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and" "provides adequate assurance of future performance under such contract or lease."

30. Adequate assurance of future performance "is to be given a practical, pragmatic construction based upon ... the circumstances of [the] case". In re Prime Motor Inns, Inc., 166 B.R. 993, 997 (Bankr. S.D.Fla. 1994) quoting In re Carlisle Homes, Inc., 103 B.R. 524, 538 (Bankr. D.N.J. 1988).

31. To provide adequate assurances, a DIP must, in a practical sense, show that it can promptly cure any default, pay for damages caused by the default and continue in the contract without immediate subsequent default. In re Texas Health Enterprises, Inc., 246 B.R. 832, 835 (Bankr. E.D. Tex. 2000).

32. While courts generally apply the "business judgment" standard to a decision to assume or reject, that business judgment must be reasonably exercised. Sharon Steel Corp. v. National Fuel Gas Distribution, 872 F.2d 36, 39-40 (3d Cir. 1989).

33. The Contract is an executory contract because Anchor and the Debtor each have ongoing duties which are material such that the breach of those duties would excuse performance by the other. See Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 MINN.L.REV.

7
4842-1515-7217

439, 442–44 (1973); In Re Exide Technologies, 607 F.3d 957, (3d. Cir. 2010) (applying Countryman test).

34. On the petition date, the Debtor was in default of the Contract due to its failure to make the incremental progress payments when due.

35. It is unclear if the Debtor intends to assume or reject the Contract.

36. The Debtor has not cured the prepetition default or provided adequate assurances that it will do so.

37. Anchor seeks clarity on whether the Debtor will assume or reject the Contract so that Anchor may cease work on the custom sprinkler system if the Contract is rejected.

38. As of the date of this Motion, the Debtor is $138,780.00 in arrears for incremental payments due but unpaid, plus additional amounts due to the Adjustment, plus interest at the prime rate on these amounts.

39. As part of the necessary "cure and assure" to assume a contract pursuant to Section 365, the Debtor must also pay reasonable attorney fees and costs if such are provided for in the Contract. In re Child World, Inc., 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993) ("Although attorneys' fees are not independently recoverable under the Bankruptcy Code, section 365(b)(1)(B) allows for such recovery if based upon the existence of a separate agreement between the parties.")

40. A "contested matter" such as a motion to require assumption or rejection of a contract is a legal proceeding or action for the purposes of a contractual provision shifting attorney fees. In re Crown Books Corp., 269 B.R. 12, 16 (Bankr. D. Del. 2001) (contested matter is a legal proceeding for purposes of contractual fee-shifting); Fed. R. Bankr. P. 9014 and Advisory Committee Note – 1983 (Motion to assume or reject contract is a contested matter).

41. In a contested matter relating to assumption or rejection under Section 365, a party is the "prevailing party" to the extent that the relief it seeks is actually granted by the court. In re Crown Books Corp., 269 B.R. at 16-17.

42. If the Court requires the Debtor to assume or reject the Contract pursuant to the instant Motion, Anchor will be the prevailing party in a "dispute resolution process" contemplated by the Contract.

43. In order to assume the Contract, the Debtor must also pay Anchor reasonable attorney's fees and costs incurred in the preparation and prosecution of the instant Motion.

44. This Court should require the Debtor to assume or reject the Contract within fourteen (14) days.

**B. Allowance of Administrative Expense**

45. Pursuant to 11 U.S.C. §503(b)(1)(a), the "actual, necessary costs and expenses of preserving the estate" shall be allowed as an administrative expense.

46. These allowed administrative expenses have priority of payment pursuant to 11 U.S.C. §507(a)(2).

47. To show that a claimant is entitled to an administrative expenses, "(1) there must be a post-petition transaction between the creditor and the debtor; and (2) the estate must receive a benefit from the transaction." In re Waste Systems Intern., Inc., 280 B.R. 824, 826 (Bankr. D.Del. 2002).

48. The timing of the payment of an administrative claim is within the discretion of this Court. In re Garden Ridge Corporation, 323 B.R. 136 (Bankr. D. Del. 2005).

4842-1515-7217

49. In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors. HQ Global Holdings, Inc., 282 B.R. 169, 174 (Bankr. D.Del. 2002).

50. Pursuant to the Contract, Anchor has continued to fabricate a custom sprinkler system postpetition, which is only fit for the particular purpose of the Debtor's Reading, Pennsylvania location.

51. Anchor has provided postpetition services to the Debtor that improved the value of the Debtor's property during the pendency of this case.

52. The Contract provided postpetition actual and necessary value to the estate, as the Debtor cannot obtain a permanent certificate of occupancy for its facility without the sprinkler system.

53. If the postpetition balance is not paid as part of the Debtor's assumption of the Contract, that balance must be allowed as an administrative expense entitled to priority.

54. Anchor's administrative expense claim will be entitled to the highest level of priority in this case. The only claims of higher priority than Anchor's Section 507(a)(2) claim are for a chapter 11 trustee or domestic support obligations. Neither type of claim is likely to arise in this case.

55. Anchor will be prejudiced if it is not paid immediately for its postpetition services. The Debtor has not yet filed a plan or disclosure statement, so confirmation of a plan and payment of Anchor's claim on the effective date is still many months away. The postpetition expense amount is meaningful to Anchor, which must pay its employees timely in order to retain qualified personnel.

4842-1515-7217

56. It is appropriate to order immediate payment of the administrative expense owed to Anchor.

## C. In the Alternative, Adequate Protection of Anchor's Secured Claim

57. Pursuant to 11 U.S.C. §553(a), a prepetition creditor retains its state-law rights to setoff mutual prepetition debts, subject to the automatic stay.

