IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- x
                                                   :

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CARBONLITE HOLDINGS LLC, *et al.*,[1] | : | Case No. 21-10527 (JTD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | Re: Docket Nos. 16, 74 & 180 |

------------------------------------------------------- x

**REPLY OF DIP TERM AGENT, DIP TERM
LENDERS, AND PREPETITION TERM SECURED
PARTIES TO OBJECTION OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS AND IN SUPPORT OF CA DIP MOTION**

The DIP Term Agent, DIP Term Lenders, and Prepetition Term Secured Parties (collectively, the "**Term Secured Parties**") submit this reply (this "**Reply**") to the objection [Docket No. 180] (the "**Objection**") of the Official Committee of Unsecured Creditors (the "**Committee**") and in support of the *CA Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the CA Debtors to Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code; (II) Authorizing the CA Debtors to Use Cash Collateral; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Granting Adequate Protection to the Prepetition Lenders; (V) Modifying the Automatic Stay; (VI) Scheduling a Final Hearing; and (VII) Granting Related Relief* [Docket No. 16] (the "**CA DIP Motion**"),[2] and respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: CarbonLite Holdings LLC (8957); CarbonLite Industries LLC (3596); CarbonLite P Holdings LLC (8957); CarbonLite P LLC (5453); CarbonLite PI Holdings LLC (8957); CarbonLite Pinnpack LLC (8957); CarbonLite Recycling Holdings LLC (8957); CarbonLite Sub-Holdings, LLC (8957); Pinnpack P, LLC (8322); CarbonLite Recycling LLC (3727); and Pinnpack Packaging LLC (9948). The address of the Debtors' corporate headquarters is 10250 Constellation Blvd., Los Angeles, CA 90067.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the proposed *Final Order (I) Authorizing CA Debtors to (A) Obtain Postpetition Financing, (B) Grant Senior Secured Liens and*

**TERM SECURED PARTIES' REPLY**

1.  The Court should overrule the Objection and enter the Proposed Final Order, which includes terms that are common and routinely approved in comparable debtor in possession financings. The DIP Term Facility provides the CA Debtors with critical liquidity at a crucial point in the Chapter 11 Cases. Indeed, as described in more detail in the Morgner Declaration, the CA Debtors projected that they would not be able to generate sufficient operating cash flow to manage their businesses, fund their ordinary course expenditures, and administer the Chapter 11 Cases absent debtor in possession financing. *See* Morgner Declaration ¶¶ 9-10. Accordingly, the CA Debtors and their advisors engaged in extensive negotiations before the Petition Date with numerous interested parties before reaching an agreement with the Term Secured Parties on the terms of the DIP Term Facility. *Id.* In doing so, the Term Secured Parties agreed to provisions that are both common in similar debtor in possession financings and designed to enable the CA Debtors to manage their businesses as well as run an efficient, fulsome sale process.

2.  The Committee does not dispute the importance of the DIP Term Facility to the CA Debtors' business operations and the sale process, nor does the Committee dispute that entering into the DIP Term Facility was justified and appropriate under the circumstances. Instead, the Objection challenges specific provisions of the Proposed Final Order that are clearly market. The Proposed Final Order has been filed contemporaneously with this Reply and includes revisions made to address, in part, certain concerns raised by the Committee. The Court should overrule the

---

*Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Modifying Automatic Stay; and (IV) Granting Related Relief* (the "**Proposed Final Order**"), to be filed substantially contemporaneously herewith.

Committee's remaining objections, certain of which are discussed in more detail below, and approve the DIP Term Facility on a final basis pursuant to the Proposed Final Order.[3]

3. *First*, the Court should reject the Committee's baseless assertion that the DIP Term Facility will "stifle a fair, full and well-developed process for maximizing the Debtors' value." *See* Objection at ¶¶ 12-18. The DIP Term Facility, including the proposed sale milestones, which require binding bids be submitted 51 days after the Petition Date and more than three months after the Debtors first initiated their marketing efforts, *see* First Day Declaration ¶ 52, is appropriate under the circumstances and applicable law. The sale timeline will allow the Debtors to pursue a value-maximizing sale process while, *crucially*, limiting additional delay and expense incurred by unnecessarily prolonging the Chapter 11 Cases. While the Term Secured Parties believe that the sale timeline originally set forth in the CA DIP Motion was entirely appropriate, they have nevertheless agreed to extend certain milestone dates, reflected above and in the Proposed Final Order, including, among other things, to allow the Challenge Deadline to pass before sale closing.

