**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| CARBONLITE HOLDINGS LLC, *et al.*,[1] | ) ) ) | Case No. 21-10527 (JTD) |
| Debtors. | ) ) ) | (Jointly Administered) |

**PROCEDURES FOR (A) SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS THROUGH ONE OR MORE SALE TRANSACTIONS, AND (B) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES IN CONNECTION WITH ANY SALE TRANSACTION(S)**

On March 8, 2021 (the "Petition Date"), the above-captioned debtors and debtors in possession (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 9, 2021, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order authorizing the joint administration and procedural consolidation of the chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

On April 9, 2021, the Court entered an order (the "Bid Procedures Order")[2] authorizing the Debtors to, among other things, (i) solicit offers for one or more Sale Transactions (as defined below) through the process and procedures set forth below (the "Bid Procedures") and (ii) establish procedures for the assumption and assignment of executory contracts and unexpired leases in connection with any Sale Transaction(s) approved by the Court (the "Assumption and Assignment Procedures").

The Debtors seek to consummate one or more transactions for the sale of one or more of the Facilities (a "Sale Transaction(s)") under section 363 and, as applicable, section 365, of the Bankruptcy Code to the extent certain criteria are satisfied as set forth in greater detail below. Any Sale Transaction will be subject to the approval of the Court. *A hearing by the Court on the approval of any Sale Transaction(s) is currently scheduled for May 20, 2021 at 2:00 p.m. (Eastern Time) (the "Sale Hearing").*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: CarbonLite Holdings LLC (8957); CarbonLite Industries LLC (3596); CarbonLite P Holdings, LLC (8957); CarbonLite P, LLC (5453); CarbonLite PI Holdings, LLC (8957); CarbonLite Pinnpack, LLC (8957); CarbonLite Recycling Holdings LLC (8957); CarbonLite Recycling LLC (3727); CarbonLite Sub-Holdings, LLC (8957); Pinnpack P, LLC (8322); and Pinnpack Packaging, LLC (9948). The address of the Debtors' corporate headquarters is 10250 Constellation Blvd., Los Angeles, CA 90067.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bid Procedures Order.

## I.  BID PROCEDURES

### A. General Sale Transaction Information

#### 1. *Assets for Sale*

The Debtors are soliciting interest for the consummation of one or more Sale Transactions with respect to the Debtors' Assets, which principally consist of the business assets and property associated with (i) the facility operated by Debtor Pinnpack Packaging LLC ("PinnPack") located in Oxnard, California (the "PinnPack Facility"); (ii) the facility operated by Debtor CarbonLite Industries LLC ("Industries") located in Riverside, California (the "Riverside Facility"); (iii) the facility operated by Debtor CarbonLite Recycling LLC ("Recycling") located in Dallas, Texas (the "Dallas Facility"); and (iv) the facility operated by Debtor CarbonLite P, LLC ("CLP") located in Reading, Pennsylvania (the "Reading Facility" and, together with the PinnPack Facility, the Riverside Facility, and the Dallas Facility, the "Facilities").  All of the Debtors' rights, title, and interest in and to their Assets shall be sold free and clear of any liens, claims, encumbrances, and other interests (except as otherwise provided in the applicable Purchase Agreement, as defined below) to the maximum extent permitted by sections 363 and 365 of the Bankruptcy Code, with such liens, claims, encumbrances, and other interests to attach to the proceeds of the applicable Sale Transaction with the same validity and priority as such liens, claims, encumbrances, and other interests applied against the respective Assets purchased pursuant to these Bid Procedures; *provided*, for the avoidance of doubt, that the rights of the DIP Lenders and DIP Agents to be repaid in cash from such proceeds pursuant to the applicable DIP Order and the applicable DIP Documents shall not be modified without the express consent of the applicable DIP Agents and DIP Lenders.

All four Facilities may be purchased together, or each Facility may be purchased separately or in any combination pursuant to one or more Sale Transactions.  The Debtors, in their discretion, exercised in good faith and in consultation with the Consultation Parties, will have the right to determine the highest or best value from the potential offers received.

**Further information on the Facilities being offered for sale pursuant to these Bid Procedures is available upon request from the Debtors' investment banker, Jefferies, LLC ("Jefferies") - (Attn: Richard Morgner and Matthew Bowersox at Project_Celtic_All@jefferies.com) on the terms and conditions set forth below.**

#### 2. *Access to Due Diligence Materials*

To participate in the bidding process and receive due diligence information, including full access to the Debtors' electronic data room (the "Data Room") and additional non-public information regarding the Debtors (the "Diligence Materials"), parties interested in receiving Diligence Materials (each, an "Interested Party") must deliver or have previously delivered to the Debtors, if determined to be necessary by the Debtors in their sole discretion, the Preliminary Bid Documents (as defined below) to the following parties (the "Recipient Parties"):

(i)    Brian Weiss, in his capacity as Chief Restructuring Officer of the Debtors, c/o Force Ten Partners LLC, 5271 California Avenue, Suite 270, Irvine, CA 92617, email: bweiss@force10partners.com;

2

      (ii)      counsel to the Debtors: (a) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: James E. O'Neill (joneill@pszjlaw.com) and Steven W. Golden (sgolden@pszjlaw.com); and (b) Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067-4003, Attn: Gabriel I. Glazer (gglazer@pszjlaw.com); and

      (iii)      investment banker to the Debtors: Jefferies LLC, Attn: Richard Morgner and Matthew Bowersox (Project_Celtic_All@jefferies.com).

The "Preliminary Bid Documents" that must be submitted to the Recipient Parties include: (a) an executed confidentiality agreement using the Debtors' form, as may be amended, on terms reasonably acceptable to the Debtors, to the extent not already executed (a "Confidentiality Agreement"); (b) a statement and other factual support demonstrating to the Debtors' satisfaction in the exercise of their reasonable business judgment that the Interested Party has a *bona fide* interest in purchasing one or more of the Facilities; and (c) preliminary proof by the Interested Party of its financial capacity to close its proposed Sale Transaction(s), which may include financial statements of, or verified financial commitments obtained by, the Interested Party (or, if the Interested Party is an entity formed for the purpose of acquiring a Facility or the Facilities, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors (including in consultation with their advisors). Any Interested Party who, in the Debtors' determination, qualifies for access to the Diligence Materials shall be deemed a "Potential Bidder." For the avoidance of doubt, a Secured Party (as defined below) who submits a credit bid subject to section 363(k) of the Bankruptcy Code does not need to submit the Preliminary Bid Documents and such Bid shall automatically be deemed a Qualified Bid (as defined below).

