# Exhibit A

# Service Contract
# POWERSORT 200

**No. 041/042P2117**

CarbonLITE Recycling




Annex 1: General Terms and Conditions of Sales and Service (2015 Version)
Annex 2: Service Rates / Surcharges
Annex 3: Remote Service Concept - 1.03
Annex 4: POWERSORT 200 Wear Parts
Annex 5: POWERSORT 200 Spare Parts
Annex 6: POWERSORT 200 Additional Services

# Service Contract

**The company: CarbonLITE Recycling**

- hereinafter called **"Customer"** -

with head office at: 4685 Mountain Creek Pkwy
Dallas, TX 75236

USA

**and the company: UNISENSOR USA, Inc.**

- hereinafter called **"Contractor"** -

with head office at: 1170 Peachtree Street
Suite 1200
Atlanta, Georgia 30309

USA

**hereby conclude a Service Contract regarding the following POWERSORT 200 measuring and sorting system(s) - hereinafter called "system(s)" -**

**Powersort Serial – No.: 041P2117 V16**
Delivery date: 09th. May 2017
Location: Dallas, USA

**Powersort Serial – No.: 042P2117 V16**
Delivery date: 09th. May 2017
Location: Dallas, USA

Contact person: Steve Ramos
Telephone: 001(951) 500-2220
Email: sramos@carbonliterecycling.com

# Contents of Service Contract


| | | |
|---|---|---|
| § 1 | Subject of Contract | 4 |
| § 2 | Scope of Services and Service Exclusions | 4 |
| § 3 | Additional Services: Spare Parts/Repairs | 6 |
| § 4 | Time of Performance of Services | 6 |
| § 5 | Service Personnel | 6 |
| § 6 | Obligations of the Customer | 6 |
| § 7 | Remuneration and Payment Method | 7 |
| § 8 | Term/Termination of Contract | 8 |
| § 9 | Warranty | 8 |
| § 10 | Limitation of Liability | 8 |
| § 11 | Reservation of Title | 9 |
| § 12 | Confidentiality | 9 |
| § 13 | Assignment | 10 |
| § 14 | Annexes | 10 |
| § 15 | Miscellaneous Provisions | 11 |
| § 16 | Signatures | 12 |

## § 1 Subject of Contract

This Contract governs the relationship between Contractor and Customer for the scope of services to be provided to Customer on the above referenced POWERSORT 200 measuring system(s) as detailed in § 2 of this Service Contract. This Contract shall replace all previous service contracts which were concluded between the contracting parties for this system. The General Terms and Conditions of Sales and Services of UNISENSOR USA, Inc. (Version 2015, included hereto as Annex 1) are hereby incorporated by this reference. In the event of any conflict between the terms of this contract and the General Terms, the terms contained herein shall control and govern.

## § 2 Scope of Services and Service Exclusions

**2.1. Maintenance**

During the contract year, the Contractor shall carry out 2 (two) routine maintenance checks for each measuring system covered by this Service Contract. Routine maintenance shall be performed during the Customer's normal business hours (Monday to Friday, 8 a.m. to 5 p.m. on workdays).

During routine maintenance of the POWERSORT 200 system, the Contractor shall replace the parts mentioned below and listed in Annex 4 as required. Replacement of other parts not listed here or in Annex 4 shall not be covered by the scope of services and such replacement services shall be invoiced separately. Title in the parts that are replaced by new or refurbished parts pursuant to this Contract will revert to Contractor.
In particular, the scope of maintenance shall include the following services:

- Check and maintenance of the POWERSORT 200 system including

  Laser System
  - Check and (if necessary) replacement of optical components of the laser system
  - Replacement of the laser converter module (if necessary)
  - Replacement of the laser diodes (if necessary)

  These services are performed through the exchange of the laser or the laser converter module by a refurbished laser or laser converter module. The refurbished laser or laser converter module is delivered from Germany to the Customer DDU (Delivered Duty Unpaid / Incoterms 2010). The Customer has to prepare the exchanged laser or laser converter module for shipment directly after the service (packaging of the laser or laser converter module, preparation of the papers for the shipment and hand over of the laser or laser converter module to the shipper of the Contractor).

  Optics / Sensor Components
  - Check of the spectrometer unit
  - Check of mirrors / laser mirrors
  - Check of laser window
  - Replacement of positioning laser (if necessary)

  Pneumatic Wear Parts
  - Check and replacement (if necessary) of wear parts of the compressed-air unit
  - Check of valves
  - Check of the vacuum pump

  Mechanics
  - Check and eventually cleaning of the climate control unit
  - Control of mechanic parts

- Check of the UPS and replacement of battery (if necessary)
- Compilation of a maintenance protocol

- Recording of the replacement part requirements stated by the Customer and/or identified by the Contractor's service staff
- Preventative measures to avoid possible system errors, insofar as they are evident at the time of the maintenance
- Observation of production state (up to 4 hours)

A maintenance check usually takes about 16 hours. The routine maintenance check is completed while the system is operating in production.
During maintenance, POWERSORT 200 will be partially unavailable for production, i.e. during maintenance, measuring and sorting are only partially functional and the feed stream may be temporarily interrupted.

**2.2. Telephone service and telephone support**

The Customer may use the telephone service and telephone support of UNISENSOR Sensorsysteme GmbH, Germany during their normal business hours (Monday to Friday, 8 a.m. to 5 p.m. CET on German workdays) free of additional charge, according to the terms of this Service Contract.

The service telephone number is: 001(470) 210-8647

**2.3. Remote Service Concept 1.03**

The price for the Remote Service Concept 1.03 shall be included in the price of this Service Contract.
Installation and commissioning shall be performed by a qualified technician of the Contractor. The Customer has to supply an adequate remote access. Customer support through the Remote Service Concept 1.03 is performed by UNISENSOR Sensorsysteme GmbH during their normal business hours (Monday to Friday, 8 a.m. to 5 p.m. CET on German workdays) and shall include:

- Problem analysis of the measuring system by means of an online connection
- Optimisation of system configurations
- If necessary, data transfer

Further details of the Remote Service Concept are stipulated in Annex 3.

