## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CARBONLITE HOLDINGS LLC, *et al.*,[1] | ) | Case No. 21-10527 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Objection Deadline: 5/19/21 at 4:00 p.m. ET** |
| | ) | **Hearing Date: 5/26/21 at 3:00 p.m. ET** |

## MOTION OF STARLINGER & CO. GESELLSCHAFT M.B.H.
## FOR RELIEF UNDER 11 U.S.C §105(a) and 11 U.S.C. §362(d)

Starlinger & Co. Gesellschaft m.b.H ("Starlinger") hereby moves for relief pursuant to 11

U.S.C.§ 105(a) and hereby seeks the assistance of the Court through the exercise of its equitable

powers to fashion and implement a remedy against Bank Leumi for its failure to act in good faith

in the exercise of implementing this Court's orders authorizing post-petition loans by Bank Leumi

to the Debtors (the "DIP Loan Orders").  Starlinger is also requesting that the Court exercise its

power to enforce its orders to compel Debtor CarbonLite Industries, LLC ("Industries") to comply

with the Stipulation and Order Approving Stipulation (each as defined below) in connection with

the assumption of an executory contract between Industries and Starlinger. In the event the Court

determines equitable remedies cannot or should not be ordered, Starlinger seeks modification of

the automatic stay to permit it to enforce its purchase money security interest and lien on various

items of Equipment (as further defined below) that were delivered by Starlinger to Industries in

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: CarbonLite Holdings LLC (8957); CarbonLite Industries LLC (3596); CarbonLite P Holdings LLC (8957); CarbonLite P LLC (5453); CarbonLite PI Holdings LLC (8957); CarbonLite Pinnpack LLC (8957); CarbonLite Recycling Holdings LLC (8957); CarbonLite Sub-Holdings, LLC (8957); Pinnpack P, LLC (8322); CarbonLite Recycling LLC (3727); and Pinnpack Packaging LLC (9948). The address of the Debtors' corporate headquarters is 10250 Constellation Blvd., Los Angeles, CA 90067.

reliance upon Bank Leumi agreeing to act in good faith and to fund post-petition loans to the Debtors as approved by this Court.

## Jurisdiction and Venue

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and Starlinger confirms its consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and Bankruptcy Rules grounds for the relief sought herein are §§105(a) and 362(d) of the Bankruptcy Code and Bankruptcy Rules 9014 and 9020.

## Background

4.      On March 8, 2021 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

5.      The Debtors' line of business involves the processing of post-consumer recycled polyethylene terephthalate ("rPET") plastic products and producing high-quality rPET and

polyethylene terephthalate ("PET") beverage and food packaging products.  As of the Petition

Date, the Debtors operate three facilities at which they process PET bottles and flake into rPET

pellets, which are later incorporated into other products and packaging.  The Debtors also operate

PinnPack, which processes the rPET and PET into high-quality thermoformed tubs, bowls, domes,

and clamshell packaging for food applications.  A detailed description of the Debtors' business

and facts precipitating the filing of the Debtors' chapter 11 proceedings are set forth in the

*Declaration of Brian Weiss in Support of Debtors' Chapter 11 Petitions and First Day Relief*

[Docket No. 13] (the "First Day Declaration").

### Starlinger Agreement

6.      Industries and Starlinger are parties to that certain *Order Confirmation No.*

*MA2004653* dated March 3, 2020 (the "RecoSTAR Agreement").  Pursuant to the RecoSTAR

Agreement, Starlinger agreed to deliver, install, test, train and warrant certain machinery and

equipment (as more particularly identified in the RecoSTAR Agreement, the "Equipment") for the

processing and manufacture of rPET pellets by Industries at its Riverside, California facility (the

"Riverside Facility").

7.      Industries and Starlinger are also parties to that certain *Equipment Purchase and*

*Security Agreement* dated on or about December 4, 2020 (the "Purchase Agreement").  Pursuant

to the Purchase Agreement, the Parties agreed to amend and reschedule the payment terms for the

Equipment under the RecoSTAR Agreement.  In connection with the Purchase Agreement, (a)

Industries executed that certain *Promissory Note* in the amount of €3,380,950 payable to the order

of Starlinger (the "Note"), and (b) Starlinger filed UCC-1 financing statements on December 11,

2020, with each of Delaware and California to perfect a purported security interest in the

Equipment (together, the "Financing Statements").

