EXHIBIT 4

*Execution Version*

## AMENDMENT NO. 3 TO
## CREDIT AGREEMENT

THIS AMENDMENT NO. 3 TO CREDIT AGREEMENT (this "Amendment"), effective as of October 23, 2020 (this "Amendment"), is among CarbonLite Holdings, LLC (the "Borrower"), certain Subsidiaries of the Borrower as guarantors (the "Guarantors" and, with the Borrower, the "Loan Parties"), the financial institutions party hereto as "Tranche A Lenders", as identified on the signature pages hereto (the "Tranche A Lenders"), the financial institutions party hereto as "Tranche B Lenders", as identified on the signature pages hereto (the "Tranche B Lenders" and, collectively with the Tranche A Lenders, the "Lenders"), Orion Energy Partners Investment Agent, LLC, as Administrative Agent ("Administrative Agent") and Orion Energy Partners Investment Agent, LLC, as Collateral Agent ("Collateral Agent") and relates to that certain Credit Agreement, dated as of August 2, 2019 (as amended by that certain Amendment No. 1 to Credit Agreement and Waiver, dated March 30, 2020 and Amendment No. 2 to Credit Agreement, dated September 9, 2020, and as further amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "Existing Credit Agreement") among the Borrower, the Guarantors, the Lenders, Administrative Agent, Collateral Agent and the other persons party thereto.

W I T N E S S E T H

WHEREAS, pursuant to this Amendment, the Borrower has requested, and the Administrative Agent and Lenders have agreed, subject to the terms and conditions of this Amendment, to amend the Existing Credit Agreement on the Amendment No. 3 Effective Date (as defined below), as specified in Section 2 below.

NOW, THEREFORE, in consideration of the premises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

Section 1.     ***Definitions***.  Unless otherwise defined in this Amendment, each capitalized term used in this Amendment has the meaning assigned to such term in the Amended Credit Agreement.

Section 2.     ***Amendments to the Existing Credit Agreement***.  Effective as of the Amendment No. 3 Effective Date, each of the Administrative Agent, the Lenders and the Borrower hereby consents to the following amendments to the Existing Credit Agreement, to be effective on and as of the Amendment No. 3 Effective Date (the Existing Credit Agreement as amended by the amendments in this Section 2, the "Amended Credit Agreement"):

    (a)     Section 1.01 of the Existing Credit Agreement is hereby amended by adding the following definitions in appropriate alphabetical order:

        "Qualified PinnPack Sale" means a direct or indirect sale of the Pinnpack Facility in accordance with and upon terms approved in writing by the Administrative Agent (in its sole and absolute discretion), including, without limitation, as to process, valuation, amount and form of

1

consideration and application of sale proceeds; _provided_ that, without limiting the generality of the foregoing, the Administrative Agent shall not be required to consider or approve any proposed sale of the Pinnpack Facility that yields proceeds (net of any fees, expenses and amounts proposed to be retained by the Loan Parties) of less than $25,000,000.00.

(b)    Section 1.01 of the Existing Credit Agreement is hereby amended by amending and restating the following definitions:

"<u>Interest Rate</u>" means, individually or collectively as the context may require (i) with respect to any Tranche A Loans, 14.85% per annum and (ii) with respect to any Tranche B Loans, 10.00% per annum, as applicable.

"<u>Tranche B Maturity Date</u>" means October 30, 2021.

(c)    Section 2.05(a)(ii) to the Credit Agreement is hereby amended by adding the following to the end of such section:

Without limiting the requirements to make mandatory prepayments in accordance with Section 2.05(b), the Borrower shall not optionally prepay any Tranche B Loan if any Tranche A Obligations remain outstanding, and to the extent any Tranche B Lender receives an optional prepayment pursuant to this Section 2.05(a)(ii) while any Tranche A Obligation remains outstanding, such Tranche B Lender shall promptly turn over any such payment to the Administrative Agent to be applied in accordance with Section 7.02.

(d)    Section 2.05(b)(iii) to the Credit Agreement is hereby amended and restated as follows:

(iii) <u>Disposition of Assets</u>.  Without limiting the obligation of the Borrower to obtain the consent of the Administrative Agent to any Disposition not otherwise permitted hereunder, in the event that the Net Available Amount of any such Disposition by the Borrower Group Members shall exceed $1,500,000 per individual event or $3,500,000 in the aggregate per calendar year for all such Dispositions (in the case of the Non-Guarantor Subsidiaries, solely to the extent the proceeds thereof have been distributed to the Loan Parties), then the Borrower shall offer to prepay the Loans ratably in an amount equal to 100% of the Net Available Amount of the Disposition on the Quarterly Payment Date immediately following receipt by the Borrower of the relevant proceeds (or, with respect to the proceeds of any Qualified PinnPack Sale, immediately upon the occurrence of such Qualified PinnPack Sale).  Notwithstanding the foregoing, the Borrower shall not be required to prepay the Loans pursuant to this <u>Section 2.05(b)(iii)</u> to the extent that the Borrower reinvests the Net Available Amount (or any portion thereof) of any such Disposition in substantially similar assets that are necessary or useful for the Business pursuant to a transaction not prohibited hereunder and such Net Available Amount is so reinvested within

5

one hundred eighty (180) days (or been made the subject of a firm purchase order placed within such time period) of such Disposition, and any uninvested portion of such Net Available Amount shall promptly thereafter be applied to prepayments as contemplated by this <u>Section 2.05(b)(iii);</u> <u>provided</u> that, the Borrower shall not be permitted to reinvest the proceeds of any Qualified PinnPack Sale in any other Investment without the prior written consent of the Administrative Agent.  Any such offer to prepay shall be made pursuant to a written notice sent to the Administrative Agent and the Lenders describing in reasonable detail the event giving rise to the obligation under this Section 2.05(b)(iii) to make such offer (each such offer to prepay referred to in this <u>Section 2.05(b)(iii)</u> a "<u>Disposition Proceeds</u> <u>Prepayment Offer</u>").

