EXHIBIT 5



**PARTICIPATION AGREEMENT FOR PAR/NEAR PAR TRADES**

_____

**TRANSACTION SPECIFIC TERMS**

THIS PARTICIPATION AGREEMENT FOR PAR/NEAR PAR TRADES is dated as of the Agreement Date and entered into by and between Seller and Buyer to govern the purchase and sale of the Participation in the Loans, the Commitments (if any) and the other Transferred Rights, in accordance with the terms, conditions and agreements set forth in the LSTA Standard Terms and Conditions for Participations for Par/Near Par Trades, published as of March 16, 2020 (the "Standard Terms").  The Standard Terms and (if applicable) the Collateral Annex are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the Parties and as specifically supplemented and modified by the terms and elections set forth in the Transaction Summary and Sections A through H below. The Standard Terms, the Collateral Annex (if applicable) and the Transaction Specific Terms together constitute a single integrated Participation Agreement for Par/Near Par Trades governing the Transaction. With respect to the Transaction, the Parties agree to be bound by the Standard Terms and the Transaction Specific Terms set forth herein.

| TRANSACTION SUMMARY | |
|---|---|
| **Trade Date:** | **October 23, 2020** |
| **Agreement Date:** | **October 23, 2020** |
| **Seller:** | **Each of Orion Energy Credit Opportunities Fund II, L.P. ("OEFII LP"), Orion Energy Credit Opportunities Fund II PV, L.P. ("OEFII PV") and Orion Energy Credit Opportunities Fund II GPFA, L.P. ("OEFII GPFA")** |
| **Buyer:** | **LF Investment Holdings LLC** |
| **Credit Agreement:** | **Credit Agreement, dated as of August 2, 2019, among CarbonLite Holdings, LLC, certain Subsidiaries of the Borrower as guarantors, the financial institutions party thereto as "Tranche A Lenders" and "Tranche B Lenders" from time to time, Orion Energy Partners Investment Agent, LLC, as Administrative Agent and Collateral Agent, as amended by that certain Amendment No. 1 to Credit Agreement and Waiver, dated March 30, 2020, Amendment No. 2 to Credit Agreement, dated September 9, 2020 and Amendment No. 3 to Credit Agreement, dated October 23, 2020** |
| **Borrower:** | **CarbonLite Holdings, LLC** |
| **Purchase Amount:** | **See Confirmation below** |
| **Tranche(s):** | **Tranche B** |
| **Delivery of Credit Documents:** | **Yes ☒      No ☐** |
| **Netting Arrangements:** | **Yes ☐      No ☒** |
| **Set-Off Applicable:** | **Yes ☐      No ☒** |
| **Collateral Annex Applicable:** | **Yes ☐      No ☒** |
| **Elevation:** | **Yes ☐      No ☒** |

1

---

**TRANSACTION SUMMARY**

*Each of OEFII LP, OEFII PV and OEFII GPFA shall be the "Seller" with respect to the applicable Purchase Amounts set forth on the Confirmation below.  All references herein and in the Standard Terms to the "Seller" shall be deemed to refer to, collectively, OEFII LP, OEFII PV and OEFII GPFA.*

---

### A.    DEFINITIONS

Capitalized terms used in this Agreement shall have the respective meanings ascribed thereto in Section 1 of the Standard Terms, as supplemented by Section A of the Transaction Specific Terms and as otherwise may be provided in other provisions of this Agreement.  Terms defined in the Credit Agreement and not otherwise defined in this Agreement shall have the same meanings in this Agreement as in the Credit Agreement.  Except as otherwise expressly set forth herein, each reference herein to "the Agreement," "this Agreement," "herein," "hereunder" or "hereof" shall be deemed a reference to this Agreement.  If there is any inconsistency between the Transaction Specific Terms and the Standard Terms, the Transaction Specific Terms shall govern and control.

In this Agreement:

"Agent" means Orion Energy Partners Investment Agent, LLC, in its separate capacities as Administrative Agent and Collateral Agent.

"Assignment" means the Assignment and Assumption that is in the form specified in the Credit Agreement for an assignment of the Loans and Commitments (if any) and any Elevation Required Consents to such assignment.

"Buyer Purchase Price" select one:
  ☒ not applicable.
  ☐ means the purchase price payable by Buyer to Original Buyer pursuant to the Netting Letter (this applies if there are three (3) parties involved in the netting arrangement).
  ☐ means the purchase price payable by Buyer to Penultimate Buyer pursuant to the Netting Letter (this applies if there are four (4) or more parties involved in the netting arrangement).

