GZJ KOKV'4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CARBONLITE HOLDINGS LLC, *et al.*,[1] | ) | Case No. 21-10527 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS RELATING TO THE READING FACILITY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (B) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS; AND (C) GRANTING RELATED RELIEF

Upon the motion [Docket No. 112] (the "Motion") of the above-captioned debtors and debtors in possession (the "Debtors") pursuant to sections 105(a), 363, 365, 503, 507, 1107, and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") for (a) approval of a sale of substantially all of the assets (the "Assets") of the Debtors relating to the Reading Facility,[2] free and clear of all liens, claims, encumbrances, and other interests; (b) approval of assumption and assignment of certain unexpired leases and executory contracts; and (c) approval of related relief, all as contemplated in the *Order (A) Approving Bid Procedures for the Sale of Substantially All of the Debtors' Assets; (B) Approving Procedures for the*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: CarbonLite Holdings LLC (8957); CarbonLite Industries LLC (3596); CarbonLite P Holdings LLC (8957); CarbonLite P, LLC (5453); CarbonLite PI Holdings LLC (8957); CarbonLite Pinnpack LLC (8957); CarbonLite Recycling Holdings LLC (8957); CarbonLite Sub-Holdings, LLC (8957); Pinnpack P, LLC (8322); CarbonLite Recycling LLC (3727); and Pinnpack Packaging LLC (9948). The address of the Debtors' corporate headquarters is 10250 Constellation Blvd., Los Angeles, CA 90067.

[2] The Reading Facility is a recycling facility operated by Debtor CarbonLite P, LLC ("CarbonLite P") located at 4030 Pottsville Pike, Muhlenberg Township, Pennsylvania in Reading, Pennsylvania. The owner of the premises upon which the Reading Facility is located is Berks61 Owner, LLC ("Reading Landlord").

Assumption and Assignment of Executory Contracts and Unexpired Leases; (C) Approving Certain Bid Protections in Connection With the Debtors' Entry Into Any Potential Stalking Horse Agreements; (D) Scheduling the Auction and Sale Hearing; (E) Approving the Form and Manner of Notice Thereof; and (F) Granting Related Relief [Docket No. 266] (as may be amended, supplemented, or modified)[3] (the "Bid Procedures Order")[4] entered by this Court on April 9, 2021; and the Auction having taken place on May 24, 2021, in accordance with the Bid Procedures Order, **DAK Americas LLC** having been chosen as the Successful Bidder (the "Successful Bidder" or the "Buyer") for the Purchased Assets;[5] and the Debtors party to the APA (as defined below) (the "Sellers")[6] having agreed to enter into and consummate the Asset Purchase Agreement attached hereto as **Exhibit A** with the Buyer (the "APA"); and the hearing to approve the sale (the "Sale" or "Sale Transaction") of the Purchased Assets and the APA (the "Sale Approval Hearing") having been held on June [3]3, 2021 in accordance with the Bid Procedures Order; and this Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided in accordance with the Bid Procedures Order, Bankruptcy Rules and Local Rules, and that, except as otherwise ordered herein, no other further notice is necessary; and upon the record at the Sale Approval Hearing and all of the proceedings before this Court; and this Court having

---

[3] *See Order Approving Stipulation Among Debtors, the Official Committee of Unsecured Creditors and the DIP Lenders, Extending Certain Deadlines Under the Bid Procedures Order* [Docket No. 312], entered by this Court on April 20, 2021; *Order Approving Second Stipulation Among Debtors and the DIP Lenders, Extending Certain Deadlines Under the Bid Procedures Order* [Docket No. 357], entered by this Court on April 27, 2021; *Order Approving Amended Third Stipulation Among Debtors and the DIP Lenders Extending Certain Deadlines Under (I) TX Debtors' Final DIP Order; (II) PA Debtors' Final DIP Order; (III) CA Debtors' Final DIP Order; and (IV) Bid Procedures Order* [Docket No. 401], entered on May 4, 2021; and *Order Authorizing Debtors to Extend, as Necessary, Certain Deadlines Under the (I) Bid Procedures Order; (II) TX Debtors' Final DIP Order; (III) PA Debtors' Final DIP Order; and (IV) CA Debtors' Final DIP Order* [Docket No. 449], entered by this Court on May 13, 2021.

[4] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Bid Procedures Order or, as applicable, the Bid Procedures (as defined in and attached to the Bid Procedures Order) and the APA.

[5] As used herein, "Purchased Assets" shall have the meaning ascribed to it in the APA.

[6] Debtor CarbonLite Holdings LLC ("Holdings") is party to the APA for the sole and exclusive purpose of Section 5.16 of the APA, and for purposes of this Order is a Seller hereunder solely to that extent.

reviewed any objections asserted at the Sale Approval Hearing and having found and determined that the relief sought at the Sale Approval Hearing, and entry of this Order, is in the best interests of the Sellers, the Sellers' estates, their creditors, and all other parties in interest; and after due deliberation thereon and sufficient cause appearing therefore, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    **Findings and Conclusions:** The findings and conclusions set forth herein and in the record of the Sale Approval Hearing are based upon the evidentiary record before the Court and constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following conclusions of law constitute findings of fact, or *vice versa*, they are adopted as such.

B.    **Jurisdiction, Venue and Core Proceeding:** This Court has jurisdiction over these chapter 11 cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. The matters covered by this Order are core proceedings under 28 U.S.C. § 157(b)(2). Venue is proper in this district and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Venue in this district and before this Court was proper as of the Petition Date and continues to be proper. The Court may enter a final order with respect to the Motion, the Sale, the Sale Transaction, and all related relief, in each case, consistent with Article III of the United States Constitution.

C.    **Statutory Predicates.** The statutory predicates for the relief sought in the Motion are sections 105(a), 363, 365, 503, 507, 1107, and 1108 of the Bankruptcy Code, Rules 2002,

6004, 6006, 9008, and 9014 of the Bankruptcy Rules and Rules 2002-1 and 6004-1 of the Local Rules. The consummation of the Sale Transaction contemplated by the Motion, the APA, and this Order, and the assumption and assignment of the Acquired Contracts, the Acquired Real Property Leases, the Acquired Personal Property Leases and the Licenses and Permits (each as defined in the APA) (collectively, the "Acquired Contracts") are legal, valid, and properly authorized under the cited provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and all of the applicable requirements of such sections and rules have been complied with in respect of such transactions.

