**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------------------------------------------x
| | |
|---|---|
| **In re** | : |
| | : |
| | : **Chapter 11** |
| **CARBONLITE HOLDINGS LLC,** *et al.,* | : **Case No. 21-10527 (JTD)** |
| | : **(Jointly Administered)** |
| **Debtors.**[1] | : **Ref. Docket No. 384, 498, 508, & 572** |

------------------------------------------------------------------x

**SUPPLEMENT TO RESPONSE OF PROLOGIS TARGETED U.S. LOGISTICS
FUND, L.P. TO NOTICE OF PROPOSED ASSUMPTION AND ASSIGNMENT OF
DESIGNATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND
LIMITED OBJECTION OF PROLOGIS TARGETED U.S. LOGISTICS FUND, L.P.
TO NOTICE OF SUCCESSFUL BIDDER AND AUCTION RESULTS FOR SALE OF
THE ASSETS OF CARBONLITE INDUSTRIES LLC (THE RIVERSIDE FACILITY)**

Prologis Targeted U.S. Logistics Fund, L.P. ("Landlord"), by and through its

undersigned counsel, files the within supplement (the "Supplement") to its *Response of*

*Prologis Targeted US Logistics Fund, L.P. to Notice of Proposed Assumption and Assignment*

*of Designated Executory Contracts and Unexpired Leases* (the "Response") [Docket No. 384]

and *Limited Objection of Prologis Targeted U.S. Logistics Fund, L.P. to Notice of Successful*

*Bidder and Auction Results for Sale of the Assets of CarbonLite Industries LLC (the Riverside*

*Facility)* [Docket No. 508] (the "Limited Objection")[2].  In further support of this Supplement

and the underlying Response and Limited Objection, Landlord respectfully represents as

follows:

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: CarbonLite Holdings LLC (8957); CarbonLite Industries LLC (3596); CarbonLite P Holdings, LLC (8957); CarbonLite P, LLC (5453); CarbonLite PI Holdings, LLC (8957); CarbonLite Pinnpack, LLC (8957); CarbonLite Recycling Holdings LLC (8957); CarbonLite Recycling LLC (3727); CarbonLite Sub-Holdings, LLC (8957); Pinnpack P, LLC (8322); and Pinnpack Packaging, LLC (9948). The address of the Debtors' corporate headquarters is 10250 Constellation Blvd., Los Angeles, CA 90067.

[2]  Capitalized terms used herein, but not otherwise defined, have the meanings given to them in the Limited Objection.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

1.      In the interest of brevity, Landlord refers to the procedural history of the Sale described in the Limited Objection and incorporates them as if set forth fully herein.

2.      On June 4, 2021, the *Order (A) Approving the Sale of Substantially All of the Debtors' Assets Relating to the Riverside Facility Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving Assumption and Assignment of Certain Unexpired Leases and Executory Contracts; and (C) Granting Related Relief* [Docket No. 572] (the "Sale Order") was entered.  This Supplement is filed pursuant to paragraph 14 of the Sale Order, pursuant to which Landlord, the Debtors, Buyer and all other parties in interest reserved all rights with respect to the arguments, and responses thereto, asserted in the Response and Limited Objection, including, but not limited to, assumption and assignment of the Prologis Leases, cure of monetary and non-monetary defaults, and/or Buyer's adequate assurance of future performance, and any matter arising under or related to the Leases.

3.      Since the filing of the Limited Objection, Landlord has been informed that TSG Shelf II Acquisition, LLC (the Riverside Successful Bidder) intends to assign its rights at closing to Evergreen Recycling, LLC ("Evergreen") to (among other things) assume the Michigan Avenue Lease.  Evergreen will be Landlord's new tenant at the Riverside Facility.

4.      Since that time, Landlord has also been provided with certain financial information from the following entities:

- *The Sterling Group* ("Sterling"):  Landlord was initially provided with a three-page "Statement of Adequate Assurance of Future Performance" (the "Sterling Statement"), which describes the financial condition of Sterling, its available capital and its corporate structure vis-à-vis these entities.  Declaration of Mark Zehner ("Zehner Decl."), filed concurrently herewith, at Exhibit B.

