IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CL H WINDDOWN LLC, *et al.*,[1] | ) | Case No. 21-10527 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION

Dated: July 21, 2021

PACHULSKI STANG ZIEHL & JONES LLP
Richard M. Pachulski (CA Bar No. 90073)
Gabriel I. Glazer (CA Bar No. 246384)
James E. O'Neill (DE Bar No. 4042)
Maxim B. Litvak (CA Bar No. 215852)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tel:  (302) 652-4100
Fax:  (302) 652-4400
E-mail: rpachulski@pszjlaw.com
        gglazer@pszjlaw.com
        joneill@pszjlaw.com
        mlitvak@pszjlaw.com

Counsel for Debtors and Debtors in Possession

---

[1] The Debtors were formerly called CarbonLite Holdings, LLC and the subsidiaries thereof.  The current names of the Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: CL H Winddown LLC f/k/a CarbonLite Holdings LLC (8957); CL I Winddown LLC f/k/a CarbonLite Industries LLC (3596); CL PH Winddown LLC f/k/a CarbonLite P Holdings, LLC (8957); CL PA Winddown LLC f/k/a CarbonLite P, LLC (5453); CL PIH Winddown LLC f/k/a CarbonLite PI Holdings LLC (8957); CL PP Winddown LLC f/k/a CarbonLite Pinnpack LLC (8957); CL RH Winddown LLC f/k/a CarbonLite Recycling Holdings LLC(8957); CL Sub Winddown LLC f/k/a CarbonLite Sub-Holdings, LLC (8957); PP PA Winddown LLC f/k/a Pinnpack P, LLC (8322); CL R Winddown LLC f/k/a CarbonLite Recycling LLC (3727); and PSS Winddown LLC f/k/a Pinnpack Packaging LLC (9948).

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, AND DEFINED TERMS ........................................................................... 1

    A.    Rules of Interpretation and Computation of Time .................................. 1

    B.    Defined Terms ........................................................................................ 2

ARTICLE II. ADMINISTRATIVE AND PRIORITY TAX CLAIMS .................................... 15

    A.    Administrative Expense Claims ............................................................ 15

    B.    Priority Tax Claims ............................................................................... 16

    C.    DIP Facility Claims .............................................................................. 16

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS .......................................................................... 16

    A.    Summary .............................................................................................. 16

    B.    Separate Classification of Certain Claims ........................................... 17

    C.    Elimination of Vacant Classes ............................................................. 17

    D.    Voting; Presumptions; Solicitation in Good Faith ............................... 17

    E.    Cramdown ............................................................................................ 18

    F.    Classification and Treatment of Claims and Equity Interests .............. 18

    G.    Special Provision Governing Unimpaired Claims ............................... 22

    H.    Subordinated Claims ............................................................................ 22

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN .......................................... 22

    A.    Presumed Acceptance of Plan .............................................................. 22

    B.    Presumed Rejection of Plan ................................................................. 22

    C.    Voting Classes ..................................................................................... 22

    D.    Acceptance by Impaired Classes of Claims ......................................... 22

    E.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ... 23

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN ....................................... 23

    A.    General Settlement of Claims / No Substantive Consolidation ........... 23

**Page**

B.    Continued Existence of Debtors and Vesting of Assets in Liquidation Trust ................................................................................................23

C.    Corporate Action ................................................................................24

D.    Liquidation Trust ................................................................................24

E.    Liquidation Trustee ............................................................................26

F.    Liquidation Trust Oversight Committee .............................................27

G.    Source of Funding / Net Distributable Assets ....................................27

H.    Distribution of Liquidation Trust Interests ........................................28

I.    Allocation of Net Distributable Assets Among Liquidation Trust Interests ..............................................................................................28

J.    Disputed Claims Reserve ...................................................................29

K.    Causes of Action Retained .................................................................29

L.    Release of Liens, Claims and Equity Interests ...................................29

M.    Cancellation of Securities, Certificates and Instruments ...................29

N.    Dissolution of Debtors; Final Decree .................................................30

O.    Treatment of Vacant Classes .............................................................30

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............................................................................................30

A.    Assumption and Rejection of Executory Contracts and Unexpired Leases .................................................................................................30

B.    Assumption and Assignment of Executory Contracts or Unexpired Leases .................................................................................................31

C.    Claims on Account of the Rejection of Executory Contracts or Unexpired Leases ...............................................................................31

D.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases .................................................................................................32

E.    Preservation and Vesting of D&O Liability Insurance Policies ..........32

**Page**

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ........................................... 32

    A.    Dates of Distributions ......................................................................................... 32

    B.    Distribution Agent .............................................................................................. 33

    C.    Cash Distributions .............................................................................................. 33

    D.    Rounding of Payments ........................................................................................ 33

    E.    Distributions on Account of Claims Allowed After the Effective Date ............. 33

    F.    General Distribution Procedures ........................................................................ 33

    G.    Address for Delivery of Distributions ................................................................ 34

    H.    Undeliverable Distributions and Unclaimed Property ....................................... 34

    I.    Withholding Taxes .............................................................................................. 34

    J.    Setoffs ................................................................................................................ 35

    K.    Lost, Stolen, Mutilated or Destroyed Securities ............................................... 35

ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED AND DISPUTED CLAIMS ............................................. 35

    A.    Disputed Claims ................................................................................................. 35

    B.    Procedures Regarding Disputed Claims ............................................................ 35

    C.    Allowance of Claims .......................................................................................... 36

ARTICLE IX. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE .......................... 37

    A.    Conditions Precedent to the Effective Date ....................................................... 37

    B.    Waiver of Conditions ......................................................................................... 37

    C.    Substantial Consummation ................................................................................. 37

    D.    Effect of Non-Occurrence of Conditions to Consummation .............................. 38

ARTICLE X. DEBTOR RELEASE AND RELATED PROVISIONS ..................................... 38

    A.    General ................................................................................................................ 38

    B.    Release ................................................................................................................ 38

**Page**

ARTICLE XI. THIRD PARTY RELEASE, EXCULPATION, & INJUNCTION ................... 39

     A.      Third Party Release ................................................................. 39

     B.      No Discharge ........................................................................... 39

     C.      Exculpation ............................................................................. 40

     D.      Injunction ............................................................................... 40

ARTICLE XII. BINDING NATURE OF PLAN ........................................................ 40

ARTICLE XIII. RETENTION OF JURISDICTION ................................................. 40

ARTICLE XIV. MISCELLANEOUS PROVISIONS ................................................. 42

     A.      Dissolution of the Committee ................................................. 42

     B.      Payment of Statutory Fees ..................................................... 42

     C.      Modification of Plan .............................................................. 42

     D.      Revocation of Plan ................................................................. 43

     E.      Entire Agreement ................................................................... 43

     F.      Closing of Chapter 11 Cases ................................................. 43

     G.      Successors and Assigns .......................................................... 43

     H.      Reservation of Rights ............................................................. 43

     I.      Further Assurances ................................................................. 44

     J.      Nonseverability ...................................................................... 44

     K.      Service of Documents ............................................................ 44

     L.      Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code ............................................................ 45

     M.      Consent Rights ....................................................................... 45

     N.      Governing Law ....................................................................... 45

     O.      Tax Reporting and Compliance ............................................. 45

     P.      Schedules ................................................................................ 45

**Page**

Q.    Controlling Document ........................................................................... 46

R.    Confirmation Request .......................................................................... 46

**DEBTORS' FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION**

The debtors and debtors in possession in the above-captioned cases (the "<u>Debtors</u>"), propose the following First Amended Chapter 11 Plan of Liquidation (the "<u>Plan</u>") for, among other things, the resolution of the outstanding Claims against, and Equity Interests in, the Debtors.

Unless otherwise noted, capitalized terms used in this Plan have the meanings set forth in Article I of the Plan.  The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.  Reference is made to the Disclosure Statement (as such term is defined herein and distributed contemporaneously herewith) for a discussion of the Debtors' history, business, results of operations, historical financial information, accomplishments leading up to Solicitation of the Plan, projections and properties, and for a summary and analysis of this Plan and the treatment provided for herein.  There also are other agreements and documents that will be Filed with the Bankruptcy Court that are referenced in this Plan, the Plan Supplement, or the Disclosure Statement as Exhibits.  All such Exhibits are incorporated into and are a part of this Plan as if set forth in full herein.  Subject to the requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019 and the terms of this Plan, the Debtors, with the consent of the Committee, not to be unreasonably withheld, reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its Consummation.

The Debtors intend to seek confirmation of the Plan pursuant to the "cram down" provisions contained in section 1129(b) of the Bankruptcy Code with respect to any non-accepting Class of Claims or Equity Interests that is Impaired as set forth in Article III hereof.

## ARTICLE I.
## RULES OF INTERPRETATION, COMPUTATION OF TIME, AND DEFINED TERMS

### A.    Rules of Interpretation and Computation of Time

For purposes hereof:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document, as previously amended, modified or supplemented, if applicable, shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles," "Sections," and "Exhibits" are references to Articles, Sections, and Exhibits hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) any reference to an Entity as a Holder of a Claim or Equity Interest includes such Entity's successors and assigns; (h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (j) "$" or "dollars" means Dollars in lawful currency of the United States of America.

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

## B.    **Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*Accrued Professional Compensation*" means, with respect to a particular Professional, an Administrative Expense Claim of such Professional for compensation for services rendered to the Debtors or the Estates or reimbursement of costs, expenses or other charges incurred on behalf of the Debtors or the Estates from the Petition Date through the Effective Date.

2.    "*Administrative Expense Claim*" means any Claim against any of the Debtors for costs and expenses of administration of the Chapter 11 Cases that is Allowed pursuant to sections 327, 328, 330, 365, 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred from the Petition Date through the Effective Date of preserving the Estates and operating the business of the Debtors; (b) any Professional Fee Claims; and (c) all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code.  Notwithstanding anything to the contrary herein, Administrative Expense Claims exclude the DIP Facility Claims.

3.    "*Affiliate*" means an "affiliate" as defined in section 101(2) of the Bankruptcy Code.

4.    "*Allowed*" means any Claim or Equity Interest (a) that appears on the Schedules and is not listed at $0 or marked as unliquidated, contingent, or disputed and that has not been superseded by a Filed Proof of Claim, (b) that is expressly allowed under this Plan, (c) that is not Disputed and for which a Proof of Claim has been timely Filed or deemed timely Filed by Final Order in a liquidated and noncontingent amount, (d) that is either allowed or determined by Final Order, or (e) that is agreed to by the Debtors and the Holder of such Claim or Equity Interest.

5.    "*Allowed Claim or Equity Interest*" means a Claim or Equity Interest of the type that has been Allowed.

6.    "*Assets*" means all of the right, title, and interest of any of the Debtors in and to property of whatever type or nature (including real, personal, mixed, intellectual, tangible, and intangible property).

7.    "*Avoidance Actions*" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought by and on behalf of any of the Debtors or their Estates under the Bankruptcy Code or applicable nonbankruptcy law, including actions or remedies arising under sections 502, 510 or 542-553 of the Bankruptcy Code, excluding those Avoidance Actions that have been released pursuant to this Plan or released or sold pursuant to a Final Order of the Bankruptcy Court in the Chapter 11 Cases.

8.    "*Ballots*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of this Plan.

- 2 -

9.      "*Bankruptcy Code*" means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Cases.

10.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware.

11.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, in each case as amended from time to time and as applicable to the Chapter 11 Cases.

12.     "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

13.     "*CA Committee Settlement*" has the meaning set forth in that certain *Amended Order (A) Approving the Sale of Substantially All of the Debtors' Assets Relating to the Riverside Facility Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving Assumption and Assignment of Certain Unexpired Leases and Executory Contracts; and (C) Granting Related Relief* entered by the Bankruptcy Court on June 8, 2021 [Docket No. 579].

14.     "*CA DIP Order*" means that certain *Final Order (I) Authorizing CA Debtors to (A) Obtain Postpetition Financing, (B) Grant Senior Secured Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection Prepetition Secured Parties; (III) Modifying Automatic Stay; and (IV) Granting Related Relief* [Docket No. 274] entered by the Bankruptcy Court on April 12, 2021.

15.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

16.     "*Causes of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license and franchise of any kind or character whatsoever belonging to the Debtors, in each case whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertable directly or derivatively (including under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.  For the avoidance of doubt, Cause of Action includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any claims under any state or foreign law, including Avoidance Actions.  **Notwithstanding anything to the contrary herein, the Causes of Action retained by the Liquidation Trust from and after the Effective Date exclude any Causes of Action explicitly released under this Plan or the Confirmation Order.**

17.     "*Chapter 11 Cases*" means the Debtors' cases under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court.

18.     "*Claim*" means any "claim" against the Debtors as defined in section 101(5) of the Bankruptcy Code.

19.    "*Claims Register*" means the official register of Claims maintained by the Voting Agent.

20.    "*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

21.    "*Class A Liquidation Trust Interest*" means a Liquidation Trust Interest distributed to Holders of Allowed General Unsecured Claims against the Pennsylvania Debtors.

22.    "*Class B Liquidation Trust Interest*" means a Liquidation Trust Interest distributed to Holders of Allowed General Unsecured Claims against the Texas Debtors.