58. Pursuant to the Contract, the applicable law is the law of the location of the facility – Pennsylvania. See Ex. A ¶20.

59. Under Pennsylvania law, "the common law right of set-off in this Commonwealth…is intact and not superseded." Pa. Nat'l Bank & Tr. Co. v. CCNB Bank, N.A., 667 A.2d 1151, 1154 (Pa. Super. 1995). Setoff may be exercised when "(1) the creditor owes a pre-petition debt to the debtor; (2) the creditor also has a pre-petition claim against the debtor; and (3) the respective obligations are mutual." Folger Adam Security, Inc. v. DeMatteis/MacGregor, J.V., 209 F.3d 252, 262-63 (3d Cir 2000).

60. Pursuant to 11 U.S.C. §506(a), a claim is a secured claim to the extent that it "is subject to setoff under section 553 of this title."

61. Pursuant to 11 U.S.C. 363(e), "on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."

62. Pursuant to 11 U.S.C. §361, a secured creditor may move for adequate protection of its interest if necessary under Section 363(e), and if adequate protection is required may obtain periodic payments, replacement liens or other protection to ensure it receives the indubitable equivalent of its interest.

11

63.  Adequate protection must protect the creditor from any diminution in the value of its interest.  In re Swedeland Development Group, Inc., 16 F. 3d 552, 565 (3d Cir. 1994).

64.  The Debtor owes a prepetition debt to Anchor – the balance due under the Contract.

65.  The parts constituting the sprinkler system are movable property specifically identified to the Contract, and constitute "goods" for the purposes of Uniform Commercial Code Article 2.  13 Pa.C.S.A. §§ 2105(a) (definition of "goods"), 2102 (Pennsylvania enactment of Article 2 applies to "transactions in goods").

66.  Goods are identified to a contract when they are "marked or otherwise designated by the seller as goods to which the contract refers."  13 Pa.C.S.A. §2501(a)(2).

67.  When goods are identified to the contract, "unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this title." 13 Pa.C.S.A. §2401(1).  This special property allows the buyer to insure the goods.

68.  Title to good passes to the buyer at the time and on the terms intended by the parties. Kendrick v. Headwaters Prod. Credit Ass'n, 523 A. 2d 395, 402 (Pa. 1987) (parties may intend to deviate from default rules of 13 Pa.C.S.A. §2401, and such intent controls).

69.  While the Contract does not specify how title to the goods passes to the Debtor, the parties intended title to pass upon payment for the goods, which has already occurred.  The Contract contains no merger clause that would prevent the actual intent of the parties from controlling this issue.

70.  Anchor owes a prepetition obligation to the Debtor – it is in possession of the fabricated sprinkler system in which the Debtor has both a title interest and insurable interest.

71.  Anchor and the Debtor owe each other mutual prepetition obligations, entitling Anchor to setoff.

72. Unless the Contract is assumed, Anchor has a secured claim in the amount of its setoff right – the goods for which the Debtor made $95,000.00 in prepetition payments.

73. A secured creditor is entitled to payments that will adequately protect its interest and ensure that it will receive the "indubitable equivalent" of its collateral. 11 U.S.C. §361.

74. The Debtor has not provided any adequate protection payments to Movant.

75. Interest and applicable fees and costs under the Contract are accruing pending assumption or rejection of the Contract, causing diminution of Anchor's interest.

76. The Debtor has also expressed its intent to have the sprinkler system installed – it intends to use these goods pursuant to 11 U.S.C. §363(e).

77. That use must be conditioned on the payment of adequate protection to Anchor.

78. <u>Solely</u> in the event that the Debtor does not assume the Contract, or this Court declines to grant the relief sought elsewhere in this Motion, the Debtor must be required to make adequate protection payments to preserve Anchor's secured position.

WHEREFORE, Anchor Fire Protection Co. Inc. respectfully requests this Court enter an order compelling the Debtor to assume or reject the Contract within fourteen (14) days, allowing the postpetition amounts due as an administrative expense and directing the Debtor to pay the administrative expense immediately, and provide such other and further relief as the Court deems just and equitable. In the alternative, solely if this Court declines to grant the above relief or the Debtor rejects the Contract, Anchor Fire Protection Co. Inc. demands adequate protection of its secured claim in the amount of additional fees and interest incurred since the petition date.

## Notice

Notice of this Motion will be provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel to the Debtor; and (d) any other party that has requested notice pursuant to Local Rule

4842-1515-7217

2002-1(b). Anchor respectfully submits that no further notice of this Motion is required under the circumstances.

Dated:  March 25, 2021
        Wilmington, Delaware

Respectfully submitted,

By: /s/Leslie B. Spoltore
    Leslie B. Spoltore, Esquire (DE Bar No. 3605)
    OBERMAYER REBMANN MAXWELL & HIPPEL LLP
    123 Justison Street, Suite 100
    Wilmington, Delaware 19801
    Telephone: (302) 238-6947
    Facsimile: (302) 655-1092
    Email: leslie.spoltore@obermayer.com

    -and-

    Michael D. Vagnoni, Esquire
    (*pro hac vice forthcoming*)
    OBERMAYER REBMANN MAXWELL & HIPPEL LLP
    Centre Square West
    1500 Market Street, Suite 3400
    Philadelphia, PA 19102
    Telephone: (215) 665-3140
    Facsimile: (215) 665-3165
    Email: Michael.Vagnoni@obermayer.com
    *Counsel to Anchor Fire Protection Co. Inc.*