4. An expeditious sale timeline was an essential condition to the Term Secured Parties agreeing to provide debtor in possession financing and was extensively negotiated between the parties. *See* First Day Declaration ¶ 55. In particular, the DIP Term Facility and sale milestones were crafted with a view towards enabling the CA Debtors to continue and ultimately consummate a transaction, while leveraging the significant prepetition marketing process that they began conducting several months before the Petition Date. *See id.* An efficient sale timeline will further inure to the benefit of unsecured creditors by allowing the CA Debtors to maximize the value of their assets while minimizing even more (superpriority) secured debt. The Objection fails to

---

[3] To the extent not addressed in this Reply, the Term Secured Parties reserve the right to respond to the Committee's remaining objections at the Final Hearing.

establish how an extension of the proposed sale timeline, necessitating additional debtor in possession financing, would benefit parties in interest, most notably unsecured creditors.

5. While heavily redacted, the Committee appears to recognize in the *Declaration of Edward Kim in Support of Combined Objection of the Official Committee of Unsecured Creditors to the TX/PA DIP Motion, the CA DIP Motion, and the Bid Procedures Motion* [Docket No. 205] (the "**Kim Declaration**") that the CA Debtors are facing a significant ongoing cash burn. *See* Kim Declaration ¶¶ 13-20. Rather than embracing the expeditious, value-maximizing sale timeline that formed the basis for the DIP Term Facility, however, the Committee wants more time, among other things, to potentially pursue a transaction with an unknown foreign buyer that has not yet appeared or submitted a proposal in the more than four months that the CA Debtors have been marketing their assets. The Committee's position is particularly egregious given that additional funding would presumably need to come in the form of an upsized DIP Term Facility, which the Committee also argues is overpriced. *See* Kim Declaration ¶¶ 21-23. The Court should overrule the Committee's objections to the proposed sale milestones and approve the DIP Term Facility on the terms set forth in the Proposed Final Order.

6. *Second*, the Committee objects to the provisions of the Proposed Final Order granting DIP Liens and Adequate Protection Liens on, and DIP Superpriority Claims with recourse to, Avoidance Action Proceeds. *See* Objection ¶¶ 26-28. The inclusion of such assets as collateral in exchange for debtor in possession financing is appropriate and consistent with applicable law. *See, e.g.*, *In re Tonopah Solar Energy, LLC*, Case No. 20-11884 (KBO) (Bankr. D. Del. Aug. 24, 2020); *In re MUJI U.S.A. Limited*, Case No. 20-11805 (MFW) (Bankr. D. Del. Aug. 11, 2020); *In re Exide Holdings, Inc.*, Case No. 20-11157 (CSS) (Bankr. D. Del. June 19, 2020); *In re John Varvatos Enters., Inc.*, Case No. 20-11043 (MFW) (Bankr. D. Del. June 9, 2020); *In re Nuverra*

*Env't Sols., Inc.*, No. 17-10949 (KJC) (Bankr. D. Del. June 6, 2017); *In re Caché, Inc.*, Case No. 15-10172 (MFW) (Bankr. D. Del. May 20, 2015).  Furthermore, the Bankruptcy Code explicitly authorizes debtors to obtain credit "secured by a lien on property of the estate that is not otherwise subject to a lien" when unsecured credit is unavailable.  *See* 11 U.S.C. § 364(c)(2).  Thus, it is consistent with the Bankruptcy Code for a lender providing debtor in possession financing comprised of new money to receive liens on unencumbered assets of the estate.[4]  The Proposed Final Order clarifies, however, that Avoidance Action Proceeds obtained from Avoidance Actions against the Prepetition Secured Parties will not constitute DIP Collateral.

7.  *Third*, the Committee objects to the proposed sections 506(c) and 552(b) waivers in the Proposed Final Order.  *See* Objection ¶¶ 36-43.  As a threshold matter, it is well-established that debtors possess the authority to waive their rights under section 506(c) of the Bankruptcy Code.  *See Underwriters Ins. Co. v. Union Planters Bank N.A.*, 530 U.S. 1, 6 (2000).  Courts in this jurisdiction routinely grant section 506(c) waivers in connection with debtor in possession financings that provide material benefits to debtors and their chapter 11 estates.  *See, e.g.*, *In re Rubio's Restaurants, Inc.*, Case No. 20-12688 (MFW) (Bankr. D. Del. Dec. 1, 2020); *The Hertz Corp.*, Case No. 20-11218 (MFW) (Bankr. D. Del. Oct. 29, 2020); *In re True Religion Apparel, Inc.*, Case No. 20-10941 (CSS) (Bankr. D. Del. May 29, 2020); *In re HDR Holdings, Inc.*, Case No. 19-11396 (MFW) (Bankr. D. Del. Aug. 7, 2019); *In re Bon-Ton Stores, Inc.*, No. 18-10248 (MFW) (Bankr. D. Del. Mar. 12, 2018); *In re Central Grocers, Inc.*, Case No. 17-10993 (LSS) (Bankr. D. Del. Jun. 2, 2017).  Additionally, courts in this jurisdiction have acknowledged that such waivers are part and parcel of "global" debtor in possession financing packages, as the CA

---

[4] Several times in the Objection, the Committee suggests, without evidence, that the Term Secured Parties are colluding with the CA Debtors' equity owners, including in the context of liens on Avoidance Action Proceeds. *See* Objection ¶¶ 1, 27.  Such a suggestion is offensive and patently false, and the Proposed Final Order has even been updated to exclude the Farahnik Parties from the definition of DIP Released Parties.