For any Potential Bidder who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold, or to delay providing, any Diligence Materials that the Debtors, in their reasonable discretion, determine are business-sensitive or otherwise inappropriate for disclosure to such Potential Bidder at such time.

### 3. *Due Diligence from Potential Bidders*

Each Interested Party, Potential Bidder, and Qualified Bidder (as defined below) (each, a "Bidder" and, collectively, the "Bidders") shall comply with all requests for additional information and due diligence access by the Debtors or their advisors regarding such Bidder and its contemplated Sale Transaction. Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that the Potential Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Debtors to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

## B. Auction Qualification Process

### 1. *Stalking Horse Bidder*

The Debtors, consistent with their fiduciary duties and with the consent of each of the applicable Consent Parties and after consultation with the Committee (as defined below), may

execute, subject to higher or otherwise better offers, one or more purchase agreements (a "Stalking Horse Agreement") with one or more Qualified Bidders that submit a Qualified Bid for one or more of the Facilities (a "Stalking Horse Bid").  No Bid may be a Stalking Horse Bid if it does not constitute a Qualified Bid; *provided* that any credit bid submitted by any Secured Party (as defined below) subject to section 363(k) of the Bankruptcy Code shall automatically be deemed to be a Qualified Bid.

Absent further order of the Court, any Stalking Horse Agreement shall limit the Bid Protections, if any, to: (a) a Break-Up Fee of up to an aggregate of three percent (3%) of the total cash consideration offered for any Stalking Horse Bid and (b) Expense Reimbursement actually incurred by a Stalking Horse Bidder in connection with its bid, not to exceed $350,000 per Facility.

To the extent the Debtors, with the consent of the Consent Parties and after consultation with the Committee, determine to offer Bid Protections to any Stalking Horse Bidder, the Debtors shall disclose such Bid Protections in the corresponding notice designating any Stalking Horse Bidders (the "Stalking Horse Bidder Notice") to be filed pursuant to the Bid Procedures on or before **April 19, 2021**.  An appropriate declaration in support of the proposed Bid Protections (the "Bid Protections Declaration") and a proposed form of order approving of the Bid Protections (the "Bid Protections Order") shall be attached to the Stalking Horse Bidder Notice.  Any objection to (i) the Bid Protections set forth in the Stalking Horse Bidder Notice and Bid Protections Declaration or (ii) the form of the Bid Protections Order (a "Bid Protections Objection"), shall be filed no later than **April 23, 2021 at 4:00 p.m. (Eastern Time)**.  The Stalking Horse Bidder Notice and Bid Protections Declaration shall set forth the reasons the Debtors believe the Bid Protections satisfy the requirements of section 503(b) of the Bankruptcy Code.  The Debtors may not propose or award any Bid Protections related to a credit bid, nor may they designate more than one Stalking Horse Bidder for any Facility.  If a timely Bid Protections Objection is filed, the Debtors will schedule a hearing in consultation with any objecting parties, the Consultation Parties, and the Court; *provided*, *however*, any such hearing shall be held on or before **April 26, 2021**, subject to this Court's availability.  Absent any timely Bid Protections Objection, the Court may enter the Bid Protections Order without further hearing.

For the avoidance of doubt, to the extent the Debtors designate more than one Stalking Horse Bidder, no two Stalking Horse Bidders will be designated with respect to any one Facility, whether with respect to a Stalking Horse Bid for an individual Facility or a Stalking Horse Bid for a group of Facilities.

*The deadline for a Potential Bidder to submit a Stalking Horse Bid is April 12, 2021 (the "Stalking Horse Bid Deadline").*

*The Debtors may, but are not required to, designate one or more Stalking Horse Bids of Qualified Bidder(s) (the "Stalking Horse Bidder(s)") on or before April 19, 2021 (the "Stalking Horse Bidder Designation Deadline").  If the Debtors, with the consent of each of the applicable Consent Parties and after consultation with the Committee, designate one or more Stalking Horse Bidders, the Debtors will file a notice (the "Stalking Horse Bidder Notice") on or before April 19, 2021, which Stalking Horse Bidder Notice will attach any Stalking Horse Agreement(s) and disclose any Bid Protections proposed to be offered to any Stalking Horse Bidder(s) and seek an order or orders on an emergency basis approving the Bid Protections.*

4

### *2.    Form of Asset Purchase Agreement*

A Potential Bidder must submit a proposed asset purchase agreement (a "Purchase Agreement"), similar in form and substance, as modified, to the asset purchase agreement to be furnished by the Debtors in the Data Room (the "Form APA"), which shall be provided in advance to the Consultation Parties.

### *3.    Designation as Qualified Bidder*

A "Qualified Bidder" is a Potential Bidder (or combination of Potential Bidders whose bids for one or more of the Facilities constitute a Qualified Bid), that (i) satisfies the Bid Conditions as defined and described below and otherwise satisfies the requirements of the Bid Procedures Order and the Bid Procedures set forth herein; and (ii) that the Debtors, after providing a copy of such Bid to and consulting with the Consultation Parties (as defined herein) determine has submitted a *bona fide* offer for all of the Facilities or for one or more of the Facilities and is reasonably likely to be able to consummate a Sale Transaction (or Sale Transactions, as applicable) if selected as a Successful Bidder (as defined below).

As used herein, "Consent Parties" means:

(i)   solely with respect to the assets of the CA Debtors (including the Riverside Facility and the PinnPack Facility), the CA Prepetition Secured Parties, DIP ABL Lender, and DIP Term Lender (collectively, the "CA Secured Parties");

(ii)  solely with respect to the assets of the TX Debtors (including the Dallas Facility), the requisite TX Prepetition Secured Parties and the requisite TX DIP Secured Parties (the "TX Secured Parties"); and

(iii) solely with respect to the assets of the PA Debtors (including the Reading Facility), the requisite PA Prepetition Secured Parties and the requisite PA DIP Secured Parties (the "PA Secured Parties" and, together with the CA Secured Parties and the TX Secured Parties, the "Secured Parties").

As used herein, "Consultation Parties" means:

(i)   the official committee of unsecured creditors (the "Committee");[3] and

(ii)  solely with respect to the assets in respect of which they are Consent Parties as set forth above, the Consent Parties.