**2.4. Emergency service**

Outside the normal business hours of UNISENSOR Sensorsysteme GmbH, an emergency service with qualified contacts shall be available to the Customer in the event of a serious defect or failure.

In the event of such a defect or failure, the Customer may use Contractor's emergency service free of additional charge during the term of this Service Contract. The corresponding service telephone number is: USA: 001(470) 210-8647 GER: 0049 721-97884-66

If the system fails, the emergency service shall contact the Customer by telephone within 2 hours after receipt of the damage report by telephone at the assigned number (see above). The Customer's representative must leave his telephone number, name, name of his company and a brief description of the problem on the telephone answering machine.

The emergency service shall try to rectify the defect or failure over the telephone. If the defect or failure cannot be rectified over the telephone, the on-call service technician shall - at the earliest possible time during the business hours of the assigned service desk - visit the Customer in order to return the machine as quickly as possible to an operational state, taking into account the nature of the defect or failure. If the cause of the defect or failure is not covered by warranty, then Contractor shall charge for this visit based on the rates shown in **Annex 2**.

**2.5. Service exclusions**

The Contractor's scope of services shall not include maintenance services which are attributable to circumstances which are not authorized, such as but not limited to, improper use, careless operation, operation not in line with the System's manual, external factors, including but not limited to power surges, lightning strikes and so forth, interfaces not being supplied according to specification (cooling water, air pressure, etc.), and incorrect operation or installation of spare parts not purchased from the Contractor.

## § 3 Additional Services: Spare Parts/Repairs

During routine maintenance of the POWERSORT 200 system(s), the Contractor shall replace the parts listed in Annex 4 as required. Replacement of other parts not listed in Annex 4 shall not be covered by the scope of services according to § 2 of this Contract and such replacement services shall be invoiced separately. This shall also include services which become necessary due to the installation of spare parts which were not purchased from the Contractor. If necessary, an additional order shall be issued by the Customer in this respect.

## § 4 Time of Performance of Services

4.1. All appointments for routine maintenance work shall be carried out by prior mutual arrangement between the Customer and the Contractor. Appointment requests by the Customer shall be taken into account.

4.2. Necessary postponements shall be notified to the other contracting party as soon as possible. If the Contractor is unable to keep an agreed appointment and informs the Customer in advance, then Customer shall have no claim whatsoever as a result.

4.3. If, when the Contractor's service employee appears, the Customer refuses the maintenance services despite having agreed an appointment, the Customer shall pay all of Contractor's costs incurred for the visit including idle time. These charges will be invoiced separately at the rates set forth in **Annex 2**.

4.4. Costs incurred by the Contractor due to a postponement by the Customer shall be invoiced separately.

## § 5 Service Personnel

5.1 The Contractor shall use qualified personnel, who are familiar with the system's properties and technology, to carry out the work hereunder. The Contractor shall provide tools, documentation and diagnostic and test equipment as necessary to render its services hereunder.

5.2 The Contractor shall be entitled to use qualified subcontractors to perform the maintenance work. The Contractor shall be liable for the work of the subcontractors to the same extent as for his own actions.

## § 6 Obligations of the Customer

The Customer shall grant the Contractor access to the system(s) covered by this Contract as required. The Customer shall document defects or failures that occur during the term of this Contract and report them to the Contractor immediately. The necessary maintenance and operation of the system described in the operating manual shall be carried out regularly by the Customer or by the Customer's representative responsible for this system. Conclusion of the Maintenance Contract shall not release the Customer from his obligation to monitor the system in a proper and professional way.

## § 7 Remuneration and Payment Method

7.1. The price of this contract, i.e. for **one** of the Contractor's POWERSORT 200 measuring units shall be

**For the first year after installation and start-up: EURO 15.000,--**

**For the 2nd and 3rd year after installation and start-up: EURO 38.000,--, per year**

**All payments to be done in Euros**

The prices set forth above shall include all travel expenses. Travel expenses shall comprise per maintenance visit: travel time for a return trip, mileage allowance, overnight accommodation, flight tickets, parking charges, general expenses, and other normal and customary expenses. Should a proposed expense not be included, the Contractor shall obtain prior approval from Customer before incurring the expense.

All prices shall be exclusive of VAT and other taxes. The Service Contract shall be paid in advance within 30 days after receipt of the invoice.

7.2. After the first three years of this Agreement the Contractor shall be entitled to reasonably adjust the contract price at its own discretion with every extension of the Contract. The adjustment may be requested at the start of a new contract year. Should the requested adjustment of the price exceed 5% compared to the previous contract year the Customer shall be entitled to terminate the Contract. The Contract shall then terminate three months after the date on which the price adjustment was scheduled. Customer will pay for this three month period at the rate of the prior agreement.

7.3. Spare parts under § 3 of this Contract shall be invoiced separately at the price of the Contractor that applies on the date of delivery, plus VAT, packing costs, freight costs, insurance costs, customs duties, fees and other incidental expenses, and shall be paid by Customer within 14 days after receipt of the invoice.

7.4. Services not covered by the scope of services under § 2 of this Contract shall be paid for by Customer based on the Contractor's service rates in existence at the time of the provision of the services (for service rates valid for the first contract year see **Annex 2** to this Contract). These services shall be invoiced separately and shall be paid by Customer within 14 days after receipt of the invoice.

7.5. The Contractor shall be entitled to invoice the surcharges according to **Annex 2** to this Contract for maintenance work performed outside of the times shown in § 2 No. 2.1, i.e. on Saturdays, Sundays and public holidays, as well as for overtime work, additional work and night work.

7.6. If the Customer fails to comply with any of its material payment obligations under this Contract, the Contractor shall be entitled to suspend its services until such time as the Customer brings its account current.

7.7. Neither party may set off any sums owed to the other hereunder.

## § 8 Term/Termination of Contract

8.1. The Contract shall come into force after it has been signed by both contracting parties. The service period covered by this contract starts on 09/01/2017 and ends on 08/31/2020.