8.      The Equipment was manufactured by Starlinger in Austria, then packaged for safe delivery and shipped to the Riverside Facility.  The containers with the Equipment arrived at the Los Angeles, California port in early March of 2021.  Starlinger then began the process of having the containers loaded on trucks for delivery to the Riverside Facility.  Ten containers were delivered to the Riverside Facility prior to the filing of the petition, but were not unpacked.

9.      Starlinger received pre-petition payments from Industries in the aggregate amount of €1,400,000 under the RecoSTAR Agreement.

10.      Due to the filing of the petition, delivery of the remaining containers to the Riverside Facility was suspended.  The containers were held in a warehouse facility at the Los Angeles dock facility at a cost to Starlinger of approximately $5,000.00 per day.

11.      On March 10, 2021, Starlinger filed its *Notice of Reclamation Demand* pursuant to §546(c) of the Bankruptcy Code [Docket No. 87] (the "Reclamation Demand"), seeking to reclaim the containers of Equipment delivered to the Riverside Facility prior to the Petition Date.

12.      Following the filing of the Reclamation Demand, Industries  determined, in the exercise of its business judgment, that it required the prompt delivery and installation of the remaining Equipment in order to maintain uninterrupted operations at Industries and to meet the projections set forth in its Budget, as that term is defined in the *Interim Order (I) Authorizing CA Debtors to (A) Obtain Postpetition Financing, et seq.* entered on March 10, 2021 [Docket No. 74] (the "Interim DIP Order").[2] Payment of the Contract Balance to Starlinger was included as an approved disbursement under the Budget.

---

[2] The *Final Order (I) Authorizing CA Debtors to (A) Obtain Postpetition Financing, et seq.* was entered on April 12, 2021 [Docket No. 274].

13.     The remaining purchase price under the Purchase Agreement for the delivery and installation of the remaining Equipment due under the RecoSTAR Agreement is €1,980,950 (the "Contract Balance").

### Terms of Stipulation and Order Approving Stipulation

14.     Industries also determined that it was necessary to negotiate and consummate an agreement to assume the RecoSTAR Agreement in order to obtain the assurance of future performance by Starlinger of its warranty, testing, training and certification among other rights, remedies and duties, under the RecoSTAR Agreement.  Consequently, Industries and Starlinger agreed upon the following terms and conditions for assumption of the RecoSTAR Agreement (the "Stipulation") which was approved by the *Order Granting Motion of CarbonLITE Industries, LLC to Approve Stipulation Resolving Reclamation Demand and Authorizing Assumption of Executory Contract with Starlinger & Gesellschaft Company m.b.H.* [Docket No. 158 entered April 1, 2021] (the "Order Approving Stipulation").

15.     Under the Stipulation, subject to the prior approval of the DIP ABL Lender pursuant to the terms of the DIP ABL Credit Agreement, Industries would be authorized to release the Contract Balance to Starlinger according to the Budget, as follows:

A.     Within three (3) business days following the date of receipt by Industries of all of the Equipment, Industries shall remit the sum of €1,580,950 to Starlinger (the "First Payment"), provided that all of the containers of Equipment have been delivered to Industries, Industries has confirmed receipt of all of the Equipment, and title to the Equipment has passed to Industries; and

B.     Within three (3) business days following the earlier to occur of (a) final satisfactory testing of the Equipment and the execution and delivery of the *Certificate of Start-up and Acceptance* pursuant to the RecoSTAR Agreement, or (b) 90 days following the date of receipt by Industries of all of the Equipment, Industries shall remit the sum of €400,000 to Starlinger (the "Final Payment").