(e)    Section 2.05(c)(i) to the Credit Agreement is hereby amended and restated as follows:

(A)    Any partial prepayments of the Loans pursuant to <u>Section 2.05(b)(iii)</u> (solely to the extent relating to a Qualified PinnPack Sale), <u>Section 2.05(b)(vi)</u> or <u>Section 2.05(b)(vii)</u> shall be applied (1) first, on a *pro rata* basis to the Tranche B Obligations of each Tranche B Lender and (2) *second*, on a *pro rata* basis to the Tranche A Obligations of each Lender or as otherwise directed by the Administrative Agent.

(B)    Any partial prepayments of the Loans pursuant to any other provision of this Agreement shall be applied (1) first, on a *pro rata* basis to the Tranche A Obligations of each Tranche A Lender and (2) *second*, on a *pro rata* basis to the Tranche B Obligations of each Tranche B Lender.

(f)    Section 2.05(c)(ii) to the Credit Agreement is hereby amended and restated as follows:

(ii)    Each prepayment of Loans shall be accompanied by payment of all accrued interest on the amount prepaid, any additional amounts required pursuant to <u>Section 2.09</u> and (A) in the case of the Tranche A Loans, the Tranche A Prepayment Premium in the case of any prepayment of Tranche A Loans from the Closing Date through the third anniversary thereof pursuant to (x) <u>Sections 2.05(a)</u>, <u>2.05(b)(i)</u>, <u>(ii)</u> and <u>(iv)</u> or (y) <u>Section 2.05(b)(iii)</u> (in respect of (1) a Qualified PinnPack Sale, and (2) in respect of any other Disposition, if the applicable unpermitted Dispositions yield a Net Available Amount to the Borrower exceeding $1,000,000 per individual event or $2,000,000 in the aggregate per calendar year for all such Dispositions) and (B) in the case of any Tranche B Loans, the Tranche B Minimum Return in the case of any repayment or prepayment of Tranche B Loans  after the date that is forty five (45) days after the Amendment No. 2 Effective Date pursuant to (x) <u>Sections 2.05(b)(i)</u>, <u>(ii)</u>, <u>(iv)</u> and <u>(vi)</u> or (y) <u>Section 2.05(b)(iii)</u> (in respect of (1) a Qualified Pinnpack Sale, and (2) in respect of any other Disposition, if the

US-DOCS\118291328.12

applicable unpermitted Dispositions yield a Net Available Amount to the Borrower exceeding $1,000,000 per individual event or $2,000,000 in the aggregate per calendar year for all such Dispositions); provided that no Tranche A Prepayment Premium shall be due in respect of any prepayment under Section 2.05(b)(iii) in respect of any Disposition that was not permitted hereunder and was subsequently consented to by the Administrative Agent.

(g)     Section 2.07(e) to the Credit Agreement is hereby amended and restated as follows:

(e) Payment in Kind.  On each Quarterly Payment Date, the Borrower shall pay all of the accrued interest on each Loan at the Interest Rate in full in cash; provided that the Borrower may, in its sole discretion by sending written notice to the Administrative Agent no later than the applicable Quarterly Payment Date, without penalty, pay a portion of the accrued interest due and payable on each Tranche A Loan equal to up to 4.85% per annum of the outstanding principal amount of any such Tranche A Loans (including any Accrued Interest previously added to principal on a prior Quarterly Payment Date) in kind.  The aggregate outstanding principal amount of the Tranche A  Loans shall be automatically increased on each such Quarterly Payment Date by the amount of such interest paid in kind (and such increased principal shall bear interest at a rate per annum equal to the Interest Rate).

(h)     Section 5.21(f) of the Credit Agreement is hereby amended and restated as follows:

(f)     Provided that the Tranche B Loan then remains outstanding, he Borrower shall, to the extent requested by the Administrative Agent (in its sole and absolute discretion), use its commercially reasonable  efforts to consummate a Qualified PinnPack Sale

(i)     Section 5.21(h) of the Credit Agreement is hereby amended and restated as follows: "[Reserved]"

(j)     Section 5.21(i) of the Credit Agreement is hereby amended and restated as follows: "[Reserved]"

(k)     The words "…the Administrative Agent shall by notice to the Borrower…" in the last paragraph of Section 7.01 are hereby replaced with "…the Administrative Agent may, at its sole discretion, following written  notice to the Borrower…"

(l)     The Credit Agreement is hereby amended by amending and replacing Annex III to the Credit Agreement with the annex attached hereto as Exhibit A.

Section 3.     *Prepayment of Tranche B Obligations*.  On or prior to October 26th, 2020, the Borrower shall make a prepayment of Tranche B Loans in an amount equal to $15,560.42.

Section 4.    ***Effectiveness of Amendment***.  This Amendment shall become effective on the date (the "Amendment No. 3 Effective Date") on which each of the following conditions is satisfied:

(a)    This Amendment shall have been executed by each of (i) the Administrative Agent, (ii) the Lenders and (iii) the Borrower, and the Administrative Agent shall have received counterparts hereof which, when taken together, bear the signatures of each of the other parties hereto.

(b)    (i) The Administrative Agent shall have received an executed participation agreement, in the form attached hereto as Exhibit B (the "Participation Agreement"), duly executed by all of the Tranche B Lenders and the Participant party thereto and (ii) the Tranche B Lenders shall have received, or shall receive concurrently with the Amendment No. 3 Effective Date, funds in an amount equal to the aggregate Purchase Price (as defined in the Participation Agreement).

(c)    No Default or Event of Default shall have occurred and be continuing as of the Amendment No. 3 Effective Date.