"Collateral Annex" means the Collateral Annex to the Participation Agreement for Par/Near Par Trades published by the LSTA as of March 16, 2020.

"Commitments" select one:
  ☒ none.
  ☐ means Tranche B Commitments in the principal amount of $_____.

"Elevation Transfer Fee" means N/A.

 "Netting Letter" select one:
  ☒ not applicable.
  ☐ means that certain Multilateral Netting Agreement in the form currently published by the LSTA dated on or as of the Agreement Date among Seller, Buyer [and] [,] Original Buyer [, Penultimate Buyer] and [describe any other parties to the Netting Letter]].

"Original Buyer" select one:
  ☒ not applicable.
  ☐ means [specify original buyer in the netting arrangement].

"Participation" means the purchase of the Tranche B Loan, and the sole and exclusive benefit of the Unconditional Continuing Guaranty of All Tranche B Obligations dated September 9, 2020 executed by

Leon Farahnik. Section 2.1(a) of the Standard Terms and Conditions is amended to substitute the phrase "Tranche B Loans" for the word "Loans", and to delete the term "Commitments".  There are no Assumed Obligations of Buyer in connection with the trade evidenced hereby.

"Participation Required Consents" means all consents, acknowledgements and/or notices required by the Transaction Documents to grant a participation in the Transferred Rights.

"Participation Transfer Fee" means the transfer fee (if any) set forth in Section E.1 payable to Seller in connection with the assignment by Buyer of all or any portion of the Participation, subject to Section 10.1 of the Standard Terms and Conditions.

"Penultimate Buyer" select one:
      ☒ not applicable.
      ☐ none ("none" is applicable if there are only three (3) parties involved in the netting arrangement).
      ☐ means [_____].

"Seller Purchase Price" select one:
      ☒ not applicable.
      ☐ means the purchase price payable by Original Buyer to Seller pursuant to the Netting Letter.

## B.     SECTIONS 4 (SELLER'S REPRESENTATIONS AND WARRANTIES) AND 5 (BUYER'S REPRESENTATIONS AND WARRANTIES)

**B.1**     The representations and warranties in Sections 4.1(h), (j) and (k) are hereby removed and replaced with the following text: "[Reserved]".

**B.2**     The following words are hereby deleted from Section 5.1(d) "; provided, however, that Buyer may resell the Participation if such resale is in compliance with Section 10".

**B.3**     The following words are hereby deleted from Section 5.1(e)(iv) "..and has made investments of a similar nature" and the following words are deleted from Section 5.1(e)(v): ", except that Buyer has relied upon Seller's express representations, warranties, covenants, agreements and indemnities in this Agreement."

**B.4**     The representations and warranties in Sections 5.1(e), (f) and (g) are made with respect to Buyer and, to Buyer's actual knowledge, with respect to Buyer's source of funds for the payment of the Purchase Price hereunder.

If "Yes" is specified opposite "Delivery of Credit Documents" in the Transaction Summary, Buyer represents and warrants that it (i) was not a Lender on the Trade Date and (ii) requested copies of the Credit Documents from Seller on or prior to the Trade Date.

## C.     SECTION 6 (INDEMNIFICATION); SECTION 7 (COSTS AND EXPENSES); SECTION 8 (DISTRIBUTIONS; INTEREST AND FEES; PAYMENTS; COMMITMENT REDUCTIONS)

**C.1**     Sections 6.1, 6.2, 6.3 and 6.4 are hereby deleted.

**C.2**     Section 7.2 is hereby replaced with the following: "Buyer's reasonable   legal fees and other costs and expenses relating to the Transaction, shall be borne by Borrower..  Seller's costs and expenses for preparing, negotiating, executing and delivering this Agreement and any related documents and

US-DOCS\118313894.15

consummating the Transaction shall be reimbursed by the Borrower in accordance with the terms of the Credit Agreement."

**C.3**    Sections 7.3, 8.7, and 8.8 are hereby deleted.  Buyer shall have no obligation for any portion of Agent Expenses.

**C.4**    The reference in Section 8.1(a) to "two (2) Business Days" is hereby replaced with "five (5) Business Days".

**C.5**    Section 8.1(d) is hereby amended by adding the following text at the end of such section: "For the avoidance of doubt, the amount of the Distribution returned by Buyer pursuant to this Section 8.1(d) shall not be reduced for any taxes paid by Buyer."