D. **Actual Notice.** Actual written notice of the Motion, the Bid Procedures Hearing, the Bid Procedures, the Assumption and Assignment Procedures, the proposed assumption and assignment of Acquired Contracts, the Auction, the Sale Approval Hearing, the Sale, the Sale Transaction and all transactions contemplated therein or in connection therewith, and all deadlines related thereto has been given to all interested persons and entities, including, without limitation: (i) the DIP Term Agent, DIP Term Lenders, and Prepetition Term Secured Parties, and each of their counsel; (ii) the DIP ABL Lender and Prepetition ABL Secured Parties, and each of their counsel; (iii) the TX/PA DIP Agents and Prepetition Trustees (each as defined in the applicable DIP Order), and each of their counsel; (iv) counsel to the Official Committee of Unsecured Creditors (the "Committee"); (v) the Office of the United States Trustee; (vi) the counterparty to each unexpired lease and executory contract to be assumed and assigned pursuant to this Order, and each of their counsel (if known); (vii) all persons known or reasonably believed to have asserted an interest in the Purchased Assets; (viii) the Attorneys General in the States where the Assets are located; (ix) all federal, state, and local taxing authorities in the States where the Assets are located; (x) all parties who have asserted liens against the Purchased

Assets; (xi) all parties included on the Debtors' consolidated creditor matrix; and (xii) any other party that has filed a request for notices with the Court (collectively, the "Notice Parties"). Such notice was appropriate and reasonably calculated to provide all interested parties with timely and proper notice. Accordingly, no further notice need be provided.

E.     **Extensive Efforts by Debtors.** The Sellers have worked with their counsel, their investment banker Jefferies, LLC ("Jefferies"), and other advisors, as well as, as applicable, the Consultation Parties and the Consent Parties, to implement a viable Sale Transaction that would allow them to maximize the value of their Assets. The Sale Transaction for the Purchased Assets that is the subject of this Order is the result of the Sellers' extensive efforts in seeking to maximize recoveries to the Sellers' estates, for the benefit of all of the Sellers' creditors.

F.     **Business Justification.** The Sellers have demonstrated good, sufficient, and sound business purposes and justifications for, and compelling circumstances to promptly consummate, the Sale Transaction contemplated by the APA and related documents, including, without limitation, the assumption, assignment, and/or transfer of the Acquired Contracts pursuant to sections 105, 363, and 365 of the Bankruptcy Code, prior to and outside of a plan of reorganization, and such action is an appropriate exercise of the Sellers' business judgment and in the best interests of the Sellers, their estates, and their creditors. Such business reasons include, but are not limited to, the fact that: (i) the total consideration provided by the Buyer for the Purchased Assets as reflected in the APA is the highest or otherwise best offer for the Purchased Assets; (ii)  there is substantial risk of depreciation of the value of the Purchased Assets if the Sale is not consummated promptly; (iii) the Sale Transaction contemplated by the APA presents the best opportunity to maximize the value of the Sellers' estates; (iv) at Closing, in accordance with the *Final Order Pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of*

*the Bankruptcy Code (I) Authorizing CarbonLite P, LLC and CarbonLite P Holdings LLC to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims, and (B) Adequate Protection to the Prepetition Secured Parties; (III) Authorizing the Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Docket No. 276] (the "<u>PA DIP Order</u>"), the cash proceeds of the Sale Transaction will be used to indefeasibly pay the DIP Obligations (as defined in the PA DIP Order) and (v) unless the Sale is concluded expeditiously as provided for in this Order and pursuant to the APA, potential creditor recoveries may be substantially diminished.

   G. **Bid Procedures Order.** On April 9, 2021, this Court entered the Bid Procedures Order approving, among other things, Bid Procedures for the sale  of substantially all of the Debtors' Assets and Assumption and Assignment Procedures for the related assumption and assignment of any unexpired leases and executory contracts relating to any sale.  The Bid Procedures provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Debtors' Assets.  The Assumption and Assignment Procedures provided a full, fair, and reasonable opportunity for any counterparty to any unexpired lease or executory contract to object to any proposed Cure Amount, assumption and assignment of its applicable unexpired lease or executory contract, or the Buyer's adequate assurance of future performance.  The Debtors, the Buyer, and their respective counsel and other advisors have complied with the Bid Procedures Order, the Bid Procedures, and the Assumption and Assignment Procedures in all respects.

   H. **Adequate Marketing; Highest or Best Offer.** As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Approval Hearing and (ii) the representations of counsel made on the record at the Sale Approval Hearing, (a) the Debtors and

their professionals adequately marketed the Purchased Assets and conducted the Sale Process in compliance with the Bid Procedures Order in good faith and in a fair and open manner; (b) the Sale Process and the Bid Procedures were non-collusive, duly noticed, and provided a full, fair, reasonable and adequate opportunity for any interested party to conduct due diligence and make an offer to purchase the Purchased Assets, and submit higher and better offers for the Purchased Assets than the Buyer's Successful Bid; (c) the consideration provided by the Buyer in the APA constitutes the highest or otherwise best offer for the Purchased Assets; (d) the consideration provided by the Buyer is fair and reasonable consideration for the Purchased Assets and constitutes reasonably equivalent value under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, and any other applicable laws of the United States, any state, territory, possession, or the District of Columbia; (e) the Sale will provide a greater recovery to the Debtors' creditors with respect to the Purchased Assets than would be provided by any other available alternative; (f) taking into consideration all relevant factors and circumstances, no other entity has offered to purchase the Purchased Assets for greater economic value to the Debtors or their estates than the Buyer; and (g) the Debtors' determination that the APA constitutes the highest or best offer for the Purchased Assets, maximizes value for the Debtors' estates, and constitutes a valid and sound exercise of the Debtors' business judgment. There is no legal or equitable reason to delay Closing of the Sale Transaction contemplated by the APA.

I.     **Opportunity to Object.**  A reasonable opportunity to object or be heard with respect to the Motion, and all relief requested therein, has been afforded to all interested parties.

J.     **Property of the Estate.**  The Purchased Assets are property of the applicable Sellers' estates and title thereto is vested in the Sellers' estates.

K.     **Sale in Best Interests.**  The actions to be taken by the Debtors and the Buyer are appropriate under the circumstances of these chapter 11 cases and are in the best interests  of the Debtors, their estates, their creditors, and other parties in interest.  Approval of the APA and the Sale Transaction set forth therein, and all related transactions at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest.