Specifically, the following is the extent of adequate assurance provided in the

Sterling Statement:

Sterling intends to use its available capital and other liquidity resources (Sterling presently has approximately $150 million of availability on a revolving line of credit from a major financial institution) to initially capitalize the Proposed CA Buyer in a manner sufficient to complete the acquisition. The Riverside Facility will be less encumbered following consummation of the transaction -- the Riverside Facility presently is encumbered by senior secured indebtedness of approximately $110 million, including approximately $95 million of outstanding prepetition secured indebtedness and approximately $15 million of secured debtor in possession financing. If the Agreement is consummated, the Proposed CA Buyer will have acquired the Riverside Facility free and clear of this indebtedness, will have substantially less leverage than the Debtors, will have received the profitable Clyde, Ohio facility from Polychem and will have the benefit of Sterling's financial backing.

- *Polychem Corporation, now known as Greenbridge* ("Greenbridge"): After executing a nondisclosure agreement (which was required by the Greenbridge representatives), Landlord was provided with audited financial statements for 2018, 2019 and 2020. Because Landlord was required to execute a nondisclosure agreement to secure access to these materials, they are not attached. Zehner Decl. ¶ 4.

- *Evergreen*: Evergreen is a subsidiary of Greenbridge. Landlord was advised that Evergreen does not have separate financials, and has historically existed as a part of Greenbridge. In any event, Buyer produced a one-page unaudited balance sheet estimate as of June 8, 2021 (the "Evergreen Balance Sheet"). Zehner Decl. Exhibit C.

## SUPPLEMENT TO LIMITED OBJECTION

5.       Landlord does not object to a sale of the Riverside Assets; Landlord objects to

assumption of the Michigan Avenue Lease because (a) Debtor Industries has not met its burden

of proving adequate assurance of future performance by Evergreen as required by section

3

365(f)(2)(B) of the Bankruptcy Code; (b) Buyer has refused to provide a corporate guaranty and/or additional security as required by section 365(l) of the Bankruptcy Code; and (c) assumption and assignment of the Michigan Avenue Lease does not contemplate cure as required by section 365(b)(1)(A) of the Bankruptcy Code.

A.    Adequate Assurance of Future Performance

6.    In analyzing whether adequate assurance of future performance has been provided the bankruptcy court should consider the assignee's financial ability to perform the contract; the general economic climate; the existence of a guarantee; the reputation of the party seeking to assume responsibility for the contract; and past dealings between the parties. *See, e.g.*, *In re Resource Tech.*, 624 F.3d 376, 383 (7th Cir. 2010). The court must ultimately conclude that the proposed assignee has the ability to satisfy the financial obligations imposed by the lease.

7.    At the time the Limited Objection was filed, Landlord had received no adequate assurance material from the Riverside Successful Bidder. As set forth above, now, financial information has been provided for Sterling and Greenbridge and, to a limited extent, Evergreen. However, the Evergreen Balance Sheet lacks sufficient detail for the Landlord to evaluate Evergreen's financial condition, as evidenced by its contents, and fails to demonstrate an ability to satisfy the financial obligations imposed by the Michigan Avenue Lease. Landlord has yet to receive any financial information for the Riverside Successful Bidder, which appears to be a newly formed entity, however, Buyer has represented to Landlord that the Riverside Successful Bidder will not be the tenant at the time of assignment.