23.    "*Class C Liquidation Trust Interest*" means a Liquidation Trust Interest distributed to Holders of Allowed General Unsecured Claims against the Industries Debtor.

24.    "*Class D Liquidation Trust Interest*" means a Liquidation Trust Interest distributed to Holders of Allowed General Unsecured Claims against the Pinnpack Debtors.

25.    "*Class E Liquidation Trust Interest*" means a Liquidation Trust Interest distributed to Holders of Allowed General Unsecured Claims against the HoldCo Debtors.

26.    "*Collateral*" means any property or interest in property of the Debtors' Estates that is subject to a valid and enforceable Lien to secure a Claim.

27.    "*Committee*" means the committee of unsecured creditors in the Chapter 11 Cases appointed pursuant to section 1102 of the Bankruptcy Code.

28.    "*Confirmation Date*" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

29.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to sections 1128 and 1129 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

30.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

31.    "*Consummation*" or "*Consummated*" means the occurrence of the Effective Date.

32.    "*Debtor Group*" or "*Debtor Groups*" means, individually or collectively as applicable, the Pennsylvania Debtors, the Texas Debtors, the Industries Debtor, the Pinnpack Debtors and the HoldCo Debtors.

33.    "*Debtors*" means CL H Winddown LLC f/k/a CarbonLite Holdings LLC; CL I Winddown LLC f/k/a CarbonLite Industries LLC; CL PH Winddown LLC f/k/a CarbonLite P Holdings LLC; CL PA Winddown LLC f/k/a CarbonLite P LLC; CL PIH Winddown LLC CarbonLite PI Holdings LLC; CL PP Winddown LLC f/k/a CarbonLite Pinnpack LLC; CL RH Winddown LLC f/k/a CarbonLite Recycling Holdings LLC; CL Sub Winddown LLC f/k/a CarbonLite Sub-Holdings, LLC; PP PA Winddown LLC f/k/a Pinnpack P, LLC; CL R Winddown LLC f/k/a CarbonLite Recycling LLC; and PSS Winddown LLC f/k/a Pinnpack Packaging LLC, each in its capacity as debtor and debtor in possession in the Chapter 11 Cases and, from and after the Effective Date, as liquidating debtor pursuant to the Plan.

34.     "*Debtors in Possession*" means the Debtors, as debtors in possession in the Chapter 11 Cases as of the Petition Date.

35.     "*DIP ABL Credit Agreement*" means the Prepetition ABL Credit Agreement, as ratified and amended by that certain Ratification and Amendment Agreement dated as of March 9, 2021, between the DIP ABL Lender and the applicable Debtors, as approved by the DIP Order, and all other agreements, documents, instruments, and amendments related thereto.

36.     "*DIP ABL Lender*" means Bank Leumi USA and any successors thereto under the DIP ABL Credit Agreement.

37.     "*DIP Agent (PA)*" means UMB Bank, N.A., as administrative agent and collateral agent under the DIP Credit Agreement (PA).

38.     "*DIP Agent (TX)*" means UMB Bank, N.A., as administrative agent and collateral agent under the DIP Credit Agreement (TX).

39.     "*DIP Credit Agreement (PA)*" means that certain Superpriority Secured Debtor-in-Possession Credit Agreement dated as of March 10, 2021, between the DIP Agent (PA), the DIP Lenders (PA), and the applicable Debtors, as approved by the DIP Order, and all other agreements, documents, instruments, and amendments related thereto.

40.     "*DIP Credit Agreement (TX)*" means that certain Superpriority Secured Debtor-in-Possession Credit Agreements dated as of March 10, 2021, between the DIP Agent (TX), the DIP Lenders (TX), and the applicable Debtors, as approved by the DIP Order, and all other agreements, documents, instruments, and amendments related thereto.

41.     "*DIP Facility Claims*" means any and all Claims held by any of the DIP ABL Lender, the DIP Term Lenders, the DIP Lenders (PA), the DIP Lenders (TX), the DIP Term Agent or the Prepetition Trustees arising under, derived from, or based upon the DIP ABL Credit Agreement, the DIP Term Credit Agreement, the DIP Credit Agreement (PA), or the DIP Credit Agreement (TX), respectively, any other agreement, instrument or document executed at any time in connection therewith, including all Obligations under (and as defined in) the foregoing agreements or the DIP Order.

42.     "*DIP Lenders (PA)*" means the lenders under the DIP Credit Agreement (PA).

43.     "*DIP Lenders (TX)*" means the lenders under the DIP Credit Agreement (TX).

44.     "*DIP Order*" means, collectively, the orders of the Bankruptcy Court approving the DIP Credit Agreement (CA), the DIP Credit Agreement (PA), and the DIP Credit Agreement (TX).

45.     "*DIP Term Agent*" means Orion Energy Partners Investment Agent, LLC, as administrative agent and collateral agent under the DIP Term Credit Agreement.

46.     "*DIP Term Credit Agreement*" means that certain Senior Secured Super-Priority Debtor-in-Possession Term Credit Agreement dated as of March 8, 2021, between the DIP Term Agent, the DIP Term Lenders, and the applicable Debtors, as approved by the DIP Order, and all other agreements, documents, instruments, and amendments related thereto.

47.   "*DIP Term Lenders*" means the lenders under the DIP Term Credit Agreement.

48.   "*Disallowed*" means, as to any Claim (or portion thereof) or Equity Interest, a Claim or Equity Interest against the Debtors that (i) has been disallowed by a Final Order, (ii) is not listed on the Schedules or, as to any Claim, is listed as unliquidated, contingent, or disputed and as to which no Proof of Claim has been Filed by the applicable bar date for such Claim or deemed timely Filed pursuant to any Final Order, or (iii) has been agreed to by the Holder of such Claim or Equity Interest and the Debtors to have no value or to be expunged.

49.   "*Disclosure Statement*" means that certain *Disclosure Statement for Debtors' First Amended Chapter 11 Plan of Liquidation*, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to a prior version of this Plan, in form and substance acceptable to the Debtors.

50.   "*Disputed*" means, with respect to a Claim, (a) any Claim, which Claim is disputed under Article VIII of this Plan or as to which the Debtors or any other party in interest has interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order; (b) any Claim, proof of which was required to be Filed by order of the Bankruptcy Court but as to which a Proof of Claim was not timely or properly Filed or deemed timely and/or properly Filed by Final Order; (c) any Claim that is listed in the Schedules as unliquidated, contingent or disputed, and as to which no request for payment or Proof of Claim has been Filed; or (d) any Claim that is otherwise disputed by the Debtors in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled by a Final Order, *provided, however*, that if the Debtors seek to dispute a Claim that is the subject of a Filed Proof of Claim, the Debtors shall do so in accordance with the Bankruptcy Code, Bankruptcy Rules, and the Local Rules of the Bankruptcy Court.  To the extent the Debtors dispute only the amount of a Claim, such Claim shall be deemed Allowed in the amount the Debtors do not dispute, if any, and Disputed as to the balance of such Claim.

51.   "*Disputed Claims Reserve*" means a reserve, which may be held in a segregated account, for the payment of Disputed General Unsecured Claims that become Allowed General Unsecured Claims after the Effective Date, which reserve shall be held in trust and maintained by the Liquidation Trustee for the benefit of Holders of Disputed General Unsecured Claims.

52.   "*Distributable Assets*" means, except as otherwise noted below, any and all real or personal property of the Debtors of any nature, including any real estate, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, inventory, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Causes of Action, books and records, any other general intangibles of the Debtors as of the Effective Date and the Liquidation Trust from and after the Effective Date, and any and all proceeds of the foregoing, as the case may be, of any nature whatsoever (whether liquidated or unliquidated, matured or unmatured, or fixed or contingent), including property of the Estates within the scope of section 541 of the Bankruptcy Code, and D&O Liability Insurance Policies and the proceeds thereof.  For the avoidance of doubt, the term "Distributable Assets" includes the proceeds of the UCC Settlement.  Notwithstanding the foregoing, the term "Distributable Assets" does not include any Cash tendered by the Debtors and held in their counsel's trust account for the purpose of satisfying Accrued Professional Compensation.

53.   "*Distribution Agent*" means any party designated by the Liquidation Trustee to serve as distribution agent under this Plan.

54.     "*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive distributions hereunder, as such date shall be fixed by order of the Bankruptcy Court.

55.     "*D&O Liability Insurance Policies*" means all insurance policies for directors' and officers' liability maintained by the Debtors as of the Petition Date and/or the Effective Date, including tail coverage after the termination of any such policies.

56.     "*Effective Date*" means, with respect to the Plan, the date that is the first Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article IX.A have been satisfied or waived (in accordance with Article IX.B); and (c) the Plan is declared effective.

57.     "*Entity*" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

58.     "*Equity Interest*" means any Equity Security in any of the Debtors, including all issued, unissued, authorized or outstanding shares of stock or limited company interests, together with (i) any options, warrants or contractual rights to purchase or acquire any such Equity Securities at any time with respect to any of the Debtors, and all rights arising with respect thereto and (ii) the rights of any Entity to purchase or demand the issuance of any of the foregoing and shall include: (1) conversion, exchange, voting, participation, and dividend rights; (2) liquidation preferences; (3) options, warrants, and put rights; and (4) stock-appreciation rights. The term "Equity Interest" also includes any Claim that has been subordinated to the status of an Equity Security.

59.     "*Equity Security*" means an "equity security" as defined in section 101(16) of the Bankruptcy Code.

60.     "*Estates*" means the bankruptcy estates of the Debtors created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

61.     "*Excluded Debtor Parties*" means (i) any financial advisor, attorney, accountant, investment banker, consultant, representative and other professional of any of the Debtors, other than the Debtors' Professionals retained in the Chapter 11 Cases and (ii) any Person that is an Affiliate or Relative of Leon Farahnik, Gregg Milhaupt, Ira Maroofian or Bahram Nour-Omid, including HPC Industries, LLC, LF Investment Holdings, LLC and Learnicon LLC.

62.     "*Exculpated Parties*" means, collectively, each in its capacity as such: (a) the Debtors, (b) the Debtors' directors, officers, and managers who served in such capacity on and after the Petition Date, including the Debtors' chief restructuring officer and Force Ten, (c) the Committee and the current and former members thereof, and (d) the Debtors' and the Committee's professionals retained in the Chapter 11 Cases.

63.     "*Exculpation*" means the exculpation provision set forth in Article XI.B hereof.

64.     "*Executory Contract*" means a contract to which any of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

65.     "*Exhibit*" means an exhibit annexed hereto, to the Plan Supplement or as an appendix to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time), which are incorporated by reference herein.

66.     "*Federal Judgment Rate*" means the interest rate on federal judgments, in effect for the calendar week of the Petition Date, and is based on the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System.

67.     "*File*" or "*Filed*" or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

68.     "*Final Distribution Date*" means the date when, (a) in the reasonable judgment of the Liquidation Trustee, with the consent of the Liquidation Trust Oversight Committee, substantially all of the assets of the Liquidation Trust have been monetized and there are no substantial potential sources of additional Cash for distribution, (b) there remain no Disputed Claims and (c) the Liquidation Trustee distributes all remaining Cash held by the Liquidation Trust to the Holders of Liquidation Trust Interests in accordance with this Plan and the Liquidation Trust Agreement.

69.     "*Final Order*" means an order of the Bankruptcy Court, which is in full force and effect and has not been reversed, modified or amended, that is not stayed, and to which the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtors or, in the event that an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, no stay pending appeal has been granted or such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or *certiorari*, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

70.     "*Force Ten*" means Force Ten Partners, LLC.

71.     "*General Unsecured Claim*" means any Claim against any of the Debtors that is not a/an:  (a) Administrative Expense Claim; (b) DIP Facility Claim; (c) Priority Tax Claim; (d) Other Priority Claim; (e) Other Secured Claim; (f) Pennsylvania Secured Bonds Claim; (g) Texas Secured Bonds Claim; (h) Prepetition ABL Secured Claim; (i) Prepetition Term Secured Claim; (j) Intercompany Claim; or (k) Equity Interest.

72.     "*Governmental Unit*" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

73.     "*HoldCo Debtors*" means CL H Windown LLC f/k/a CarbonLite Holdings LLC; CL PIH Windown LLC f/k/a CarbonLite PI Holdings LLC; and CL Sub Windown LLC f/k/a CarbonLite Sub-Holdings, LLC, each in its capacity as debtor and debtor in possession in the Chapter 11 Cases and, from and after the Effective Date, as liquidating debtor pursuant to the Plan.

74.     "*Holder*" means an Entity holding a Claim against, or Equity Interest in, any of the Debtors.

75. "*Impaired*" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

76. "*Industries Debtor*" means CL I Winddown LLC f/k/a CarbonLite Industries LLC, in its capacity as debtor and debtor in possession in the Chapter 11 Cases and, from and after the Effective Date, as liquidating debtor pursuant to the Plan.

77. "*Initial Distribution Date*" means, subject to the "Treatment" sections in Article III hereof, the date that is as soon as reasonably practicable after the Effective Date, when distributions under this Plan shall commence to Holders of Allowed Claims.