5

Debtors are seeking final approval of here. Specifically, Judge Sontchi has observed that "[Y]es, certain things are being waived like 506(c) and 552(a) . . . [b]ut . . . this is part of a global package, a not unusual global package at all for a combination of new money from an existing lender and a new lender in a borderline administratively insolvent case. I think they would be insane and commercially unreasonable if they were to lend under different terms." *In re Exide Holdings, Inc.*, Case No. 20-11157 (CSS) (Bankr. D. Del. June 18, 2020), Hearing Transcript at p. 68.

8. Similar to the section 506(c) waiver, the section 552(b) waiver is part of an arms'-length negotiation resulting in a packaged financing. Waiver of rights under section 552(b), similar to a waiver under section 506(c), is customary and was negotiated for by the Term Secured Parties to ensure the scope of their collateral at the outset of their lending arrangement. Courts in this jurisdiction have routinely approved waivers of section 552(b). *See, e.g.*, *In re Rubio's Restaurants, Inc.*, Case No. 20-12688 (MFW) (Bankr. D. Del. Dec. 1, 2020); *In re True Religion Apparel, Inc.*, Case No. 20-10941 (CSS) (Bankr. D. Del. May 29, 2020); *In re HDR Holdings, Inc.*, Case No. 19-11396 (MFW) (Bankr. D. Del. Aug. 7, 2019); *In re Bon-Ton Stores, Inc.*, No. 18-10248 (MFW) (Bankr. D. Del. Mar. 12, 2018); *In re Nuverra Env't Sols., Inc.*, No. 17-10949 (KJC) (Bankr. D. Del. June 6, 2017); *In re Central Grocers, Inc.*, Case No. 17-10993 (LSS) (Bankr. D. Del. Jun. 2, 2017). The section 506(c) and section 522(b) waivers constitute a reasonable exercise of the Debtors' business judgment and the Committee's objections regarding such waivers should be overruled.

9. *Fourth*, the Committee objects to the size of the Investigation Budget Amount, as well as the amount allocated to Committee professionals in the Budget. *See* Objection ¶¶ 49, 52-55. The Term Secured Parties believe that in light of the circumstances of the Chapter 11 Cases and the siloed nature of the Prepetition Collateral, such amounts are appropriate. The CA Debtors

possess a straightforward capital structure—this is not a case with a significant, multi-tiered, complex capital structure warranting a further increase in the above amounts. *Compare In re SunEdison, Inc.*, No. 16-10992 (SMB) [Docket No. 523] (Bankr. S.D.N.Y. June 9, 2016) (investigation budget of $175,000 where debtors had thirteen tranches of funded debt plus numerous project-level credit facilities); *In re Samson Resources Corp.*, No. 15-11934 (CSS) (Bankr. D. Del. June 3, 2016) [Docket No. 1016] (investigation budget of $200,000 where upstream oil and gas case debtors owned approximately 38,700 leases and 7,400 wells and committee asserted constructive fraudulent transfer claims).

10.     *Fifth*, and finally, the Committee objects to the proposed Challenge provisions and seeks various modifications with respect thereto. *See* Objection ¶ 56. The Proposed Final Order sets the Challenge Deadline as 75 days after entry of the Interim Order, which is consistent with the updated Local Rules. *See* Local Rule 4001-2(a)(i)(Q). The challenge period set forth in the Proposed Final Order therefore satisfies what is required under the Local Rules; however, the Proposed Final Order incorporates the Committee's requested language regarding LLC Challenge Motions. The Committee's remaining objections to the Challenge provisions should be overruled.

[*Remainder of page left intentionally blank*]

WHEREFORE the Term Secured Parties respectfully request entry of the Proposed Final Order and such other and further relief as the Court may deem just and appropriate.

Dated: April 7, 2021
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Kara Hammond Coyle*
Robert S. Brady (No. 2847)
Edwin J. Harron (No. 3396)
Kara Hammond Coyle (No. 4410)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: rbrady@ycst.com
eharron@ycst.com
kcoyle@ycst.com

-and-

**LATHAM & WATKINS LLP**

Jeffrey E. Bjork (admitted *pro hac vice*)
Nicholas J. Messana (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email: jeff.bjork@lw.com
nicholas.messana@lw.com

-and-

James Ktsanes (admitted *pro hac vice*)
330 North Wabash Avenue
Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
Email: james.ktsanes@lw.com

-and-

          Andrew C. Ambruoso (admitted *pro hac vice*)
          885 Third Avenue
          New York, New York 10022
          Telephone: (212) 906-1200
          Facsimile: (212) 751-4864
          Email: andrew.ambruoso@lw.com

*Counsel for Term Secured Parties*