---

[3] The Committee will establish a Trade Advisory Group (the "TAG") consisting of select members of the Committee with recognized experience in the plastics recycling business. The TAG will be available as a resource to any of the Consultation Parties to share (a) technical expertise, (b) industry conditions, and (c) bidder experience, among other information relevant to the consideration of Bids. Upon request of the TAG, the Debtors, subject to the reasonable exercise of their fiduciary duties, shall timely facilitate discussions between Potential Bidders and the TAG with respect to trade vendor issues generally, provided that neither the Committee nor the TAG shall be authorized to initiate such discussions absent the Debtors' consent. The TAG shall be an arm of the Committee subject to the fiduciary duties and confidentiality obligations otherwise applicable to each member of the Committee.

Notwithstanding the foregoing, to the extent that any Secured Party submits a credit bid for one or more of the Facilities, such Secured Party's respective rights as a Consent Party and Consultation Party shall be terminated solely with respect to Bids related to the same Facility or Facilities as that for which the Secured Party submitted a credit bid, and the Debtors shall establish reasonable procedures to prevent such Secured Party or its representatives from being privy to confidential information concerning the Bids of other Bidders for such Facility or Facilities for so long as such Secured Party remains a Bidder; *provided, however* that (i) any Secured Party who submits a credit bid and later withdraws such Bid shall immediately resume being treated as a Consent Party and Consultation Party, as applicable, for purposes of these Bid Procedures, and (ii) any Secured Party who does not submit a credit bid shall at all times be a Consent Party and Consultation Party, as applicable, for purposes of these Bid Procedures.  For the avoidance of doubt, if a Secured Party submits a credit bid and thereafter withdraws its credit bid, thereby becoming a Consent Party or Consultation Party, as applicable, again, such Secured Party cannot submit any further Bids.

The Debtors, after consultation with the applicable Consultation Parties, shall determine and notify any Potential Bidder as to whether such Potential Bidder is a Qualified Bidder no later than **May 10, 2021 at 5:00 p.m. (Eastern Time)**.

### 4.     *Right to Credit Bid*

Any Secured Party submitting a credit bid subject to section 363(k) of the Bankruptcy Code shall automatically be deemed to be a Qualified Bidder without being required to submit any of the Preliminary Bid Documents or satisfy any of the Bid Conditions set forth herein; *provided however*, that a Secured Party may only credit bid subject to section 363(k) of the Bankruptcy Code on the Facility or Facilities on which it has a lien or in which it has a security interest.

### C. Bidding Process

Without limiting the Debtors' other obligations to consult with the applicable Consultation Parties, the Debtors and their advisors shall, after consultation with the applicable Consultation Parties: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions hereof; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase all of the Facilities or one or more of the Facilities.  The Debtors, in consultation with the Consultation Parties, shall have the right to adopt such other rules for the bidding process that are not inconsistent with the Bid Procedures Order, these Bid Procedures, the DIP Orders, and the DIP Documents that will better promote the goals of such process.

### 1.     *Bid Deadline*

***The Bid Deadline is May 5, 2021 at 4:00 p.m. (Eastern Time).***  On or before the Bid Deadline, a Qualified Bidder that desires to make a proposal, solicitation, or offer for a Sale Transaction (each, a "Bid") shall deliver written and electronic copies of its Bid to the Recipient Parties.  The Debtors shall promptly (and in no event later than twelve (12) hours after the Debtors' receipt thereof) provide copies of all Bids (as well as any later amendments, improvements, or changes to such Bids) to counsel for the Consultation Parties.

A Bid received after the Bid Deadline shall not constitute a Qualified Bid; *provided* that Secured Parties may submit credit bids at the Auction.

## 2. *Qualified Bids*

To be eligible to participate in the Auction and to be eligible for consideration as a Qualified Bidder, a Potential Bidder must deliver a Bid, so as to be received by the Recipient Parties on or before the Bid Deadline, that meets the following requirements (collectively, the "Bid Conditions"):

i. Purpose and Identity of Assets to be Purchased. Each Potential Bidder must state that the Bid includes an offer by the Potential Bidder to effectuate a Sale Transaction and identify which Facility or Facilities are included in the Bid.

ii. Good Faith Deposit. Each Bid must be accompanied by a cash deposit (the "Good Faith Deposit") in the form of a wire transfer, certified check, or cash payable to the order of counsel for the Debtors, Pachulski Stang, Ziehl & Jones LLP Attn: Jeffrey W. Dulberg (jdulberg@pszjlaw.com), equal to 10% of the Potential Bidder's proposed Purchase Price (as defined below), which will be held in an escrow or trust account; *provided however*, that a Secured Party submitting a credit bid shall not be required to post a Good Faith Deposit.

iii. Purchase Price. Each Bid must clearly set forth the cash purchase price (the "Cash Consideration") and identify any non-cash consideration included in such Bid (together with the Cash Consideration, the "Purchase Price") including, without limitation, which executory contracts and unexpired leases the Potential Bidder expects the Debtors to assume and assign to the Potential Bidder (the "Transferred Contracts") and which liabilities, if any, of the Debtors the Potential Bidder is agreeing to assume (the "Assumed Liabilities"). ***Any Potential Bidder who submits a Bid for more than one Facility must allocate the Purchase Price between or among each Facility and include the basis and methodology for such allocation***. The Purchase Price associated with each Bid shall be in cash but may include other consideration acceptable to the Debtors with the consent of each of the applicable Consent Parties after consultation with the Committee. If a Stalking Horse Bidder has been selected by the Debtors for all the Facilities or for one or more of the Facilities, the cash component of any other Qualified Bid with respect to all of the Facilities or for one or more of the Facilities must be no less than an amount necessary to satisfy the Break-Up Fee and Expense Reimbursement and be a Topping Bid with respect to the applicable Facilities. In order for the Bid to qualify as a "Topping Bid," it must provide for consideration at Closing (as defined below) that is equal to or in excess of the sum of: (i) the Stalking Horse Bid; (ii) the Expense Reimbursement; (iii) the Break-Up Fee; and (iv) the Minimum Increment (as defined below).

iv. Binding and Irrevocable. Each Bid must include a signed writing stating that it is binding and irrevocable until the selection of the Successful Bidder, provided that if such Potential Bidder is selected as the Successful Bidder or the Back-Up Bidder,

        its offer shall remain irrevocable until the closing of the Sale with the Successful Bidder or, as applicable, the Back-Up Bidder (the "<u>Closing</u>").