The Contract shall be automatically extended for an additional year, unless it is terminated in writing by one contracting party, at least three months before its anniversary.

8.2. Notwithstanding any other provision of this Contract, in the event that:

- either Party is in breach or default of its covenants except for a breach of warranty hereunder and such breach is not cured within thirty (30) days after written notice from the other Party,
- a proceeding is brought by or against either Party under the provisions of an insolvency, composition or bankruptcy act, or a Party makes an arrangement for the benefit of creditors,

then this Contract may be terminated by the other Party by giving written notice of such termination on a date to be specified in the notice, but no sooner than fourteen (14) days from the date notice is given.

Upon termination hereof, Contractor shall remain entitled to any unpaid balance due on services previously delivered.

The right of either Party to terminate the respective service agreement without notice in case of material breach of the other Party's duties under this Agreement shall remain unaffected.

In case of only slight contract breach, e.g. in case of small errors in performance, Customer shall not be entitled to terminate the contract, or to refuse payment.

## § 9 Warranty

9.1. The warranty period for system components replaced during maintenance shall be 12 months from the date of the delivery of the replaced system component. The warranty period for system components not replaced during maintenance shall not be extended as a result of maintenance. Repair of the system shall take place at the Contractor's discretion either by repair or replacement delivery. The Contractor shall be granted a reasonable time and opportunity to complete the repair.

9.2. Section 12.3. of Annex 1: Contractor's General Terms and Conditions of Sales and Service (2015 Version) shall remain unaffected.

**9.3. EXCEPT FOR THE WARRANTIES SPECIFICALLY REFERENCED IN THIS SECTION 9, CONTRACTOR MAKES NO WARRANTY, EXPRESS OR IMPLIED AS TO THE CONDITION, MERCHANTABILITY, EFFECTIVENESS OR FITNESS FOR PARTICULAR PURPOSE OF ANY PRODUCTS, PARTS OR SERVICES.**

## § 10 Limitation of Liability

**10.1 IN ALL EVENTS, THE LIABILITY OF CONTRACTOR, WHETHER BASED IN TORT, BREACH OF CONTRACT, BREACH OF WARRANTY, OR OTHERWISE, SHALL NOT EXCEED THE AMOUNT PAID FOR SERVICES UNDER THIS CONTRACT IN PREVIOUS TWELVE (12) MONTHS. CUSTOMER ACKNOWLEDGES THAT THE REMEDIES PROVIDED HEREIN ARE EXCLUSIVE AND IN LIEU OF ALL OTHER REMEDIES. IN NO EVENT WILL CONTRACTOR BE LIABLE TO CUSTOMER OR ANY THIRD PARTY, IN CONTRACT, TORT OR OTHERWISE, FOR ANY LOSS OF PROFITS OR BUSINESS, OR FOR ANY SPECIAL, INCIDENTAL, INDIRECT, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES RELATING TO THE PRODUCTS, PARTS OR SERVICES PROVIDED HEREUNDER, EVEN IF CONTRACTOR HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. NOTWITHSTANDING THE FOREGOING, IN THE EVENT THAT ANY CLAIM IS BROUGHT AGAINST CONTRACTOR FOR PRODUCT LIABILITY, CONTRACTOR'S LIABILITY SHALL BE LIMITED TO A MAXIMUM OF**

**AVAILABLE INSURANCE COVERAGE AVAILABLE FOR SUCH DAMAGE, IF ANY. ANY AMOUNT OF DAMAGES IN EXCESS THEREOF SHALL BE BORNE BY THE CUSTOMER. CONTRACTOR SHALL NOT BE LIABLE FOR ANY DEFECT THAT WAS CAUSED BY THE PRODUCTS OR PARTS HAVING BEEN MODIFIED AND/OR INTEGRATED INTO PRODUCTS OF CUSTOMER OR THIRD PARTIES. CONTRACTOR SHALL NOT BE LIABLE IN THE EVENT THE PRODUCTS OR PARTS SUPPLIED WERE IMPROPERLY USED, TREATED, HANDLED, STORED OR SUPPLIED BASED ON CUSTOMER'S INSTRUCTIONS (INCLUDING, WITHOUT LIMITATION, DESIGN DETAILS, SPECIFICATIONS, PLANS, TEMPLATES OR STORAGE AND TRANSPORT RULES).**

**10.2 CUSTOMER HEREBY EXPRESSLY WAIVES ANY AND ALL CLAIMS FOR ANY AND ALL INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO ANY CLAIMS FOR DAMAGES FOR LOSS OF USE, LOSS OF TIME, LOSS OF PROFITS, OR LOSS OF INCOME RELATING TO THE PURCHASE OR USE OF THE PRODUCTS, PARTS OR SERVICES HEREUNDER. IN ADDITION, CONTRACTOR SHALL HAVE NO LIABILITY TO CUSTOMER (A) IF ANY PATENT INFRINGEMENT CLAIM INVOLVING THE PRODUCTS OR PARTS IS BASED UPON THE USE OF THE PRODUCTS OR PARTS DELIVERED HEREUNDER ARE USED IN CONNECTION WITH A PROCESS OR IN COMBINATION WITH EQUIPMENT, DEVICES, OR SOFTWARE NOT SUPPLIED OR APPROVED IN WRITING BY CONTRACTOR, OR ARE USED IN A MANNER FOR WHICH THE PRODUCTS OR PARTS WERE NOT DESIGNED, (B) TO THE EXTENT ANY CLAIM, LOSS OR DAMAGE IS THE RESULT OF, OR RELATED TO, CUSTOMER'S FAILURE TO COMPLY WITH THE SPARE PART OR MAINTENANCE SPECIFICATIONS APPLICABLE TO THE APPLICABLE PRODUCT OR PART.**

## § 11 Reservation of Title

11.1 Any parts sold to Customer under this Contract shall remain the property of the Contractor until all claims to which it is entitled against the Customer arising out of the business relationship have been fulfilled. Insofar as the value of all security interests to which the Contractor is entitled exceeds the level of all the secured claims by more than 20%, the Contractor shall release a corresponding part of the security interests at the request of the Customer.