16.     The Stipulation further provides that on its Effective Date, (a) Starlinger shall release for delivery all containers, which have not yet been delivered to Industries, (b) the Reclamation Demand shall be deemed withdrawn with prejudice, and (c) Starlinger shall deliver to Pachulski Stang Ziehl & Jones LLP, counsel for the Debtors ("Firm") (i) the original Note marked "Paid in Full" ("Cancelled Note"), and (ii) UCC-3 financing statement amendments executed by Starlinger sufficient to terminate the effectiveness of each of the Financing Statements ("Termination Statements") (collectively the "Escrow Documents").

17.     The Firm will serve as the escrow agent to hold the Cancelled Note and the Termination Statements in escrow until satisfaction of the following conditions for their release. First, upon receipt by Starlinger of the First Payment, the Firm shall release the Termination Statements for immediate filing with the Secretary of State for each of Delaware and California. On the date the Termination Statements are filed, the Purchase Agreement will be deemed terminated, and the security interest granted thereunder will be deemed released.  Second, upon receipt by Starlinger of the Final Payment, the Firm will release the Cancelled Note to Industries.

18.     Starlinger has agreed that, following the Effective Date, it shall provide and will maintain at the Riverside Facility, in accordance with the RecoSTAR Agreement, the requisite personnel needed for project management, including without limitation, to supervise the unpacking of the Equipment, and the installation, testing, and commissioning for operation of the Equipment.

19.     In addition, as of the Effective Date, the RecoSTAR Agreement shall be deemed assumed by Industries pursuant to § 365(a) of the Bankruptcy Code.  The payment of the Contract Balance to Starlinger, will constitute full and final settlement and satisfaction of all amounts due in cure of, and compensation for any pecuniary loss resulting from, any and all defaults under the RecoSTAR Agreement, which defaults are deemed waived.

20.     Starlinger completed delivery of the containers with the Equipment on April 12, 2021 and a representative of Industries verified in writing the delivery of the containers. Starlinger had technicians on site ready to commence the unpacking and installation of the Equipment upon completion of the container delivery process.  However, it was then determined that Industries had not completed the necessary building modifications required by the local building code to accommodate the safe installation of the Equipment. Consequently, the Starlinger technicians left the Equipment packaged in the containers and returned to South Carolina.  Starlinger is still waiting confirmation that the building modifications have been completed so that the Equipment can be properly and safely installed.

21.     On April 15, 2021, Starlinger filed its *Withdrawal of Notice of Reclamation Demand* in accordance with the requirements of the Stipulation [Docket No. 176].

22.     On April 21, 2021, Starlinger confirmed that the Firm had received the original Escrow Documents for deposit into escrow as required by the Stipulation.

23.     On April 22, 2021, Industries informed Starlinger that it had satisfied the requirements of Bank Leumi to obtain a casualty insurance indorsement to insure the Equipment and that it had submitted the funding request to Bank Leumi.

24.     As of April 28, 2021, Starlinger had not received the First Payment as required by the Stipulation despite having fulfilled each of the conditions for payment.

25.     On April 30, 2021, Industries informed Starlinger that Bank Leumi was now requiring that Starlinger satisfy the following modified conditions as a prerequisite to obtaining the First Payment provided for in the Stipulation:

i.      Either a Zoom unpacking or an in person unpacking of the boxes/pallets to verify ID tag/number on a part by part basis.

ii.     A representation from Starlinger that the Equipment warranty would not be impacted by the foregoing inspection process.

    iii.    Starlinger represent that all Equipment has been delivered and title has transferred to Industries.

    iv.    Starlinger represent that the replacement of any items found missing/damaged will not affect timely installation and that the costs of such items could be deducted from the first payment until replaced

26.    Starlinger informed Industries that it had satisfied its obligation under the Stipulation to receive the First Payment and that the conditions now being imposed by Bank Leumi were unreasonable and inappropriate under the circumstances. More specifically, Starlinger states the following as to the modified conditions imposed by Bank Leumi:

    i.    Either a Zoom unpacking or an in person unpacking of the boxes/pallets to verify ID tag/number on a part by part basis.