(d)    The representations and warranties of the Loan Parties contained in the Amended Credit Agreement and the representations and warranties of the Loan Parties contained in Section 6 hereof shall be true and correct in all material respects (except where already qualified by materiality or Material Adverse Effect, in which case, in all respects) on and as of the Amendment No. 3 Effective Date (unless stated to relate solely to an earlier date, in which case such representations and warranties were true and correct as of such earlier date).

(e)    The Administrative Agent, the Lenders and their counsel shall have been paid or reimbursed by the Borrower for all reasonable and documented out-of-pocket expenses associated with the preparation, negotiation and execution of this Amendment and the Participation Agreement.

For the avoidance of doubt, the amendments specified in Section 2 shall become effective only after (1) the occurrence of the Amendment No. 3 Effective Date and (2) the consummation of the purchase transactions pursuant to the Participation Agreement.

Section 5.    ***Ratification of Obligations***.  Each of the Borrower and Guarantors each hereby (a) ratifies and confirms all of their respective Obligations under the Amended Credit Agreement and the other Financing Documents related thereto, (b) affirms that, after giving effect to this Amendment, all of its pledges, grants of security interests and Liens and other obligations under the Security Documents are reaffirmed and remain in full force and effect on a continuous basis, (c) reaffirms each Lien granted by it to the Collateral Agent and (d) acknowledges and agrees that the grants of security interests and Liens by it contained in the Security Documents are, and shall remain, in full force and effect on and after the Amendment No. 3 Effective Date.

Section 6.    ***Representations and Warranties.***  In order to induce each other party hereto to enter into this Amendment, each Loan Party represents and warrants to each other party hereto as follows:

(a)    Each Loan Party has full corporate, limited liability company or other organizational powers, authority and legal right to enter into, deliver and perform its respective obligations under the Amendment to consummate each of the transactions contemplated herein and therein, and has taken all necessary corporate, limited liability company or other organizational action to authorize the execution, delivery and performance by it of the Amendment. The Amendment has been duly executed and delivered by such Loan Party and is in full force and effect and constitutes a legal, valid and binding obligation of such Loan Party, enforceable against such Loan Party in accordance with its respective terms, except as enforcement may be limited (i) by Bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance or other similar laws affecting creditors' rights generally, (ii) by general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law) and (iii) by implied covenants of good faith and fair dealing.

(b)    The execution, delivery and performance by each Loan Party of this Amendment and all other documents and instruments to be executed and delivered hereunder by it, as well as the consummation of the transactions contemplated herein and therein, do not and will not (i) conflict with the Organizational Documents of such Loan Party, (ii) conflict with or result in a breach of, or constitute a default under, any indenture, loan agreement, mortgage, deed of trust or other material instrument or agreement to which such Loan Party (and, as of the Amendment No. 3 Effective Date, any Non-Guarantor Subsidiary) is a party or by which it is bound or to which such Loan Party's (and, as of the Amendment No. 3 Effective Date, any Non-Guarantor Subsidiary's) property or assets are subject, (iii) conflict with or result in a breach of, or constitute a default under, in any material respect, any Applicable Law or (iv) with respect to each Loan Party (and, as of the Amendment No. 3 Effective Date, each Non-Guarantor Subsidiary), result in the creation or imposition of any Lien (other than a Permitted Lien) upon any of such Borrower Group Member's property or the Collateral.

(c)    Each Loan Party (and, as of the Amendment No. 3 Effective Date, each Non-Guarantor Subsidiary) has obtained all material Authorizations required under any Applicable Law to be issued to, assigned to, or otherwise assumed by, such Borrower Group Member and necessary for (i) the Business or (ii) the execution, delivery and performance by each Loan Party of this Amendment other than, in each case, Authorizations that are not currently necessary and are obtainable in the ordinary course of business.

(d)    Each Loan Party (and, as of the Amendment No. 3 Effective Date, each Non-Guarantor Subsidiary) is in material compliance with each Authorization by a Governmental Authority currently in effect.

(e)    As of the Amendment No. 3 Effective Date, the conditions precedent set forth in Section 4 above have been satisfied.

Section 7.    ***Governing Law***.  THIS AMENDMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AMENDMENT (INCLUDING ANY CLAIM OR CONTROVERSY ARISING OUT OF OR RELATING TO THIS AMENDMENT WHETHER SOUNDING IN CONTRACT LAW, TORT LAW OR OTHERWISE) SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES THAT WOULD RESULT IN THE APPLICATION OF ANY LAW OTHER THAN THE LAW OF THE STATE OF NEW YORK.

Section 8.    ***Miscellaneous***.

(a)    On and after the Amendment No. 3 Effective Date, each reference in the Amended Credit Agreement to "this Agreement", "hereunder", "hereof" or words of like import, referring to the Amended Credit Agreement, and each reference in each other Financing Document to "the Credit Agreement", "thereunder", "thereof" or words of like import referring to the Amended Credit Agreement, shall mean and be a reference to the Amended Credit Agreement as amended or otherwise modified by this Amendment.  This Amendment shall constitute a Financing Document for purposes of the Amended Credit Agreement.

(b)    The execution, delivery and effectiveness of this Amendment shall not operate as a waiver of any default of the Borrower or any right, power or remedy of the Administrative Agent or the Lenders under any of the Financing Documents, nor constitute a waiver of any provision of any of the Financing Documents.

Section 9.    ***Participations***.  Notwithstanding anything to the contrary in this Amendment or the Amended Credit Agreement, the Borrower hereby (a) consents to the sale of participations contemplated by the Participation Agreement and (b) acknowledges and agrees that the Participation Agreement and the transactions contemplated thereby are transactions contemplated by the Financing Documents.

Section 10.    ***Severability***.  Any provisions of this Amendment held by a court of competent jurisdiction to be invalid or unenforceable shall not impair or invalidate the remainder of this Amendment and the effect thereof shall be confined to the provisions so held to be invalid.

Section 11.    ***Successors and Assigns***.  This Amendment is binding upon and shall inure to the benefit of the Administrative Agent, the Lenders and the Borrower and their respective successors and permitted assigns.