**C.6**    Section 8.3 (Wire Instructions).

Buyer's Wire Instructions:

Bank: Pacific Western Bank (9701 Wilshire Boulevard Suite 101, Beverly Hills CA 90212
ABA No.: 122238200
Acct.:HPC Industries LLC
Acct. No.:1000701654
Ref.: HPC Industries/LF Investment Holdings

Seller's Wire Instructions:

Bank:  JPMorgan Chase Bank, N.A.
ABA No.: 021000021
Acct.: ORION ENERGY PARTNERS INVESTMENT AGENT, LLC
Acct. No.: 700846822
Swift No.: CHASUS33
Ref.: CarbonLITE

**D.    SECTION 9 (NOTICES; RECORDS)**

Buyer's Address for Notices and Delivery:

LF Investment Holdings LLC
c/o HPC Industries LLC, 10250 Constellation Boulevard, Suite 2820, Los Angeles CA 90067
Attention: Leon Farahnik
Telephone: (310) 473-7005
Facsimile: (310) 473-9592
Electronic Mail Address: lfarahnik@hpcindustries.com

Seller's Address for Notices and Delivery:

Orion Energy Partners Investment Agent, LLC
292 Madison Avenue, Suite 2500
New York, NY 10118
Attention: Gerrit Nicholas, Chris Leary and Mark Friedland
Electronic Mail Address: Gerrit@OrionEnergyPartners.com;
        Chris@OrionEnergyPartners.com;
        Mark@OrionEnergyPartners.com;
        Zhao@OrionEnergyPartners.com;
        CarbonLiteDealTeam@orionenergypartners.com

US-DOCS\118313894.15

**E.      SECTION 10 (FURTHER TRANSFERS)**

**E.1**      Sections 10.1 and 10.2 are hereby removed and replaced with the following text: "[Reserved]".

**E.2**      Buyer may not sell subparticipations in respect of the Transferred Rights without Seller's prior consent.

**E.3**      Section 10.3 is hereby modified by deleting the following text: "; provided, however, that Seller may not delegate its obligations under this Agreement without the prior consent of Buyer (which shall not be unreasonably withheld or delayed)".

**F.      SECTION 11 (VOTING)**

**F.1**      "Voting" select one:

☐  Buyer shall have voting rights with respect to the Transferred Rights, subject to Section 11.1(a) of the Standard Terms and Conditions.

☒  Buyer shall have no voting rights in respect of the Transferred Rights, subject to Section 11.1(b) of the Standard Terms and Conditions, except with respect to any amendment, modification or waiver which:
>        (i) adversely affects the Buyer; and

>        (ii) directly has any of the following affects to the Credit Agreement (defined terms have the meaning assigned to such terms in the Credit Agreement):

>>        (A) Changes the provisions of any of Sections 2.04(a)(ii), 2.05(a)(ii), 2.05(b)(iii) or 2.05(b)(vi) of the Credit Agreement in respect of the Tranche B Loans;

>>        (B) changes  the order of priority as between Tranche A Obligations and Tranche B Obligations in Sections 2.05(c)(i)[1] or 7.02 of the Credit Agreement;

>>        (C) reduces  any portion or extend the date for the payment, of any principal, interest or fee payable under the Credit Agreement solely in respect of the Tranche B Loans; or

>>        (D) extends  the Tranche B Maturity Date;

>        other than (x) as a result of (1) waiving the applicability of any Post-Default Rate increase in the Interest Rate or (2) waiver of a non-payment default or event of default in respect of the Tranche B Loans, which in any case, shall not constitute an extension, reduction or postponement of any date for payment of principal, interest or fees or (y) any amendment, modification or waiver which does not directly affect the sections or agreements specified in the foregoing clauses (A), (B) or (C).

>        For the avoidance of doubt and notwithstanding anything herein to the contrary, (a) the Agent (under and as defined in the Credit Agreement) shall retain the sole right (in its sole discretion) to enforce the Credit Agreement and the other Financing Documents (as defined therein), other than the Unconditional Continuing Guaranty of Leon Farahnik dated as of September 9, 2020, including whether to (or not to) exercise remedies upon or during a default or event of default relating to the Tranche B Obligations, and to approve any amendment, modification or waiver of any provision of the Credit Agreement or any other Financing Document (as defined therein) other than as expressly set forth above and (b) the Buyer shall have no right to direct the Agent to enforce against the Unconditional Continuing Guaranty of Leon Farahnik dated as of September 9, 2020.