L.     **Arm's-Length Sale.**    The APA, the Sale, the Sale Transaction, and any transactions  contemplated  therein  and  associated  therewith  were  negotiated,  proposed,  and entered into by the Debtors and the Buyer without collusion, in good faith, and from arm's-length bargaining positions.  The Buyer (i) recognizes that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets, (ii) complied with the Bid Procedures Order in all respects, and (iii) willingly subjected its bid to the competitive Bid Procedures.   All payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed.  Accordingly, none of the Sellers, their insiders  and  affiliates,  the  DIP  Secured  Parties  (as  defined  in  the  PA  DIP  Order)  and  the Prepetition Secured Parties (as defined in the PA DIP Order) nor the Buyer have engaged in any conduct that would cause or permit the APA, the Sale, or any part of the Sale Transaction to be avoided under section 363(n) of the Bankruptcy Code.

M.     **Good Faith Buyer.**  The Buyer is a good faith buyer under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby, including in the event this Order or any portion thereof is reversed or modified on appeal, and the Buyer has proceeded in good faith in all respects in connection with the Sale Transaction specifically and these chapter 11 cases generally.

N.    **Corporate Authority.**  The Sellers (i) have full corporate power and authority to execute the APA and all other documents contemplated thereby, and the Sale Transaction and Sale of the Purchased Assets have been duly and validly authorized by all necessary corporate action of the Sellers, (ii) have all of the corporate power and authority necessary to consummate the transactions contemplated by the APA, (iii) have taken all corporate action necessary to authorize and approve the APA and the consummation by the Sellers of the transactions contemplated thereby, and (iv) need no consents or approvals, other than those expressly provided for in the APA, which may be waived in accordance with the terms therewith and applicable law.

O.    **Free and Clear Findings Required by the Buyer.**  The Buyer would not have entered into the APA and would not consummate the Sale if the Sale of the Purchased Assets to the Buyer were not, pursuant to section 363(f) of the Bankruptcy Code and except for Permitted Post-Closing Encumbrances and Assumed Liabilities (as defined in the APA), free and clear of (i) all liens, whether consensual or statutory, replacement liens, adequate protection liens or other liens granted under sections 361, 363, or 364 of the Bankruptcy Code, mortgages, deeds of trust, hypothecations, pledges, security interests, charges, options and transfer restrictions, including rights of first refusal or first offer, defect or objection liens, easements, encroachments or servitudes, in each case, that constitutes an "interest" for purposes of section 363(f) of the Bankruptcy Code (collectively, the "Liens"), (ii) any and all "claims," as defined in section 101(5) of the Bankruptcy Code and jurisprudence interpreting the Bankruptcy Code, including (a) any and all claims or causes of action based on or arising under any labor, employment or pension laws, labor or employment agreements, including any employee claims related to worker's compensation, occupational disease, or unemployment or temporary disability,

including, without limitation, claims that might otherwise arise under or pursuant to (1) ERISA (as defined below), (2) the Fair Labor Standards Act, (3) Title VII of the Civil Rights Act of 1964, (4) the Federal Rehabilitation Act of 1973, (5) the National Labor Relations Act, (6) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (7) the Americans with Disabilities Act of 1990, (8) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code and of any similar state law, (9) state discrimination laws, (10) state unemployment compensation laws or any other similar state laws, (11) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (12) the WARN Act (29 U.S.C. §§ 2101 et seq.), (b) any rights under any pension or multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of the Employee Retirement Income Security Act of 1974 (as amended, "ERISA"), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability, (c) any and all claims or causes of action based upon or relating to any putative successor or transferee liability, (d) any and all claims or causes of action based upon or relating to any bulk sales or similar law, (e) any and all claims or causes of action based upon or relating to any tax statutes or ordinances, including the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Assets prior to the Closing, including any ad valorem taxes assessed by any applicable taxing authority, and (f) any other rights or causes of action (whether in law or in equity), warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution,

obligations, demands, restrictions, indemnification claims or liabilities relating to any act or omission of the Debtors or any other person prior to the Closing, consent rights, options, contract rights, covenants and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of the above-captioned case, and whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "Claims"), and (iii) any and all claims, causes of actions, payments, charges, judgments, assessments, losses, monetary damages, penalties, fines, fees, interest obligations, deficiencies, debts, obligations, costs and expenses and other liabilities (whether absolute, accrued, contingent, fixed or otherwise, or whether known or unknown, or due or to become due or otherwise), including any amounts paid in settlement, interest, court costs, costs of investigators, attorneys' fees, legal or other expenses incurred in connection therewith (collectively, the "Interests"). A sale of the Assets other than one free and clear of all Liens, Claims, and Interests would have yielded substantially less value for the Debtors' estates, with less certainty, than the Sale as contemplated. Therefore, the Sale contemplated by the APA free and clear of all Liens, Claims, and Interests is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

P. **Authorization to Transfer.** Upon entry of this Order, subject to the terms of the APA, the applicable Debtors are authorized to transfer all their right, title and interest in and to the Purchased Assets free and clear of, and the Buyer shall not be responsible for, any Liens, Claims, or Interests (other than Permitted Post-Closing Encumbrances and Assumed Liabilities (as defined in the APA)).

Q.     **Environmental Protection Agency.**  Notwithstanding the foregoing, nothing in this Order or the APA releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Order. Nothing in this Order or the APA authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

R.     **Assumption and Assignment of Unexpired Leases and Executory Contracts.** Pursuant to section 365 of the Bankruptcy Code, the Debtors are authorized to assume all Acquired Contracts[7] and assign such Acquired Contracts to the Buyer.  To the extent a Cure Amount is owed to the counterparty of any Acquired Contract, the applicable Cure Amount will be paid on or before Closing of the Sale approved pursuant to this Order in accordance with the APA.  The Buyer has, in accordance with the Assumption and Assignment Procedures, provided adequate assurance of future performance to any Contract Counterparty as required by section 365(b)(1)(C).

S.     **Transfer of Acquired Contracts.**  The Acquired Contracts being assigned to the Buyer are an integral part of the Sale Transaction and, accordingly, their assumption and assignment is reasonable and an enhancement to the value of the Debtors' estates.  To the extent any Acquired Contract is not an executory contract within the meaning of section 365 of the

---

[7]  Notwithstanding the name of the Debtor(s) listed on any Acquired Contract, the Acquired Contracts identified in th e APA are deemed assumed and assigned by the applicable Debtors party to the APA.