8.    Application of the relevant factors weigh against a finding that adequate assurance has been provided. Based on the financial information provided and representations made regarding Sterling's financial condition and capitalization of the Riverside Successful Bidder in the Sterling Statement, Debtor Industries and the Riverside Successful Bidder seek

4

to have Landlord accept the financial condition of Sterling and/or Greenbridge as adequate assurance of Evergreen's performance.  This is not permissible under section 365(f)(2), which requires that the adequate assurance relate to the assignee alone.  11 U.S.C. § 365(f)(2) (requiring "adequate assurance of future performance *by the assignee* . . . .") (emphasis added). The financial ability of either the Riverside Successful Bidder or Evergreen to perform the Michigan Avenue Lease remains an open question.  There is no guaranty—notwithstanding Landlord's request for one and in spite of the Riverside Successful Bidder's desire for Evergreen's corporate parents to have their financial condition support the assignment—and there are no prior dealings between the parties to which the Landlord could look.

9.      For these reasons, Debtor Industries has not satisfied section 365(f)(2) of the Bankruptcy Code with respect to Riverside Successful Bidder (TSG Shelf II Acquisition, LLC) or its designee (Evergreen).

B.      <u>Request for Additional Security in Accordance with Section 356(l)</u>

10.     Section 365(l) of the Bankruptcy Code provides as follows:

> If an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

11.     Case law interpreting section 365(l) is limited.  However, at least one court has noted in *dicta* that "a landlord . . . can and should insist on the setting of a new security deposit in the order assigning the lease, as permitted in § 365(l) . . . ."  *See e.g.*, *In re Hathaway*, 401 B.R. 477, 487 (Bankr. W.D. Wash. 2009) (ruling on other grounds).

12.     Accordingly, here Landlord has requested either a corporate guaranty (from either Sterling or Greenbridge, upon whose financials the Successful Bidder wish the Landlord to rely) or, alternatively, additional security in the amount of a $500,000 letter of credit (in

5

addition to the existing $500,000 letter of credit and $100,000 cash security deposit currently in place), as security for the performance of Evergreen's obligations under the Michigan Avenue Lease. Zehner Decl. ¶¶ 5-7. Landlord further proposed that this additional security would phase out after approximately five (5) years (to the end of the existing lease term, before the existing five (5) year option to extend, if exercised). Zehner Decl. ¶ 7. Landlord is well within its rights to require such security under section 365(l), particularly given the lack of clarity regarding Evergreen's financial condition. Notwithstanding, Sterling (on behalf of Evergreen), has refused and instead requested that Landlord lessen the security required by the Michigan Avenue Lease while simultaneously seeking to extend the lease term. Zehner Decl. ¶ 8. Needless to say, the parties are at an impasse given Sterling's request that the Landlord undercut its current security and lease terms in spite of the protections provided to the Landlord by the Bankruptcy Code. As such, the Court should condition the assumption and assignment upon the provision of either a corporate guaranty or a letter of credit for three reasons.

13.    First, as set forth above, Evergreen and its corporate parents, Sterling and Greenbridge, ask Landlord to rely on the financial wherewithal of Sterling and Greenbridge as adequate assurance of Evergreen's future performance. The solvency of Evergreen's corporate parents, however, provides little comfort to Landlord, unless the parents have guaranteed the subsidiary tenant's obligations under the lease. The financial wherewithal of Sterling and Greenbridge cannot constitute adequate assurance of future performance without a corresponding corporate guaranty.

14.    Second, and perhaps more importantly, the language of section 365(l) of the Bankruptcy Code is clear and unambiguous, and this request for additional security is exactly what is contemplated. If Evergreen (or another recycling operator in a similar financial condition) were to approach Landlord for a new lease in this geographic region, Landlord would require a letter of credit in the approximate amount of $2.5 million. Zehner Decl. ¶ 5.

The request to put in place a $500,000 letter of credit (in addition to the existing security) is reasonable in light of all of the circumstances.

15.    Lastly, the requested security is consistent with Landlord's prior dealing with Debtor Industries.  In April 2019, Debtor Industries sought to expand its operations into an adjacent premise.  Zehner Decl. ¶ 9.  At that time, Landlord responded that in order to amend the lease and agree to a larger footprint, it would require a $5 million letter of credit—$2.5 million for each location.  *Id.*  However, more recently, Landlord and Debtor Industries negotiated to put in place the existing $500,000 letter of credit.  Zehner Decl. ¶ 10.  Given the absence of any history between the parties, Landlord is simply asking Evergreen to do the same.