78. "*Intercompany Claim*" means a Claim held by one Debtor against another Debtor.

79. "*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code and, with respect to any asset, includes any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

80. "*Liquidation Trust*" means the trust established pursuant to the Liquidation Trust Agreement.

81. "*Liquidation Trust Agreement*" means that certain agreement made by and among the Debtors, as depositors of the Liquidation Trust Assets, and the Liquidation Trustee, in form and substance reasonably acceptable to the Committee, establishing and delineating the terms and conditions of the Liquidation Trust, substantially in the form to be filed as part of the Plan Supplement.

82. "*Liquidation Trust Assets*" means all assets held from time to time by the Liquidation Trust (including Causes of Action), the proceeds of which shall be distributed to the Holders of Liquidation Trust Interests after payment in full of Trust Expenses and any other obligations to the extent set forth in this Plan. The Liquidation Trust Assets shall initially consist of the Distributable Assets.

83. "*Liquidation Trust Beneficiaries*" means the Holders of Allowed General Unsecured Claims.

84. "*Liquidation Trustee*" means that Person selected by the Committee to serve as the trustee of the Liquidation Trust or any of his, hers, or its successors.

85. "*Liquidation Trust Interests*" means the interests to be issued to the Holders of Allowed General Unsecured Claims evidencing their interests in the Liquidation Trust and the right to receive distributions therefrom as set forth in the Liquidation Trust Agreement and this Plan. The aggregate sum of the Liquidation Trust Interests shall be allocated to the Holders of General Unsecured Claims against each Debtor Group in accordance with Article V.H of this Plan.

86. "*Liquidation Trust Oversight Committee*" means the committee formed pursuant to Article V.E of the Plan to, among other things, oversee the Liquidation Trust.

87. "*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

88. "*Net Distributable Assets*" means the Distributable Assets of the Liquidation Trust from and after the Effective Date, including the proceeds to the Estates of the UCC Settlement remaining after the Effective Date, and consistent in all events with the terms thereof, once all such assets have been reduced to Cash, net of amounts necessary to fund the payment of, as applicable and except as otherwise agreed by the Holders of such Claims, Allowed Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, and Trust Expenses, and/or reserves established for any of the foregoing, and excluding those Distributable Assets of the Debtors or the Liquidation Trust that were subject to any Liens or Secured Claims as of the Effective Date until such time that such Liens or Secured Claims are satisfied in full, except as otherwise provided in the UCC Settlement.

89. "*Other Priority Claim*" means any Claim against any of the Debtors accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense Claim.

90. "*Other Secured Claim*" means any Secured Claim against any of the Debtors other than an Administrative Expense Claim, DIP Facility Claim, Prepetition ABL Secured Claim, Prepetition Term Secured Claim, Pennsylvania Secured Bonds Claim, or Texas Secured Bonds Claim.

91. "*Pennsylvania Debtors*" means CL PH Winddown LLC f/k/a CarbonLite P Holdings LLC and CL PA Winddown LLC f/k/a CarbonLite P LLC, each in its capacity as debtor and debtor in possession in the Chapter 11 Cases and, from and after the Effective Date, as liquidating debtor pursuant to the Plan.

92. "*Pennsylvania Secured Bondholders*" means the Holders of the Pennsylvania Secured Bonds.

93. "*Pennsylvania Secured Bonds*" means (1) the Solid Waste Disposal Revenue Bonds (CarbonLite P, LLC Project), Series 2019, issued in an aggregate principal amount of $61,800,000, and (2) the Subordinate Solid Waste Disposal Revenue Bonds (CarbonLite P, LLC Project), Series 2020, issued in an aggregate principal amount of $10,000,000.

94. "*Pennsylvania Secured Bonds Claims*" means all Claims against the Debtors arising under or relating to (a) the Pennsylvania Secured Bonds, the Pennsylvania Secured Bonds Loan Agreement, and/or the Pennsylvania Secured Bonds Indenture, and (b) all agreements and instruments relating to the foregoing (including, but not limited to, any guarantees with respect thereto).

95. "*Pennsylvania Secured Bonds Indenture*" means that certain Indenture of Trust, dated as of June 1, 2019, as amended by that certain First Supplemental Indenture of Trust, dated as of September 1, 2020, and as further amended, restated, amended and restated, supplemented, or otherwise modified from time to time.

96. "*Pennsylvania Secured Bonds Issuer*" means the Pennsylvania Economic Development Financing Authority.

97. "*Pennsylvania Secured Bonds Loan Agreement*" means that certain Loan Agreement, dated as of June 1, 2019, as amended by that certain First Amendment to Loan Agreement, dated as of September 1, 2020, and as further amended, restated, amended and restated, supplemented, or otherwise modified from time to time, pursuant to which the Pennsylvania Secured Bonds Issuer loaned the proceeds of the Pennsylvania Secured Bonds to Debtor CarbonLite P LLC.

98.     "*Pennsylvania Secured Bonds Trustee*" means UMB Bank, N.A., in its capacity as trustee under the Pennsylvania Secured Bonds Indenture.

99.     "*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, corporation, general or limited partnership, limited liability company, firm, trust, association, government, governmental agency or other Entity, whether acting in an individual, fiduciary or other capacity.

100.    "*Petition Date*" means March 8, 2021, the date on which the Debtors commenced the Chapter 11 Cases.

101.    "*Pinnpack Debtors*" means CL PP Winddown LLC f/k/a CarbonLite Pinnpack LLC; PP PA Winddown LLC f/k/a Pinnpack P, LLC; and PSS Winddown LLC f/k/a Pinnpack Packaging LLC, each in its capacity as debtor and debtor in possession in the Chapter 11 Cases and, from and after the Effective Date, as liquidating debtor pursuant to the Plan.

102.    "*Plan*" means this *Debtors' First Amended Chapter 11 Plan of Liquidation*, including the Exhibits and Plan Supplement and all supplements, appendices, and schedules thereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time.

103.    "*Plan Distribution*" means the payment or distribution of consideration to holders of Allowed Claims under this Plan.

104.    "*Plan Documents*" means any of the documents, other than this Plan, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, including the documents to be included in the Plan Supplement.

105.    "*Plan Supplement*" means, collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, including the Exhibits and Plan Documents, all of which are incorporated by reference into, and are an integral part of, this Plan, as all of the same may be amended, modified, replaced and/or supplemented from time to time, which shall be Filed with the Bankruptcy Court on or before the deadline set forth in Local Rule 3016-2 or as otherwise ordered by the Court  The Debtors, with the consent of the Committee, not to be unreasonably withheld, shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

106.    "*Postpetition*" means the time period beginning on the Petition Date and ending on the day before the Effective Date.

107.    "*Prepetition ABL Credit Agreement*" means that certain Credit Agreement dated as of September 16, 2019, between the Prepetition ABL Lender and the applicable Debtors, and all other agreements, documents, instruments, and amendments related thereto.

108.    "*Prepetition ABL Lender*" means Bank Leumi USA and any successors thereto under the Prepetition ABL Credit Agreement.

109.    "*Prepetition ABL Secured Claims*" means all Claims against the applicable Debtors arising under or relating to Prepetition ABL Credit Agreement, and all agreements and instruments relating to the foregoing (including, but not limited to, any guarantees with respect thereto).

110.    "*Prepetition Secured Bonds Claims*" means, collectively, the Pennsylvania Secured Bonds Claims and the Texas Secured Bonds Claims

111.    "*Prepetition Term Agent*" means Orion Energy Partners Investment Agent, LLC and any successors thereto under the Prepetition Term Credit Agreement.

112.    "*Prepetition Term Credit Agreement*" means that certain Credit Agreement dated as of August 2, 2019, between the Prepetition Term Agent, the Prepetition Term Lenders, and the applicable Debtors, and all other agreements, documents, instruments, and amendments related thereto

113.    "*Prepetition Term Lenders*" means the lenders under the Prepetition Term Loan Agreement.

114.    "*Prepetition Term Secured Claims*" means all Claims against the applicable Debtors arising under or relating to Prepetition Term Credit Agreement, and all agreements and instruments relating to the foregoing (including, but not limited to, any guarantees with respect thereto)

115.    "*Prepetition Trustees*" means, collectively, the Pennsylvania Secured Bonds Trustee and the Texas Secured Bonds Trustee.

116.    "*Priority Tax Claim*" means any Claim of a Governmental Unit against any of the Debtors of the kind specified in section 507(a)(8) of the Bankruptcy Code.

117.    "*Pro Rata*" means the proportion that (a) the Allowed amount of a Claim in a particular Class (or several Classes taken as a whole) bears to (b) the aggregate Allowed amount of all Claims in such Class (or several Classes taken as a whole), unless this Plan provides otherwise.

118.    "*Professional*" means (a) any Entity employed in the Chapter 11 Cases pursuant to section 327, 363, or 1103 of the Bankruptcy Code or otherwise and (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

119.    "*Professional Fee Claim*" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code for Accrued Professional Compensation.

120.    "*Proof of Claim*" means a proof of Claim or Equity Interest Filed against the Debtors in the Chapter 11 Cases.

121.    "*Reinstated*" means, with respect to any Claim, (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the holder of such Claim in accordance with Section 1124 of the Bankruptcy Code or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default:  (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim arises from any failure to perform a non-monetary obligation, other than a default arising from failure to operate a non-residential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder

of such Claim (other than the Debtors or an insider of the Debtors) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim.

122.    "*Related Persons*" means, (i) with respect to any Person other than a Debtor, such Person's financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting solely in such capacity at any time, and any Person claiming by or through any of them and (ii) with respect to any Debtor, such Debtor's Professionals retained in these Chapter 11 Cases. In no event shall an Excluded Debtor Party be a "Related Person."

123.    "*Relative*" means a "relative" as defined in section 101(45) of the Bankruptcy Code.

124.    "*Release*" means the release given by the Releasing Parties to the Released Parties as set forth in Article X.B hereof.

125.    "*Released Party*" means, collectively, each in its capacity as such: (a) the Debtors' current and former officers, directors, and managers, including the Debtors' chief restructuring officer and Force Ten, but excluding in all events Leon Farahnik, Gregg Milhaupt, Ira Maroofian, and Bahram Nour-Omid, (b) the Committee and the current and former members thereof, (c) the Pennsylvania Secured Bonds Trustee, (d) each of the Pennsylvania Secured Bondholders, (e) the Texas Secured Bonds Trustee, (f) each of the Texas Secured Bondholders, (g) the DIP Agent (PA), (h) each of the DIP Lenders (PA), (i) the DIP Agent (TX), (j) each of the DIP Lenders (TX), (k) the Prepetition ABL Lender, (l) the DIP ABL Lender, (m) the Prepetition Term Agent, (n) each of the Prepetition Term Lenders, (o) the DIP Term Agent, (p) each of the DIP Term Lenders, and (q) the Related Persons of each of (a) through (p) of the foregoing. In no event shall any Excluded Debtor Party be a "Released Party."

126.    "*Releasing Party*" means each of the Debtors, in its individual capacity and as debtors in possession, as also set forth in Article X.B hereof.

127.    "*Schedules*" means the schedules of Assets and liabilities, statements of financial affairs, lists of holders of Claims and Equity Interests and all amendments or supplements thereto Filed by the Debtors with the Bankruptcy Court.

128.    "*Secured Claim*" means a Claim that is secured by a Lien on property in which any of the Debtors' Estates have an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

129.    "*SEC*" means the Securities and Exchange Commission, or any successor agency.

130.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77c-77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder, and any similar federal, state or local law.

131.    "*Security*" or "*security*" means any security as such term is defined in section 101(49) of the Bankruptcy Code.

132.    "*Solicitation*" means the solicitation of votes of those parties entitled to vote to accept or reject the Plan.

133.    "*Stamp or Similar Tax*" means any stamp tax, recording tax, personal property tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including such taxes on prime contracting and owner-builder sales), privilege taxes (including privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes imposed or assessed by any Governmental Unit.

134.    "*Texas Debtors*" means CL RH Winddown LLC f/k/a CarbonLite Recycling Holdings LLC and CL R Winddown LLC f/k/a CarbonLite Recycling LLC, each in its capacity as debtor and debtor in possession in the Chapter 11 Cases and, from and after the Effective Date, as liquidating debtor pursuant to the Plan.

135.    "*Texas Secured Bondholders*" means the Holders of the Texas Secured Bonds.

136.    "*Texas Secured Bonds*" means the Solid Waste Disposal Revenue Bonds (CarbonLite Recycling LLC Project), Series 2016 (AMT), issued in an aggregate principal amount of $50,000,000.

137.    "*Texas Secured Bonds Claims*" means all Claims against the Debtors arising under or relating to (a) the Texas Secured Bonds, Texas Secured Bonds Loan Agreement, and/or the Texas Secured Bonds Indenture, and (b) all agreements and instruments relating to the foregoing (including, but not limited to, any guarantees with respect thereto).

138.    "*Texas Secured Bonds Indenture*" means that certain Indenture, dated as of October 1, 2016, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time.

139.    "*Texas Secured Bonds Issuer*" means the Mission Economic Development Corporation.