v.     <u>Contemplated Transaction Documents</u>. Each Bid must include an executed Purchase Agreement marked against the Form APA pursuant to which the Potential Bidder proposes to effectuate the contemplated Sale Transaction including: (i) a redlined copy of the Purchase Agreement marked to show all changes requested by the Potential Bidder against the Form APA; (ii) specification of the proposed Purchase Price allocated, if applicable, as set forth in section I.C.2.iii hereof; and (iii) any changes to any exhibits or schedules to the Purchase Agreement (collectively, the "<u>Contemplated Transaction Documents</u>"). A Bid must identify with particularity each and every condition to Closing and all Transferred Contracts pursuant to the Contemplated Transaction Documents. All Bids must provide that all Cure Amounts (as defined herein) will be paid by such Potential Bidder. ***The Contemplated Transaction Documents must include a commitment to close by no later than May 31, 2021***. A Bid shall contain a detailed description of how the Potential Bidder intends to treat current employees of the applicable Debtor(s) at the Facility or Facilities included in the Bid.

vi.     <u>Contingencies</u>. A Bid may not be conditioned on obtaining financing or any internal approval or on the outcome or completion of due diligence, but may be subject to the accuracy in all material respects at Closing of representations and warranties at or before Closing or the satisfaction in all material respects of customary representations and warranties for transactions of similar size and nature at or before Closing or the satisfaction in all material respects of customary conditions for transactions of similar size and nature at or before Closing. A Bid must disclose any governmental approvals identified by the Potential Bidder other than as set forth in the Contemplated Transaction Documents that may impact such Potential Bidder's ability to close on its Bid by May 31, 2021.

vii.     <u>No Collusion</u>. Each Bid must include a representation that the Potential Bidder has not engaged in any collusion with respect to its Bid submission (though Potential Bidders are permitted to make joint bids) and that the Potential Bidder will not engage in any collusion with respect to any Bids, the Auction, or the Sale Process.

viii.     <u>Authorization to Bid and Identity of Potential Bidder</u>. Each Bid must include evidence of authorization and approval from such Potential Bidder's board of directors (or comparable governing body, or a statement as to why such approval is unnecessary) with respect to the submission, execution, delivery, and closing of the Contemplated Transaction Documents. A Bid must also fully disclose the identity of the entity that is submitting the Bid, including the identity of the ultimate beneficial owners of the Potential Bidder and the identity of any person or entity providing debt or equity financing for the Bid.

ix.     <u>Financing Sources</u>. Each Bid must include written evidence that demonstrates the Potential Bidder has the necessary financial ability to close the contemplated Sale

    Transaction and provide adequate assurance of future performance under all Transferred Contracts. Such information may include, *inter alia*, the following:

    a. the Potential Bidder's current financial statements (audited, if they exist);

    b. contact names, telephone numbers, and e-mail addresses for verification of financing sources;

    c. evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated Sale Transaction (including confirmation that the funding of such commitments is not subject to any contingency); and

    d. any other form of financial disclosure or credit-quality support information acceptable to the Debtors demonstrating that such Potential Bidder has the ability to close the contemplated Sale Transaction.

x. <u>Adequate Assurance of Future Performance</u>. Each Bid must demonstrate, in the Debtors' reasonable business judgment and after consultation with the Consultation Parties, that the Potential Bidder can provide adequate assurance of future performance to the applicable counterparty under all Transferred Contracts as required by section 365 of the Bankruptcy Code (the "<u>Adequate Assurance Information</u>").

xi. <u>No Fees Payable to Qualified Bidder</u>. Other than any Stalking Horse Bidder(s), a Potential Bidder may not request any break-up fee, termination fee, expense reimbursement, or any similar type of payment. Moreover, by submitting a Bid, a Potential Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code relating in any way to the submission of its Bid, compliance with the Bid Procedures, or participation in the Sale Process.

xii. <u>Payment of the Break-Up Fee and Expense Reimbursement</u>. If a Stalking Horse Bidder has been selected for one or more of the Facilities that are the subject of a Bid and such Stalking Horse Bidder has been granted Bid Protections under its Stalking Horse Agreement in accordance with these Bid Procedures, a Bid must provide for the payment of the Break-Up Fee and Expense Reimbursement to the applicable Stalking Horse Bidder from the proceeds of the cash portion of the Purchase Price of such Bid upon Closing to the extent the Bid overlaps with the Stalking Horse Bid in regard to the Facilities included in such Bid. The applicable Bid Protections will only be earned by the applicable Stalking Horse Bidder if the Successful Bidder has Overbid (as defined below) the Stalking Horse Bidder on the same Facilities included in the applicable Stalking Horse Bid, and will only be payable at the Closing of the applicable Sale Transaction to the Successful Bidder.

xiii. <u>Non-Reliance</u>. A Bid must include an acknowledgement and representation of the Potential Bidder that it has had an opportunity to conduct any and all due diligence

9

        regarding the Facilities (as applicable to its Bid) and Assumed Liabilities prior to making its Bid, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Facilities in making its Bid, and that it did not rely upon any written or oral statements, representations, warranties, or guaranties, express, implied, statutory or otherwise, regarding the Facilities, the financial performance of the Facilities or the physical condition of the Facilities, the assumed liabilities, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Contemplated Transaction Documents.

    xiv.    <u>As Is, Where Is</u>.  A Bid must include an acknowledgement and representation of the Potential Bidder that it understands that any Sale Transaction shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or their estates except to the extent set forth in the Purchase Agreement of the Successful Bidder.

    A Bid received from a Potential Bidder shall constitute a "<u>Qualified Bid</u>" if the Debtors believe, after consultation with the Consultation Parties, that such Bid would be consummated if selected as the Successful Bid.  The Debtors shall have the right to reject any and all Bids that they believe, after consultation with the Consultation Parties, do not comply with the Bid Procedures.  In the event that any Potential Bidder is determined by the Debtors not to be a Qualified Bidder, the Potential Bidder shall be refunded its Good Faith Deposit.  Any credit bid submitted by any Secured Party subject to section 363(k) of the Bankruptcy Code shall automatically be deemed to be a Qualified Bid; *provided, however*, that (i) in no event shall any such Secured Party that submits a credit bid be a Back-Up Bidder unless such Secured Party so consents at the conclusion of the Auction, and (ii) any such Secured Party that submits a credit bid reserves the right to announce its intention not to make any further Bids at the Auction.

### D. <u>Auction</u>

    After the receipt and review of all Qualified Bids, the Debtors shall make a determination, after consultation with the Consultation Parties, whether to accept the highest or best Qualified Bid(s) for all of the Facilities or for one or more of the Facilities, or to proceed with the Auction for a Sale Transaction(s); *provided* that the Debtors must proceed with the Auction absent the consent of the applicable Consent Party.  The Debtors will only proceed with the Auction if the Debtors' Board of Directors, after consultation with the Consultation Parties, concludes that an Auction for a Sale Transaction(s) is likely to produce a higher and better Qualified Bid; *provided* that the Debtors must proceed with the Auction absent the consent of the applicable Consent Party.