11.2 Customer hereby grants Contractor a security interest in any Products provided by Contractor to Customer in connection with the Services and all proceeds therefrom to secure Customer's payment obligations to Contractor hereunder. Contractor shall be entitled to exercise all rights and remedies available to a secured creditor under applicable law. To assist Contractor in protecting Contractor's interest, Customer agrees to execute and deliver to Contractor any and all documents, and to take all measures necessary to perfect Contractor's security interest, including all UCC financing statements. Customer further appoints Contractor as Customer's attorney in fact for the purpose of executing all documents on Customer's behalf which are necessary to perfect and maintain Contractor's security interest in the Products.

11.3 The Customer is permitted to process, reform or combine the reserved title parts with other objects. The processing, reforming or combination shall be carried out on behalf of the Contractor. The Customer shall safeguard the new objects with the care of a professional businessman. The Contractor shall be entitled to co-ownership in each new object on a pro rata equal to their share of its value.

11.4 If the Customer fails to comply with any of its obligations within fifteen days of notice of its failure to comply, especially its payment obligations, the Contractor shall be entitled to terminate this Agreement and demand return of the respective parts. The Customer is obliged to relinquish possession.

## § 12 Confidentiality

The parties hereby agree to maintain confidentiality regarding all business information, documents and data received from the other contracting party or one of its affiliates. The contracting parties also agree not to pass on any confidential information to third parties

without the prior written permission of the other contracting party, unless the disclosing party is legally obliged to do so or the information is public knowledge. This confidentiality obligation shall survive the termination or expiration of this Contract.

## § 13 Assignment

Both contracting parties may only assign their rights and obligations from this Contract to third parties - either entirely or only partially - with the prior written permission of the respective other contracting party.

## § 14 Annexes

14.1. Annexes 1 to 6 shall form an integral part of this Contract even if they have not been signed by the contracting parties.

Annex 1: Contractor's General Terms and Conditions of Sales and Service (2015 Version)
Annex 2: Service Rates / Surcharges
Annex 3: Remote Service Concept 1.03
Annex 4: POWERSORT 200 Wear Parts
Annex 5: POWERSORT 200 Spare Parts
Annex 6: POWERSORT 200 Additional Services

14.2. In the event of discrepancies between the documents shown in § 14.1 or between a document shown in § 14.1 and this Contract, the following order of priority shall apply:

1. This Service Contract
2. Annex 1: Contractor's General Terms and Conditions of Sales and Service (2015 Version)
3. Annex 2: Service Rates / Surcharges
4. Annex 3: Remote Service Concept 1.03
5. Annex 4: POWERSORT 200 Wear Parts
6. Annex 5: POWERSORT 200 Spare Parts
7. Annex 6: POWERSORT 200 Additional Services

14.3. The Annexes shall have no bearing on systems supplied by Contractor to Customer in the past or to be supplied in the future. Rather, this Agreement shall be completely independent from any system purchase agreements between the parties. Any conditions and rights under this Agreement shall only apply as far as Services or spare/wear parts, not Goods, are affected by them.

PK

## § 15 Miscellaneous Provisions

15.1. The place of performance for the Contractor's services shall be the location of the Customer.

15.2. This contract and the entire legal relationship between the Contractor and the Customer shall be construed under and governed by the law of the State of Georgia. The UN Treaty on the International Sale of Goods dating from 11.04.1980 shall not apply.

15.3. Arbitration

(a) Venue; Number of Arbitrators.

Any dispute, claim or controversy arising out of or relating to this Agreement thereof, shall be determined by binding arbitration in Atlanta, Georgia before three arbitrator(s) unless the parties agree to use a sole arbitrator. The arbitration shall be administered under American Arbitration Association ("AAA") Commercial Arbitration Rules using Expedited Procedures("Rules") as modified by this §15.3. In the event of a conflict between this § 15.3 and the Rules, this Section shall apply. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from the Superior court or federal court having jurisdiction over Fulton County, Georgia. The parties hereto consent to jurisdiction in those courts. Judgment on the Award may be entered in any court having jurisdiction.

(b) Negotiation in Advance of Arbitration.

Prior to filing a demand for arbitration, the parties shall attempt in good faith to resolve any dispute arising out of or relating to this Agreement promptly by negotiation between one executive of each party with authority to settle the controversy. Any party may give the other party written notice of any dispute not resolved in the normal course of business. Within fifteen (15) days after delivery of the notice, the receiving party shall submit to the other a written response. The notice and response shall include a particularized statement of each party's position and a summary of arguments supporting that position. Within thirty (30) days after delivery of the notice, the party representatives and their counsel if desired, shall meet at a mutually acceptable time and place and shall attempt, in good faith, to resolve this dispute.

(c) Unless otherwise agreed in writing by the negotiating parties, the above-described negotiation shall end at the close of the first meeting of executives described above ("First Meeting"). Such closure shall not preclude continuing or later negotiations, if desired.

(d) At no time prior to the First Meeting shall either side initiate an arbitration related to this Agreement except to pursue an equitable remedy that is authorized by law or by this Agreement. However, this limitation is inapplicable to a party if the other party refuses to comply with the requirements of subparagraph (a) above. All applicable statutes of limitation and defenses based upon the passage of time shall be tolled while the procedures specified in subparagraphs (a) and (b) above are pending and for fifteen (15) calendar days thereafter. The parties will take such action, if any, required to effectuate such tolling. If the matter is not resolved by negotiation pursuant to subparagraphs 13(a) through (d), then the matter may proceed to arbitration.

(e) Either party may initiate arbitration with respect to the matters submitted to negotiation by filing a written demand for arbitration at any time following the First Meeting.