        **Response: The Equipment was packaged in a manner to minimize the risk of any damage during the shipping process. Under normal circumstances, technicians from Starlinger would perform the unpacking and promptly commence installation of the Equipment. Industries represented to Starlinger that the Riverside Facility would be completed and ready for installation of the Equipment when it was delivered. The Equipment should not be unpacked and left exposed in a facility where additional construction and structural modifications are required in order to have the Equipment properly and safely installed.**

    ii.    A representation from Starlinger that the Equipment warranty would not be impacted by the foregoing inspection process.

        **Response: Starlinger cannot warrant the condition of the Equipment after it is unpacked and left exposed for an indefinite period of time in a facility undergoing construction and structural modifications.**

    iii.    Starlinger represent that all Equipment has been delivered and title has transferred to Industries.

        **Response: Starlinger has made the representation and confirms that all Equipment has been delivered.  Starlinger can also confirm that title has transferred to Industries subject to Starlinger's purchase money security interest and lien which will be terminated by release of the Termination Statements as required by the escrow terms of the Stipulation.**

    iv.    Starlinger represent that the replacement of any items found missing/damaged will not affect timely installation and that the costs of such items could be deducted from the first payment until replaced

**Response:** **Starlinger has warranted the condition of the Equipment as set forth in the RecoSTAR Agreement and is obligated under the RecoSTAR Agreement to replace any missing or damaged items.**

### Request for Relief Pursuant to 11 U.S.C. § 105

27.    The rights, liens and powers approved by the Court for the benefit of Bank Leumi pursuant to the DIP Loan Orders were, in part, based upon the powers granted the Court pursuant to 11 U.S.C. § 105(a). Starlinger is now requesting that the Court exercise these same powers to sanction Bank Leumi for acting in bad faith and abusing the rights previously granted by the Court.

28.    Section 105 of the Bankruptcy Code states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C.§105(a). "Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code. Notwithstanding the broad scope of §105, it is well-settled that the authority may not be used to expand the scope of judicial power beyond that granted in other parts of the Bankruptcy Code, but may only be used in furtherance of implementation of such provisions." *Law v. Seigel,* 571 U.S 415 (2014). Section 105(a) does not create substantive rights that would otherwise be unavailable under the Bankruptcy Code. *In re Continental Airlines,* 203 F.3d 203, 211 (3d Cir. 2000) (quoting *United States v. Pepperman*, 976 F.2d 123, 131 (3d Cir. 1992)). Instead, the bankruptcy court's powers under section 105(a) can only be used in furtherance of other provisions of the Code. *In re Joubert*, 411 F.3d 452, 455 (3d Cir. 2005); *In re Forever 21, Inc.,* 623 B.R. 53, 63–64 (Bankr. D. Del. 2020).

29.    The broad authority granted by §105(a) includes the power to "craft flexible remedies that, while not expressly authorized by the [Bankruptcy] Code, effect the result the Code was designed to obtain." *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel.*

*Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003); *In re Trokie*, 590 B.R. 663, 673 (Bankr. M.D. Pa. 2018). Section 105 has been used by at least one court to reverse relief invoked under the Bankruptcy Code.  *In re: Barnes*, 310 B.R. 209, 212-13 (Bankr. D. Colo. 2004) (court used §105 to authorize withdrawal of small business election).  Starlinger submits that the relief requested here is both justified factually and permitted by §105.

30.     Bank Leumi received very favorable and beneficial treatment through the rights granted by the DIP Loan Orders.  The DIP Loan Orders were necessary and beneficial to the Debtor as well as creditors of the estate, including Starlinger.  Both the Debtors and creditors have the right to rely upon the benefits derived by the Debtors as a result of such orders and the obligations of Bank Leumi to exercise good faith in fulfilling its obligation to fund the lines of credit approved by the DIP Loan Orders.  Bank Leumi has failed in its obligation to fund the line of credit in accordance with the terms of the DIP Loan Orders and the Order Approving Stipulation. Consequently, the Court should fashion a remedy that requires Bank Leumi to act in good faith and comply with its obligation to provide the funding or impose sanctions against Bank Leumi.