Section 12.    ***Counterparts***.  This Amendment may be executed by one or more of the parties to this Amendment on any number of separate counterparts (including by facsimile or other electronic transmission, *i.e.* a "pdf" or a "tif"), and all of said counterparts taken together shall be deemed to constitute one and the same instrument.  A set of the copies of this Amendment signed by all parties shall be lodged with the Borrower and the Administrative Agent.  The words "execution," "execute", "signed," "signature," and words of like import in or related to any document to be signed in connection with this Amendment shall be deemed to include electronic signatures, deliveries or the keeping of records in electronic form, each of which shall be of the

same legal effect, validity or enforceability as a manually executed signature or the use of a paper-based recordkeeping system, as the case may be, to the extent and as provided for in any applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act, or any other similar state laws based on the Uniform Electronic Transactions Act.

Section 13.    ***Headings***.    The headings, captions and arrangements used in this Amendment are for convenience only and shall not affect the interpretation of this Amendment or any other Financing Document.

Section 14.    ***Integration***.    This Amendment represents the agreement of the Borrower, the Administrative Agent and the Lenders with respect to the subject matter hereof, and there are no promises, undertakings, representations or warranties by the Borrower, any Agent nor any Lender relative to subject matter hereof not expressly set forth or referred to herein.

[*Signature Pages Follow*]

US-DOCS\118291328.12

IN WITNESS WHEREOF, each of the parties hereto has caused this Amendment to be executed by its officer(s) thereunto duly authorized as of the date first above written.

CarbonLite Holdings, LLC

By _____
Leon Farahnik
Chief Executive Officer

CarbonLite Sub-Holdings, LLC
By CarbonLite Holdings, LLC, its sole member

By _____
Leon Farahnik
Chief Executive Officer

CarbonLITE PI Holdings, LLC
By CarbonLite Sub-Holdings, LLC, its sole Member
By CarbonLite Holdings, LLC, its sole member

By _____
Leon Farahnik
Chief Executive Officer

CarbonLite Industries LLC
By CarbonLITE PI Holdings LLC, its sole Member
By CarbonLite Sub-Holdings, LLC, its sole Member
By CarbonLite Holdings, LLC, its sole member

By _____
Leon Farahnik
Chief Executive Officer

CarbonLite Pinnpack, LLC
    By CarbonLITE PI Holdings, LLC, its sole
    Member
        By CarbonLite Sub-Holdings, LLC, its sole
        Member
            By CarbonLite Holdings, LLC, its sole
            member

            By _____
            Leon Farahnik
            Chief Executive Officer


PinnPack Packaging, LLC
    By CarbonLITE Pinnpack, LLC, its Managing
    Member
        By CarbonLITE PI Holdings, LLC, its sole
        Member
            By CarbonLite Sub-Holdings, LLC, its
            sole Member
            By CarbonLite Holdings, LLC, its
            sole member

            By _____
            Leon Farahnik
            Chief Executive Officer

PinnPack P, LLC
By _____
    Leon Farahnik
    Chief Executive Officer

ORION ENERGY PARTNERS INVESTMENT
AGENT, LLC,
as Administrative Agent and Collateral Agent

By:_____
     Name: Gerrit Nicholas
     Title: Managing Partner


ORION ENERGY CREDIT OPPORTUNITIES
FUND II, L.P.,
as a Lender

By: Orion Energy Credit Opportunities Fund II GP,
L.P.
Its: General Partner

By: Orion Energy Credit Opportunities Fund II
Holdings, LLC
Its: General Partner

By:_____
     Name: Gerrit Nicholas
     Title: Managing Partner


ORION ENERGY CREDIT OPPORTUNITIES
FUND II PV, L.P.,
as a Lender

By: Orion Energy Credit Opportunities Fund II GP,
L.P.
Its: General Partner

By: Orion Energy Credit Opportunities Fund II
Holdings, LLC
Its: General Partner

By:_____
     Name: Gerrit Nicholas
     Title: Managing Partner

ORION ENERGY CREDIT OPPORTUNITIES
FUND II GPFA, L.P.,
as a Lender

By: Orion Energy Credit Opportunities Fund II GP,
L.P.
Its: General Partner

By: Orion Energy Credit Opportunities Fund II
Holdings, LLC
Its: General Partner

By: _____

    Name: Gerrit Nicholas
    Title: Managing Partner


ORION ENERGY CREDIT OPPORTUNITIES
CARBONLITE CO-INVEST, L.P.,
as a Lender

By: Orion Energy Credit Opportunities Fund II GP,
L.P.
Its: General Partner

By: Orion Energy Credit Opportunities Fund II
Holdings, LLC
Its: General Partner

By: _____

    Name: Gerrit Nicholas
    Title: Managing Partner

**EXHIBIT A**
AMENDMENT NO. 3 TO CREDIT AGREEMENT

**ANNEX III**
**TO**
**CREDIT AGREEMENT**

**Tranche B Minimum Return**

As used herein and in the Credit Agreement, the "Tranche B Minimum Return" as of any date shall mean the following:

|    | **Condition and Milestone** | **Minimum Return amount in respect of Tranche B Loans** |
|----|----|----|
| 1. | The date that the Tranche B Obligations are repaid in full in cash. | $1,000,000 |

## EXHIBIT B
AMENDMENT NO. 3 TO CREDIT AGREEMENT

## Form of Participation Agreement

[*See attached.*]