10

Without limiting the foregoing:

> (a)      Buyer may not vote on any plan of reorganization, arrangement, compromise or liquidation, file any proof of claim, make other filings and make any arguments and motions that are inconsistent in any respect to the position of the Administrative Agent (as defined in the Credit Agreement, the "Administrative Agent");

> (b)      Buyer shall not make a "credit bid" in respect of any Participation owned by the Purchaser in any insolvency or liquidation proceeding under the Bankruptcy Code or under the Uniform Commercial Code;

> (c)      Buyer shall turn over any proceeds of Collateral that would be used to repay Obligations other than the Tranche B Obligations to the Administrative Agent;

> (d)      Until the repayment of all Tranche A Obligations in full in cash, whether or not any insolvency or liquidation proceeding under the Bankruptcy Code has been commenced against the Borrower or any of its subsidiaries, the Administrative Agent shall have the exclusive right to enforce rights, exercise remedies (including set-off, recoupment and the right to credit bid their debt make determinations regarding the release, disposition, or restrictions with respect to the Collateral without any consultation and/or consent of Buyer;

> (e)      Buyer may not object to the application of proceeds as set forth in the Credit Agreement; and

> (f)      Buyer may not make any direct claim against the Borrower, its subsidiaries or the Administrative Agent.

**F.2**      For purposes of determining the Majority Holders or Majority Claims Holders pursuant to Section 11.1(a) of the Standard Terms and Conditions:

☒ the interests or claims held by Seller for its own account shall be counted;

☐ the interests or claims held by Seller for its own account shall not be counted;

☐  Not applicable;

<u>AND</u>

☒ the interests or claims held by Affiliates of Seller shall be counted.

☐ the interests or claims held by Affiliates of Seller shall not be counted.

☐  Not applicable.

**G.      SECTION 15 (ELEVATION)**

All of Section 15 in the Standard Terms is removed and replaced with the following text: "[Reserved]".

**H.      SECTION 18 (DISCLOSURE)**

**H.1**      Section 18.1(e) is hereby amended and replaced with the following text: "(e) to its respective Affiliates, and the directors, officers, employees, agents, actual or potential investors, financiers, advisors, counsel and auditors of such Party and of such Party's Affiliates or".

US-DOCS\118313894.15

**I.**     **SECTION 27 (SUBROGATION; REIMBURSEMENT CLAIMS)**

**J.**     All of Section 27 in the Standard Terms is removed and replaced with the following text: "[Reserved]".

**K.**     **SECTION 31 (ADDITIONAL PROVISIONS)**

The following additional provisions, including any modifications to existing provisions, apply:

The definition of "Assumed Obligations" in the Standard Terms is modified by adding the text "(in its capacity as a Tranche B Lender)" immediately after the text "Seller" therein.

The definition of "Lender" in the Standard Terms is modified by replacing the text "lender" therein with "Tranche B Lender".

The definition of "Loans" in the Standard Terms is modified by (i) replacing each instance of the text "Loan(s)" with the text "Tranche B Loan(s)" and (ii) adding the text "on or" immediately prior to the text "after the Settlement Date" therein.

Buyer represents and warrants to Seller that, as of the Agreement Date, it is not (a) a natural person or (b) the Borrower or any of its Subsidiaries.

For the avoidance of doubt, as used in the Standard Terms, "Purchase Price" means the "Total Purchase Price" price set forth in the LSTA Par/Near Par Confirmation relating to the Transaction.

All of Section 6 in the Standard Terms is removed and replaced with the following text: "[Reserved]".

At any time following the Agreement Date, but solely to the extent an Event of Default (other than an Event of Default arising by virtue of the failure by Borrower to pay the Tranche B Loan on the Tranche B Maturity Date) has occurred and is continuing under the Credit Agreement, Seller may, with five (5) Business Days' prior written notice to Buyer, purchase from Buyer the Participation sold by Seller to Buyer pursuant to this Agreement.  On or prior to the fifth (5th) Business Day after delivery of such written notice, Seller and Buyer shall enter into an agreement pursuant to which Seller shall purchase, and Buyer shall sell, such outstanding Participation to Seller, at par, plus accrued and unpaid interest, and the Tranche B Minimum Return (as defined in the Credit Agreement).