Bankruptcy Code, it shall be transferred to the Buyer in accordance with the terms of the APA and, other than with respect to Permitted Post-Closing Encumbrances and Assumed Liabilities, the Buyer shall have no liability or obligation for any (i) defaults or breaches under such agreement that relate to acts or omissions that occurred in the period, or otherwise arose, prior to the Closing Date and (ii) claims, counterclaims, offsets, or defenses (whether contractual or otherwise, including, to the extent permitted by applicable law, any right of recoupment) with respect to such Acquired Contract, that relate to any acts or omissions that arose or occurred prior to the Closing Date.

T.      **Release of Debtors.**  The Sale of the Purchased Assets, the Sale Transaction and any other transactions contemplated by the APA are (i) on an "as is, where is" basis; (ii) have been negotiated by the Buyer and the Debtors after extensive due diligence by the Buyer; and (iii) are not subject to any representations and warranties, except as expressly set forth in the APA. Based on this finding, except as otherwise expressly set forth in the APA, effective as of the Closing, the Debtors are unconditionally and irrevocably, released from any and all liabilities, obligations, claims, demands, losses, damages, suits, causes or rights of action whatsoever, known or unknown, anticipated or unanticipated, direct or contingent, whether now existing or hereafter arising, which Buyer has or may have, including those in any way resulting from, arising out of, or in any way connected with the Sale, the Purchased Assets and the Sale Transaction.

U.      **Binding and Valid Transfer.**  The transfer of the Purchased Assets to the Buyer will be a legal, valid, effective, and enforceable sale and transfer of the Purchased Assets and will vest the Buyer with all right, title, and interest of the Sellers to the Purchased Assets free and

clear of all Liens, Claims, and Interests, other than the Permitted Post-Closing Encumbrances and Assumed Liabilities, to the extent expressly set forth in the APA or in this Order.

V. **Satisfaction of Standards of Section 363(f).** The applicable Debtors are authorized to sell the Assets free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever, other than the Permitted Post-Closing Encumbrances and Assumed Liabilities, because, with respect to each creditor or other person or entity asserting a Lien, Claim, or Interest, one or more of the standards set forth in section 363(f)(1) - (5) of the Bankruptcy Code have been satisfied. Each holder of a Lien, Claim, or Interest (i) has, subject to the terms and conditions of this Order, consented to the Sale or is deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code, (ii) is adequately protected by having its Lien, Claim, or Interest attach to the proceeds received by the Sellers (if any) that are ultimately attributable to the property against or in which such Lien, Claim, or Interest is asserted, subject to the terms of such Lien, Claim, or Interest, with the same validity, force, and effect, and in the same order of priority that such Lien, Claim, or Interest now has against the Purchased Assets or their proceeds, if any, (iii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Lien, Claim, or Interest, or (iv) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. In all cases, each such person with Liens, Claims, or Interests in the Purchased Assets (other than Permitted Post-Closing Encumbrances and Assumed Liabilities) is enjoined from taking any action against the Buyer, the Buyer's affiliates, or any agent of the foregoing to recover any such Lien, Claim, or Interest.

W. **Repayment of DIP Obligations.** Pursuant to the PA DIP Order, the Purchased Assets constitute DIP Collateral (as defined in the PA DIP Order) and are subject to the DIP Liens (as defined in the PA DIP Order). At Closing, the Sellers are authorized and directed to

distribute the proceeds of the Sale Transaction in accordance with the PA DIP Order and the DIP Documents (as defined in the PA DIP Order).

X.     **No *Sub Rosa* Plan**.   The Sale, Sale Transaction, the APA, and the other transactions contemplated thereby do not constitute a *sub rosa* chapter 11 plan.   The Sale Transaction neither impermissibly restructures the rights of the Sellers' creditors nor impermissibly dictates a liquidating chapter 11 plan for the Sellers.

Y.     **Purchased Assets Assignable.**   To the maximum extent possible under the Bankruptcy Code, each and every provision of the documents governing the Purchased Assets or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any of the Purchased Assets, if any, has been or will be satisfied or is otherwise unenforceable under section 365 of the Bankruptcy Code.

Z.     **Necessity of Order.**   The Buyer would not have entered into the APA and would not consummate the Sale Transaction contemplated therein without all of the relief provided for in this  Order (including, but not limited to, that the sale and transfer of the Purchased Assets to Buyer be free and clear  of all Liens, Claims, and Interests).   The consummation of the Sale Transaction pursuant to this Order and the APA is necessary for the Sellers to (i) comply with the terms of the PA DIP Order and the DIP Documents (as defined in the PA DIP Order), including the milestones and repayment provisions set forth therein, and (ii) maximize the value of their estates for the benefit of all creditors.

AA.     **Final Order.** This Order constitutes a  final order within the meaning of 28 U.S.C. § 158(a).   Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly

finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

BB.     **Best Interests.** Entry of this Order is in the best interests of the Sellers, the Sellers' estates, their creditors, and all other parties in interest.

<u>**ORDER**</u>

Based on the foregoing Findings of Fact and Conclusions of Law, it is hereby **ORDERED, ADJUDGED, AND DECREED** as follows:

1.      **Findings of Fact and Conclusions of Law.**   The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and *vice versa*.

2.      **Motion Granted.**  The Motion is granted with respect to the Sale Transaction contemplated by the APA and the relief requested therein with respect to the Sale is granted and approved ~~in its entirety, as~~<u>to the extent</u> set forth herein.

3.      **Objections Are Overruled.**  Except for any objections to adequate assurance of future performance by any Contract Counterparty that are contemplated to be heard post-Sale Approval Hearing in accordance with the Assumption and Assignment Procedures, all objections, reservations of rights regarding, or other responses to the Motion or the relief requested therein, the APA, all other ancillary agreements, the Sale Transaction, the entry of this Order or to the relief granted herein that have not been withdrawn, waived, settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the

merits with prejudice.  All persons and entities that failed to timely object to the Motion are deemed to have consented to the relief granted herein for all purposes.