16.    Accordingly, Landlord is entitled to additional security under section 365(l) prior to the proposed assignment.

C.    Repair of Roof Damage Caused by Debtor Industries

17.    Section 365 of the Bankruptcy Code requires that, before an unexpired lease of real property may be assumed, all defaults—monetary and nonmonetary alike—be cured. 11 U.S.C. § 365(b)(1)(A).

18.    Article 9.3 of the Michigan Avenue Lease makes clear the Debtor/tenant's obligations with respect to maintenance and repair and specifically provides that if any part of the Michigan Avenue premises is damaged by any act or omission of the tenant, the tenant is responsible to repair/pay the cost of repair, whether or not the Landlord would otherwise be obligated to pay the cost of maintaining or repairing such property.  Zehner Decl. Exhibit A. Article 9.3 also specifically states that "[e]mphasis is properly placed on prevention of moisture and on good housekeeping and ventilation practices," and requires the Debtor Industries/tenant to, among other things, "adequately ventilate the Premises to prevent excessive moisture from accumulating."  Zehner Decl. Exhibit A.

7

19.    Debtor Industries' operations have caused damage to the roof of the Riverside Facility.  Specifically, the condition of the roof is as a result of the Debtor/tenant's failure to adequately ventilate the Premises and the accumulation of moisture.  Zehner Decl. ¶ 11.  Debtor Industries acknowledged to Landlord the existence of this damage, that the cause of the damage to the roof was its own operations, and that it is responsible for making these repairs.  *Id.*

20.    Before the Michigan Avenue Lease can be assumed and assigned to the Riverside Successful Bidder and/or Evergreen, either evidence of completion of the necessary repairs must be provided to Landlord and/or an appropriate escrow must be established so that the repairs may be completed after the closing of the Sale.  Anything else would require the Landlord to shoulder the burden of Debtor Industries' required repairs, in derogation of the protection provided to the Landlord by section 365(b)(1)(A) of the Bankruptcy Code.

21.    The parties have thus far been unable to reach an amicable resolution of this issue.  Accordingly, and given the nature of the issue, which is intensely factual, the Landlord believes that an evidentiary hearing is necessary to adjudicate the dispute.


[*Remainder of Page Intentionally Left Blank*]

ACTIVE.133207124.02

**CONCLUSION**

22.     WHEREFORE, for the reasons set forth above, Debtor Industries has failed to meet its burden to (i) provide adequate assurance of future performance of the proposed assignee as required by section 365(f)(2) of the Bankruptcy Code and (ii) cure, or provide adequate assurance that Debtor Industries will cure, the default under the lease as to the roof repair as required by section 365(b)(1)(A).  As such, Landlord respectfully requests that the Court deny the Debtor's request to assume and assign the Michigan Avenue Lease to TSG Shelf II Acquisition, LLC (or its designee) consistent with this Supplement to the Response and Limited Objection, and grant such other and further relief as is just and equitable.


Dated: June 7, 2021

        Respectfully submitted,

        Marita S. Erbeck
        FAEGRE DRINKER BIDDLE & REATH LLP
        600 Campus Drive
        Florham Park, NJ 07932-1047
        Tel: (973) 549-7000
        Fax: (973) 360-9831
        marita.erbeck@faegredrinker.com

        By:  */s/ Ian J. Bambrick*
        Ian J. Bambrick (Del. Bar No. 5455)
        FAEGRE DRINKER BIDDLE & REATH LLP
        222 Delaware Avenue, Suite 1410
        Wilmington, DE 19801
        Tel.: (302) 467-4200
        Fax: (302) 467-4201
        Ian.Bambrick@faegredrinker.com

        *Attorneys for Prologis Targeted U.S. Logistics Fund, L.P.*

ACTIVE.133207124.02