140.    "*Texas Secured Bonds Loan Agreement*" means that certain Loan Agreement, dated as of October 1, 2016, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, pursuant to which the Texas Secured Bonds Issuer loaned the proceeds of the Texas Secured Bonds to Debtor CarbonLite Recycling LLC.

141.    "*Texas Secured Bonds Trustee*" means UMB Bank, N.A., in its capacity as trustee under the Texas Secured Bonds Indenture.

142.    "*Transfer*" means, with respect to any security or the right to receive a security or to participate in any offering of any security, (i) the sale, transfer, pledge, hypothecation, encumbrance, assignment, constructive sale, participation in, or other disposition of such security or right or the beneficial ownership thereof, (ii) the offer to make such a sale, transfer, constructive sale, or other disposition, and (iii) each option, agreement, arrangement, or understanding, whether or not in writing and whether or not directly or indirectly, to effect any of the foregoing.  The term "constructive sale" for purposes of this definition means (i) a short sale with respect to such security or right, (ii) entering into or acquiring an offsetting derivative contract with respect to such security or right, (iii) entering into or acquiring a futures or forward contract to deliver such security or right, or (iv) entering into any transaction that has substantially the same effect as any of the foregoing.  The term "beneficially owned" or

"beneficial ownership" as used in this definition shall include, with respect to any security or right, the beneficial ownership of such security or right by a Person and by any direct or indirect subsidiary of such Person.

143. "*Trust Expenses*" means the expenses incurred or payable by the Liquidation Trust from and after the Effective Date, including the reasonable fees and costs of attorneys and other professionals, relating to implementation of the Plan.

144. "*UCC Settlement*" means the settlement and resolution of any and all objections and claims of the Committee to the sale of the Debtors' assets incorporated in those certain Final Orders of the Bankruptcy Court in these Chapter 11 Cases [Docket Nos. 575, 576, 579, 652], including the CA Committee Settlement.

145. "*Unexpired Lease*" means a lease to which any of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

146. "*Unimpaired*" means, with respect to a Class of Claims that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

147. "*Voting Agent*" means Bankruptcy Management Solutions, Inc. d/b/a Stretto and any successor thereto.

148. "*Voting Classes*" means Class 6 and Class 7 under this Plan.

149. "*Voting Deadline*" means the deadline set by the Bankruptcy Court for submitting a Ballot for the purpose of voting on the Plan.

150. "*Voting Record Date*" means the date for determining which Holders of Claims are entitled to receive the Disclosure Statement and vote to accept or reject this Plan, which date shall be set by the Bankruptcy Court.

## ARTICLE II.
## ADMINISTRATIVE AND PRIORITY TAX CLAIMS

### A.   Administrative Expense Claims

On the later of the Effective Date or the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Expense Claim will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim either (i) payment in full in Cash for the unpaid portion of such Allowed Administrative Expense Claim; or (ii) such other less favorable treatment as agreed to in writing by the Liquidation Trustee and such Holder; *provided, however*, that Administrative Expense Claims incurred by the Debtors in the ordinary course of business may be paid in the ordinary course of business by the Liquidation Trustee in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court. **Unless otherwise ordered by Final Order of the Bankruptcy Court, all Administrative Expense Claims must be Filed within forty-five (45) days after the Effective Date, and served on the Liquidation Trustee and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court.**

*Professional Fee Claims.*  Professionals or other Entities asserting a Professional Fee Claim for services rendered through the Effective Date must File, within thirty (30) days after the Effective Date, and serve on the Liquidation Trustee, the United States Trustee, and such other

Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim; *provided* that the Liquidation Trustee may pay Professionals in the ordinary course of business, for any work expressly authorized by the Liquidation Trustee performed on and after the Effective Date, including those fees and expenses incurred by Professionals in connection with the implementation and consummation of the Plan, in each case without further application or notice to or order of the Bankruptcy Court in full, in Cash.  Once Allowed by the Bankruptcy Court, Professional Fee Claims incurred prior to the Effective Date shall be paid by Debtor's counsel from Cash tendered by the Debtors and held in such counsel's trust account as of the Effective Date for the purpose of satisfying Accrued Professional Compensation.  If the amounts held in such counsel's trust account as of the Effective Date for the purpose of satisfying such Allowed Accrued Professional Compensation is insufficient to pay all such Allowed Accrued Professional Compensation in full in Cash, the Liquidation Trustee shall promptly pay any unpaid balance of such Allowed Accrued Professional Compensation from the Cash transferred to the Liquidation Trust on the Effective Date.  The Debtors shall be jointly and severally liable for the payment of Professional Fee Claims and other Allowed Administrative Expenses.

## B.    Priority Tax Claims

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Liquidation Trustee: (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; or (b) such other less favorable treatment as agreed to in writing by the Liquidation Trustee and such Holder.  The Debtors shall be jointly and severally liable for the payment of Allowed Priority Tax Claims.

## C.    DIP Facility Claims

The DIP Facility Claims of the DIP Lenders (PA), the DIP Lenders (TX), and the DIP ABL Lender have already been paid in full.  The DIP Facility Claims of the DIP Term Agent and the DIP Term Lenders shall be deemed to be Allowed in an amount equal to the outstanding DIP Term Obligations (as defined in the CA DIP Order).

Notwithstanding the foregoing, this Plan, as to the applicable Debtors party to the DIP Term Credit Agreement, is contingent upon the DIP Term Agent and the DIP Term Lenders either receiving the indefeasible payment in full in cash of their outstanding remaining DIP Facility Claims or agreeing to a different treatment of their DIP Facility Claims under this Plan, including accepting less than the full cash payment on account thereof, in each case subject to the terms of the CA Committee Settlement.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF
## CLASSIFIED CLAIMS AND EQUITY INTERESTS

## A.    Summary

All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified as described in Article III, Section B of the Plan.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes including voting, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled prior to the Effective Date.

**Summary of Classification and Treatment of Classified Claims and Equity Interests**

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Pennsylvania Secured Bonds Claims | Unimpaired | Deemed to Accept |
| 4 | Texas Secured Bonds Claims | Unimpaired | Deemed to Accept |
| 5 | Prepetition ABL Secured Claims | Unimpaired | Deemed to Accept |
| 6 | Prepetition Term Secured Claims | Impaired | Entitled to Vote |
| 7 | General Unsecured Claims | Impaired | Entitled to Vote |
| 8 | Intercompany Claims | Impaired | Deemed to Reject |
| 9 | Equity Interests in the Debtors | Impaired | Deemed to Reject |

**B.      Separate Classification of Certain Claims**

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature within this Plan, each Other Secured Claim, to the extent secured by a Lien on Collateral different from the Collateral securing a different Other Secured Claim, shall be treated as being in a separate sub-Class for the purposes of voting to accept or reject this Plan and receiving Plan Distributions.

Similarly, although all General Unsecured Claims (or other classified Claims) have been placed in one Class for purposes of nomenclature within this Plan, each General Unsecured Claim (or other classified Claim) against a particular Debtor shall be treated as being in a separate sub-Class for the purposes of voting to accept or reject this Plan.

**C.      Elimination of Vacant Classes**

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from this Plan for purposes of voting to accept or reject this Plan, and disregarded for purposes of determining whether this Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

**D.      Voting; Presumptions; Solicitation in Good Faith**

Only Holders of Allowed Claims in Class 6 and Class 7 are entitled to vote to accept or reject this Plan.  Holders of Claims in the Voting Class will receive Ballots containing detailed voting instructions.

The Debtors will solicit votes on the Plan from the Voting Classes in good faith and in compliance with the applicable provisions of the Bankruptcy Code.  Accordingly, the Debtors and each of their Related Persons shall be entitled to, and upon the Confirmation Date will be granted, the protections of section 1125(e) of the Bankruptcy Code.

**E.**    **Cramdown**

If any Class of Claims or Equity Interests is deemed to reject this Plan or is entitled to vote on this Plan and does not vote to accept this Plan, the Debtors intend to (i) seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify this Plan in accordance with the terms hereof and the Bankruptcy Code.  If a controversy arises as to whether any Claims or Equity Interests, or any class of Claims or Equity Interests, are impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**F.**    **Classification and Treatment of Claims and Equity Interests**

1.    Class 1 – Other Priority Claims

- *Classification*:  Class 1 consists of the Other Priority Claims.

- *Treatment*:  The legal, equitable and contractual rights of the Holders of Class 1 Claims are unaltered by the Plan.  With respect to each Allowed Class 1 Claim, on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 1 Claim is an Allowed Class 1 Claim on the Effective Date or (ii) the date on which such Class 1 Claim becomes an Allowed Class 1 Claim, each Holder of an Allowed Class 1 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 1 Claim, at the election of the Liquidation Trustee:  (A) Cash equal to the amount of such Allowed Class 1 Claim; (B) such other less favorable treatment as to which the Liquidation Trustee and the Holder of such Allowed Class 1 Claim will have agreed upon in writing; or (C) such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code.  The Debtors shall be jointly and severally liable for the payment of Allowed Other Priority Claims.

- *Impairment and Voting*:  Class 1 is an Unimpaired Class and the Holders of Class 1 Claims are conclusively deemed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 1 Claims will not be entitled to vote to accept or reject the Plan and will not be solicited.

2.    Class 2 – Other Secured Claims

- *Classification*:  Each Class 2 Claim is an Other Secured Claim against the Debtors.  This Class will be further divided into subclasses designated by letters of the alphabet (Class 2A, Class 2B and so on), so that each holder of any Allowed Other Secured Claim against each Debtor is in a Class by itself, except to the extent that there are Other Secured Claims that are substantially similar to each other and may be included within a single Class.

- *Treatment*:  The legal, equitable and contractual rights of the Holders of Class 2 Claims are unaltered by the Plan.  With respect to each Allowed Class 2 Claim, on or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 2 Claim is an Allowed Class 2 Claim on the Effective Date or (ii) the date on which such Class 2 Claim becomes an Allowed Class 2 Claim, each Holder of an Allowed Class 2 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 2 Claim, at the election of the Liquidation Trustee:  (A) Cash equal to the amount of such Allowed Class 2 Claim; (B) return of the collateral securing such Allowed Class 2 Claim; (C) such other less favorable treatment as to which the Liquidation Trustee and the Holder of such Allowed Class 2 Claim will have agreed upon in writing; (D) any defaults shall be cured and shall be paid or satisfied in accordance with and pursuant to the terms of the applicable agreement between the Liquidation Trustee and the Holder of the Allowed Class 2 Claim and such Claim shall be Reinstated; or (E) Reinstatement or such other treatment such that it will not be impaired pursuant to section 1124 of the Bankruptcy Code.

- *Impairment and Voting*:  Class 2 is an Unimpaired Class and the Holders of Class 2 Claims are conclusively deemed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 2 Claims will not be entitled to vote to accept or reject the Plan and will not be solicited.

3.  Class 3 – Pennsylvania Secured Bonds Claims

- *Classification*:  Class 3 consists of the Pennsylvania Secured Bonds Claims.

- *Treatment*:  All Class 3 Claims have already been paid in full.

- *Impairment and Voting*:  Class 3 is an Unimpaired Class and the Holders of Class 3 Claims are conclusively deemed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 3 Claims will not be entitled to vote to accept or reject the Plan and will not be solicited.

4.  Class 4 – Texas Secured Bonds Claims

- *Classification*:  Class 4 consists of the Texas Secured Bonds Claims.

- *Treatment*:  All Class 4 Claims have already been paid in full.

- *Impairment and Voting*:  Class 4 is an Unimpaired Class and the Holders of Class 4 Claims are conclusively deemed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 4 Claims will not be entitled to vote to accept or reject the Plan and will not be solicited.

5.      Class 5 – Prepetition ABL Secured Claims

- *Classification*:  Class 5 consists of the Prepetition ABL Secured Claims.

- *Treatment*:  All Class 5 Claims have already been paid in full.

- *Impairment and Voting*:  Class 5 is an Unimpaired Class and the Holders of Class 5 Claims are conclusively deemed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 5 Claims will not be entitled to vote to accept or reject the Plan and will not be solicited.

6.      Class 6 – Prepetition Term Secured Claims

- *Classification; Allowance*:  Class 6 consists of Allowed Prepetition Term Secured Claims.  The Prepetition Term Secured Claims shall be Allowed in the aggregate principal amount set forth in the CA DIP Order, net of any amounts paid on account of the Prepetition Term Secured Claims from the Petition Date through just prior to the Effective Date.

- *Treatment*:  Subject to (i) the indefeasible payment in full in cash of the DIP Facility Claims of the DIP Term Agent and the DIP Term Lenders, (ii) the terms of the Prepetition Term Credit Agreement, and (iii) the terms of the CA Committee Settlement, on or after the Effective Date in accordance with the terms of this Plan, each Holder of an Allowed Class 6 Claim shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 6 Claim:  (A) Cash equal to the value, net of the Liquidation Trustee's costs and expenses, including fees and expenses of counsel, of preserving, disposing of or monetizing such collateral, realized, if any, by the Liquidation Trustee from any remaining collateral that secured such Allowed Class 6 Claim prior to the Effective Date, and (B) all rights and benefits to which such Holder is entitled under the CA Committee Settlement, or such other less favorable treatment as to which the Liquidation Trustee and the Holder of such Allowed Class 6 Claim shall agree upon in writing.