    To the extent the Debtors receive Qualified Bids and determine to proceed to Auction, the Debtors, after consultation with the Consultation Parties, shall determine which Qualified Bid(s) represent the then highest or otherwise best Bid(s) for all Facilities or for one or more of the Facilities, as applicable (the "<u>Baseline Bid(s)</u>"). The determination of which Qualified Bid(s) constitute the Baseline Bid(s) and which Qualified Bid(s) constitute the Successful Bid(s) (as defined herein) shall take into account any factors the Debtors, after consultation with the Consultation Parties, reasonably deem relevant to the value of the Qualified Bid(s) to their estates, including, *inter alia*: (a) the amount and nature of the consideration; (b) the certainty of closing;

(c) the net economic effect of any changes to the value to be received by the Debtors' creditors from the proposed Sale Transaction(s), including the assumption of liabilities or the cure of defaults under executory contracts and leases; (d) the allocation of the Purchase Price between or among each Facility; and (e) tax consequences of such Qualified Bid(s) (collectively, the "Bid Assessment Criteria").  If the Debtors, with the consent of each of the applicable Consent Parties and after consultation with the Committee, designate a Stalking Horse Bidder(s), the Baseline Bid(s), to the extent not the Stalking Horse Bid(s), must be not less than the Purchase Price of the Stalking Horse Bid *plus* (ii) the Break-Up Fee *plus* (iii) the Expense Reimbursement.

On or before ***May 10, 2021***, the Debtors shall file a notice on the Court's docket (an "Auction Notice") providing (i) notice of whether the Auction will be conducted in person, telephonically, or via a video conferencing service; and (ii) notice of whether the Debtors believe, in the exercise of their business judgment and after consultation with the Consultation Parties, that the Auction should be held in two or more parts over multiple days so as to maximize value for the estates.

Unless otherwise designated by the Debtors, after consultation with the Consultation Parties, the Auction shall commence at ***10:00 a.m. (Eastern Time) on a date no later than May 12, 2021***, at the offices of Pachulski Stang Ziehl & Jones LLP, 919 N. Market St., 17th Floor, Wilmington, DE 19801, or at such other place designated by the Debtors.  In the Debtors' discretion, the Auction may be held by telephonic or video conference.

The Auction shall be conducted according to the following procedures:

### *1.     Participation at the Auction*

Only the Stalking Horse Bidder(s) and Qualified Bidders that have submitted Qualified Bids are eligible to participate at the Auction.  Only the authorized representatives and professional advisors of each of the Qualified Bidders, the Stalking Horse Bidder(s), the Debtors, the Consultation Parties (including members of the Committee), and the United States Trustee for the District of Delaware shall be permitted to attend the Auction.

In the event, after the conclusion of the Auction, that certain discrete Assets and/or discrete groups of Assets which are not included in the Successful Bid(s) have not been sold (the "Unsold Assets"), the Debtors may, in the exercise of their business judgment and after consultation with the Consultation Parties, resume an auction at or following the Auction for the sale of the Unsold Assets, on such bid procedures that are not inconsistent with the Bid Procedures Order, these Bid Procedures, the DIP Orders, and the DIP Documents as may be implemented by the Debtors after consultation with the Consultation Parties.

### *2.     The Debtors Shall Conduct the Auction*

The Debtors and their professionals shall direct and preside over the Auction.  At the start of the Auction, the Debtors shall describe the terms of any Baseline Bid(s).  All Bids made thereafter shall be Overbids and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders.  The Debtors reserve the right to conduct the Auction, after consultation with the Consultation Parties, in the manner designed to maximize value based upon the nature and extent of the Qualified Bids received in

11

accordance with the Bid Procedures, the Bid Procedures Order, the Bankruptcy Code, and any other order of the Court entered in connection herewith and disclosed to each Qualified Bidder. The Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid(s), all Overbids, and the Successful Bid(s).  Pursuant to Local Rule 6004-1, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the Sale Process, the Bid Procedures, the Auction, or the proposed Sale Transaction(s).

### 3.    *Terms of Overbids*

An "Overbid" is any bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the applicable Baseline Bid(s) that satisfies the following conditions:

### (a)    Minimum Increment

During the Auction, bidding shall begin with the Baseline Bid.  Due to the potential combinations of Assets that may be included in any Bid, the Debtors reserve all rights with respect to the comparison of Qualified Bids to Stalking Horse Bids and the determination of the Baseline Bid(s).  The initial Overbid after the Baseline Bid (the "Initial Overbid") shall be made in an increment of (i)(A)(w) at least $250,000 on a Bid for one of either the Riverside Facility or the PinnPack Facility or (x) at least $125,000 on a Bid for one of either the Dallas Facility or the Reading Facility; or (B)(y) at least $250,000 for both the Dallas Facility and the Reading Facility or (z) at least $500,000 on a Bid for two or more of the Facilities, other than a Bid solely for both of the Dallas Facility and the Reading Facility (the "Minimum Increment") *plus*, solely in the event the Baseline Bid is a Stalking Horse Bid, (ii) the Break-Up Fee *plus* (iii) the Expense Reimbursement, as applicable to the Facilities included in the Bid, in cash or other consideration acceptable to the Debtors, with the consent of each of the applicable Consent Parties and after consultation with the Consultation Parties.  Any Overbids subsequent to the Initial Overbid shall be made in increments of at least the applicable Minimum Increment; *provided, however*, that any Overbids by the Stalking Horse Bidder(s) shall only be required to be equal to the sum of (x) (1) the Baseline Bid or the then existing highest Bid *plus* (2) the Minimum Increment *less* (y) the sum of the amount of the Bid Protections applicable to the Facilities included in the Bid.

Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtors, after consultation with the Consultation Parties, accept a higher Qualified Bid as an Overbid.

### (b)    Consideration of Overbids

Subject to compliance with the terms of the DIP Orders, the Debtors reserve the right, after consultation with the Consultation Parties, to make one or more adjournments in the Auction to, among other things: facilitate discussions between the Debtors and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in the exercise of their business judgment and after consultation with the Consultation Parties, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Sale Transaction at the prevailing Overbid amount.

**(c)     Evidence of Ability to Close Sale Transaction**

To the extent not previously provided on or before the Bid Deadline, a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, evidence reasonably acceptable to the Debtors, after consultation with the Consultation Parties, demonstrating such Qualified Bidder's ability to close the Sale Transaction proposed by such Overbid.