(f) Within fifteen (15) days after the commencement of arbitration, each party shall select one person to act as arbitrator, and the two so selected shall select a third arbitrator to chair the arbitration panel within thirty (30) days of the commencement of the arbitration. If the arbitrators selected by the parties are unable or fail to agree upon the third arbitrator within the allotted time, the third arbitrator shall be appointed by AAA. All arbitrators shall serve as neutral, independent and impartial arbitrators. The parties may agree to have the controversy heard by a single arbitrator, to be agreed upon by the parties or appointed by AAA.

(g) Prior to the arbitration hearing the parties may engage in limited discovery including (a) an exchange of relevant documents and the identification of witnesses within forty-five (45) days of the filing of the demand for arbitration, and (b) one deposition for each side to be completed within seventy-five (75) days of the filing of the demand for arbitration. The arbitration panel may, in its discretion, order other, limited discovery, at the request of a party.

(h) The arbitration hearing shall be scheduled as soon as possible after the conclusion of discovery. The parties shall be entitled to present evidence and witnesses and to cross – examine in the hearing.

(i) The arbitration panel will render a written award, deciding each claim and the relief, if any, awarded as to each claim, within forty-five (45) days of the conclusion of the arbitration hearing.

(j) In any arbitration arising out of or related to this Agreement, the arbitrator(s) shall award to the prevailing party, if any, the costs and attorneys' fees reasonably incurred by the prevailing party in connection with the arbitration. If the arbitrator(s) determine a party to be the prevailing party under circumstances where the prevailing party won on some but not all of the claims and counterclaims, the arbitrator(s) may award the prevailing party an appropriate percentage of the costs and attorneys' fees reasonably incurred by the prevailing party in connection with the arbitration.

15.4. This Agreement supersedes any other Agreements between the parties relating to the subject matter hereof, i.e. servicing of the system(s). Amendments and additions to this Contract shall only be valid if they have been agreed by the managing directors of the contracting parties. These agreements shall be recorded immediately in writing. Orders from the Customer or special conditions requested by the Customer shall only be deemed to have been accepted after they have been confirmed in writing by the Contractor.

15.5. If one of the clauses of this Contract is or becomes wholly or partially invalid or unenforceable, or if this Contract contains a loophole, the validity of the other clauses shall not be affected. The invalid or unenforceable clause, or the loophole shall be replaced, if legally permissible, by a valid and enforceable clause which comes as close as possible to the intended economic and legal purpose of the invalid clause.

## § 16 Signatures

In our capacity as the qualified representatives of our organisation, we, the undersigned, hereby accept and agree the provisions of this Contract.

| **For the Customer**<br>**Authorised signatory to the Contract:** | **For the Contractor**<br>**Authorised signatory to the Contract:** |
|---|---|
| ________________, ...................... | Atlanta, 11/06/2017 |
| [signature]<br>SARRO G. MARCO<br>........................................<br>________(*Name in block capitals*)________<br>*Title*<br>VP OPERATIONS | unisensor Sensorsysteme GmbH Am Sandfeld 11 D-76149 Karlsruhe Tel. +49 (0) 721-978840 Fax +49 (0) 721-9788444<br>........ [signature] ........<br>Stefanie Krieg<br>*CEO*<br>UNISENSOR USA Inc. |

| UNISENSOR | GENERAL TERMS AND CONDITIONS OF SALES AND SERVICE OF UNISENSOR USA, Inc. | Annex 1 |
|---|---|---|
| | | Version 01/2015 |

**1. Definitions**

As used herein:

1.1. **Seller.** Seller shall refer to UNISENSOR USA, Inc., and shall include its agents, subsidiaries, parent company, and any affiliated entity of Seller

1.2. **Buyer.** Buyer shall refer to the purchaser of goods and/or Services sold by Seller as set forth in the particular Order, and shall include agents, subsidiaries, parent company, and any affiliated entity of Buyer.

1.3. **Order.** Order shall refer to the purchase order, order confirmation or invoice issued by Seller reflecting the sale of the Products and/or Services to Buyer.

1.4. **Products.** Products shall refer to the products sold by Seller to Buyer as identified in the Order.

1.5. **Services.** Services shall refer to the services provided directly related to the sale installation, and maintenance of product, as described in a Unisensor Service Contract or other services provided to Buyer by Seller pursuant to a separate agreement.

**2. Application**

These terms and conditions shall apply to and shall govern all Orders, agreements or other documents which memorialize an agreement to purchase Products and/or Services from Seller, regardless of whether the Order or other document references these terms and conditions. All shipments, services, sales and quotations between Seller and Buyer are subject to these terms and conditions unless otherwise explicitly specified in the written acceptance.

**3. Acceptance**

No order by Buyer shall be effective unless accepted in writing by Seller. No effect shall be given to any terms proposed in Buyer's purchase order proposal, sales note, request for Services, acknowledgment or other document which add to, vary from, or conflict with the Order or with these terms and conditions. Any such proposed terms shall be void. The accepted Order and these terms and conditions constitute the entire agreement between Buyer and Seller with respect to the subject matter of an Order. Buyer shall be deemed to have assented to and acknowledged Seller's Order as accepted and these terms and conditions unless Buyer notifies Seller in writing within three (3) working days of Buyer's receipt of the accepted Order that it rejects the Order and these terms and conditions

**4. Order Termination**

Seller may terminate any Order or any part thereof without liability at any time by written notice. If Seller terminates such an Order, then Buyer shall be relieved of any obligation with regard to the cancelled portion of the Order.

**5. Price**

Unless another currency is specified on the Order, all monetary amounts are deemed to be expressed in US-Dollars. Unless otherwise specifically set forth in the Order, the price specified in the Order shall not include shipping and transportation costs for delivery to the destination set forth on the Order. Unless otherwise specified in the Order, the price specified in the Order shall not include international or domestic freight charges, import duties, storage charges or any Services related to the Products, including installation, travel, consultations, evaluations or maintenance. Buyer shall be solely responsible for any additional fees or expenses incurred after delivery.