31.     Starlinger submits that the appropriate sanctions could include reinstatement of Starlinger's Reclamation Demand and/or range from termination of the lien rights granted Bank Leumi under the DIP Loan Orders to the subordination of the claims of Bank Leumi to the entitlement of Starlinger to payment under the Stipulation.

### Request to Compel Industries to Comply with Stipulation and Order

32.     A bankruptcy court has the authority to impose civil contempt to enforce compliance with a court order and to compensate a party damaged by a violation of that order. *In re Miller,* 730 F.3d 198, 206 (3d Cir. 2013); *Burd v. Walters (In re Walters),* 868 F.2d 665, 669 (4th Cir.1989); *In re Stephen W. Grosse, P.C.,* 84 B.R. 377, 383 (Bankr.E.D.Pa.1988), *aff'd, In re*

*Grosse,* 96 B.R. 29 (E.D.Pa.1989), *aff'd, Dubin v. Jakobowski,* 879 F.2d 856 (3d Cir.1989).  It is uncontroverted that Industries has not fulfilled its payment obligation as is required by the Stipulation.  However, Starlinger finds itself in the uncomfortable and unusual position of recognizing that Industries' failure to remit the First Payment may not be solely the fault of Industries.  As noted previously in this Motion, the conduct of Bank Leumi appears to be the root cause of the problem, but Industries and Starlinger have unwittingly become the victims of its heavy handed tactics.  However, based upon *prima facie* evidence that the Order Approving Stipulation has been violated, the burden should fall to Industries to show a present inability to comply that goes beyond a mere assertion of inability.  *In re Ware,* 2003 W.L. 1960454 (Bankr. M.D.N.C. citing *In re Walters,* 868 Fed. 665, 668 (4th Cir. 1985).

### Relief from Automatic Stay of 11 U.S.C. § 362(a)

33.     In the event the Court determines that it should not grant any relief pursuant to 11 U.S.C. §105, Starlinger seeks relief from the automatic stay pursuant to 11 U.S.C §362(d)(1) for cause and in support of the request would show that:

a.     Starlinger has a perfected purchase money security interest in the Equipment;

b.     Starlinger has fulfilled its obligations under the Stipulation;

c.     Absent the willingness of Bank Leumi to advance funds to allow the Debtor to pay Starlinger or the availability of other sources of funds to enable Industries to make the First Payment in accordance with the terms of the Stipulation the Debtor is in breach of the payment obligations as required by the Stipulation and has no means to make the required payment.

34.     Accordingly, cause exist for lifting the automatic stay to allow Starlinger to enforce its security interest in the Equipment.

## Relief Requested

35.    Based upon the foregoing Starlinger submits the Court should grant the following

relief:

i.    Terminate the lien rights and other protections granted to Bank Leumi under the

DIP Loan Orders or fashion such remedy as the Court deems just and proper;

ii. Award Starlinger reasonable attorneys' fees associated with pursuit of its efforts to

recover the First Payment;

iii. Award Starlinger interest in the First Payment at the rate of 10.0% or annum

according to the General Term of Delivery of the RecoSTAR Agreement;

iv Alternatively, grant Starlinger relief from the automatic stay to allow it to recover

the Equipment, and

v. Grant such other and further relief as the Court deems just and proper,


Dated: May 10, 2021                   **MONTGOMERY McCRACKEN WALKER &
                                       RHOADS LLP**

                                       */s/ Marc J. Phillips*
                                       Marc J. Phillips (No. 4445)
                                       1105 North Market Street, Suite 1500
                                       Wilmington, DE 19801
                                       Telephone: (302) 504-7823
                                       Email: mphillips@mmwr.com

                                       -and-

                                       **HAYNSWORTH SINKLER BOYD, P.A.**
                                       Stanley H. McGuffin
                                       District Court IS# 2833
                                       Post Office Box 11889
                                       Columbia, SC 29211-1889
                                       Telephone: (803) 779-3080
                                       Email: smcguffin@hsblawfirm.com

                                       *Attorneys for Starlinger & Co. Gesellschaft m.b.H.*