**PARTICIPATION AGREEMENT FOR PAR/NEAR PAR TRADES**
_____

**TRANSACTION SPECIFIC TERMS**

THIS PARTICIPATION AGREEMENT FOR PAR/NEAR PAR TRADES is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Participation in the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the LSTA Standard Terms and Conditions for Participations for Par/Near Par Trades, published as of March 16, 2020 (the "Standard Terms"). The Standard Terms and (if applicable) the Collateral Annex are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms, the Collateral Annex (if applicable) and the Transaction Specific Terms together constitute a single integrated Participation Agreement for Par/Near Par Trades governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| TRANSACTION SUMMARY | | |
|---|---|---|
| **Trade Date:** | **October 23, 2020** | |
| **Agreement Date:** | **October 23, 2020** | |
| **Seller:** | **Each of Orion Energy Credit Opportunities Fund II, L.P. ("OEFII LP"), Orion Energy Credit Opportunities Fund II PV, L.P. ("OEFII PV") and Orion Energy Credit Opportunities Fund II GPFA, L.P. ("OEFII GPFA")** | |
| **Buyer:** | **LF Investment Holdings LLC** | |
| **Credit Agreement:** | **Credit Agreement, dated as of August 2, 2019, among CarbonLite Holdings, LLC, certain Subsidiaries of the Borrower as guarantors, the financial institutions party thereto as "Tranche A Lenders" and "Tranche B Lenders" from time to time, Orion Energy Partners Investment Agent, LLC, as Administrative Agent and Collateral Agent, as amended by that certain Amendment No. 1 to Credit Agreement and Waiver, dated March 30, 2020, Amendment No. 2 to Credit Agreement, dated September 9, 2020 and Amendment No. 3 to Credit Agreement, dated October 23, 2020** | |
| **Borrower:** | **CarbonLite Holdings, LLC** | |
| **Purchase Amount:** | **See Confirmation below** | |
| **Tranche(s):** | **Tranche B** | |
| **Delivery of Credit Documents:** | **Yes ☒** | **No ☐** |
| **Netting Arrangements:** | **Yes ☐** | **No ☒** |
| **Set-Off Applicable:** | **Yes ☐** | **No ☒** |
| **Collateral Annex Applicable:** | **Yes ☐** | **No ☒** |
| **Elevation:** | **Yes ☐** | **No ☒** |

---

**TRANSACTION SUMMARY**

*Each of OEFII LP, OEFII PV and OEFII GPFA shall be the "Seller" with respect to the applicable Purchase Amounts set forth on the Confirmation below.  All references herein and in the Standard Terms to the "Seller" shall be deemed to refer to, collectively, OEFII LP, OEFII PV and OEFII GPFA.*

---

## A.    DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement.  Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement.  Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement.  If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means Orion Energy Partners Investment Agent, LLC, in its separate capacities as Administrative Agent and Collateral Agent.

"Assignment" means the Assignment and Assumption that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Elevation Required Consents to such assignment.

"Buyer Purchase Price" select one:
    ☒ not applicable.
    ☐ means the purchase price payable by Buyer to Original Buyer pursuant to the Netting Letter (this applies if there are three (3) parties involved in the netting arrangement).
    ☐ means the purchase price payable by Buyer to Penultimate Buyer pursuant to the Netting Letter (this applies if there are four (4) or more parties involved in the netting arrangement).

"Collateral Annex" means the Collateral Annex to the Participation Agreement for Par/Near Par Trades published by the LSTA as of March 16, 2020.

"Commitments" select one:
    ☒ none.
    ☐ means Tranche B Commitments in the principal amount of $_____.

"Elevation Transfer Fee" means N/A.

"Netting Letter" select one:
    ☒ not applicable.
    ☐ means that certain Multilateral Netting Agreement in the form currently published by the LSTA dated on or as of the Agreement Date among Seller, Buyer [and] [,] Original Buyer [, Penultimate Buyer] and [describe any other parties to the Netting Letter]].

"Original Buyer" select one:
    ☒ not applicable.
    ☐ means [specify original buyer in the netting arrangement].

"Participation" means the purchase of the Tranche B Loan, and the sole and exclusive benefit of the Unconditional Continuing Guaranty of All Tranche B Obligations dated September 9, 2020 executed by

Leon Farahnik. Section 2.1(a) of the Standard Terms and Conditions is amended to substitute the phrase "Tranche B Loans" for the word "Loans", and to delete the term "Commitments".  There are no Assumed Obligations of Buyer in connection with the trade evidenced hereby.

"Participation Required Consents" means all consents, acknowledgements and/or notices required by the Transaction Documents to grant a participation in the Transferred Rights.

"Participation Transfer Fee" means the transfer fee (if any) set forth in Section E.1 payable to Seller in connection with the assignment by Buyer of all or any portion of the Participation, subject to Section 10.1 of the Standard Terms and Conditions.

"Penultimate Buyer" select one:
☒ not applicable.
☐ none ("none" is applicable if there are only three (3) parties involved in the netting arrangement).
☐ means [_____].

"Seller Purchase Price" select one:
☒ not applicable.
☐ means the purchase price payable by Original Buyer to Seller pursuant to the Netting Letter.

## B.  SECTIONS 4 (SELLER'S REPRESENTATIONS AND WARRANTIES) AND 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)

**B.1**    The representations and warranties in Sections 4.1(h), (j) and (k) are hereby removed and replaced with the following text: "[Reserved]".

**B.2**    The following words are hereby deleted from Section 5.1(d) "; provided, however, that Buyer may resell the Participation if such resale is in compliance with Section 10".

**B.3**    The following words are hereby deleted from Section 5.1(e)(iv) "..and has made investments of a similar nature" and the following words are deleted from Section 5.1(e)(v): ", except that Buyer has relied upon Seller's express representations, warranties, covenants, agreements and indemnities in this Agreement."

**B.4**    The representations and warranties in Sections 5.1(e), (f) and (g) are made with respect to Buyer and, to Buyer's actual knowledge, with respect to Buyer's source of funds for the payment of the Purchase Price hereunder.