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Agreement by their duly authorized officers or representatives as of the Agreement Date.

**SELLER**

ORION ENERGY CREDIT OPPORTUNITIES FUND II, L.P.

By: Orion Energy Credit Opportunities Fund II GP, L.P.
Its: General Partner

By: Orion Energy Credit Opportunities Fund II Holdings, LLC
Its: General Partner

By:_____
     Name:  Gerrit Nicholas
     Title:  Managing Partner


ORION ENERGY CREDIT OPPORTUNITIES FUND II PV, L.P.

By: Orion Energy Credit Opportunities Fund II GP, L.P.
Its: General Partner

By: Orion Energy Credit Opportunities Fund II Holdings, LLC
Its: General Partner

By:_____
     Name:  Gerrit Nicholas
     Title:  Managing Partner


ORION ENERGY CREDIT OPPORTUNITIES FUND II GPFA, L.P.

By: Orion Energy Credit Opportunities Fund II GP, L.P.
Its: General Partner

By: Orion Energy Credit Opportunities Fund II Holdings, LLC
Its: General Partner

By:_____
     Name:  Gerrit Nicholas
     Title:  Managing Partner


[CarbonLite - Signature Page to Participation Agreement]

**BUYER**

**LF INVESTMENT HOLDINGS, LLC**

By: _____

Name: LEON FARAHNIK

Title: PRESIDENT

[CarbonLite - Signature Page to Participation Agreement]

**PAR/NEAR PAR TRADE CONFIRMATION**

| | |
|---|---|
| **TRANSACTION SUMMARY** | |
| **Trade Date:** | **October 23, 2020** |
| **Agreement Date:** | **October 23, 2020** |
| **Seller:** | **Each of Orion Energy Credit Opportunities Fund II, L.P. ("OEFII LP"), Orion Energy Credit Opportunities Fund II PV, L.P. ("OEFII PV") and Orion Energy Credit Opportunities Fund II GPFA, L.P. ("OEFII GPFA")** |
| **Buyer:** | **LF Investment Holdings LLC** |
| **Credit Agreement:** | **Credit Agreement, dated as of August 2, 2019, among CarbonLite Holdings, LLC, certain Subsidiaries of the Borrower as guarantors, the financial institutions party thereto as "Tranche A Lenders" and "Tranche B Lenders" from time to time, Orion Energy Partners Investment Agent, LLC, as Administrative Agent and Collateral Agent, as amended by that certain Amendment No. 1 to Credit Agreement and Waiver, dated March 30, 2020, Amendment No. 2 to Credit Agreement, dated September 9, 2020 and Amendment No. 3 to Credit Agreement, dated October 23, 2020** |
| **Borrower:** | **CarbonLite Holdings, LLC** |
| **Purchase Amount:** | **See below** |
| *Each of OEFII LP, OEFII PV and OEFII GPFA shall be the "Seller" with respect to the applicable Purchase Amounts set forth on Schedule I. All references herein and in the Standard Terms to the "Seller" shall be deemed to refer to, collectively, OEFII LP, OEFII PV and OEFII GPFA.* | |

We are pleased to confirm the following transaction, subject to the Standard Terms and Conditions for Par/Near Par Trade Confirmations (the "Standard Terms and Conditions") published by The Loan Syndications and Trading Association, Inc.® (the "LSTA") as of June 9, 2017, which Standard Terms and Conditions are incorporated herein by reference without any modification whatsoever except as otherwise agreed herein by the parties and specifically set forth in the "Trade Specific Other Terms of Trade" section below. The parties hereto agree to submit any dispute as to the reasonableness of a buy-in or sell-out price to binding arbitration in accordance with the LSTA "Rules Governing Arbitration between Loan Traders with regard to Cover Price for Trades that Do Not Settle by BISO Trigger Date" in existence on the Trade Date, and to comply with any award or decision issued in connection with such an arbitration proceeding. Capitalized terms used and not defined in this Confirmation have the respective meanings ascribed thereto in the Standard Terms and Conditions.

| | |
|---|---|
| **Trade Date**: | October 23, 2020 |
| **Seller**: | Each Seller noted above  ☒ Principal ☐ Agent |
| **Buyer:** | Buyer noted above  ☒ Principal ☐ Agent |
| | If no election is made, "Assignment" applies. |