4.    **Approval.**   The APA, and all the terms and conditions thereof, is approved. Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Sellers are authorized to perform their obligations under, and comply with the terms of, the APA and consummate the Sale and the related transactions pursuant to, and in accordance with, the terms and conditions of the APA and this Order.  The Sellers are authorized to execute and deliver, and empowered to perform under, consummate, and implement, the APA and the Sale Transaction contemplated therein, together with all additional instruments and documents that the applicable Sellers or the Buyer deem necessary or appropriate to  implement the APA and effectuate the Sale Transaction contemplated therein, and to take all further actions as may reasonably be required by the Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer the Purchased Assets free and clear of any and all Liens, Claims, and Interests (other than Permitted Post-Closing Encumbrances and Assumed Liabilities) as may be necessary or appropriate to their performance of their obligations under the APA.  The Buyer and the Debtors shall have no obligation to consummate the Sale Transaction except as contemplated by and provided for in the APA and the Bid Procedures.  The Buyer shall not be required to seek or obtain relief from the stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or related documents.   The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the provisions of this Order.  Any Avoidance Actions (as defined in the APA) acquired by the Buyer pursuant to section 2.1(n) of the APA are waived for all purposes as set forth in section 2.1(n) of the APA.

5. **Notice**. Notice of the Motion, the Bid Procedures Hearing, the Bid Procedures, the Assumption and Assignment Procedures, the Auction, the Sale Approval Hearing, the Sale, all transactions contemplated therein or in connection therewith, including the Sale Transaction, all deadlines related thereto, and the relief granted in this Order was fair, sufficient, proper, and equitable under the circumstances and complied in all respects with sections 102(1) and 363 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Bid Procedures Order, the Bid Procedures, the Assumption and Assignment Procedures, and the procedural due process requirements of the United States Constitution.

6. **Authorization to Assign**. Notwithstanding any provision of any contract governing the Purchased Assets, including any Acquired Contract to be assumed and assigned to the Buyer as of the Closing, pursuant to section 365(f) of the Bankruptcy Code or applicable non-bankruptcy law that prohibits, restricts, or conditions the assignment of the Purchased Assets, including any Acquired Contract, the Sellers are authorized to (i) assign the Purchased Assets to the Buyer and (ii) assume and assign the Acquired Contracts to the Buyer as of the Closing, in each case, which assignments shall take place on and be effective as of the Closing or such other date after the Closing Date, in each case, as provided in the APA or as otherwise provided by a separate order of this Court.

a. There shall be no accelerations, assignment fees, increases, or any other fees charged to the Buyer or the Sellers as a result of the assignment of the Purchased Assets or the assumption and assignment of the Acquired Contracts.

b. The Sellers have met all of the requirements of section 365(b) of the Bankruptcy Code for each of the Acquired Contracts that are to be assumed and assigned to the Buyer as of Closing. Notwithstanding the foregoing, unless required by the Buyer under the APA for the Sellers to assume and assign any Acquired Contract, no Seller shall be required by the Court to assume and assign any Acquired Contract, and, if no such assumption and assignment occurs, no Cure Amounts shall be due and no adequate assurance of future performance shall be required with respect to any such contract.

c.     The Debtors' assumption and assignment of the Acquired Contracts is subject to the consummation of the Sale Transaction with the Buyer. Any objection of any Contract Counterparty to the assumption and assignment of any Acquired Contracts, any Cure Amount, or seeking further adequate assurance of future performance than that provided in the APA, to the extent not otherwise resolved by agreement, contemplated to be heard after the Sale Approval Hearing in accordance with the Assumption and Assignment Procedures, or by separate order of this Court, is hereby overruled; *provided*, *however*, that the Sellers, the Buyer, and the relevant Contract Counterparty under each Acquired Contract subject to a dispute contemplated to be heard after the Sale Approval Hearing shall have authority to compromise, settle, or otherwise resolve any such objections without further order of, or notice to, this Court. Upon payment of the Cure Amount, the Sellers shall be released by the Buyer and the applicable Contract Counterparty from any and all claims and causes of action of any nature whatsoever based on, arising from or relating to such Acquired Contracts.

7.     **Acquired Contracts**.  As of the Closing, subject to the provisions of this Order and in accordance with the APA, the Buyer shall succeed to the entirety of the applicable Debtors' rights and obligations in the Acquired Contracts to be assumed and assigned to the Buyer, and shall have all rights thereunder subject to the terms of the APA.

a.     Upon Closing, (i) all defaults (monetary and non-monetary) under the Acquired Contracts shall be deemed cured and satisfied in full through the payment of the Cure Amounts, (ii) no other amounts will be owed by the Debtors, their estates, or the Buyer with respect to the Acquired Contracts, and (iii) any and all persons or entities shall be forever barred and estopped from asserting a Claim against the Debtors, their estates, the Buyer, or the Purchased Assets that any additional amounts are due or defaults exist under the Acquired Contracts. The Buyer's promise pursuant to the terms of the APA to pay the Cure Amounts and the Buyer's promise to perform the Debtors' obligations under the Acquired Contracts for the period on or after the Closing Date shall constitute adequate assurance of Buyer's future performance under the Acquired Contracts being assigned to it as of the Closing within the meaning of sections 365(b)(l)(C) and (f)(2)(A)-(B) of the Bankruptcy Code.

b.     Upon assumption of the Acquired Contracts to be assumed by the applicable Debtors and assigned to the Buyer as of the Closing, such Acquired Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order, and shall be assigned and transferred to the Buyer, notwithstanding any provision in such Acquired Contract or other restrictions prohibiting assignment or transfer. To the extent any Acquired Contract is assumed and assigned to the Buyer under this Order, such assumption and assignment will not take effect until the Closing. Furthermore,

other than the Acquired Contracts, no other contract shall be deemed assumed by the Debtors and assigned to the Buyer pursuant to section 365 of the Bankruptcy Code. The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Acquired Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of such Acquired Contract.

Notwithstanding the foregoing, the Debtors may, at the Buyer's direction, amend the list of Acquired Contracts to add or remove any executory contract or unexpired list to or from such list prior to Closing of the Sale Transaction in accordance with the terms of the APA and the Assumption and Assignment Procedures.

8.     **Binding Effect of Order.**   This Order and the APA shall be binding in all respects upon (i) all known and unknown creditors of, and holders of equity security interests in, the Debtors, including any holders of Liens, Claims, and Interests; (ii) the Buyer, and all successors and assigns of the Buyer; (iii) the Debtors and their estates; (iv) the Purchased Assets; (v) any trustee(s) appointed in the Debtors' chapter 11 cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code; and (vi) all successors and assigns of each of the foregoing. The APA, this Order, and the Sellers' obligations therein and herein shall not be altered, impaired, amended, rejected, discharged, or otherwise affected by any chapter 11 plan proposed or confirmed in these bankruptcy cases, without the prior written consent of the Buyer. To the extent of any conflict between this Order and the APA, the terms of this Order shall control.