- *Impairment and Voting*:  Class 6 is an Impaired Class and the Holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

7.      Class 7 – General Unsecured Claims

- *Classification*:  Class 7 consists of the General Unsecured Claims. This Class will be further divided into subclasses designated by letters of the alphabet (Class 7A, Class 7B and so on), so that each holder of any Allowed General Unsecured Claim against each Debtor is in a Class with other General Unsecured Claims against such Debtor.

- *Treatment*:  On or as soon as practicable after the Effective Date, each Holder of an Allowed General Unsecured Claim against each Debtor within a Debtor Group shall receive, as the sole distribution or dividend by such Debtor Group or its Estate(s) under this Plan on account of such Allowed General Unsecured Claim, a Pro Rata share of the Liquidation Trust Interests allocated to such Debtor Group in the Liquidation Trust pursuant to Article V.H of the Plan (calculated as a percentage of all Allowed General Unsecured Claims against such Debtor Group).  From and after the Effective Date, the Liquidation Trustee shall distribute the Net Distributable Assets, if and when available, to each Liquidation Trust Beneficiary in accordance with its respective share of the Liquidation Trust Interests, as more particularly set forth in Article V.I of this Plan.  Aggregate distributions to each Holder of an Allowed General Unsecured Claim against each Debtor Group shall not exceed the full Allowed amount of such General Unsecured Claim.  Holders of Allowed General Unsecured Claims against each Debtor Group will not be entitled to the payment of Postpetition interest under the Plan, unless excess Net Distributable Assets of the Liquidation Trust remain after all Allowed Claims against such Debtor Group have been paid or otherwise satisfied in full (unless otherwise agreed to by the applicable Holder) in accordance with the Plan.  In such case of excess Net Distributable Assets, then Holders of Allowed General Unsecured Claims against each applicable Debtor Group shall receive on a Pro Rata basis (calculated as a percentage of all Allowed General Unsecured Claims against such Debtor Group) Postpetition interest at the Federal Judgment Rate, to the extent that sufficient excess Net Distributable Assets (once all liquidated to Cash) exist and as required under the Bankruptcy Code.

- *Impairment and Voting*:  Class 7 is an Impaired Class and the Holders of Class 7 Claims are entitled to vote to accept or reject the Plan.

8.     Class 8 – Intercompany Claims

- *Classification*:  Class 8 consists of Intercompany Claims.

- *Treatment*:  Holders of Intercompany Claims shall not receive any distribution on account of such Intercompany Claims.

- *Impairment and Voting*:  Class 8 is an Impaired Class and the Holders of Class 8 Claims are conclusively deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, the Holders of Class 8 Claims will not be entitled to vote to accept or reject the Plan and will not be solicited.

9.     Class 9 – Equity Interests in the Debtors

- *Classification*:  Class 9 consists of the Equity Interests in the Debtors.

- *Treatment*: Holders of Interests in each Debtor shall receive no distributions under the Plan, and on the Effective Date, all Interests in the Debtors shall be deemed suspended.

- *Impairment and Voting*: Class 9 is an Impaired Class and the Holders of Class 9 Claims are conclusively deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, the Holders of Class 9 Claims will not be entitled to vote to accept or reject the Plan and will not be solicited.

**G.    Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims, including the right to cure any arrears or defaults that may exist with respect to contracts to be assumed under the Plan.

**H.    Subordinated Claims**

The allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(a) of the Bankruptcy Code, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Liquidation Trustee reserve the right to re-classify, or to seek to subordinate, any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination.

**ARTICLE IV.**
**ACCEPTANCE OR REJECTION OF THE PLAN**

**A.    Presumed Acceptance of Plan**

Classes 1 through 5 are Unimpaired under the Plan, and are, therefore, presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**B.    Presumed Rejection of Plan**

Classes 8 and 9 are Impaired and receive no distribution under the Plan.  Therefore, Classes 8 and 9 are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**C.    Voting Classes**

Each Holder of an Allowed Claim as of the applicable Voting Record Date in the Voting Classes (Classes 6 and 7) will be entitled to vote to accept or reject the Plan.

**D.    Acceptance by Impaired Classes of Claims**

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class (or, as applicable sub-class) of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims actually voting in such Class (or, as applicable, sub-class) voted to accept the Plan.

E.    **Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

The Debtors shall seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class (or, as applicable, sub-class) or Equity Interest that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code.  The Debtors reserve the right to modify the Plan or any Exhibit thereto or the Plan Supplement in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

**ARTICLE V.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.    **General Settlement of Claims / No Substantive Consolidation**

Pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan will constitute a good-faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.

The Plan shall not be deemed to effectuate a substantive consolidation of the Debtors or their Estates.  On and after the Effective Date, the Debtors shall continue to exist as separate legal entities with distinct Claims asserted against them.

B.    **Continued Existence of Debtors and Vesting of Assets in Liquidation Trust**

On and after the Effective Date, subject to the requirements of the Plan, each Debtor will continue to exist as a separate limited liability company and shall retain all of the powers of a limited liability company under applicable non-bankruptcy law, and without prejudice to any right to amend its operating agreement, dissolve, merge or convert into another form of business entity, or to alter or terminate its existence.  The Liquidation Trustee shall be deemed to have been admitted as the sole manager of each Debtor under applicable non-bankruptcy law and shall be authorized to exercise all of the rights and powers of a sole manager as provided by the Plan.  Further, each of the Debtors' operating agreements shall be deemed to include a provision prohibiting the issuance of nonvoting equity securities and such other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code.

Except as otherwise provided in the Plan, on and after the Effective Date, all Distributable Assets and property of the Debtors and their Estates, including any interests in subsidiaries and affiliates and any Causes of Action, will vest in the Liquidation Trust free and clear of all Claims, Liens, charges, other encumbrances and Equity Interests, except to the extent otherwise provided in the Termination Agreement, dated June 9, 2021, by and among DIP ABL Lender and the Debtors party thereto, which shall be binding on the Liquidation Trustee.  Neither the occurrence of the Effective Date, nor the effectiveness of this Plan, nor any provision of applicable non-bankruptcy law shall cause a dissolution of the Debtors, which shall be continued as limited liability companies under the control of the Liquidation Trustee following the Effective Date subject to the terms of the Plan.

Without limiting the foregoing, promptly after the Effective Date, the Debtors shall provide (or cause Force Ten to provide) to the Liquidation Trust access to, and control of, a complete image of the Debtors' server (including all metadata) that has been made available to Force Ten and is currently stored through a third party data storage account, including all Outlook data files or other email data files (in each case, including all metadata) stored in such account that were hosted on the Debtors' servers on or prior to the Effective Date.  Further, promptly after the Effective Date, the Debtors and/or Force Ten shall transfer administrative

account access including administrative control relating to all information technology accounts and systems to the Liquidating Trustee.

## C.    Corporate Action

On the Effective Date, the matters under the Plan involving or requiring limited liability company action of the Debtors, including but not limited to actions requiring a vote or other approval of the board of managers, members, partners, or other equity holders of the Debtors or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the managers, members, directors, or officers of the Debtors.

Without limiting the generality of the foregoing, on the Effective Date and automatically and without further action, (i) any existing manager, director, and officer of the Debtors, including the Debtors' chief restructuring officer and Force Ten, will be deemed to have resigned on the Effective Date without any further corporate action, (ii) the Liquidation Trustee shall be deemed the sole manager, director, officer and representative of the Debtors to exercise the rights, power and authority of the Debtors under applicable provisions of this Plan and bankruptcy and non-bankruptcy law, and (iii) all matters provided under this Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court.  The Confirmation Order shall act as an order modifying the Debtors' operating agreements such that the provisions of this Plan can be effectuated.  The Plan shall be administered by the Liquidation Trustee, and all actions taken thereunder in the name of the Debtors shall be taken through the Liquidation Trustee.  All corporate governance activities of the Debtors shall be exercised by the Liquidation Trustee in his or her discretion, subject to the terms of this Plan.

On and after the Effective Date, the Liquidation Trustee may, in the name of the Debtors, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order.  Without limiting the foregoing, the Liquidation Trustee may pay all reasonable Trust Expenses without further notice to creditors or Holders of Interests or approval of the Bankruptcy Court.

From and after the Effective Date, (i) the Debtors, for all purposes, shall be deemed to have withdrawn their business operations from any state in which they were previously conducting or are registered or licensed to conduct their business operations, and the Debtors shall not be required to file any document, pay any sum or take any other action, in order to effectuate such withdrawal, and (ii) the Debtors shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

## D.    Liquidation Trust

On the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Agreement for the purpose of maximizing the value of the Liquidation Trust Assets, which shall initially consist of the Distributable Assets, and effectuating distributions to creditors consistent with the Plan.  The Liquidation Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation Article 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidation purpose of the Liquidation Trust.

On the Effective Date, the Liquidation Trust Assets shall vest automatically in the Liquidation Trust.  The transfer of the Liquidation Trust Assets to the Liquidation Trust shall be made for the benefit and on behalf of the Liquidation Trust Beneficiaries.  The assets comprising

the Liquidation Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Liquidation Trust Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Liquidation Trust Beneficiaries to the Liquidation Trust in exchange for the Liquidation Trust Interests in the Liquidation Trust.  The Liquidation Trust Beneficiaries shall be treated as the grantors and owners of the Liquidation Trust.  Upon the transfer of the Liquidation Trust Assets, the Liquidation Trust shall succeed to all of the Debtors' rights, title and interest in the Liquidation Trust Assets, and the Debtors will have no further interest in or with respect to the Liquidation Trust Assets.

In pursuing any Causes of Action, the Liquidation Trustee shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code, and shall succeed to the Debtors' rights with respect to the periods in which any of the Causes of Action may be brought under section 546 of the Bankruptcy Code.  The Liquidation Trust Agreement will require consistent valuation of the Liquidation Trust Assets by the Liquidation Trustee and the Liquidation Trust Beneficiaries for all U.S. federal and other income tax and reporting purposes.  The Liquidation Trust will not be permitted to receive or retain Cash in excess of a reasonable amount to meet claims and contingent liabilities or to maintain the value of the Liquidation Trust Assets.

In connection with the prosecution of the Causes of Action, any attorney-client privilege, work-product privilege, joint interest privilege or other privilege or immunity attaching to any prepetition documents or communications relating to the Causes of Action shall be transferred to and shall vest in the Liquidation Trust.  The Liquidation Trust's receipt of such privileges associated with the Causes of Action shall not operate as a waiver of those privileges possessed or retained by the Debtors, nor shall it operate to eliminate the rights of any co-defendant to any applicable joint privilege.  The Liquidation Trust shall also be vested with the Debtors' rights, as such rights existed prior to the Effective Date, to conduct discovery and oral examinations of any party under Bankruptcy Rule 2004.  The Liquidation Trust, however, shall not be considered a successor of any Debtor and shall not assume any obligations of the Debtors other than expressly provided for by the Plan and the Liquidation Trust Agreement.

Any attorney-client privilege, work-product privilege, joint interest privilege or other privilege or immunity held by the Committee shall be transferred to and shall vest in the Liquidation Trust.  The Liquidation Trust shall have access to all discovery obtained by the Committee in these Chapter 11 Cases, including discovery obtained pursuant to Bankruptcy Rule 2004.

Except as otherwise ordered by the Bankruptcy Court, the Trust Expenses on or after the Effective Date shall be paid in accordance with the Liquidation Trust Agreement without further order of the Bankruptcy Court.

The Liquidation Trust shall file annual reports regarding the liquidation or other administration of property comprising the Liquidation Trust Assets, the distributions made by it and other matters required to be included in such report in accordance with the Liquidation Trust Agreement.  In addition, the Liquidation Trust will file tax returns as a grantor trust pursuant to United States Treasury Regulation Article 1.671-4(a).

The Liquidation Trust Interests are not intended to constitute "securities."  To the extent the Liquidation Trust Interests are deemed to be "securities," the issuance of such interests shall be exempt from registration under the Securities Act and any applicable state and local laws requiring registration of securities pursuant to section 1145 of the Bankruptcy Code or another available exemption from registration under the Securities Act.  If the Liquidation Trustee determines, with the advice of counsel, that the Liquidation Trust is required to comply with registration or reporting requirements under the Securities Act, the Exchange Act or other applicable law, then the Liquidation Trustee shall take any and all actions to comply with such

registration and reporting requirements, if any, and to file reports with the SEC to the extent required by applicable law.

The Liquidation Trust shall be dissolved as soon as practicable after the date that is the earlier to occur of: (a) the distribution of all proceeds from the Liquidation Trust Assets available for distribution pursuant to the Plan, or (b) the determination of the Liquidation Trust Oversight Committee / Liquidation Trustee that the continued prosecution of any Causes of Action is not likely to yield sufficient additional proceeds to justify further pursuit.

To the extent that the terms of the Plan with respect to the Liquidation Trust are inconsistent with the terms set forth in the Liquidation Trust Agreement, then the terms of the Liquidation Trust Agreement shall govern.