### 4.     *Additional Procedures*

The Debtors, after consultation with the Consultation Parties, may (a) determine which Qualified Bid or Qualified Bids, if any, is the highest or best offer for any Facility or for more than one Facility and (b) reject at any time before entry of an order of the Court approving a Sale Transaction of one or more of the Facilities pursuant to a Qualified Bid, any Bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the Bid Procedures Order; or (iii) contrary to the best interest of the Debtors, their estates, and their creditors.

### 5.     *Consent to Jurisdiction as Condition to Bidding*

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Court and to have waived any right to a jury trial in connection with any disputes relating to the Sale Process, the Auction, the Bid Procedures, and the construction and enforcement of each Qualified Bidder's Contemplated Transaction Documents, as applicable.

### 6.     *Closing the Auction*

The Auction shall continue until there is only one Qualified Bid for all of the Facilities or for one or more of the Facilities (or multiple Qualified Bids for any subsets of the Facilities if there is no single Qualified Bid for all the Facilities) that the Debtors determine, in the exercise of their business judgment and after consultation with the Consultation Parties, is the highest or otherwise best Qualified Bid(s) (such Qualified Bid(s), the "Successful Bid(s)", and such Qualified Bidder(s), the "Successful Bidder(s)"), and that further bidding is unlikely to result in a higher or otherwise better Qualified Bid, at which point, the Auction will be closed. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction. In selecting the Successful Bid, the Debtors, after consultation with the Consultation Parties, may consider all factors relevant to the sale of the Assets, including the Bid Assessment Criteria. Notwithstanding anything to the contrary herein, unless the Successful Bid(s) in the aggregate provide for cash consideration sufficient to pay in full the debt and debt securities of the applicable Secured Parties (with respect to each applicable Facility), the selection of, and the terms of, the Successful Bid(s) must be acceptable to the applicable Secured Parties.

Upon the closing of the Auction, the Debtors, after consultation with the Consultation Parties, shall identify the Successful Bidder(s) and the Successful Bid(s) as soon as reasonably practicable which highest or best offer will provide the greatest amount of net value to the Debtors, and advise the Qualified Bidders of such determination. Due to the potential combinations of Assets that may be included in any Bid, the Debtors reserve all rights with respect to the comparison of Qualified Bids and the determination of the Successful Bidder(s) and Backup Bidder(s) (as defined below).

The Qualified Bidder with the second highest or otherwise best Bid at the Auction, as determined by the Debtors after consultation with the Consultation Parties, shall be required to serve as the back-up bidder (the "Back-Up Bidder(s)"). The identity of the Back-Up Bidder(s) and the amount and material terms of the final Bid of the Back-Up Bidder(s) (the "Back-Up Bid(s)") shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the Successful Bid(s). Any Back-Up Bidder shall keep its Back-Up Bid open and irrevocable until the Closing of the Sale Transaction with the Successful Bidder and if such Back-Up Bid becomes the Successful Bid, must be prepared to close within three (3) business days following the designation of the Back-Up Bid as the Successful Bid, or such date otherwise agreed to by the Debtors in consultation with the applicable Consultation Parties, but in no event shall such date extend beyond the date provided for in the applicable DIP Documents absent the consent of the applicable DIP Lender. The Good Faith Deposit of the Back-Up Bidder(s) shall be returned by the Debtors within three (3) days after Closing.

The Debtors, in their discretion and after consultation with the Consultation Parties, shall not be required to consider any Bids or Overbids submitted after the closing of the Auction.

As stated above, the Successful Bid(s) of the Successful Bidder(s) and the Back-Up Bid(s) of the Back-Up Bidder(s), respectively, must be irrevocable until Closing.

### E. **Notice of Acceptance of Successful Bid**

Upon determination of the Successful Bid(s), on or before ***May 14, 2021 at 5:00 p.m. (Eastern Time)***, the Debtors will file with the Court and serve on the Notice Parties (as defined below) and on all non-Debtor counterparties to Transferred Contracts (as defined below) included in the Successful Bid(s), a notice of the Debtors' intent to effectuate one or more Sale Transaction(s) for one or more of the Facilities with the Successful Bidder(s) upon the approval of the Successful Bid(s) by the Court at the Sale Hearing. Such notice will include contact information for any non-Debtor counterparties to Transferred Contracts to obtain information from the Successful Bidder(s) concerning adequate assurance of future performance. The Debtors' presentation of a particular Successful Bid to the Court for approval does not constitute the Debtors' acceptance of such Successful Bid. The Debtors will be deemed to have accepted a Successful Bid only when such Successful Bid has been approved by the Court at the Sale Hearing.

### F. **Free of Any and All Interests**

Except as otherwise provided in the Purchase Agreement(s) of the Successful Bidder(s) and subject to the approval of the Court, all of the Debtors' rights, title, and interest in and to the Assets subject thereto shall be sold free and clear of any liens, claims, encumbrances, and other interests to the maximum extent permitted by section 363 of the Bankruptcy Code, with such liens, claims, encumbrances, and other interests to attach to the proceeds of the sale of the applicable Assets with the same validity and priority as such liens, claims, encumbrances, and other interests were held against the applicable Assets prior to the sale; *provided*, for the avoidance of doubt, that the rights of the DIP Lenders and DIP Agents to be repaid in cash from such proceeds pursuant to the applicable DIP Order and the applicable DIP Documents shall not be modified without the prior written consent of the applicable DIP Lenders.

### G. Sale Hearing

***The Sale Hearing will occur on May 20, 2021 at 2:00 p.m. (Eastern Time)*** before the Hon. John T. Dorsey, United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom No. 5, Wilmington, Delaware 19801. Any objections to the Sale Transaction(s) requested at the Sale Hearing must be filed and served so as to be received by the Notice Parties or before ***May 18, 2021 at 4:00 p.m. (Eastern Time)***.

At the Sale Hearing, the Debtors will seek entry of an order or orders (each, a "Sale Approval Order") authorizing and approving one or more Sale Transaction(s) to the Successful Bidder(s). Subject to the terms of the DIP Orders, the Sale Hearing may be adjourned or rescheduled without notice or with limited and shortened notice to parties other than the Consultation Parties, including by (i) an announcement of such adjournment at the Sale Hearing or at the Auction or (ii) the filing of a notice of adjournment with the Court prior to the commencement of the Sale Hearing.