**6. Payment**

Buyer shall pay for Products and/or Services in accordance with the terms set forth in the Order, or as otherwise set forth in writing between the Buyer and Seller. If no such terms are set forth, Seller shall issue an invoice to Buyer. All invoices are payable no later than thirty (30) days after receipt by Buyer. Payment shall not be contingent upon any payment to the Buyer from any third party. Orders from a Buyer with a delinquent account will not be processed until Buyer's account balance is current. Buyer may not set off any sums owed to Seller for any reason.

**6.1. Costs of Collection**

In any dispute involving monies owed to Seller, Seller shall be entitled to all costs of collection, including reasonable attorney's fees and interest at 18% per annum or the highest rate allowed by law, whichever is greater, unless a lower amount is agreed to by Seller. The confiscation or detention of a shipment by any governmental authority shall not affect or diminish the liability of Buyer to Seller to pay all charges or other money due promptly on demand.

**7. Taxes**

Buyer shall pay, in addition to any invoiced amounts, all taxes, if applicable, upon the production, sale, shipment, or use of the Products or upon Services, including, without limitation, all federal, state, or local property, license, privilege, sales, use, excise or gross receipts taxes or other like taxes. In the event that Seller is required to pay any such taxes, Buyer shall reimburse Seller on demand for any such payments

**8. Product Descriptions, Services Descriptions, Modifications, Improvements**

All representations or references on Seller's website, in sales brochures, technical data sheets and offers as to size, weight, technical specifications, price and other details of the Products or concerning Services are approximate and shall not be binding on Seller. Such references are not warranties.

**9. Risk of Loss**

All risk of loss during shipment of the Products shall be in accordance with the INCOTERM (2010) as referenced in the Order. If no such INCOTERM is referenced, all Products shall be shipped ex works Seller's facility

**10. Delivery**

10.1. **Shipment; Installments.** All dates of delivery set forth in an Order are approximate and nonbinding. Seller will use commercially reasonable efforts to ship the Products to arrive on or before the estimated delivery date set forth in the Order.

10.2. **Shipment; Delays.** Buyer acknowledges and agrees that lead time will vary according to availability of supply, transportation delays, manufacturing problems and other conditions, and that, all delivery dates communicated by Seller are estimates. Delay in delivery of any shipment of Products shall not relieve Buyer of its obligations to accept that shipment or any other shipment. Under no circumstances shall Seller, because of late delivery or non-delivery, be liable to Buyer, its agents or any other persons for any special or consequential damages, whether based upon lost goodwill, lost profits, work stoppage, impairment of or breach of contract, negligence or other alleged causes of losses to Buyer.

10.3. Unless otherwise set forth in the Order, delivery shall be deemed made when Seller makes the Products available for pickup at its facility as noted in the Order or otherwise in writing.

10.4. Seller reserves the right to deliver in installments. All such installments shall be separately invoiced and paid when due, without regard to subsequent deliveries. Delay in delivery of any installment shall not relieve Buyer of its obligation to accept remaining installments.

10.5. **Carrier and Routing.** Unless otherwise agreed in writing, Buyer shall select the carrier(s) and routing of each shipment from Seller's location to its destination. Seller shall assume no responsibility for selection of carriers or other entities involved in the transportation and delivery of the Products, even in the event that Seller is retained or otherwise assumes the responsibility for the transportation of the Products. Buyer assumes all responsibility for payment of freight charges to all carriers used to transport the Products and all other costs associated therewith, regardless of whether the freight charges and other costs are reflected in the Order.

**11. Claims**

Buyer shall inspect the Products immediately upon receipt and shall, within three (3) business days from the date of delivery, give written notice of any claim that the Products or Services do not conform to their description as set forth in the Order covering such Products and/or Services, or that the Products are damaged. Notations regarding such a claim shall be made on the applicable bill of lading, air waybill or delivery receipt. If Buyer does not provide such notice, the Products and/or Services shall be deemed accepted by Buyer. Buyer expressly waives any rights it may have to reject or revoke acceptance of the Products and/or Services after such three (3) day period.

**12. Warranty and Limitation of Liability**

12.1. **NOTWITHSTANDING THE APPLICABLE WARRANTIES ON THE PRODUCTS AND SERVICES, SELLER MAKES NO WARRANTY, EXPRESS OR IMPLIED AS TO THE CONDITION, MERCHANTABILITY, EFFECTIVENESS OR FITNESS FOR PARTICULAR PURPOSE OF ANY PRODUCTS.**

12.2. **LIMITATION OF LIABILITY. IN ANY EVENT, THE LIABILITY OF SELLER TO BUYER HEREUNDER, WHETHER BASED IN TORT, BREACH OF CONTRACT OR OTHERWISE, SHALL NOT EXCEED THE PRICE OF THE PRODUCTS AND/OR SERVICES IN QUESTION OR WITH RESPECT TO WHICH SUCH BREACH, DEFAULT, OR NEGLIGENCE IS CLAIMED.**

12.3. **WARRANTY REGARDING SERVICES. SELLER WARRANTS THAT SERVICES SHALL BE PERFORMED IN A GOOD AND WORKMANLIKE MANNER. IN THE EVENT THAT BUYER BELIEVES THAT ANY SERVICES PERFORMED DO NOT MEET THE WARRANTY SET FORTH IN THIS SECTION BUYER MUST NOTIFY SELLER WITHIN 10 DAYS. SELLER WILL RE-PERFORM ANY SERVICES THAT MATERIALLY FAIL TO MEET THE WARRANT SET FORTH IN THIS SECTION.**

**SELLER SHALL NOT BE LIABLE IN THE EVENT THE PRODUCT(S) SUPPLIED TO BUYER WERE IMPROPERLY USED, TREATED, HANDLED, STORED, MODIFIED BASED UPON THE BUYER'S INSTRUCTION OR THAT OF THE THIRD PARTY.**

12.4. Rejected Products may be returned only with Seller's prior express written consent and at Buyer's cost and risk. If Products are returned without Seller's prior consent, Seller may refuse to accept the returned Products and may return them to Buyer at Buyer's cost and expense.