If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

## C.  SECTION 6 (INDEMNIFICATION); SECTION 7 (COSTS AND EXPENSES); SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS; COMMITMENT REDUCTIONS)

**C.1**    Sections 6.1, 6.2, 6.3 and 6.4 are hereby deleted.

**C.2**    Section 7.2 is hereby replaced with the following: "Buyer's reasonable   legal fees and other costs and expenses relating to the Transaction, shall be borne by Borrower..  Seller's costs and expenses for preparing, negotiating, executing and delivering this Agreement and any related documents and

US-DOCS\118313894.15

consummating the Transaction shall be reimbursed by the Borrower in accordance with the terms of the Credit Agreement."

**C.3**    Sections 7.3, 8.7, and 8.8 are hereby deleted.  Buyer shall have no obligation for any portion of Agent Expenses.

**C.4**    The reference in Section 8.1(a) to "two (2) Business Days" is hereby replaced with "five (5) Business Days".

**C.5**    Section 8.1(d) is hereby amended by adding the following text at the end of such section: "For the avoidance of doubt, the amount of the Distribution returned by Buyer pursuant to this Section 8.1(d) shall not be reduced for any taxes paid by Buyer."

**C.6**    Section 8.3 (<u>Wire Instructions</u>).

<u>Buyer's Wire Instructions</u>:

Bank: Pacific Western Bank (9701 Wilshire Boulevard Suite 101, Beverly Hills CA 90212
ABA No.: 122238200
Acct.:HPC Industries LLC
Acct. No.:1000701654
Ref.: HPC Industries/LF Investment Holdings

<u>Seller's Wire Instructions</u>:

Bank:  JPMorgan Chase Bank, N.A.
ABA No.: 021000021
Acct.: ORION ENERGY PARTNERS INVESTMENT AGENT, LLC
Acct. No.: 700846822
Swift No.: CHASUS33
Ref.: CarbonLITE

**D.    SECTION 9 (NOTICES; RECORDS)**

<u>Buyer's Address for Notices and Delivery</u>:

LF Investment Holdings LLC
c/o HPC Industries LLC, 10250 Constellation Boulevard, Suite 2820, Los Angeles CA 90067
Attention: Leon Farahnik
Telephone: (310) 473-7005
Facsimile: (310) 473-9592
Electronic Mail Address: lfarahnik@hpcindustries.com

<u>Seller's Address for Notices and Delivery</u>:

Orion Energy Partners Investment Agent, LLC
292 Madison Avenue, Suite 2500
New York, NY 10118
Attention: Gerrit Nicholas, Chris Leary and Mark Friedland
Electronic Mail Address: Gerrit@OrionEnergyPartners.com;
        Chris@OrionEnergyPartners.com;
        Mark@OrionEnergyPartners.com;
        Zhao@OrionEnergyPartners.com;
        CarbonLiteDealTeam@orionenergypartners.com

US-DOCS\118313894.15

**E.    SECTION 10 (FURTHER TRANSFERS)**

**E.1**    Sections 10.1 and 10.2 are hereby removed and replaced with the following text: "[Reserved]".

**E.2**    Buyer may not sell subparticipations in respect of the Transferred Rights without Seller's prior consent.

**E.3**    Section 10.3 is hereby modified by deleting the following text: "; provided, however, that Seller may not delegate its obligations under this Agreement without the prior consent of Buyer (which shall not be unreasonably withheld or delayed)".

**F.    SECTION 11 (VOTING)**

**F.1**    "Voting" select one:

☐ Buyer shall have voting rights with respect to the Transferred Rights, subject to Section 11.1(a) of the Standard Terms and Conditions.

☒ Buyer shall have no voting rights in respect of the Transferred Rights, subject to Section 11.1(b) of the Standard Terms and Conditions, except with respect to any amendment, modification or waiver which:

(i) adversely affects the Buyer; and

(ii) directly has any of the following affects to the Credit Agreement (defined terms have the meaning assigned to such terms in the Credit Agreement):

(A) Changes the provisions of any of Sections 2.04(a)(ii), 2.05(a)(ii), 2.05(b)(iii) or 2.05(b)(vi) of the Credit Agreement in respect of the Tranche B Loans;

(B) changes  the order of priority as between Tranche A Obligations and Tranche B Obligations in Sections 2.05(c)(i)[1] or 7.02 of the Credit Agreement;

(C) reduces  any portion or extend the date for the payment, of any principal, interest or fee payable under the Credit Agreement solely in respect of the Tranche B Loans; or

(D) extends  the Tranche B Maturity Date;

other than (x) as a result of (1) waiving the applicability of any Post-Default Rate increase in the Interest Rate or (2) waiver of a non-payment default or event of default in respect of the Tranche B Loans, which in any case, shall not constitute an extension, reduction or postponement of any date for payment of principal, interest or fees or (y) any amendment, modification or waiver which does not directly affect the sections or agreements specified in the foregoing clauses (A), (B) or (C).

For the avoidance of doubt and notwithstanding anything herein to the contrary, (a) the Agent (under and as defined in the Credit Agreement) shall retain the sole right (in its sole discretion) to enforce the Credit Agreement and the other Financing Documents (as defined therein), other than the Unconditional Continuing Guaranty of Leon Farahnik dated as of September 9, 2020, including whether to (or not to) exercise remedies upon or during a default or event of default relating to the Tranche B Obligations, and to approve any amendment, modification or waiver of any provision of the Credit Agreement or any other Financing Document (as defined therein) other than as expressly set forth above and (b) the Buyer shall have no right to direct the Agent to enforce against the Unconditional Continuing Guaranty of Leon Farahnik dated as of September 9, 2020.