**Form of Purchase:**

☐ Assignment

☐ Assignment Only

US-DOCS\118313894.15

3

☒ Participation in Tranche B Loan only

☐ Other: _____

**Purchase Amount/
Type of Debt:**

| Seller | Purchase Price |
|---|---|
| Orion Energy Credit Opportunities Fund II, L.P. | $1,940,518.33 |
| Orion Energy Credit Opportunities Fund II PV, L.P. | $3,118,308.17 |
| Orion Energy Credit Opportunities Fund II GPFA, L.P. | $191,173.50 |
| **Total Purchase Price** | $5,250,000.00 |

**Purchase Rate:** 100% of outstanding Tranche B Obligations (other than (a) any interest that accrued between the date of funding of such Tranche B Obligations through September 30th, 2020, which is being repaid by Borrower to Seller on or around October 26, 2020 and (b) accrued interest from and after October 1, 2020 as specified in the definition of "Settled Without Accrued Interest" below)

**Upfront Fee:** ☒ None; ☐ $100,000

Payable on: ☐ Settlement Date; ☐ _____ ___, 20__

Payable by: ☐ Seller; ☐ Buyer

**Credit Documents to be provided by Seller:** ☒ Yes (only applicable if Buyer was not a lender on Trade Date and made its request on or prior to Trade Date)

☐ No

**Collateral Annex Applicable:** ☐ Yes

☒ No

**Collateral Account Institution:** ☐ Collateral Account established with Seller

  If selected, Collateral Account Segregation: ☐ Yes ☐ No

☐ Collateral Account established with a Third-Party Custodian

**Trade Specific Other Terms of Trade:** ☒ Specify Other Terms:

"Settled Without Accrued Interest" shall apply and all Interest and Accruing Fees accrued but unpaid before the Settlement Date shall be for the account of Seller.

US-DOCS\118313894.15

Please provide the signature of a duly authorized signatory where indicated below and return this letter to the following e-mail addresses: Gerrit@OrionEnergyPartners.com;  Chris@OrionEnergyPartners.com; Mark@OrionEnergyPartners.com; Zhao@OrionEnergyPartners.com; and CarbonLiteDealTeam@orionenergypartners.com.

| SELLER | BUYER |
|---|---|
| ***ORION ENERGY CREDIT OPPORTUNITIES FUND II, L.P.*** | ***LF INVESTMENT HOLDINGS LLC*** |
| ***ORION ENERGY CREDIT OPPORTUNITIES FUND II PV, L.P.*** | ***By:_____*** |
| ***ORION ENERGY CREDIT OPPORTUNITIES FUND II GPFA, L.P.*** | ***Name:_____*** |
| | ***Title: _____*** |
| ***By: Orion Energy Credit Opportunities Fund II GP, L.P.***<br>***Its: General Partner*** | ***Date:_____*** |

***By: Orion Energy Credit Opportunities Fund II Holdings, LLC***
***Its: General Partner***

***By:_____***

***Name:*** Gerrit Nicholas

***Title:*** Managing Partner

***Date:*** 10/23/2020_____

[CarbonLite - Signature Page to Confirmation to Participation Agreement]

Please provide the signature of a duly authorized signatory where indicated below and return this letter to the following e-mail addresses: Gerrit@OrionEnergyPartners.com;  Chris@OrionEnergyPartners.com; Mark@OrionEnergyPartners.com; Zhao@OrionEnergyPartners.com; and CarbonLiteDealTeam@orionenergypartners.com.

**SELLER**

**ORION ENERGY CREDIT OPPORTUNITIES FUND II, L.P.**

**ORION ENERGY CREDIT OPPORTUNITIES FUND II PV, L.P.**

**ORION ENERGY CREDIT OPPORTUNITIES FUND II GPFA, L.P.**

**By: Orion Energy Credit Opportunities Fund II GP, L.P.**
**Its: General Partner**

**By: Orion Energy Credit Opportunities Fund II Holdings, LLC**
**Its: General Partner**

By:_____

Name:_____

Title: _____

Date:_____

**BUYER**

**LF INVESTMENT HOLDINGS LLC**

By:_____

Name:____LEON  FARAHNIK____

Title: ____PRESIDENT____

Date:____10/22/20____

[CarbonLite - Signature Page to Confirmation to Participation Agreement]