9.     **Release of Back-Up Bidder.**   The Back-Up Bidder will be released at Closing and any Good Faith Deposit of any Back-Up Bidder will be refunded within three (3) days of Closing.

10.    **Injunction.**   Effective upon the Closing, with the sole exception of any enforcement of rights related to the Assumed Liabilities, all persons (including, but not limited to, the Debtors, creditors, investors, current and former employees and shareholders,

administrative agencies, governmental units, secretaries of state, federal, state, and local officials, including those maintaining any authority relating to any environmental, health and safety laws, and the successors and assigns of each of the foregoing) shall be, and hereby are, forever barred, estopped, and permanently enjoined from (i) taking any action that would adversely affect or interfere with the ability of the Sellers to transfer the Purchased Assets to the Buyer in accordance with the APA and this Order and (ii) asserting, prosecuting, or otherwise pursuing any Liens, Claims, or Interests (other than Permitted Post-Closing Encumbrances and Assumed Liabilities) of any kind or nature whatsoever against the Buyer or any affiliate of the Buyer or any of its respective property, successors and assigns, or the Purchased Assets, on any other grounds. No person shall assert, and the Buyer and the Purchased Assets shall not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or otherwise, including, without limitation, to the extent permitted by applicable law, any right of recoupment), liabilities, claims and interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of the Buyer under, or with respect to, any Purchased Assets, with respect to any act or omission that occurred prior to the Closing or with respect to any other agreement or any obligation of the Debtors that  is not an assumed liability under the APA.

11.     **General Assignment.**  Upon the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the applicable Sellers' interests, right, and title in the Purchased Assets and a bill of sale transferring good and marketable title in the Purchased Assets to the Buyer at Closing, pursuant to the terms of the APA, free and clear of all Liens, Claims and Interests (other than Permitted Post-Closing Encumbrances and Assumed Liabilities).

12.     **Governmental Authorization to Effectuate Sale.**  Each and every federal, state, and local governmental agency, quasi-agency, or department is hereby directed and authorized to accept any and all documents and instruments in connection with or necessary and appropriate to consummate the Sale Transaction contemplated under the APA.  Except as otherwise provided in this Order, to the greatest extent available under applicable law upon the Closing, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Buyer as of the Closing. No governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Purchased Assets  sold, transferred, or conveyed to the Buyer on account of the filing or pendency of these chapter 11 cases  or the consummation of the transactions contemplated by the APA.

13.     **Transfer Free and Clear.**  Upon the Closing, pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Purchased Assets, including the Acquired Contracts, shall be transferred to the Buyer in accordance with the APA, and such transfer shall be free and clear of all Liens, Claims, and Interests (other than Permitted Post-Closing Encumbrances and Assumed Liabilities), in each case to the maximum extent permitted by section 363(f) of the Bankruptcy Code, whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity or

otherwise, and whether occurring or arising before, on or after the Petition Date, or occurring or arising prior to the Closing.  Any and all such Liens, Claims, and Interests (other than Permitted Post-Closing Encumbrances and Assumed Liabilities) shall attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of a Lien, Claim, or Interest claims or may claim a Lien, Claim, or Interest, in the order of its priority, with the same validity, force, and effect which they now have and had against such Purchased Assets immediately prior to Closing.

14.     **Environmental Protection Agency.**  Notwithstanding the foregoing, nothing in this Order or the APA releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Order. Nothing in this Order or the APA authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

15.     **Provisions Specific to Muhlenberg Township Authority.**  In full satisfaction of the MTA Secured Claim (as defined in the PA DIP Order) of Muhlenberg Township Authority ("MTA") against CarbonLite P and the MTA Liens (as defined in the PA DIP Order), the Sellers shall pay to MTA an aggregate amount of $~~————~~**210,215.59** at the Closing, comprised of the sum of (i) $~~176,000~~176,000.00 of the remaining balance of the tapping fee due and owing to MTA after application of the adequate protection payments made by CarbonLite P to MTA

post-petition pursuant to the terms of the PA DIP Order, *plus* (ii) $7,228.82 of pre-petition outstanding sewer charges, *plus* (iii) $~~———~~11,986.77 for sewer usage charges due and owing by CarbonLite P to MTA for the billing period of May 1, 2021 through May 30, 2021, *plus* (iv) $15,000 for MTA's attorneys' fees (collectively, the "MTA Payment"). Upon receipt of the MTA Payment, the MTA Liens will be deemed terminated, extinguished, and removed from the public record for the Reading Facility. If, in the future, the MTA Liens for which the MTA Payment was received are discovered of record in the chain of title of the Reading Facility, MTA shall, upon the request of Reading Landlord, reasonably cooperate with Reading Landlord to promptly remove the MTA Liens. Notwithstanding any language in the APA or this Order to the contrary, unless and until the MTA Payment is indefeasibly received by MTA in full, each of the MTA Secured Claim and MTA Liens (each as defined in the PA DIP Order) shall constitute a Permitted ~~Post-Closing Encumbrance~~Lien (as defined in the APA) and shall not be extinguished or impacted in any way by the terms of this Order. Prior to the Closing, Buyer shall set up a utility account with MTA for its use after the Closing, and the utility deposit made to MTA by CarbonLite P post-petition shall be retained by MTA as adequate assurance of payment of future utility charges by Buyer. Buyer shall pay to MTA in the ordinary course of business after the Closing all sums due and owing for sewer charges for the billing period from June 1, 2021 through June 30, 2021 and onward whether billable to CarbonLite P or Buyer, in accordance with the APA. In the event that the Closing under the APA does not occur by June 30, 2021, the MTA Payment to be made to MTA at the Closing shall be increased by the amount of sewer charges billable to CarbonLite P for the billing period from June 1, 2021 through June 30, 2021. Notwithstanding the forgoing, Buyer shall have no obligations to MTA under this paragraph if the Sale Transaction set forth in the APA does not close.

16.     **Treatment of Starlinger & Co. Gessellschaft m.b.H. ("Starlinger").**   The *Objection of Starlinger & Co. Gessellschaft m.b.H. to Debtor's Notice of Proposed Assumption and Assignment, et seq.*, filed on April 29, 2021 [Docket No. 376] is withdrawn.   The Cure Amount due under the *Order Confirmation No. MA295440* between Starlinger and CarbonLite P, LLC, dated November 27, 2018 (the "Reading RecoSTAR Agreement") in U.S. dollars as of the Petition Date is $3,439,486.  The Reading RecoStar Agreement is an Acquired Contract under the APA.  At Closing, **$2,078,301 (€1,751,476)** of the Cure Amount will be payable to Starlinger.  The balance of the Cure Amount of $1,361,185 (€1,147,130) will be payable by the Buyer to Starlinger at the time of execution of the "Certificate of Finished Installation" pursuant to the Reading RecoSTAR Agreement.  The Cure Amount may be paid in in the stated amounts of either U.S Dollars or Euros.