## E.    <u>Liquidation Trustee</u>

*Appointment of the Liquidation Trustee*.  The Liquidation Trustee shall be selected by the Committee.  The identity of the Liquidation Trustee shall be disclosed prior to the Confirmation Hearing as part of the Plan Supplement in accordance with section 1129(a)(5) of the Bankruptcy Code.  The Liquidation Trustee will be compensated by the Liquidation Trust, which compensation shall be disclosed in the Plan Supplement in accordance with Section 1129(a)(5) of the Bankruptcy Code.

*Powers of the Liquidation Trustee*.  The Liquidation Trustee shall be a representative of the Debtors' Estates and shall, subject to the terms of the Liquidation Trust Agreement, have the power to make all decisions with respect to the Liquidation Trust Assets, including prosecution of any Causes of Action; provided, however, that the following actions will require prior written approval of the Liquidation Trust Oversight Committee: (a) the selection of any successor Liquidation Trustee; (b) any determination to borrow money or incur funded indebtedness; (c) the retention of counsel and other professionals by the Liquidation Trustee and the terms of each professional's engagement, including any alternative fee arrangements; (d) settlement of all or any portion of any Causes of Action for an amount in excess of $1,000,000; and (e) any alteration to arrangements for compensation of the Liquidation Trustee.

*Liquidation Trustee as the Representative of the Debtors' Estates*.  On the Effective Date, the Liquidation Trustee shall be deemed the Estates' representative in accordance with Section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidation Trust Agreement, including the right to (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Liquidation Trust Agreement; (2) administer the Liquidation Trust Assets, including prosecuting, settling, abandoning or compromising any Causes of Action; and (3) employ and compensate professionals and other agents consistent with this Article V.E of the Plan.

The duties and powers of the Liquidation Trustee shall include the following (without need of further Court approval):

(i)    To exercise all power and authority that may be exercised, to commence all proceedings (including the power to continue any actions and proceedings that may have been commenced by the Debtors prior to the Effective Date) that may be commenced, and to take all actions that may be taken by any officer, director, or manager of the Debtors with like effect as if authorized, exercised, and taken by unanimous action of such officers, directors, and managers, including consummating the Plan and all transfers thereunder on behalf of the Debtors;

(ii)    To wind-up the affairs of the Debtors to the extent necessary as expeditiously as reasonably possible;

(iii)    To maintain all accounts, make distributions, and take other actions required under or consistent with the Plan, including the maintenance of appropriate reserves, in the name of the Debtors or the Liquidation Trust;

(iv)    To use, manage, sell, abandon, convert to Cash and/or otherwise dispose of the Liquidation Trust Assets for the purpose of making distributions, including distributions of Distributable Assets and Net Distributable Assets, and fully consummating the Plan;

(v)    To take all steps necessary to terminate the corporate existence of the Debtors and to wind-up and close the Liquidation Trust;

(vi)    To prosecute objections to Claims, including Administrative Expense Claims, and compromise or settle any such Claims (disputed or otherwise);

(vii)    To investigate and prosecute any and all Causes of Action and compromise or settle any Causes of Action;

(viii)    To prepare and file tax returns for the Debtors and the Liquidation Trust to the extent required by law;

(ix)    To employ and compensate any and all such professionals and agents as the Liquidation Trustee, in his or her sole discretion, deems reasonably necessary to perform his or her duties under the Plan without further order of the Bankruptcy Court;

(x)    To satisfy and pay all Trust Expenses; and

(xi)    Take all other actions not inconsistent with the provisions of the Plan that the Liquidation Trustee deems reasonably necessary or desirable in connection with the administration of the Plan, including filing all motions, pleadings, reports, and other documents in connection with the administration and closing of the Chapter 11 Cases.

## F.    Liquidation Trust Oversight Committee

The Liquidation Trust Oversight Committee shall be comprised of three (3) members designated by the Committee.  The identity of the members of the Liquidation Trust Oversight Committee shall be disclosed as part of the Plan Supplement in accordance with Section 1129(a)(5) of the Bankruptcy Code.

The Liquidation Trust Oversight Committee shall oversee the Liquidation Trust and the Liquidation Trustee.

The duties and powers of the Liquidation Trust Oversight Committee shall terminate upon final resolution of the Liquidation Trust Assets and distribution of the proceeds thereof.

## G.    Source of Funding / Net Distributable Assets

The source of all distributions and payments under the Plan will be the Distributable Assets and the proceeds thereof, including the Debtors' Cash on hand and proceeds from the sale or other disposition of the Debtors' assets and the Liquidation Trust Assets, including the prosecution of Causes of Action.  Distributions to the Holders of General Unsecured Claims will be funded entirely from Liquidation Trust Assets consisting of Net Distributable Assets.

**H.**      **Distribution of Liquidation Trust Interests**

Upon the Effective Date, Liquidation Trust Interests shall be distributed as follows:

- the Class A Liquidation Trust Interests shall be distributed to Holders of Allowed General Unsecured Claims against the Pennsylvania Debtors;

- the Class B Liquidation Trust Interests shall be distributed to Holders of General Unsecured Claims against the Texas Debtors;

- the Class C Liquidation Trust Interests shall be distributed to Holders of General Unsecured Claims against the Industries Debtor;

- the Class D Liquidation Trust Interests shall be distributed to Holders of General Unsecured Claims against the Pinnpack Debtors; and

- the Class E Liquidation Trust Interests shall be distributed to Holders of General Unsecured Claims against the HoldCo Debtors.

Liquidation Trust Interests shall be reserved for Holders of Disputed General Unsecured Claims and issued by the Liquidation Trust to, and held by the Liquidation Trustee in, the Disputed Claims Reserve pending allowance or disallowance of such Disputed General Unsecured Claims.

**I.**      **Allocation of Net Distributable Assets Among Liquidation Trust Interests**

Net Distributable Assets consisting of the Debtors' Cash on the Effective Date shall be allocated to each class of Liquidation Trust Interest on a Pro Rata basis (calculated as the percentage that the Cash held by that Debtor Group bears to the aggregate amount of Cash held by all of the Debtors).  All other Net Distributable Assets (other than Causes of Action) shall be allocated to each class of Liquidation Trust Interest in the same proportions as the Debtors' Cash on the Effective Date is allocated.  The Liquidation Trustee may take into account intercompany obligations between the Debtor Groups when determining appropriate allocations of Net Distributable Assets (other than Net Distributable Assets consisting of the Debtors' Cash on the Effective Date transferred to the Liquidation Trust).

Net Distributable Assets consisting of Causes of Action held by a particular Debtor Group shall be allocated to the class of Liquidation Trust Interest distributed to Holders of General Unsecured Claims against the Debtor Group that holds such Causes of Action.  If the Liquidation Trustee successfully pursues to judgment or individual settlement a Cause of Action held solely by a particular Debtor Group before its distribution to the Liquidation Trust, all recoveries from such judgment or settlement shall be allocated to the class of Liquidation Trust Interest distributed to Holders of General Unsecured Claims against the Debtor Group that held such Cause of Action, *provided* that (i) any fees, costs, or expenses incurred by the Liquidation Trustee in connection with such Cause of Action and funded by a particular Debtor Group may be taken into account in distributing the recoveries therefrom, and (ii) the Liquidation Trustee may also take into account intercompany obligations between the Debtor Groups when determining appropriate allocations of litigation proceeds.

The Liquidation Trustee may, without approval of the Bankruptcy Court, effectuate a global settlement of some or all of the Causes of Action that were held by the Debtor Groups prior to the Effective Date.  If such global settlement allocates settlement proceeds among the Debtor Groups, the Liquidation Trustee shall allocate recoveries to each class of Liquidation Trust Interests in the manner set forth in the settlement agreement.  If the settlement agreement

does not allocate settlement proceeds among the Debtor Groups, the Liquidation Trustee may either (i) with the consent of the Liquidation Trust Oversight Committee and without Bankruptcy Court approval, allocate settlement proceeds to each class of Liquidation Trust Interest in accordance with his or her fiduciary duties or (ii) seek Bankruptcy Court approval of a proposed allocation of settlement proceeds among each class of Liquidation Trust Interest.

The Liquidation Trustee may seek Bankruptcy Court approval of any individual or global settlement of Causes of Action, including any proposed allocation of settlement proceeds among the different classes of Liquidation Trust Interest.

If the distribution to be received by the Holder of an Allowed General Unsecured Claim would be less than fifty dollars ($50.00), no such payment will be made to such Holder.

**J.      Disputed Claims Reserve**

The Liquidation Trustee shall maintain a Disputed Claims Reserve pending allowance or disallowance of Disputed Claims, and shall withhold such Cash from distributions to Holders of Allowed General Unsecured Claims.  Upon the Final Distribution Date, the Liquidation Trustee shall distribute any Cash remaining in the Disputed Claims Reserve to Holders of Allowed General Unsecured Claims in accordance with the allocations set forth in this Plan and the Liquidation Trust Agreement.

**K.      Causes of Action Retained**

Unless a Cause of Action (including the right to object to any Claim asserted against the Estates) is, in writing, expressly waived, relinquished, released, exculpated, assigned, compromised, or settled in the Plan, or in a Final Order, all rights of the Estates from and after the Effective Date with respect to the Causes of Action are expressly preserved for the benefit of, assigned to, and fully vested in, the Liquidation Trust.

**L.      Release of Liens, Claims and Equity Interests**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estates will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule and without need for any notice to or any vote, consent, authorization, approval, ratification or other action by any Entity or any director, stockholder, securityholder, manager, member, or partner (or board thereof) of any Entity.  Any Entity holding such Liens or interests will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Liquidation Trustee such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Liquidation Trustee.

**M.      Cancellation of Securities, Certificates and Instruments**

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, on the Effective Date, all agreements, instruments, Securities and other documents evidencing any prepetition Claim against, or Equity Interest in, the Debtors and any rights of any holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect; *provided, however,* that the Prepetition Term Credit Agreement will continue in

effect solely for the purpose of allowing the Prepetition Term Lenders to receive their Plan Distributions, if any.

### N.     Dissolution of Debtors; Final Decree

On or after the Effective Date, the Liquidation Trustee may file a certification with the Bankruptcy Court that it has substantially administered the Plan for any Debtor, and such Debtor shall be deemed dissolved without further order of the Bankruptcy Court or action by the Liquidation Trustee, including the filing of any documents with the secretary of state for the state in which such dissolved Debtor(s) are formed or any other jurisdiction.

At any time following the Effective Date, the Liquidation Trustee, on behalf of the Debtors, shall be authorized to file a motion for the entry of a final decree closing one or more of the Chapter 11 Cases pursuant to section 350 of the Bankruptcy Code. Upon entry of such final decree, such Debtor shall be deemed dissolved without further order of the Bankruptcy Court or action by the Liquidation Trustee, including the filing of any documents with the secretary of state for the state in which such dissolved Debtor(s) are formed or any other jurisdiction.

### O.     Treatment of Vacant Classes

Any Claim or Interest in a Class that is considered vacant under Article III.C of this Plan shall receive no Plan Distribution.

**ARTICLE VI.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

### A.     Assumption and Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors will be deemed rejected in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, *except* for those Executory Contracts and Unexpired Leases that:

1.     have previously expired or terminated pursuant to their own terms or by agreement of the parties thereto;

2.     have been assumed by order of the Bankruptcy Court;

3.     are the subject of a motion to assume or motion to reject pending on the Effective Date;

4.     are identified on a schedule of assumed contracts in the Plan Supplement; or

5.     are explicitly assumed pursuant to the terms of this Plan.

Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract or Unexpired Lease, entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such assumptions and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Debtors' assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed modified such that the transactions

contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Each Executory Contract and Unexpired Lease assumed pursuant to this Article of the Plan will revest in and be fully enforceable by the Debtors in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

For the avoidance of doubt, the Debtors shall not assume any prepetition indemnity obligations to their directors, officers, and managers.

### B.    <u>Assumption and Assignment of Executory Contracts or Unexpired Leases</u>

In the event of an assumption and assignment of an Executory Contract or Unexpired Lease, at least twenty-one (21) days prior to the Confirmation Hearing, the Debtors will serve upon counterparties to such Executory Contracts and Unexpired Leases a notice of the proposed assumption and assignment that will: (a) list the applicable cure amount, if any; (b) identify the party to which the Executory Contract or Unexpired Lease will be assigned; (c) describe the procedures for filing objections thereto; and (d) explain the process by which related disputes will be resolved by the Bankruptcy Court; additionally, the Debtors will file with the Bankruptcy Court a list of such Executory Contracts and Unexpired Leases to be assigned and the proposed cure amounts. Any applicable cure amounts will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assignment or cure amount will be deemed to have consented to such assignment of its Executory Contract or Unexpired Lease. The Confirmation Order will constitute an order of the Bankruptcy Court approving any proposed assignments of Executory Contracts or Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Unless otherwise indicated, all assumptions, assumptions and assignments, and rejections of Executory Contracts and Unexpired Leases in the Plan will be effective as of the Effective Date.

Notwithstanding the foregoing paragraph or anything contrary herein, the Debtors reserve the right to alter, amend, modify, or supplement the Executory Contracts and Unexpired Leases identified for assumption, assumption and assignment, or rejection in the Plan Supplement prior to the Effective Date.