If any Successful Bidder fails to consummate an approved Sale Transaction in accordance with its applicable Purchase Agreement or such Purchase Agreement is terminated, the Debtors, after consultation with the Consultation Parties, shall be authorized, but not required, to deem the applicable Back-Up Bid, as disclosed at the Sale Hearing, as the Successful Bid, and the Debtors, after consultation with the Consultation Parties, shall be authorized, but not required, to consummate the sale with the Back-Up Bidder submitting the next highest Bid for each Facility without further order of the Court.

### H. Return of Good Faith Deposit

The Good Faith Deposit of any Successful Bidder (or any Back-Up Bidder that becomes a Successful Bidder) shall be applied to the Purchase Price of such Sale Transaction at Closing. Counsel to the Debtors will hold the Good Faith Deposits of the Successful Bidder(s) and the Back-Up Bidder(s) in a segregated account until the Closing of the Sale Transaction with the Successful Bidder(s). Good Faith Deposits of all other Qualified Bidders shall be held in a segregated account, and thereafter returned to the respective Bidders following the conclusion of the Auction. If a Successful Bidder (including any Back-Up Bidder that has become the Successful Bidder) fails to consummate an approved Sale Transaction because of a breach or failure to perform on the part of such Successful Bidder, the Debtors shall be entitled to retain such Successful Bidder's Good Faith Deposit as part of the Debtors' damages resulting from such Successful Bidder's breach or failure to perform, without prejudice to the Debtors' rights to seek additional damages from the Court as appropriate. The retention of the Good Faith Deposit is not, and is not intended to be, liquidated damages.

## II. ASSUMPTION AND ASSIGNMENT PROCEDURES

As part of a Sale Transaction(s), the Debtors may assume and assign certain of their executory contracts and unexpired leases (the "Potential Assumed/Assigned Contracts") to one or more Successful Bidders (*i.e.* the Transferred Contracts).[4] The following Assumption and

---

[4] For avoidance of doubt, the Debtors reserve all rights concerning the characterization of the Potential Assumed/Assigned Contracts in all respects. Inclusion on the Potential Assumed/Assigned Contract and Cure

15

Assignment Procedures govern the assumption and assignment of the Transferred Contracts in connection with Sale Transaction(s) for one or more of the Facilities, as applicable, to the Successful Bidder(s):

On or before *April 10, 2021*, the Debtors will file and serve a notice of Potential Assumed/Assigned Contracts with respect to any Sale Transaction(s) for any or all of the Facilities (the "Potential Assumption and Assignment Notice"). The Potential Assumption and Assignment Notice will include a schedule (the "Potential Assumed/Assigned Contract and Cure Schedule") identifying (i) the Potential Assumed/Assigned Contracts that may be assumed and assigned to one or more Successful Bidders in the event of a Sale Transaction (*i.e.* may become Transferred Contracts) and (ii) the amount, if any, the Debtors believe is necessary to cure all monetary defaults under such Potential Assumed/Assigned Contracts pursuant to section 365 of the Bankruptcy Code (the "Cure Amounts").

The Potential Assumption and Assignment Notice will be served on each of the non-debtor counterparties (the "Contract Counterparties") listed on the Potential Assumed/Assigned Contract and Cure Schedule by first class mail. The Potential Assumption and Assignment Notice will state that the Debtors are or may be seeking the assumption and assignment of the Potential Assumed/Assigned Contracts in connection with one or more Sale Transactions of the applicable Assets, but that the Debtors reserve all rights to add or remove any Potential Assumed/Assigned Contract from such schedule at any time prior to Closing.

Any Contract Counterparty may object to inclusion of its Potential Assumed/Assigned Contracts on the Potential Assumed/Assigned Contract and Cure Schedule and the Cure Amounts. *Objections to the potential assumption and assignment of a Potential Assumed/Assigned Contract on the Potential Assumed/Assigned Contract and Cure Schedule (an "Assignment Objection"), including any Assignment Objection related to adequate assurance of future performance provided by a Stalking Horse Bidder but not including an Assignment Objection solely related to adequate assurance of future performance provided by a Successful Bidder other than a Stalking Horse Bidder, or to the Cure Amounts (a "Cure Objection") must be filed with the Court and served on the Notice Parties so as to be received no later than April 30, 2021 at 4:00 p.m. (Eastern Time) (the "Cure/Assignment Objection Deadline")*. Any Cure Objection or Assignment Objection must clearly identify the factual and legal reasons for such objection and, with respect to a Cure Objection, appropriate documentation in support of the disputed Cure Amount.

Upon receipt of an Assignment Objection or Cure Objection, the Debtors will contact the Contract Counterparty or its counsel to attempt to resolve such objection. If an Assignment Objection or Cure Objection is timely filed by the Cure/Assignment Objection Deadline and cannot be resolved, a hearing will be held (i) at the Sale Hearing or (ii) on such other date subsequent to the Sale Hearing but before the Closing Date, as the Court may designate prior to,

---

Schedule does not constitute an admission that any particular Potential Assumed/Assigned Contract is an executory contract or unexpired lease, or confirm that the Debtors are required to assume and/or assign such contract or lease pursuant to section 365 of the Bankruptcy Code.

16

during, or after the Sale Hearing (the "Cure/Assignment Hearing") before the Bankruptcy Court to consider the objection.

If no Assignment Objections or Cure Objections are filed or received with respect to any Potential Assumed/Assigned Contracts identified on the Potential Assumed/Assigned Contract and Cure Schedule, then the Cure Amounts set forth in the Potential Assumed/Assigned Contract and Cure Schedule for such Potential Assumed/Assigned Contract will be binding upon the Contract Counterparty to such Potential Assumed/Assigned Contract for all purposes and will constitute a final determination of the Cure Amounts required to be paid by the applicable Debtors in connection with the assumption and assignment of such Potential Assumed/Assigned Contract.

In addition, all Contract Counterparties to the Potential Assumed/Assigned Contracts who fail to file an Assignment Objection or Cure Objection before the Cure/Assignment Objection Deadline (except objections solely related to adequate assurance of future performance provided by a Successful Bidder other than the Stalking Horse Bidder), will be (i) forever barred from objecting to the Cure Amounts with respect to the Potential Assumed/Assigned Contracts, and the Debtors and the applicable Bidder(s) at the Auction will be entitled to rely solely upon the Cure Amounts set forth in the Potential Assumed/Assigned Contract and Cure Schedule; (ii) deemed to have consented to the assumption and assignment (subject only to the right to seek adequate assurance of future performance from the applicable Successful Bidder(s) other than a Stalking Horse Bidder in accordance with the procedures set forth herein); and (iii) forever barred and estopped from asserting or claiming against the applicable Debtor(s) or the applicable Successful Bidder(s) that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied or that there is any other objection or defense to the assumptions or assignments of the applicable Potential Assumed/Assigned Contracts, subject only to the right to seek adequate assurance of future performance from the applicable Successful Bidder(s) other than a Stalking Horse Bidder in accordance with the procedures set forth herein.