**13. Damages Disclaimer and Limitation**

**BUYER HEREBY EXPRESSLY WAIVES ANY AND ALL CLAIMS FOR ANY AND ALL INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO ANY CLAIMS FOR DAMAGES FOR LOSS OF USE, LOSS OF TIME, LOSS OF PROFITS, OR LOSS OF INCOME RELATING TO THE SERVICES OR PURCHASE OR USE OF THE PRODUCTS TO THE EXTENT SUCH CLAIMS AND/OR DAMAGES ARISE FROM THE NEGLIGENCE OR OMISSION OF THE BUYER. THIS LIMITATION SHALL NOT APPLY TO THE EXTENT SUCH CLAIMS AND/OR DAMAGES ARISE FROM THE GROSS NEGLIGENCE OR MISCONDUCT OF THE SELLER. IN ADDITION, SELLER SHALL HAVE NO LIABILITY TO BUYER IF ANY PATENT INFRINGEMENT CLAIM INVOLVING THE PRODUCTS IS BASED UPON THE USE OF THE PRODUCTS DELIVERED HEREUNDER IN CONNECTION WITH A PROCESS OR IN COMBINATION WITH EQUIPMENT, DEVICES, OR SOFTWARE NOT SUPPLIED OR APPROVED IN WRITING BY SELLER, OR ARE USED IN A MANNER FOR WHICH THE PRODUCTS WERE NOT DESIGNED.**

**14. Indemnity**

**14.1. Payment**

14.1. Buyer agrees to defend, indemnify and hold Seller, its officers, directors and employees, harmless from and against losses, damages, expenses, actions, attorney fees, liabilities, penalties, fines, duties as well as for any claims for injury, illness, or death of persons and damage to property arising out of, or in connection with the negligent acts or omissions of Buyer, its employees, agents, or independent contractors.

14.2. Buyer further agrees to defend, indemnify and hold Seller and its officers, directors and employees, harmless from and against losses, damages, expenses, actions, attorney fees, liabilities, penalties, fines, and duties as well as for any claims for injury, illness, or death of Seller's personnel or independent contractors utilized for any Services, including, but not limited to, installation, testing, repair or maintenance of Products or Software (as defined below).

14.3. Seller agrees to defend, indemnify and hold Buyer, its officers, directors and employees, harmless from and against losses, damages, expenses, actions, attorney fees, liabilities, penalties, fines, duties as well as for any claims for injury, illness, or death of persons and damage to property arising out of, or in connection the negligent acts or omissions of Seller, its employees, agents, or independent contractors.



PK

| UNISENSOR | GENERAL TERMS AND CONDITIONS OF SALES AND SERVICE OF UNISENSOR USA, Inc. | Annex 1 |
|---|---|---|
| | | Version 01/2015 |

14.4. Seller further agrees to defend, indemnify and hold Buyer and its officers, directors and employees, harmless from and against losses, damages, expenses, actions, attorney fees, liabilities, penalties, fines and duties as well as for any claims for injury, illness, or death of Buyer's personnel or independent contractors utilized for any services related to the Products, including but not limited to, installation, testing, repair or maintenance of Products or Software.

**15. Grant of Security Interest**

Buyer hereby grants Seller a security interest in the Products and all proceeds therefrom to secure Buyer's payment obligations to Seller. Seller shall be entitled to exercise all rights and remedies available to a secured creditor under applicable law. To assist Seller in protecting Seller's Interest Buyer agrees to execute and deliver to Seller any and all documents necessary to perfect Seller's security interest, including all financing statements. Buyer further appoints Seller as Buyer's attorney in fact for the purpose of executing all documents on Buyer's behalf which are necessary to perfect and maintain Seller's security interest in the Products.

**16. Cancellation for Default**

Seller reserves the right to cancel all or any part of any Order, without liability to Seller, if Buyer fails to perform under any applicable provision of these terms and conditions or of any applicable Order and the failure is not cured within ten (10) days after delivery of written notice to Buyer by Seller. In the event of cancellation, Seller may exercise all rights and remedies available to it hereunder and under law.

**17. Intellectual Property.**

**17.1.** Buyer acknowledges that Seller claims and reserves all rights and benefits afforded under federal and international intellectual property laws in all Intellectual Property relating to the Products and Services. "Intellectual Property" means all intellectual property and/or proprietary rights, including without limitation all rights of inventorship and authorship, rights in inventions, patents, patent applications, and know-how, for any Service, Product, process, software, hardware, application, method, machine, manufacture, design, composition of matter, or any new or useful improvement thereof, as well as all copyrights, trademark, trade dress and service mark rights and all rights in trade secrets, computer software, data and databases, and mask works.

**17.2.** Buyer acknowledges Seller's exclusive right, title, and interest in and to Seller's Intellectual Property and will not at any time do or cause to be done any act or thing contesting or in any way impairing or tending to impair Seller's right, title and interest.

**17.3.** Buyer is not authorized to make any changes, additions, improvements, alterations, or modifications of any sort to the Products. Whether authorized or unauthorized, any changes, additions, improvements, alterations, or modifications of any sort to the Products made by Buyer shall inure to the benefit of Seller, and Seller shall have full right, title, and interest in them.

**17.4. Software License**

**17.4.1.** The Products are made operational through the use of software, the rights to which are owned exclusively by Seller, and which have been developed by Seller specifically for the operation of the Products ("Software").

**17.4.2.** The Seller grants the Buyer the non-exclusive, non-transferrable right to use the Software in connection with the Products subject to these terms and conditions.

**17.4.3.** Following installation of the Products, Seller shall remove the security mechanisms in place which protect the Software which enables the Products to operate. The limited license granted hereby shall commence upon the removal of the security mechanisms, and shall continue, unless otherwise provided in the Order, for the duration of the use of the Product by Buyer.