US-DOCS\118313894.15

Without limiting the foregoing:

      (a)      Buyer may not vote on any plan of reorganization, arrangement, compromise or liquidation, file any proof of claim, make other filings and make any arguments and motions that are inconsistent in any respect to the position of the Administrative Agent (as defined in the Credit Agreement, the "Administrative Agent");

      (b)      Buyer shall not make a "credit bid" in respect of any Participation owned by the Purchaser in any insolvency or liquidation proceeding under the Bankruptcy Code or under the Uniform Commercial Code;

      (c)      Buyer shall turn over any proceeds of Collateral that would be used to repay Obligations other than the Tranche B Obligations to the Administrative Agent;

      (d)      Until the repayment of all Tranche A Obligations in full in cash, whether or not any insolvency or liquidation proceeding under the Bankruptcy Code has been commenced against the Borrower or any of its subsidiaries, the Administrative Agent shall have the exclusive right to enforce rights, exercise remedies (including set-off, recoupment and the right to credit bid their debt make determinations regarding the release, disposition, or restrictions with respect to the Collateral without any consultation and/or consent of Buyer;

      (e)      Buyer may not object to the application of proceeds as set forth in the Credit Agreement; and

      (f)      Buyer may not make any direct claim against the Borrower, its subsidiaries or the Administrative Agent.

**F.2**      For purposes of determining the Majority Holders or Majority Claims Holders pursuant to Section 11.1(a) of the Standard Terms and Conditions:

☒ the interests or claims held by Seller for its own account shall be counted;

☐ the interests or claims held by Seller for its own account shall not be counted;

☐   Not applicable;

<u>AND</u>

☒ the interests or claims held by Affiliates of Seller shall be counted.

☐ the interests or claims held by Affiliates of Seller shall not be counted.

☐   Not applicable.

**G.**     **SECTION 15 (ELEVATION)**

All of Section 15 in the Standard Terms is removed and replaced with the following text: "[Reserved]".

**H.**     **SECTION 18 (DISCLOSURE)**

**H.1**     Section 18.1(e) is hereby amended and replaced with the following text: "(e) to its respective Affiliates, and the directors, officers, employees, agents, actual or potential investors, financiers, advisors, counsel and auditors of such Party and of such Party's Affiliates or".

US-DOCS\118313894.15

**I.**    **SECTION 27 (SUBROGATION; REIMBURSEMENT CLAIMS)**

**J.**    All of Section 27 in the Standard Terms is removed and replaced with the following text: "[Reserved]".

**K.**    **SECTION 31 (ADDITIONAL PROVISIONS)**

The following additional provisions, including any modifications to existing provisions, apply:

The definition of "Assumed Obligations" in the Standard Terms is modified by adding the text "(in its capacity as a Tranche B Lender)" immediately after the text "Seller" therein.

The definition of "Lender" in the Standard Terms is modified by replacing the text "lender" therein with "Tranche B Lender".

The definition of "Loans" in the Standard Terms is modified by (i) replacing each instance of the text "Loan(s)" with the text "Tranche B Loan(s) and (ii) adding the text "on or" immediately prior to the text "after the Settlement Date" therein.

Buyer represents and warrants to Seller that, as of the Agreement Date, it is not (a) a natural person or (b) the Borrower or any of its Subsidiaries.

For the avoidance of doubt, as used in the Standard Terms, "Purchase Price" means the "Total Purchase Price" price set forth in the LSTA Par/Near Par Confirmation relating to the Transaction.

All of Section 6 in the Standard Terms is removed and replaced with the following text: "[Reserved]".

At any time following the Agreement Date, but solely to the extent an Event of Default (other than an Event of Default arising by virtue of the failure by Borrower to pay the Tranche B Loan on the Tranche B Maturity Date) has occurred and is continuing under the Credit Agreement, Seller may, with five (5) Business Days' prior written notice to Buyer, purchase from Buyer the Participation sold by Seller to Buyer pursuant to this Agreement.  On or prior to the fifth (5th) Business Day after delivery of such written notice, Seller and Buyer shall enter into an agreement pursuant to which Seller shall purchase, and Buyer shall sell, such outstanding Participation to Seller, at par, plus accrued and unpaid interest, and the Tranche B Minimum Return (as defined in the Credit Agreement).

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

ORION ENERGY CREDIT OPPORTUNITIES FUND II, L.P.

By: Orion Energy Credit Opportunities Fund II GP, L.P.
Its: General Partner

By: Orion Energy Credit Opportunities Fund II Holdings, LLC
Its: General Partner

By: _____
     Name:  Gerrit Nicholas
     Title:  Managing Partner

ORION ENERGY CREDIT OPPORTUNITIES FUND II PV, L.P.

By: Orion Energy Credit Opportunities Fund II GP, L.P.
Its: General Partner

By: Orion Energy Credit Opportunities Fund II Holdings, LLC
Its: General Partner

By: _____
     Name:  Gerrit Nicholas
     Title:  Managing Partner

ORION ENERGY CREDIT OPPORTUNITIES FUND II GPFA, L.P.

By: Orion Energy Credit Opportunities Fund II GP, L.P.
Its: General Partner

By: Orion Energy Credit Opportunities Fund II Holdings, LLC
Its: General Partner

By: _____
     Name:  Gerrit Nicholas
     Title:  Managing Partner

**BUYER**

LF INVESTMENT HOLDINGS, LLC


By: _____
    Name:
    Title:

**PAR/NEAR PAR TRADE CONFIRMATION**

| TRANSACTION SUMMARY | |
|---|---|
| Trade Date: | October 23, 2020 |
| Agreement Date: | October 23, 2020 |
| Seller: | Each of Orion Energy Credit Opportunities Fund II, L.P. ("**OEFII LP**"), Orion Energy Credit Opportunities Fund II PV, L.P. ("**OEFII PV**") and Orion Energy Credit Opportunities Fund II GPFA, L.P. ("**OEFII GPFA**") |
| Buyer: | LF Investment Holdings LLC |
| Credit Agreement: | Credit Agreement, dated as of August 2, 2019, among CarbonLite Holdings, LLC, certain Subsidiaries of the Borrower as guarantors, the financial institutions party thereto as "Tranche A Lenders" and "Tranche B Lenders" from time to time, Orion Energy Partners Investment Agent, LLC, as Administrative Agent and Collateral Agent, as amended by that certain Amendment No. 1 to Credit Agreement and Waiver, dated March 30, 2020, Amendment No. 2 to Credit Agreement, dated September 9, 2020 and Amendment No. 3 to Credit Agreement, dated October 23, 2020 |
| Borrower: | CarbonLite Holdings, LLC |
| Purchase Amount: | See below |
| *Each of OEFII LP, OEFII PV and OEFII GPFA shall be the "Seller" with respect to the applicable Purchase Amounts set forth on <u>Schedule I</u>. All references herein and in the Standard Terms to the "Seller" shall be deemed to refer to, collectively, OEFII LP, OEFII PV and OEFII GPFA.* | |