17.     16. **Valid Transfer.**  Effective upon the Closing, the transfer of the Purchased Assets to the Buyer pursuant to the APA constitutes a legal, valid, and effective transfer of the Purchased Assets and shall vest the Buyer with all right, title, and interest of the applicable Debtors in and to the Purchased Assets, free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever (other than Permitted Post-Closing Encumbrances and Assumed Liabilities).

18.     17. **Exculpation.**  Neither the Buyer nor any of its affiliates, successors, and assigns, nor any of its professionals, shall have, or incur any liability to, or be subject to any action by, the Debtors or any of their predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the APA and the entry into and consummation of the Sale Transaction, except as expressly provided in the APA and this Order.  Neither the Debtors nor any of their affiliates, successors, and assigns, nor any of its

professionals, shall have, or incur any liability to, or be subject to any action by, the Buyer or any of its predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the APA and the entry into and consummation of the Sale Transaction, except as expressly provided in the APA and this Order.

19. ~~18.~~ **Release of Interests.** Effective upon the Closing, this Order (i) is and shall be effective as a determination that all Liens, Claims, and Interests of any kind or nature whatsoever (other than Permitted Post-Closing Encumbrances and Assumed Liabilities) existing as to the Purchased Assets prior to the Closing have been unconditionally released, discharged, and terminated (with such Liens, Claims, and Interests attaching to the proceeds of the sale with the same nature, validity, priority, extent, perfection, and force and effect that such Liens, Claims, and Interests encumbered the Purchased Assets immediately prior to the entry of this Order) and that the conveyances described herein have been effected, (ii) is and shall be binding upon and shall govern the acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Purchased Assets conveyed to the Buyer, and (iii) all recorded Liens, Claims, and Interests (other than Permitted Post-Closing Encumbrances and Assumed Liabilities) against the Purchased Assets shall be deemed stricken from such entities records, official and otherwise.

20. ~~19.~~ **Direction to Release Interests.** If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements

evidencing a Lien, Claim, or Interest in all or any portion of the Assets being sold pursuant to the Sale Transaction and the APA shall not have delivered to the Sellers prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens, Claims, and Interests (other than Permitted Post-Closing Encumbrances and Assumed Liabilities), which such person or entity has with respect to all or any portion of the Purchased Assets being sold pursuant to the Sale Transaction and the APA , then (i) the Sellers are authorized to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to all or any portion of the Purchased Assets being sold pursuant to the Sale Transaction and the APA, and (ii) the Buyer is authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all Liens, Claims, and Interests (other than Permitted Post-Closing Encumbrances and Assumed Liabilities) of any kind or nature whatsoever in the Purchased Assets being sold pursuant to the Sale Transaction and the APA. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA, including, without limitation, recordation of this Order.

21. 20. **No Interference.**  Following the Closing, no holder of any Lien, Claim or Interest in the Assets shall interfere with the Buyer's title to, or use and enjoyment of, the Purchased Assets being sold pursuant to the Sale Transaction and the APA based on, or related to, any such Lien, Claim, or Interest, or based on any actions the Debtors may take in these chapter 11 cases.

22. 21. **Surrender of Possession.**  All persons or entities that are currently, or as of the Closing, may be, in possession of some or all of the Purchased Assets are hereby directed to

surrender possession of the Purchased Assets to the Buyer at the Closing, unless the Buyer otherwise agrees.

23. 22. **Post-Closing Actions and Transactions.** The Sellers and the Buyer, and each of their respective officers, employees, and agents, will be authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the applicable Debtors or the Buyer deem necessary or appropriate to implement and effectuate the terms of the APA, the Sale Transaction contemplated therein and this Order.

24. 23. **Sale is Self-Executing**. The Sale is self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

25. 24. **No Successor Liability.** Neither the Buyer, nor any of its successors or assigns, or any of their respective affiliates shall have any liability for any Lien, Claim, or Interest that arose or occurred prior to the Closing, or otherwise may be asserted against the Debtors or is related to the Purchased Assets prior to the Closing. Neither the Buyer nor any of its affiliates are or shall be deemed, as a result of the consummation of the Sale Transaction, to (i) be legal successors to the Debtors or their estates by reason of any theory of law or equity, (ii) have, *de facto* or otherwise, merged with or into the Debtors, or (iii) be an alter ego or a mere continuation or substantial continuation or successor of the Debtors in any respect. Neither the Buyer nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtors or their estates, other than the Permitted Post-Closing Encumbrances and Assumed Liabilities, to the extent provided in the APA.

26. 25. **Limitations on Liability.**  Without limiting the foregoing, and except as otherwise set forth in the APA, the Buyer and its affiliates shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character, including under any theory of successor  or transferee liability, *de facto* merger or continuity, product liability, warranty, labor law, or ERISA, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to the Debtors or any obligations of the Debtors.

27. 26. **Fair Consideration.**  The consideration provided by the Buyer for the Purchased Assets under the APA shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, and any other applicable laws of the United States, any state, territory, possession, or the District of Columbia.  The Sale may not be avoided under section 363(n) of the Bankruptcy Code or any other applicable law. The APA was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law.  Neither the Sellers nor the Buyer have entered into the APA or any agreement contemplated thereby or are consummating the Sale with any fraudulent or otherwise improper purpose, including, without limitation, to evade any pension liabilities.  No other person or entity or group of persons or entities has offered to purchase the Purchased Assets for an amount that would provide greater value to the Sellers and their estates than the value provided by the Buyer.  The Court's approval of the Motion and the APA are in the best interests of the Sellers, their estates, their creditors, and all other parties in interest.

28. ~~27.~~ **Retention of Jurisdiction.**  This Court retains exclusive jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, on and after closing of the Sale, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto, and any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Purchased Assets to the Buyer; (ii) resolve any disputes arising under or related to this Order and the APA; (iii) protect the Buyer, any of the Buyer's affiliates, or any agent of the foregoing, against any Liens, Claims, or Interests against the Debtors or the Assets of any kind or nature whatsoever; and (iv) enter any order under sections 363 and 365 of the Bankruptcy Code.