In the event of a dispute regarding (a) the amount of any cure payment, (b) the ability of any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assigned or (c) any other matter pertaining to assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assignment. If an objection to assignment or cure amount is sustained by the Bankruptcy Court, the Debtors, in their sole option, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming and assigning it.

### C.    <u>Claims on Account of the Rejection of Executory Contracts or Unexpired Leases</u>

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the Effective Date or such other date set by Final Order. The Debtors or the Liquidation Trust will provide notice of such rejection and specify the appropriate deadline for the filing of such Proof of Claim.

Any Entity that is required to File a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so will be forever barred, estopped and enjoined from asserting such Claim, and such Claim will not be enforceable, against the Debtors, the Liquidation Trustee, or the Estates, and the Debtors, the Liquidation Trustee, and the Estates and property will be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan. All such Claims will, as of the Effective Date, be subject to the permanent injunction set forth in Article XI.D of the Plan. All claims arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as General Unsecured Claims, subject to any applicable limitation or defense under the Bankruptcy Code and applicable law.

**D.**     **Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**

Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtors or the Liquidation Trustee upon assumption thereof, by payment of the default amount in Cash or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree.

**E.**     **Preservation and Vesting of D&O Liability Insurance Policies**

Notwithstanding anything to the contrary in the Plan, as of the Effective Date, all rights of the Debtors and their Estates in the D&O Liability Insurance Policies are fully and expressly preserved under the Plan. Confirmation and effectiveness of the Plan will not discharge, impair, or otherwise modify any rights of the Debtors, their Estates, the Liquidation Trustee, or any other beneficiary under the D&O Liability Insurance Policies. On the Effective Date, the D&O Liability Insurance Policies and the proceeds thereof (subject in all cases to the terms of the D&O Liability Insurance Policies or the rights of any other beneficiaries therein) shall automatically vest in the Liquidation Trust and shall be a Liquidation Trust Asset. For the avoidance of doubt, the D&O Liability Insurance Policies are not Executory Contracts and are neither assumed nor rejected under the Plan.

**ARTICLE VII.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.**     **Dates of Distributions**

Except as otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided herein. In the event that any payment or act under the Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions provided in the Plan. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

Upon the Effective Date, all Debts of the Debtors shall be deemed fixed and adjusted pursuant to the Plan and the Debtors shall have no liability on account of any Claims or Equity Interests except as set forth in the Plan and in the Confirmation Order. All payments and all

distributions made by the Liquidation Trustee or the Distribution Agent under the Plan shall be in full and final satisfaction, settlement and release of all Claims against the Debtors.

## B.    **Distribution Agent**

Except as provided therein, all distributions under the Plan shall be made by the Liquidation Trustee or the Distribution Agent.

The Liquidation Trustee or the Distribution Agent shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court.

The Liquidation Trustee and the Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals, transfer agents and registrars to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Liquidation Trustee and the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Liquidation Trustee and the Distribution Agent to be necessary and proper to implement the provisions hereof.

## C.    **Cash Distributions**

Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of the Liquidation Trustee, except that Cash payments made to foreign creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

## D.    **Rounding of Payments**

Whenever payment or distribution of a fraction of a dollar of value whether in the form of Cash or Securities would otherwise be called for, the actual payment or distribution shall reflect a rounding down of such fraction to the nearest whole dollar or zero if the amount is less than one-half of one dollar and a rounding up of such fraction to the nearest whole dollar if the amount is one-half or more of one dollar.

## E.    **Distributions on Account of Claims Allowed After the Effective Date**

Except as otherwise agreed by the Holder of a particular Claim or as provided in the Plan, all distributions shall be made pursuant to the terms of the Plan and the Confirmation Order. Distributions to any Holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for U.S. federal income tax purposes and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising accrued but unpaid interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

## F.    **General Distribution Procedures**

The Liquidation Trustee or the Distribution Agent shall make all distributions of Cash or other property required under the Plan, unless the Plan specifically provides otherwise.  All Cash and other property held by the Liquidation Trustee for distribution under the Plan shall not be subject to any claim by any Person, except as provided under the Plan.

**G.**     **Address for Delivery of Distributions**

Distributions to Holders of Allowed Claims, to the extent provided for under the Plan, shall be made (1) at the address set forth on any proofs of claim Filed by such Holders (to the extent such proofs of claim are Filed in the Chapter 11 Cases), (2) at the addresses set forth in any written notices of address change delivered to the Debtors or the Liquidation Trustee, or (3) at the addresses in the Debtors' or the Liquidation Trust's books and records.

**H.**     **Undeliverable Distributions and Unclaimed Property**

If the distribution to the Holder of any Allowed Claim is returned to the Debtors or the Liquidation Trust as undeliverable, no further distribution shall be made to such Holder, and the Liquidation Trustee shall have no obligation to make any further distribution to the Holder, unless and until the Liquidation Trustee is notified in writing of such Holder's then current address.  The Liquidation Trustee shall have no independent obligation to check or identify a current mailing address for any Holder of an Allowed Claim.

Any Entity that fails to claim any Cash or Securities within one hundred and eighty (180) days from the date upon which a distribution is first made to such Entity shall forfeit all rights to any distribution under the Plan.  Entities that fail to claim Cash or Securities under the Plan shall forfeit their rights thereto and shall have no claim whatsoever against the Debtors, the Liquidation Trustee, or against any Holder of an Allowed Claim to whom distributions are made by the Liquidation Trustee.

**I.**     **Withholding Taxes**

In connection with the Plan, to the extent applicable, the Liquidation Trustee shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Liquidation Trustee shall be entitled to deduct any U.S. or non-U.S. federal, state or local withholding taxes from any payments made with respect to Allowed Claims, as appropriate.  In the case of a non-Cash distribution that is subject to withholding, the Liquidation Trustee may withhold an appropriate portion of such distributed property and sell such withheld property to generate Cash necessary to pay over the withholding tax.  A Holder of an Allowed Claim entitled to receive a distribution pursuant to the Plan shall not receive any distribution under the Plan unless such Holder has provided to the Liquidation Trustee such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Liquidation Trustee to comply with applicable tax reporting and withholding laws (including an IRS Form W-9 or (if the holder is a non-U.S. Person) an appropriate IRS Form W-8 (unless such Person is exempt from information reporting requirements under the Tax Code)) and so notifies the Liquidation Trustee.  If such Holder does not provide such taxpayer identification number and such other information and certification within the time and in the manner set forth in the Liquidation Trust Agreement, such Holder will forfeit its interest in the Liquidation Trust and shall not receive any distribution under the Plan.  Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  In connection with any distribution under the Plan, the Liquidation Trustee may take whatever actions are necessary to comply with applicable U.S. federal, state, local and non-U.S. tax withholding obligations.

Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.

**J.**     <u>Setoffs</u>

    The Liquidation Trustee may, to the extent permitted under applicable law, setoff against any Allowed Claim and any distributions to be made pursuant to the Plan on account of such Allowed Claim, the claims, rights and Causes of Action of any nature that any Debtor or the Liquidation Trustee may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; *provided, however*, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidation Trustee of any such claims, rights and Causes of Action that any Debtor or the Liquidation Trustee possesses against such Holder.  Any Holder of an Allowed Claim subject to such setoff reserves the right to challenge any such setoff in the Bankruptcy Court or any other court with jurisdiction with respect to such challenge.

**K.**     <u>Lost, Stolen, Mutilated or Destroyed Securities</u>

    In addition to any requirements under any applicable agreement and applicable law, any Holder of a Claim or Equity Interest evidenced by a security or note that has been lost, stolen, mutilated, or destroyed will, in lieu of surrendering such security or note to the extent required by the Plan, deliver to the Liquidation Trustee or the Distribution Agent:  (x) evidence reasonably satisfactory to the Liquidation Trustee or the Distribution Agent of such loss, theft, mutilation, or destruction; and (y) such security or indemnity as may be required by the Liquidation Trustee or the Distribution Agent to hold such party harmless from any damages, liabilities, or costs incurred in treating such individual as a Holder of an Allowed Claim or Allowed Equity Interest.  Upon compliance with Article VII.K of the Plan as determined by the Debtors by a Holder of a Claim or Equity Interest evidenced by a security or note, such Holder will, for all purposes under the Plan, be deemed to have surrendered such security or note to the Liquidation Trustee and the Distribution Agent.

**ARTICLE VIII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED AND DISPUTED CLAIMS**

**A.**     <u>Disputed Claims</u>

    The Liquidation Trustee may, in his or her discretion, file with the Bankruptcy Court an objection to the allowance of any Disputed Claim or any other appropriate motion or adversary proceeding with respect thereto.  All such objections shall be litigated to Final Order, *provided, however*, that the Liquidation Trustee may compromise, settle, withdraw or resolve any objections to Claims without further order of the Bankruptcy Court.  Unless otherwise provided in the Confirmation Order, the Liquidation Trustee is authorized to settle, or withdraw any objections to, any Disputed Claim following the Effective Date without further notice to creditors or authorization of the Bankruptcy Court, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of the Plan.  Under no circumstances will any distributions be made on account of Disallowed Claims.  The Liquidation Trustee is under no obligation to object to the allowance of any Claim to the extent that there are no assets available to make a distribution to the Holder of such Claim or such Class of Claims under the Plan.

**B.**     <u>Procedures Regarding Disputed Claims</u>

    No payment or other distribution or treatment shall be made on account of a Disputed Claim, even if a portion of the Claim is not disputed, unless and until such Disputed Claim becomes an Allowed Claim and the amount of such Allowed Claim is determined by a Final

Order or by stipulation between the Debtors and the Holder of the Claim.  No distribution or other payment or treatment shall be made on account of a Disallowed Claim at any time.

## C.    Allowance of Claims

Following the date on which a Disputed Claim becomes an Allowed Claim after the Distribution Date, the Liquidation Trustee shall pay directly to the Holder of such Allowed Claim the amount provided for under the Plan, as applicable, and in accordance therewith.

### 1.    Allowance of Claims

Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of the Plan, the Liquidation Trustee will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtors had with respect to any Claim or Equity Interest immediately before the Effective Date, except with respect to any Claim or Equity Interest deemed Allowed under the Plan or by orders of the Bankruptcy Court. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Equity Interest will become an Allowed Claim unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Equity Interest.

### 2.    Prosecution of Objections to Claims

From and after the Effective Date, the Liquidation Trustee will have the sole authority to File objections to Claims and settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether such Claims are in an Unimpaired Class or otherwise. From and after the Effective Date, the Liquidation Trustee may settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court.  The Liquidation Trustee will have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

### 3.    Estimation

The Liquidation Trustee may, at any time and from time to time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously Filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to such objection.  Any order of the Bankruptcy Court that estimates a Disputed Claim pursuant to the Plan shall irrevocably constitute and be a conclusive and final determination of the Allowed amount of such Claim or the maximum allowable amount of such Claim, if any, as set forth by the Court.  Accordingly, the Holder of a Disputed Claim that is estimated by the Bankruptcy Court pursuant to the Plan will not be entitled to any subsequent reconsideration or upward adjustment of the maximum allowable amount of such Claim as a result of any subsequent adjudication or actual determination of the allowed amount of such Disputed Claim or otherwise, and the Holder of such Claim shall not have recourse to the Liquidation Trustee in the event the allowed amount of the Claim of such Holder is at any time later determined to exceed the estimated maximum allowable amount.  The rights and objections of all parties are reserved in connection with any such estimation proceeding.

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

**A.    Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B of the Plan:

a.    The Plan and Plan Supplement and all schedules, documents, supplements and exhibits to the Plan will have been Filed by the Debtors in form and substance reasonably acceptable to the Committee.

b.    The Confirmation Order, in form and substance reasonably acceptable to the Debtors, the DIP Term Agent, and the Committee, shall have been entered and shall be in full force and effect, and shall not have been reversed, stayed, modified or vacated on appeal.

c.    With respect to all other documents and agreements necessary to implement the Plan: (1) all conditions precedent to such documents and agreements (other than any conditions precedent related to the occurrence of the Effective Date) shall have been satisfied or waived pursuant to the terms of such documents or agreements; (2) such documents and agreements shall have been tendered for delivery to the required parties and have been approved by any required parties and, to the extent required, filed with and approved by the applicable authorities in the relevant jurisdiction; and (3) such documents and agreements shall have been effected or executed.

d.    There shall be no ruling, judgment or order issued by any governmental unit making illegal, enjoining, or otherwise preventing or prohibiting the consummation of the Plan, unless such ruling, judgment or order has been stayed, reversed or vacated within three (3) Business Days after such issuance.

e.    As to the applicable Debtors party to the DIP Term Credit Agreement, the DIP Term Agent and the DIP Term Lenders shall have either received the indefeasible payment in full in cash of their outstanding remaining DIP Facility Claims or agreed to the treatment under this Plan of their DIP Facility Claims.

**B.    Waiver of Conditions**

The conditions to Consummation of the Plan set forth in this Article IX may be waived by the Debtors and, as applicable, the Committee, without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan; *provided, however,* that any waiver or modification of the condition set forth in Article IX.A(e) shall also require the written consent of the DIP Term Agent. The failure of the Debtors to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time.