Further, if the Debtors, Successful Bidder(s), or Backup Bidder(s), as applicable, in accordance with the Bid Procedures, identify additional executory contracts or unexpired leases that it wishes to add to (each an "Additional Contract") or remove from (each a "Removed Contract" and, together with Additional Contracts, "Additional Notice Contracts") the Potential Assumed/Assigned Contracts and Cure Schedule the Debtors shall, within two (2) calendar days of making or being informed of such a determination, send a supplemental Assumption and Assignment Notice (a "Additional Assumption and Assignment Notice") to the applicable Contract Counterparties to such Additional Notice Contracts.

Objections from any Contract Counterparty to an Additional Assumption and Assignment Notice (an "Additional Potential Assignment/Cure Objection") must: (i) be made in writing and filed on the docket by the later of (a) the Cure/Assignment Objection Deadline and (b) seven (7) calendar days after the Debtors file and serve the Additional Assumption and Assignment Notice (as applicable, the "Additional Potential Assignment/Cure Objection Deadline"); (ii) state the basis of such objection with specificity, including, without limitation, the Cure Amount alleged by such Contract Counterparty, and include contact information for such Contract Counterparty; (iii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules; and (iv) be served upon the Notice Parties (as defined in the Bid Procedures) so as to be actually received on or before the Additional Potential Assignment Objection Deadline.  Any Additional

Assumption and Assignment Notice shall provide that Additional Potential Assignment/Cure Objections will be resolved at a hearing to be held by the Court (i) on or before seven (7) calendar days from the timely filing of the Additional Potential Assignment/Cure Objection; (ii) at the Cure/Assignment Hearing; or (iii) such other date designated by the Court.

As set forth above, upon determination of the Successful Bid(s), on or before ***May 14, 2021 at 5:00 p.m. (Eastern Time)***, the Debtors will file with the Court and serve on the Notice Parties and on all Contract Counterparties to Transferred Contracts included in the Successful Bid(s) a notice (the "Notice of Successful Bidder" and, together with the Assumption and Assignment Notice and any Additional Assumption and Assignment Notice, the "Contract Notices") of the Debtors' intent to effectuate one or more Sale Transaction(s) for one or more of the Facilities to the Successful Bidder(s) upon the approval of the Successful Bid(s) by the Court at the Sale Hearing.  Any Contract Counterparty to a Transferred Contract seeking information concerning adequate assurance of future performance by the Successful Bidder(s) should immediately contact Steven W. Golden (sgolden@pszjlaw.com) and the applicable Successful Bidder to attempt to resolve any such concern.  To the extent a Contract Counterparty objects (an "Adequate Assurance Objection") to a Successful Bidder's ability to provide adequate assurance of future performance (other than a Stalking Horse Bidder), such Contract Counterparty may raise an Adequate Assurance Objection at any time prior to or during the Sale Hearing.  To the extent the parties are unable to consensually resolve the Adequate Assurance Objection prior to Closing, the Court will set a hearing on the Adequate Assurance Objection to determine whether terms of the Successful Bid are compliant with section 365 of the Bankruptcy Code in providing adequate assurance of future performance to the Contract Counterparty of the applicable Transferred Contract.  The Debtors intend to cooperate with Contract Counterparties to Transferred Contracts to attempt to reconcile any Adequate Assurance Objection.

Service of the Contract Notices shall not constitute an admission that a Potential Assumed/Assigned Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code and shall not require the Debtors to assume and assign such Potential Assumed/Assigned Contract.

### III.    NOTICE PARTIES

As used herein, the "Notice Parties" are:

i. the Debtors, c/o Force Ten Partners LLC, 5271 California Avenue, Suite 270, Irvine, CA 92617, Attn: Brian Weiss (bweiss@force10partners.com);

ii. proposed counsel for the Debtors, (a) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: James E. O'Neill (joneill@pszjlaw.com) and Steven W. Golden (sgolden@pszjlaw.com); and (b) Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067-4003, Attn: Gabriel I. Glazer (gglazer@pszjlaw.com);

iii. counsel to the DIP Term Agent, DIP Term Lenders, and Prepetition Term Secured Parties, (a) Latham & Watkins LLP, (x) 355 South Grand Avenue, Suite 100, Los

Angeles, CA 90071, Attn: Jeffrey E. Bjork (jbjork@lw.com), (y) 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: James Ktsanes (james.ktsanes@lw.com), and (z) 885 Third Avenue, New York, NY 10022, Attn: Andrew C. Ambruoso (andrew.ambruoso@lw.com), and (b) Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, Attn: Robert S. Brady (rbrady@ycst.com), Edwin J. Harron (eharron@ycst.com) and Kara Hammond Coyle (kcoyle@ycst.com);

iv. counsel to the DIP ABL Lender and Prepetition ABL Secured Parties, (a) Otterbourg, P.C., 230 Park Avenue, New York, NY 10169-0075, Attn: Andrew M. Kramer (akramer@otterbourg.com) and David E. Morse (dmorse@otterbourg.com) and (b) Richards, Layton & Finger, PA, One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: John Henry Knight (knight@rlf.com);

v. counsel to the TX/PA DIP Agents and Prepetition Trustees, (a) Arnold & Porter Kaye Scholer LLP, 70 West Madison Street, Suite 4200, Chicago, IL 60602-4321, Attn: Michael Messersmith (michael.messersmith@arnoldporter.com), Sarah Gryll (sarah.gryll@arnoldporter.com), and Ginger Clements (ginger.clements@arnoldporter.com) and (b) Troutman Pepper Hamilton Sanders LLP, 1313 N. Market Street, Suite 5100, Wilmington, DE 19801, Attn: David Stratton (david.stratton@troutman.com);

vi. counsel to the Official Committee of Unsecured Creditors, (a) Hogan Lovells US LLP, 1999 Avenue of the Stars, Los Angeles, CA 90275, Attn: David P. Simonds (david.simonds@hoganlovells.com), Erin N. Brady (erin.brady@hoganlovells.com), and Edward McNeilly (edward.mcneilly@hoganlovells.com) and (b) Blank Rome LLP, 1201 N. Market Street, Suite 800, Wilmington, DE 19801, Attn: Stanley B. Tarr (tarr@blankrome.com); and

vii. the Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Joseph McMahon (Joseph.McMahon@usdoj.gov).