**17.4.4.** Seller hereby retains any and all intellectual property rights, including but not limited to patent, trademarks, copyrights and trade secrets in the Software. Buyer acknowledges that the Software is valuable, proprietary, and confidential trade secret information and agrees not to, (i) sell, sublicense, sublet or otherwise transfer the Software, (ii) permit any third party access to the Software other than in the normal course of Buyer's business, (iii) copy the Software, or permit others to copy the Software, except as specifically authorized by Seller in writing, or (iv) reverse engineer the Software.

**17.4.5.** Buyer shall use the Software solely with respect to the operation of the Product purchased as set forth in the Order.

**17.4.6.** The Buyer shall not be entitled to modify, decompile, translate, or isolate parts of the Software. The Buyer shall not remove alphanumeric or other identifiers from the data medium and shall transfer such identifiers unchanged to any backup copy. Buyer shall not remove the safety mechanisms.

**17.4.7.** The Buyer shall not be entitled to grant sublicenses nor operate a service bureau, using the Products and/or Software. No Product shall be sold or otherwise transferred to a third party without notification and approval by Seller to permit Seller to protect its rights with regard to the Software.

**17.4.8.** Notwithstanding the foregoing, Buyer shall be entitled to make two copies of the Software solely for back-up purposes (back-up copies).

**17.4.9.** Seller shall service the Products and Software and will provide support to Buyer with regard to the resolution of any Software problems on the request of, and at the expense of Buyer.

**18. Insolvency**

Seller shall have the right to cancel any outstanding Order or any part thereof, without any liability whatsoever in the event of (i) insolvency, or anticipated insolvency of Buyer, (ii) commencement of any proceedings, voluntary or involuntary, in bankruptcy or insolvency by or against Buyer, or (iii) the appointment of an assignee for the benefit of creditors of Buyer or a receiver or trustee for Buyer.

**19. Force Majeure.**

Seller shall not be liable for any delay in performance of its obligations and responsibilities under an Order due to causes beyond its control, and without its fault or negligence, such as but not limited to war, embargo, national emergency, insurrection or riot, acts of the public enemy, fire, flood or other natural disaster, provided that said party has taken reasonable measures to notify the other promptly in writing, of delay.

**20. Jurisdiction; Venue.**

In the event of a dispute relating to this Agreement, or Products or Services, including these terms and conditions, or if either party commits a default hereunder, whether material or immaterial, either party shall submit the matter to binding arbitration in accordance with the expedited rules of the American Arbitration Association ("AAA"), then in effect. Each party shall pay one-half of the deposit required by AAA. If the matter in dispute exceeds $20,000, the matter shall be considered by a panel of three arbitrators. Each party shall appoint one arbitrator within fifteen (15) days of receipt of the notice of the party requesting arbitration and the arbitrators so selected shall, within fifteen days of their appointment, then select a third arbitrator. All arbitrators shall be independent. Upon failure of a party(ies) to appoint an arbitrator (or of the arbitrators selected to appoint a third arbitrator) as contemplated in the foregoing sentence, AAA shall appoint an arbitrator. If the matter in dispute is $20,000 or less, the matter shall be considered by a single arbitrator. The parties shall mutually agree to the single arbitrator, or if the parties are unable to so agree on an arbitrator within thirty (30) days following a request for arbitration by either party, the arbitrator shall be selected by AAA. The decision of the arbitrator(s) (by majority vote if there are three arbitrators) shall be binding upon all parties and non-appealable. If there are three arbitrators, each party shall bear the cost of its arbitrator and cost of the third arbitrator shall be borne by the non-prevailing party. If there is a single arbitrator, the non-prevailing party shall bear the cost of the arbitrator. Each party shall bear all of its own witness fees and attorneys' fees. The arbitration proceeding shall occur in Atlanta, Georgia.

For purposes of injunctive relief, or should arbitration not be available in any legal action relating to the sale and shipment of Products or the provision of Services under these terms and conditions, each party irrevocably agrees and consents (i) to the exercise of jurisdiction over it by the courts of the State of Georgia or the United States District Court for the Northern District of Georgia; and (ii) that the action shall be instituted in one of the courts specified in Subsection (i) above. Should arbitration not be available, Seller may institute legal action in any appropriate jurisdiction.

**21. Governing Law.**

This agreement shall be construed in accordance with the laws governing contracts made and to be performed in the State of Georgia, U.S.A., exclusive of the U.N. Convention on the International Sale of Goods.

**22. Severability.**

If any provision of an Order, including these terms and conditions, shall be judged by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such adjudication shall not affect or modify any other provision of the Order, or these terms and conditions and the effect thereof shall be confined to the provision as to which such adjudication is made.

**23. Survival.**

The provisions of Sections 6.1, 12, 13, 14, 17, 20 and 21 shall survive the termination of this Agreement.

**24. Notice**

Any notice or other communication required or permitted by these terms and conditions must be given in writing and must be delivered by personal delivery (including personal delivery by overnight courier such as Federal Express, DHL, or similar overnight courier), first class mail (registered or certified), telecopy or e-mail (with a copy sent by personal delivery or first class mail), in each case addressed as follows, or to such other address or addresses as may be hereafter furnished by one party to the other party in compliance with the terms hereof. Notice will be deemed given when received or delivered. Notice shall be given:

If to Seller: Attn.: Stefanie Krieg Email: s.krieg@unisensor-usa.com

If to Buyer at such address, physical or electronic, as furnished in the Order or such other address utilized or referenced by Buyer in its correspondence with Seller.

**25. Miscellaneous**

Seller reserves the right to change, modify, add, or delete portions of these terms and conditions from time to time without further notice. The headings contained in these terms and conditions are included for convenience and shall not affect the language included herein.

**26. Entire Agreement**

These terms and conditions, together with the Order contain all of the terms and conditions governing the sale of the Products and may not be modified or amended by Buyer except by written agreement duly executed by the parties. Aside from the terms of any Order, all prior agreements, representations, statements, negotiations and undertakings, whether oral or written are superseded by these terms and conditions. Should the terms of an Order conflict with these terms and conditions, the provisions of these terms and conditions shall apply.