We are pleased to confirm the following transaction, subject to the Standard Terms and Conditions for Par/Near Par Trade Confirmations (the "Standard Terms and Conditions") published by The Loan Syndications and Trading Association, Inc.® (the "LSTA") as of June 9, 2017, which Standard Terms and Conditions are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the parties and specifically set forth in the "Trade Specific Other Terms of Trade" section below. The parties hereto agree to submit any dispute as to the reasonableness of a buy-in or sell-out price to binding arbitration in accordance with the LSTA "Rules Governing Arbitration between Loan Traders with regard to Cover Price for Trades that Do Not Settle by BISO Trigger Date" in existence on the Trade Date, and to comply with any award or decision issued in connection with such an arbitration proceeding. Capitalized terms used and not defined in this Confirmation have the respective meanings ascribed thereto in the Standard Terms and Conditions.

| | |
|---|---|
| **Trade Date**: | October 23, 2020 |
| **Seller**: | Each Seller noted above ☒ Principal ☐ Agent |
| **Buyer**: | Buyer noted above ☒ Principal ☐ Agent |
| | If no election is made, "Assignment" applies. |

**Form of Purchase:**

☐ Assignment

☐ Assignment Only

3

☒ Participation in Tranche B Loan only

☐ Other: _____

**Purchase**
**Type of Debt:**     **Amount/**

| Seller | Purchase Price |
|---|---|
| Orion Energy Credit Opportunities Fund II, L.P. | $1,940,518.33 |
| Orion Energy Credit Opportunities Fund II PV, L.P. | $3,118,308.17 |
| Orion Energy Credit Opportunities Fund II GPFA, L.P. | $191,173.50 |
| **Total Purchase Price** | $5,250,000.00 |

**Purchase Rate:**     100% of outstanding Tranche B Obligations (other than (a) any interest that accrued between the date of funding of such Tranche B Obligations through September 30th, 2020, which is being repaid by Borrower to Seller on or around October 26, 2020 and (b) accrued interest from and after October 1, 2020 as specified in the definition of "Settled Without Accrued Interest" below)

**Upfront Fee:**     ☒ None;  ☐ $100,000

Payable on:  ☐ Settlement Date; ☐ _____ ___, 20__

Payable by:  ☐ Seller; ☐ Buyer

**Credit Documents**     ☒ Yes (only applicable if Buyer was not a lender on Trade Date and made
**to be provided by**          its request on or prior to Trade Date)
**Seller:**

☐ No

**Collateral Annex**     ☐ Yes
**Applicable:**
☒ No

**Collateral Account**     ☐ Collateral Account established with Seller
**Institution:**
If selected, Collateral Account Segregation: ☐ Yes ☐ No

☐ Collateral Account established with a Third-Party Custodian

**Trade Specific**     ☒ Specify Other Terms:
**Other Terms of Trade:**
"Settled Without Accrued Interest" shall apply and all Interest and Accruing Fees accrued but unpaid before the Settlement Date shall be for the account of Seller.

3

Please provide the signature of a duly authorized signatory where indicated below and return this letter to the following e-mail addresses: Gerrit@OrionEnergyPartners.com;  Chris@OrionEnergyPartners.com; Mark@OrionEnergyPartners.com; Zhao@OrionEnergyPartners.com; and CarbonLiteDealTeam@orionenergypartners.com.

*SELLER*

*ORION ENERGY CREDIT OPPORTUNITIES FUND II, L.P.*

*ORION ENERGY CREDIT OPPORTUNITIES FUND II PV, L.P.*

*ORION ENERGY CREDIT OPPORTUNITIES FUND II GPFA, L.P.*

*By: Orion Energy Credit Opportunities Fund II GP, L.P.*
*Its: General Partner*

*By: Orion Energy Credit Opportunities Fund II Holdings, LLC*
*Its: General Partner*

*By:_____*

*Name:_____*

*Title: _____*

*Date:_____*

*BUYER*

*LF INVESTMENT HOLDINGS LLC*

*By:_____*

*Name:_____*

*Title: _____*

*Date:_____*

Please provide the signature of a duly authorized signatory where indicated below and return this letter to the following e-mail addresses: Gerrit@OrionEnergyPartners.com; Chris@OrionEnergyPartners.com; Mark@OrionEnergyPartners.com; Zhao@OrionEnergyPartners.com; and CarbonLiteDealTeam@orionenergypartners.com.

| *SELLER* | *BUYER* |
|---|---|
| *ORION ENERGY CREDIT OPPORTUNITIES FUND II, L.P.* | *LF INVESTMENT HOLDINGS LLC* |
| *ORION ENERGY CREDIT OPPORTUNITIES FUND II PV, L.P.* | *By:_____* |
| *ORION ENERGY CREDIT OPPORTUNITIES FUND II GPFA, L.P.* | *Name:_____* |
| *By: Orion Energy Credit Opportunities Fund II GP, L.P.* <br> *Its: General Partner* | *Title: _____* |
| *By: Orion Energy Credit Opportunities Fund II Holdings, LLC* <br> *Its: General Partner* | *Date:_____* |
| *By:_____* | |
| *Name:_____* | |
| *Title: _____* | |
| *Date:_____* | |