29. ~~28.~~ **Good Faith Buyer.**  The transactions contemplated by the APA are undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the transactions shall not affect the validity of the Sale of the Purchased Assets to the Buyer, including the assumption and assignment by the Debtors of any Acquired Contract, unless the authorization and/or the Sales Transaction contemplated by the APA are stayed.  The Buyer is a buyer in good faith of the Assets and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

30. ~~29.~~ **Approval of Repayment of DIP Obligations.**  At Closing, the Sellers are authorized and directed to distribute the proceeds of the Sale Transaction with respect to the Purchased Assets to the DIP Secured Parties (as defined in the PA DIP Order) in accordance with the PA DIP Order and the DIP Documents (as defined in the PA DIP Order).

31. 30. **Repayment of Prepetition Obligations and Adequate Protection Obligations/Remaining Prepetition Obligations and Adequate Protection Obligations.** To the extent the proceeds of the Sale Transaction are sufficient to pay the DIP Obligations (as defined in the PA DIP Order) owed to the DIP Secured Parties (as defined in the PA DIP Order) in full in cash at Closing and any other costs and expenses that are required to be paid at Closing, the remaining proceeds of the Purchase Price shall be distributed to the trustee for the Prepetition Secured Parties (as defined in the PA DIP Order) to be applied to the Prepetition Obligations (as defined in the PA DIP Order) until indefeasibly paid in full in cash.

32. 31. **Release of Secured Parties.** In consideration of the consent by each of the DIP Secured Parties (as defined in the PA DIP Order) and the Prepetition Secured Parties (as defined in the PA DIP Order) to the Sale Transaction, each of the Debtors, on behalf of themselves, anyone who may bring a claim on their behalf (including derivative claims), and their successors and assigns, and each of their respective officers, directors, employees, agents, sub-agents, attorneys, consultants, advisors and affiliates (collectively, the "Releasors"), hereby, forever release, discharge and acquit each of the DIP Secured Parties (as defined in the PA DIP Order) and the Prepetition Secured Parties (as defined in the PA DIP Order), and their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, partners, members, managers, attorneys, employees, consultants, advisors and other representatives in their respective capacities as such (collectively, the "Released Secured Parties") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have or hereafter can or may have against any Released Secured

Party as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to any Debtor or any subsidiary thereof, the DIP Documents (as defined in the PA DIP Order), the Prepetition Documents (as defined in the PA DIP Order), and any other financial accommodations made by any of the Released Secured Parties to any Debtor, [including any action or omission of a Released Secured Party in such person's capacity as an officer, director, employee, consultant, or agent of, or advisor to, any Debtor or any subsidiary thereof (the "Secured Party Release").  In addition, upon the Closing, the Released Secured Parties are hereby released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the DIP Documents (as defined in the PA DIP Order), the PA DIP Order, these chapter 11 cases, or this Order, and the Debtors are authorized to execute and deliver a termination and release agreement, in form and substance satisfactory to each of the Released Secured Parties.  *Notwithstanding the foregoing*, the effectiveness of the Secured Party Releases set forth herein is expressly subject to the expiration of the Challenge Period (as defined in the PA DIP Order) as may be extended in accordance with the terms of the PA DIP Order; *provided*, *however*, that the effectiveness of the Secured Party Release by the PA Debtors (as defined in the PA DIP Order) to the DIP Secured Parties (as defined in the PA DIP Order) and the Prepetition Secured Parties (as defined in the PA DIP Order) was effective immediately upon entry of the Interim Order (as defined in the PA DIP Order).

33.  32. **No Bulk Law Application.**  No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Sale, the APA, the Motion, and this Order.

34.    33.  **Inconsistencies**.  To the extent this Order is inconsistent with any prior filing with respect to the Motion in these chapter 11 cases, the terms of this Order shall govern and any prior filings shall be deemed amended or otherwise modified to the extent required to permit consummation of the Sale Transaction.  To the extent there is any inconsistency between the terms of this Order and the terms of the  APA (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.  Nothing in the APA or this Order shall be deemed to amend, modify, or limit the rights and claims of any of the DIP Secured Parties (as defined in the PA DIP Order) or any of the Prepetition Secured Parties (as defined in the PA DIP Order), unless expressly agreed to in writing by the foregoing as applicable.

35.    34.  **Failure to Specify Provisions.**  The failure to specifically include any particular provision of the APA or other documents relating to the Sale Transaction in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA and all other documents related to the Sale Transaction be authorized and approved in their entirety pursuant to this Order.

36.    35.  **Non-Material Modifications.**  The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have any adverse effect on the Sellers' estates*; provided further,* that after Closing, the final versions of the APA and any related agreements, documents or other instruments (as modified, amended or supplemented) shall be filed with the Court.  Notwithstanding anything to the contrary set forth in this Order, the APA, any ancillary agreement or related agreement, document, or other instrument, any amendments, modifications, supplements to or waivers of any obligations or rights of the parties thereto that

could reasonably adversely impact or affect the rights of the DIP Secured Parties (as defined in the PA DIP Order) or the Prepetition Secured Parties (as defined in the PA DIP Order) shall require the prior written consent of the applicable Required Lenders (as defined in the PA DIP Order, the DIP Documents or the Prepetition Documents (each as defined in the PA DIP Order)).

37. ~~36.~~ **No Stay of Order.** Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the applicable Debtors and the Buyer are authorized to close the Sale Transaction immediately upon entry of this Order. Time is of the essence in closing the Sale Transaction referenced herein, and the applicable Debtors and the Buyer intend to close the Sale Transaction as soon as practicable. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

38. ~~37.~~ **Headings.** Headings utilized in this Order are for convenience of reference only, and do not constitute a part of this Order for any other purpose.

39. ~~38.~~ **Time Periods.** All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

40. ~~39.~~ **Non-severability.** The provisions of this Order are non-severable and mutually dependent.

## EXHIBIT A

Asset Purchase Agreement with CarbonLite P, LLC, as Seller

*[Filed Separately]*

Document comparison by Workshare 9 on Thursday, June 03, 2021 11:18:41 AM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_NY/43266/6 |
| Description | DOCS_NY-#43266-v6-Alpak_PA_Sale_Order |
| Document 2 ID | PowerDocs://DOCS_NY/43266/9 |
| Description | DOCS_NY-#43266-v9-Alpak_PA_Sale_Order |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 44 |
| Deletions | 32 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 76 |