**C.    Substantial Consummation**

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

D.      **Effect of Non-Occurrence of Conditions to Consummation**

If the Consummation of the Plan does not occur, the Plan will be null and void in all respects and nothing contained in the Plan or the Disclosure Statement will: (a) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, any Holders or any other Entity; (c) constitute an Allowance of any Claim or Equity Interest; or (d) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders, or any other Entity in any respect.

**ARTICLE X.**
**DEBTOR RELEASE AND RELATED PROVISIONS**

A.      **General**

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions and treatments under the Plan shall take into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.

In accordance with the provisions of the Plan and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date (1) each Debtor may, in its sole and absolute discretion, compromise and settle Claims against it and (2) each Debtor may, in its sole and absolute discretion, compromise and settle Causes of Action against other Entities.

B.      **Release**

**Effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby acknowledged and confirmed, each Debtor, in its individual capacity and as debtor in possession (i.e., Releasing Party), will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full waiver and release to the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Releasing Party) and their respective properties from any and all claims, causes of action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to the Debtors, the Chapter 11 Cases, any sale of the Debtors' assets since the Petition Date, the Disclosure Statement, the Plan, or the solicitation of votes on the Plan that the Releasing Party would have been legally entitled to assert or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtors or their Estates against any of the Released Parties; *provided, however,* that the foregoing provisions of this release shall not operate to waive or release (i) any offset, defense, counterclaim, reduction, or credit that each Debtor may have with regard to any Claim asserted against it by a Released Party; (ii) any causes of action preserved by the Plan or the Plan Supplement; (iii) any Causes of Action arising from actual fraud, gross negligence, or willful misconduct of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; (iv) the rights of the Releasing Party to enforce the Plan and the contracts, instruments, releases, and other agreements or documents**

delivered under or in connection with the Plan or assumed pursuant to the Plan or assumed pursuant to Final Order of the Bankruptcy Court; (v) any Intercompany Claims; and/or (vi) any Claims or Causes of Action against any Excluded Debtor Party.  The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule and without need for any notice to or any vote, consent, authorization, approval, ratification, or other action by any entity or other person or any director, stockholder, security holder, manager, member, or partner (or board thereof) of any entity and the Confirmation Order will permanently enjoin the commencement or prosecution by any person or entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities released pursuant to this release.

## ARTICLE XI.
## THIRD PARTY RELEASE, EXCULPATION, & INJUNCTION

### A.    Third Party Release

As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate the liquidation of the Debtors and the implementation of the Plan, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties are deemed forever released and Claims against such Released Parties waived by (i) the Holders of all Claims who vote to accept the Plan and do not opt out of granting the releases set forth in the Plan, (ii) the Holders of Claims that are Unimpaired under the Plan, (iii) the Holders of Claims whose vote to accept or reject the Plan is solicited and who do not vote either to accept or to reject the Plan and who do not return a Ballot with the opt-out box checked, (iv) the Holders of Claims who vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, and (v) each of the other Released Parties, from any and all claims, causes of action, and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to the Debtors, the Chapter 11 Cases, any sale of the Debtors' assets since the Petition Date, the Disclosure Statement, the Plan, or the solicitation of votes on the Plan, *provided, however*, that the foregoing provisions of this release shall not operate to waive or release (i) any claims or causes of action arising from actual fraud, gross negligence, or willful misconduct of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; (ii) any Claims that any Person or Entity may assert against the Debtors, and/or (iii) any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement executed to implement the Plan.

### B.    No Discharge

Nothing contained in this Plan shall be deemed to constitute a discharge of the Debtors under section 1141(d)(3) of the Bankruptcy Code.

**C.**    **Exculpation**

Without affecting or limiting the releases in Article X.B or XI of the Plan, the Exculpated Parties will neither have nor incur any liability to any Entity for any claims or Causes of Action arising before, on or after the Petition Date and prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to the Chapter 11 Cases, formulating, negotiating, preparing, disseminating, implementing, administering, confirming, pursuing or effecting the Consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, pursuing confirmation of the Plan or soliciting votes on the Plan; *provided, however*, that the foregoing provisions will have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted actual fraud, gross negligence or willful misconduct; *provided, further*, however that the foregoing provisions will not apply to any acts, omissions, Claims, Causes of Action or other obligations expressly set forth in and preserved by the Plan or the Plan Supplement.

**D.**    **Injunction**

**Except as otherwise provided in the Plan, from and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner, any suit, action or other proceeding, or creating, perfecting or enforcing any lien of any kind, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, equity interest, or remedy released or to be released, exculpated or to be exculpated, pursuant to the Plan or the Confirmation Order.  By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim or Equity Interest will be deemed to have specifically consented to the injunction in the Plan.  All injunctions or stays provided for in the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date.**

**ARTICLE XII.**
**BINDING NATURE OF PLAN**

ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN WILL BIND, AND WILL BE DEEMED BINDING UPON, ALL HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTORS AND SUCH HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR AFFIRMATIVELY VOTED TO REJECT THE PLAN.

**ARTICLE XIII.**
**RETENTION OF JURISDICTION**

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, the Liquidation Trust, and this Plan as legally permissible, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of any Claim or Equity Interest;

2.      grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Confirmation Date; *provided*, *however*, that, from and after the Effective Date, the Liquidation Trustee shall pay professionals in the ordinary course of business for any work expressly authorized by the Liquidation Trustee after the Effective Date and such payment shall not be subject to the approval of the Bankruptcy Court;

3.      resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtors are party or with respect to which the Debtors may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including those matters related to any amendment to this Plan after the Effective Date to add Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed;

4.      resolve any issues related to any matters adjudicated in the Chapter 11 Cases;

5.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

6.      decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtors that may be pending on the Effective Date or instituted by the Liquidation Trustee after the Effective Date, *provided* that the Liquidation Trustee shall reserve the right to commence actions in all appropriate forums and jurisdictions;

7.      enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with this Plan, the Plan Supplement, or the Disclosure Statement;

8.      resolve any Case, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

9.      hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future;

10.      issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of this Plan, except as otherwise provided in this Plan;

11.      enforce the terms and condition of this Plan and the Confirmation Order;

12.      resolve any cases, controversies, suits or disputes with respect to the Release, the Exculpation, and other provisions contained in Article X and XI hereof and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

13.    approve any settlements or compromises entered into by the Liquidation Trustee pursuant to Article V.I of this Plan;

14.    enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

15.    resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document adopted in connection with this Plan or the Disclosure Statement; and

16.    enter an order or orders concluding or closing the Chapter 11 Cases.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

### A.    Dissolution of the Committee

On the Effective Date, except as provided in the immediately following sentence the Committee and any other statutory committee formed in connection with the Chapter 11 Cases shall dissolve automatically and all members thereof shall be released and discharged from all rights, duties and responsibilities arising from, or related to, the Chapter 11 Cases.  After the Effective Date, the Committee shall continue in existence for the sole purpose of (i) filing and prosecuting applications for the payment of fees and the reimbursement of expenses incurred by the Committee or its Professionals and (ii) prosecuting any pending motions or applications to which the Committee is a party.

### B.    Payment of Statutory Fees

Prior to the Effective Date, the Debtors shall pay or reserve for the payment of, in full in Cash, any fees due and owing pursuant to 28 U.S.C. § 1930 (the "Statutory Fees") on or before the Effective Date.  On and after the Effective Date, the Liquidation Trustee shall pay the applicable Statutory Fees with respect to each Debtor that accrue after the Effective Date (or remain unpaid from the period prior to the Effective Date) until the earlier of (1) a final decree closing such Debtor's Chapter 11 Case or (2) conversion or dismissal of such Debtor's Chapter 11 Case.  The Debtors or the Liquidation Trustee shall pay any Statutory Fees due and payable with respect to any disbursements made to the Liquidation Trust on the Effective Date.  The Liquidation Trust shall not owe any Statutory Fees with respect to any distributions of Liquidation Trust Assets to Liquidation Trust Beneficiaries.  Any such distributions do not constitute "disbursements" made by or on behalf of the Debtors for which the United States Trustee is entitled to assess Statutory Fees.  The Debtors shall File all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the United States Trustee.  After the Effective Date, the Liquidation Trustee shall File with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the United States Trustee.  The United States Trustee shall not be required to file any Administrative Expense Claim in the case, and shall not be treated as providing any release under the Plan.

### C.    Modification of Plan

Effective as of the date hereof and subject to the limitations and rights contained in Article IX.A and B of this Plan:  (a) the Debtors reserve the right, with the consent of the Committee, not to be unreasonably withheld, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order;

and (b) after the entry of the Confirmation Order, the Debtors may, with the consent of the Committee, not to be unreasonably withheld, after notice and hearing and entry of an order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan. A Holder of a Claim or Equity Interest that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of such Claim or Equity Interest of such Holder.

## D.    Revocation of Plan

The Debtors, with the consent of the Committee, not to be unreasonably withheld, reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent chapter 11 plans. If the Debtors revoke or withdraw this Plan, or if confirmation of this Plan or Consummation of this Plan does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other Entity.

## E.    Entire Agreement

Except as otherwise addressed in any prior order of the Bankruptcy Court in the Chapter 11 Cases or described herein, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## F.    Closing of Chapter 11 Cases

The Liquidation Trustee shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, Local Rule 3022-1, and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases or certain of them.

## G.    Successors and Assigns

This Plan shall be binding upon and inure to the benefit of the Debtors, the Liquidation Trustee, and their respective successors and assigns. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

## H.    Reservation of Rights

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and this Plan is Consummated. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any other Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtors with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

Neither the exclusion or inclusion by the Debtors of any contract or lease on any exhibit, schedule, or other annex to this Plan or in the Plan Supplement, nor anything contained in this Plan, will constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors have any liability thereunder.

Except as explicitly provided in this Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors under any executory or non-executory contract or unexpired or expired lease.

Nothing in this Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors under any executory or non-executory contract or unexpired or expired lease.

## I.    Further Assurances

The Debtors, the Liquidation Trustee, all Holders of Claims receiving distributions hereunder, and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order.  On or before the Effective Date, the Liquidation Trustee shall File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

## J.    Nonseverability

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms, (2) integral to the Plan and may not be deleted or modified without the Debtors' consent, and (3) nonseverable and mutually dependent.

## K.    Service of Documents

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email transmission, when received, addressed as follows:

> CL H Winddown LLC f/k/a CarbonLite Holdings LLC
> c/o Force Ten Partners, LLC
> 5271 California Avenue, Suite 270
> Irvine, CA 92617
> Attn: Brian Weiss
> Email: bweiss@force10partners.com

**with copies to:**

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, DE 19899-8705 (Courier 19801)
Attn:  Richard M. Pachulski, Esq. (rpachulski@pszjlaw.com)
       Maxim B. Litvak, Esq. (mlitvak@pszjlaw.com)
       James E. O'Neill, Esq. (joneill@pszjlaw.com)

and the Liquidation Trustee at contact information to be provided.

## L.    Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code

To the extent permitted by applicable law, pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate federal, state or local governmental officials or agents or taxing authority to forego the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such Stamp or Similar Tax or governmental assessment.

## M.    Consent Rights

All exhibits to the Plan, and the Plan Supplement, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.B) and be fully enforceable as if stated in full herein.

## N.    Governing Law

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

## O.    Tax Reporting and Compliance

The Debtors are hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtors are for all taxable periods ending after the Petition Date through, and including, the Effective Date.

## P.    Schedules

All exhibits and schedules to this Plan, including the Exhibits and Plan Supplement, are incorporated and are a part of this Plan as if set forth in full herein.

**Q.**  **Controlling Document**

In the event of an inconsistency between this Plan, on the one hand, and the Plan Supplement, any other of the Plan Documents, or any other instrument or document created or executed pursuant to this Plan, on the other hand, or between this Plan and the Disclosure Statement, this Plan shall control.  The provisions of this Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided, however*, that if there is determined to be any inconsistency between any provision of this Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern.  For the avoidance of doubt, nothing in the Plan or the Confirmation Order shall be construed to amend, modify, or abrogate any prior order of the Bankruptcy Court in the Chapter 11 Cases.

**R.**  **Confirmation Request**

The Debtors request that the Bankruptcy Court confirm the Plan and that it do so, if applicable, pursuant to section 1129(b) of the Bankruptcy Code notwithstanding any rejection of the Plan by an Impaired Class.

Dated:  July 21, 2021

Respectfully submitted,

*/s/ Brian Weiss*
Brian Weiss
Chief Restructuring Officer for Debtors and
Debtors-in-Possession

**FILED BY:**

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Richard M. Pachulski (CA Bar No. 62337)
Gabriel I. Glazer (CA Bar No. 246384)
James E. O'Neill (DE Bar No. 4042)
Maxim B. Litvak (CA Bar No. 215852)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:     rpachulski@pszjlaw.com
            gglazer@pszjlaw.com
            joneill@pszjlaw.com
            mlitvak@pszjlaw.com

Counsel for Debtors and Debtors-in-Possession

**[Signature Page to First Amended Chapter 11 Plan of Liquidation]**