**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| CL H WINDDOWN LLC, *et al.*,[1] | : | |
| | : | Case No. 21-10527 (JTD) |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | **Re: D.I. 749, 824** |
| | : | |
| | : | **Objection Deadline: August 24, 2021 at 5:00 P.M. ET (extended by agreement)** |
| | : | **Hearing Date: September 2, 2021 at 1:00 P.M. ET** |

### OBJECTION OF THE UNITED STATES TRUSTEE TO THE DEBTORS' FIRST AMENDED PLAN OF LIQUIDATION

In support of his objection to the first amended plan (the "Plan") of liquidation of CL H Winddown LLC and its debtor-affiliates (the "Debtors") [D.I. 749, 824], Andrew R. Vara, United States Trustee for Regions Three and Nine ("U.S. Trustee"), through his counsel, avers:

### INTRODUCTION

1.      This Court has jurisdiction over the above-captioned cases pursuant to 28 U.S.C. § 1334. This Court is authorized to hear and determine whether the Plan should be confirmed pursuant to 28 U.S.C. § 157(a, b), and the amended standing order of reference issued by the United States District Court for the District of Delaware dated February 29, 2012. Venue of the cases is proper in this District pursuant to 28 U.S.C. § 1408(1).

2.      Under 28 U.S.C. § 586, the U.S. Trustee is generally charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: CL H Winddown LLC (8957); CL I Winddown LLC (3596); CL PH Winddown LLC (8957); CL PA Winddown LLC (5453); CL PIH Winddown LLC (8957); CL PP Winddown LLC (8957); CL RH Winddown LLC (8957); CL Sub Winddown LLC (8957); PP PA Winddown LLC (8322); CL R Winddown LLC (3727); and PSS Winddown LLC (9948).

1

*Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog"). Specifically, the U.S. Trustee is charged with "monitoring plans and disclosure statements filed in cases under chapter 11 of title 11 and filing with the court, in connection with hearings under sections 1125 and 1128 of such title, comments with respect to such plans and disclosure statements." 28 U.S.C. § 586(a)(3)(B).

3.       The U.S. Trustee has standing to be heard with respect to confirmation of the Plan pursuant to 11 U.S.C. § 307.

## GROUNDS FOR OBJECTION

*Plan Contravenes Applicable Law with Respect to Quarterly Fee Liability*

### A.       Introduction

4.       The Plan establishes the Liquidation Trust

for the sole purpose of liquidating the Liquidation Trust Assets and making distributions in accordance with the Plan, the Confirmation Order, and this Liquidation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust and the Plan.

Plan Supp. Ex. 1 (Liquidation Trust Agreement) at 2.

5.       Plan § XIV(B), titled "Payment of Statutory Fees," provides (emphasis added):

Prior to the Effective Date, the Debtors shall pay or reserve for the payment of, in full in Cash, any fees due and owing pursuant to 28 U.S.C. § 1930 (the "Statutory Fees") on or before the Effective Date. On and after the Effective Date, the Liquidation Trustee shall pay the applicable Statutory Fees with respect to each Debtor that accrue after the Effective Date (or remain unpaid from the period prior to the Effective Date) until the earlier of (1) a final decree closing such Debtor's Chapter 11 Case or (2) conversion or dismissal of such Debtor's Chapter 11 Case. The Debtors or the Liquidation Trustee shall pay any Statutory Fees due and

payable with respect to any disbursements made to the Liquidation Trust on the Effective Date. **The Liquidation Trust shall not owe any Statutory Fees with respect to any distributions of Liquidation Trust Assets to Liquidation Trust Beneficiaries. Any such distributions do not constitute "disbursements" made by or on behalf of the Debtors for which the United States Trustee is entitled to assess Statutory Fees.** The Debtors shall File all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the United States Trustee. After the Effective Date, the Liquidation Trustee shall File with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the United States Trustee. The United States Trustee shall not be required to file any Administrative Expense Claim in the case, and shall not be treated as providing any release under the Plan.[2]

6.    The term "Liquidation Trust Assets" is defined in Plan § I.82 as including both cash and non-cash assets:

> "*Liquidation Trust Assets*" means all assets held from time to time by the Liquidation Trust (including Causes of Action), the proceeds of which shall be distributed to the Holders of Liquidation Trust Interests after payment in full of Trust Expenses and any other obligations to the extent set forth in this Plan. The Liquidation Trust Assets shall initially consist of the Distributable Assets.[3]

7.    If the Plan is confirmed and goes effective, the Debtors will transfer substantially all of their cash and non-cash assets to the Trust.  Plan § V(B).  The Debtors' liquidation statement

---

[2] The highlighted language also appears in section 5.4 of the Liquidation Trust Agreement, which addresses payment of U.S. Trustee quarterly fees.  This objection's reference to Plan § XIV(B) is directed at the provision wherever it appears in the plan and its ancillary documents.

[3] "*Distributable Assets*" is defined in Plan § 1.52 as:

> [E]xcept as otherwise noted below, any and all real or personal property of the Debtors of any nature, including any real estate, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, inventory, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Causes of Action, books and records, any other general intangibles of the Debtors as of the Effective Date and the Liquidation Trust from and after the Effective Date, and any and all proceeds of the foregoing, as the case may be, of any nature whatsoever (whether liquidated or unliquidated, matured or unmatured, or fixed or contingent), including property of the Estates within the scope of section 541 of the Bankruptcy Code, and D&O Liability Insurance Policies and the proceeds thereof. For the avoidance of doubt, the term "Distributable Assets" includes the proceeds of the UCC Settlement. Notwithstanding the foregoing, the term "Distributable Assets" does not include any Cash tendered by the Debtors and held in their counsel's trust account for the purpose of satisfying Accrued Professional Compensation.

(Exhibit C to the Disclosure Statement) indicates that they project having approximately $6.1 million available to satisfy certain claims on or about the Effective Date.  Additionally, the Debtors have non-cash assets (e.g., causes of action) which may be liquidated by the Trust and either distributed to creditors/trust beneficiaries or used to pay Trust operating expenses after the Effective Date.

8.      The Plan cannot be confirmed because Plan § XIV(B) violates 28 U.S.C. § 1930(a)(6).  Specifically, Plan § XIV(B) would exclude all post-confirmation distributions or expenditures made by the Trust from the "disbursements" made in the case for purposes of calculating the statutorily-mandated fee that must be paid in the Debtors' cases every quarter.  As quarterly fees are not calculated upon the transfer to the Trust of non-cash assets such as causes of action, Plan § XIV(B) would allow those non-cash assets to be liquidated post-confirmation and disbursed to creditor-beneficiaries or Trust vendors without ever being included in calculating quarterly fees.  Such a result is contrary to the language and intent of section 1930(a)(6), as well as the overwhelming weight of case law interpreting section 1930(a)(6).  For the following reasons, confirmation of the Plan should be denied.

### B.      Argument

1.      In enacting section 1930(a)(6), Congress intended to ensure that similarly-sized chapter 11 cases pay similarly-sized fees for their use of chapter 11, based on disbursements made in the case during a quarter.

9.      In 1986, Congress enacted section 1930(a)(6) and created the United States Trustee System Fund (the "Fund") into which quarterly fees collected under section 1930(a)(6) are deposited.  *See* Bankruptcy Judges, United States Trustees, and Family Farmers Act of 1986, Pub. L. 99-554, §§ 115 & 117; *see also* 28 U.S.C. §§ 589a & 1930(a)(6).  The underlying purpose for these statutory provisions was for the United States Trustee Program to be funded "by the users of

the bankruptcy system—not the taxpayer." H.R. Rep. No. 99-764, 99th Cong. 2d Sess. 22 (1986), reprinted in 1986 U.S.C.C.A.N. 5227, 5234; *see also U.S. Tr. v. Gryphon at the Stone Mansion, Inc.,* 166 F.3d 552, 554 (3d Cir. 1999) ("Historically, § 1930(a)(6) set forth a scheme to impose the costs of the United States Trustee Program on its users.").

10.    Congress' goal in enacting section 1930(a)(6) and amending it from time to time has consistently been to ensure that the Fund contains sufficient money to fund the United States Trustee Program's operations. *See*, *e.g.*, *Walton v. Jamko, Inc. (In re Jamko, Inc.)*, 240 F.3d 1312, 1315-16 (11th Cir. 2001) (holding that Congress extended the quarterly fee requirement to post-confirmation quarters in 1996 in response to a "sharp decline in quarterly fees"); *In re Quality Truck & Diesel Injection Serv., Inc.,* 251 B.R. 682, 688 (S.D. W. Va. 2000) ("In enacting [§ 1930(a)(6)], Congress struck what it considered to be a proper balance so as to provide necessary funds for the operations of the United States Trustee Program."); *In re Maruko, Inc*., 219 B.R. 567, 572 (S.D. Cal. 1998) ("[T]he history of § 1930(a)(6) indicates that it was intended to help the U.S. Trustee fund its own operations through the use of quarterly fees. When Congress amended this section, it intended to expand the revenue gaining capability of the U.S. Trustee."); *In re Exide Techs.*, 611 B.R. 21, 30 (Bankr. D. Del. 2020) ("Congress stated . . . it would 'monitor the self-funding mechanism as it operates' to ensure that the fees collected were sufficient to cover the costs" of the United States Trustee Program) (quoting H.R. Rep. No. 764 at 26); *id*. at 37 (holding that Congress amended section 1930(a)(6) in 2017 to temporarily increase the maximum fee in certain cases in response to "the depletion of the UST System Fund").

11.    In light of its revenue-generating purpose, section 1930(a)(6) has been consistently interpreted broadly so as to maximize the amount collected. *See*, *e.g.*, *Quality Truck*, 251 B.R. at 688 (adopting a broad interpretation of "disbursements" because "[t]he purpose of the quarterly

fees statute was to help the [United States] Trustee fund its own operations"); *In re A.H. Robins Co., Inc.*, 219 B.R. 145, 151-52 (Bankr. E.D. Va. 1998) (holding that a broad interpretation of "disbursements" for purposes of section 1930(a)(6) "is most consonant with" Congress' intent to fund the United States Trustee Program); *In re N. Hess' Sons, Inc.*, 218 B.R. 354, 360 (Bankr. D. Md. 1998) (holding that, as a revenue-generating mechanism, section 1930(a)(6) should be construed so as to maximize revenues).

12.     In determining how best to generate funds to pay for the United States Trustee Program, Congress "considered many different possible mechanisms . . . including fees based on a debtor's assets, fees based on a debtor's liabilities, and a flat fee for all debtors." H.R. Rep. No. 99-764 at 26.   Congress ultimately made the policy determination to charge graduated quarterly fees based on the amount of "disbursements" made in a case during a quarter because it determined that "[s]maller chapter 11 debtors should pay smaller additional fees than larger debtors[, and] the funding mechanism [in section 1930(a)(6)] ensures that this will be the case." *Id.*   In this way, a large chapter 11 case in which millions of dollars are distributed in a quarter will not incur the same minimal quarterly fee as would the chapter 11 case of a small mom-and-pop store.

2.     The term "disbursements" in section 1930(a)(6) includes all cash payments made in a chapter 11 case during a quarter, but not non-cash transactions.

13.     Section 1930(a)(6) provides in relevant part that "a quarterly fee shall be paid to the United States trustee . . . in each case under chapter 11 . . . for each quarter (including any fraction thereof) until the case is converted or dismissed . . . ," and that the fee is to be calculated on "disbursements" made in the case during the quarter.   28 U.S.C. § 1930(a)(6).   Payment of quarterly fees is mandatory in every chapter 11 case from the quarter in which the petition is filed until the quarter in which the case is closed by final decree.   *See, e.g.*, *Genesis Health Ventures,*

*Inc. v. Stapleton (In re Genesis Health Ventures, Inc.)*, 402 F.3d 416, 418 (3d Cir. 2005); *Gryphon*, 166 F.3d at 554.

14.    As it is not defined in the Bankruptcy Code, the term "disbursements" in section 1930(a)(6) must be given its "'ordinary, contemporary, common meaning.'" *Genesis*, 402 F.3d at 421 (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).  In interpreting section 1930(a)(6), the Third Circuit has held that "'[d]isburse' is defined as 'to expend' or 'to pay out.'" *Id.* (quoting Websters' Third New International Dictionary 644 (1976)).  More recently, other Circuit Courts of Appeals have acknowledged that, as used in section 1930(a)(6), the term "disbursement" means "money paid out." *See, e.g.*, *In re Buffets, L.L.C.*, 979 F.3d 366, 373 (5th Cir. 2020) ("A disbursement is money paid out.") (citing Merriam-Webster Dictionary (2016)); *Cranberry Growers Coop. v. Layng (In re Cranberry Growers Coop.)*, 930 F.3d 844, 850 (7th Cir. 2019) ("The dictionary definition of 'disbursement' is '[m]oney paid out; expenditure.") (quoting The American Heritage Dictionary of the English Language (5th ed. 2018)) (alteration in original).

15.    As "disbursement" means "money paid out," section 1930(a)(6) quarterly fees are calculated only upon payments of money during a quarter in a chapter 11 case; they are not calculated upon the transfer of non-cash assets such as causes of action.  This is consistent with the interpretation that Circuit Courts of Appeals, including the Third Circuit, have given the term "moneys disbursed" for purposes of determining a trustee's commission under 11 U.S.C. § 326(a). *See, e.g.*, *Tamm v. U.S. Tr. (In re Hokulani Square, Inc.)*, 776 F.3d 1083, 1086 (9th Cir. 2015) (holding that, because "'disburse' means to 'pay out,'" trustees may only calculate their commission on transactions using "some form of generally accepted medium of exchange") (quoting Black's Law Dictionary 561 (10th ed. 2014)); *Staiano v. Cain (In re Lan Assocs. XI, L.P.)*, 192 F.3d 109, 118-19 (3d Cir. 1999) (holding that trustees may only calculate their

commission "on moneys actually disbursed" and not on transfers of "property and other types of consideration" such as credit bids).

16.     Here, Plan § XIV(B) would allow the initial transfer of cash into the Trust to be included in calculating the statutorily-mandated fee for the quarter in which the Trust is funded. But, as no quarterly fee will be imposed on the initial transfer into the Trust of non-cash assets such as causes of action, Plan § XIV(B) would allow those non-cash assets to be liquidated post-confirmation, and the resulting moneys paid, without that payment being included as a "disbursement" in calculating the statutorily-mandated fee for the quarter in which the payment is made.  As any such payments will be made to the Debtors' pre-petition creditors while the Debtors' cases remain open, from assets that were the Debtors' assets right up until they were transferred to the Trust, there can be no dispute that such post-confirmation payments will have been made "in [the Debtors'] case[s]" for purposes of section 1930(a)(6).

17.     As all post-confirmation payments of money in the Debtors' cases should be included as "disbursements" for purposes of section 1930(a)(6), and Plan § XIV(B) would prevent that from happening, the Plan cannot be confirmed.

> 3.    <u>Courts broadly construe the term "disbursements" in section 1930(a)(6) to include all cash payments made in a chapter 11 case during a quarter, regardless of the payor, purpose, or source of the payments.</u>

18.     Section 1930(a)(6) contains relatively few material terms.  It requires a "fee" to be "paid to the United States trustee" every quarter "in each case under title 11" based on "disbursements."  *See* 28 U.S.C. § 1930(a)(6).  Congress did not specify the entity that must make the disbursements in question, the purpose for which the disbursements must be made, or the source from which the disbursements must originate.  Although Congress could have placed such

limitations on the section 1930(a)(6) disbursements as "by the debtor," "in payment of the debtor's expenses," or "from estate funds," it made the policy determination not to do so.

19.     As a result, Circuit Courts of Appeals, including the Third Circuit, broadly interpret "disbursements" to include all payments made in a chapter 11 case during a quarter, regardless of who made the payment. *See, e.g.*, *Cranberry Growers*, 930 F.3d at 850-53 (holding that "disbursements" include a debtor's customers' direct payment of the debtor's revolving line of credit); *Genesis*, 402 F.3d at 422 (holding that the quarterly fee owed in a debtor's case is calculated on all "[p]ayments made on behalf of [the] debtor, whether directly or indirectly").

20.     Similarly, Circuit Courts of Appeals broadly interpret "disbursements" to include all payments made in a chapter 11 case during a quarter, regardless of the purpose for which the payment was made. *See, e.g.*, *Cranberry Growers*, 930 F.3d at 850-53 (holding that "disbursements" include a debtor's customers' direct payment of the debtor's revolving line of credit); *Cash Cow Servs. of Fla. LLC v. U.S. Tr. (In re Cash Cow Servs. of Fla. LLC)*, 296 F.3d 1261, 1265 (11th Cir. 2002), *cert. denied*, 537 U.S. 1161 (2003) (holding that "disbursements" include consumer loans made by the debtor); *Jamko*, 240 F.3d at 1316 (holding that "disbursements" include "all disbursements made during the entire process," including but not limited to "ordinary operating expenses" and "payments made to creditors").

21.     Additionally, Circuit Courts of Appeals broadly interpret "disbursements" to include all payments made in a chapter 11 case during a quarter, regardless of the source of the payment. *See, e.g.*, *Cash Cow*, 296 F.3d at 1265 (holding that "disbursements" for purposes of section 1930(a)(6) are not "limit[ed] . . . to only 'payments' or capital flowing from the bankruptcy estate"); *Robiner v. Danny's Mkts., Inc.*, 266 F.3d 523, 526 (6th Cir. 2001) ("Congress contemplated that disbursements will encompass all payments to third parties directly attributable

9

to the existence of the bankruptcy proceeding . . . .  In other words, the technical source of the payments . . . is apparently inconsequential."); *Jamko*, 240 F.3d at 1313, 1316 (holding that all payments "made during the entire process" are included in calculating the quarterly fees, "from whatever source"); *Tighe v. Celebrity Home Entm't, Inc. (In re Celebrity Home Entm't, Inc.)*, 210 F.3d 995, 998 (9th Cir. 2000) (holding that, although disbursements include all payments from the bankruptcy estate, "that does not [mean] that disbursements are limited to payments from a bankruptcy estate").

22.     In light of the foregoing, this Court should adopt the majority view that every payment made in a chapter 11 case during a quarter—regardless of who makes the payment, why the payment is made, or what the source of the payment may be—must be included in calculating quarterly "disbursements" for purposes of section 1930(a)(6).

4.     Payments made by post-confirmation trusts are included as "disbursements" for purposes of section 1930(a)(6).

23.     Under Plan § XIV(B), the Trust's payments would not be included as "disbursements" for purposes of calculating the quarterly fee mandated by section 1930(a)(6). This is disingenuous, as Plan § XIV(B) provides that only the Liquidation Trustee will make post-confirmation disbursements, pay post-confirmation quarterly fees, and file post-confirmation periodic reports in the Debtors' cases post-confirmation.

24.     Under the Debtors' theory of section 1930(a)(6), post-confirmation quarterly fees could be reduced to the statutory minimum in the largest chapter 11 cases by the simple expedient of transferring assets to a post-confirmation entity for subsequent payment.  But the theory that the quarterly fee requirement can be reduced to the statutory minimum merely by passing the proverbial baton from "the debtor" to a post-confirmation entity was rejected decades ago, when Congress extended the quarterly fee requirement into the post-confirmation period; now, as then,

Congress surely does not intend large entities to pay minimal fees through such maneuvering while continuing to use chapter 11, sometimes for many years, after a plan is confirmed. *See, e.g.*, *In re Postconfirmation Fees*, 224 B.R. 793, 799 (E.D. Wash. 1998) (rejecting the argument that a reorganized debtor's post-confirmation disbursements are not including in calculating quarterly frees, because under such an interpretation "there would never be post-confirmation disbursements and only the minimum fee provided for in § 1930 would be due the U.S. Trustee"); *U.S. Tr. v. Boulders on the River, Inc. (In re Boulders on the River, Inc.)*, 218 B.R. 528, 539 (D. Or. 1997) (holding that "[i]t would be unreasonable to assume that," by extending the quarterly fee requirement into the post-confirmation period, "Congress harbored an unstated intention that post-confirmation fees would be limited to" the statutory minimum every quarter); *In re Corp. Bus. Prods., Inc.*, 209 B.R. 951, 954 (Bankr. C.D. Cal. 1997) ("It is clear the legislative purpose of the [1996] amendments is to raise revenues and reorganized debtors are included in the fee calculation. . . . It is implausible that Congress amended the statute in January of 1996 to make the elaborate sliding scale of fees applicable post-confirmation, only to have the minimum fee apply post-confirmation."); *cf. In re Betwell Oil & Gas Co.*, 204 B.R. 817, 819 (Bankr. S.D. Fla. 1997) (although declining to include payment of reorganized debtor's operating expenses in calculating post-confirmation quarterly fees, stating in *dicta* that, as "payments from assets liquidated pre-confirmation would clearly be disbursements subject to the UST quarterly fee[,] [i]t makes no sense to hold that the post-confirmation payments made from the liquidation of the remaining assets are *not* disbursements just because the remaining assets were vested in a reorganized debtor or liquidating trust at confirmation") (emphasis in original).

25.      Contrary to the view taken by the Debtors in Plan § XIV(B), courts have routinely rejected the argument that a liquidation trust is not responsible for paying post-confirmation

quarterly fees.[4]  For example, in *U.S. Trustee v. Hudson Oil Co. (In re Hudson Oil Co.)*, 210 B.R. 380, 383 (D. Kan. 1997), the district court "reject[ed] the argument that . . . the liquidating trust established under the confirmed plan has no responsibility for the fees imposed" under section 1930(a)(6).  *Id.* at 383.  Although it reversed for other reasons, the district court noted that the bankruptcy court had also rejected the liquidating trust's argument because, among other reasons, "the trust [was] a liquidating and disbursing agent for the debtors" and was "subject to continuing bankruptcy court supervision."  *Id.* at 384, n.3.

26.     Similarly, in *In re Atna Resources, Inc.*, 576 B.R. 214 (Bankr. D. Colo. 2017), the bankruptcy court was presented with "a liquidating trustee, whose sole existence flow[ed] from the debtors and their assets, liabilities, and confirmation of their Chapter 11 bankruptcy cases, [who sought] to avoid payment of post-confirmation [quarterly] fees[.]"  *Id.* at. 216.  The court held that the liquidating trust was liable for payment of post-confirmation quarterly fees under the language of section 1930(a)(6) and the provisions of the debtors' plan, "even without an express provision requiring the Trust to pay the statutory fee."  *Id.* at 218-20.

27.     Likewise, in *In re CSC Industries, Inc.*, 226 B.R. 402 (Bankr. N.D. Ohio 1998), the bankruptcy court held that "the Liquidation Trustee [was] responsible to pay post-confirmation quarterly fees out of the Liquidation Trust" because "Congress intend[ed] such fees be paid by Chapter 11 debtors prior to conversion or dismissal," and "the Liquidation Trust ha[d] essentially stepped into the shoes of the original debtor and [was] therefore liable for any such fees which may be imposed" post-confirmation.  *Id.* at 404.

---

[4] *See also In re JNL Funding Corp.*, 620 B.R. 25 (Bankr. E.D.N.Y. 2020), in which the bankruptcy court ordered a liquidating trustee to disgorge an amount equal to the quarterly fees he had failed to pay while the case was in chapter 11.  *Id.* at 29-30.

28.     And, in *In re Home Centers, Inc.*, 232 B.R. 680 (Bankr. N.D. Ohio 1997), as here, the debtor "turned over all of its tangible and intangible assets" to a liquidating trust that was created to make distributions required by the plan.  *Id*. at 683.  The bankruptcy court held that, since the liquidating trust "was created solely to collect and liquidate the assets of the Debtor in order to disburse the funds to the creditors," the court "c[ould] find no other meaningful interpretation" of section 1930(a)(6) other than to hold that the liquidating trust was responsible for paying post-confirmation quarterly fees.  *Id*. at 683-84.

29.     The United States Trustee anticipates that the Debtors could cite Judge Sontchi's recent decision in *In re Paragon Offshore, PLC*, 629 B.R. 227 (Bankr. D. Del. 2021), in support of Plan § XIV(B).  However, reliance on *Paragon* would not be appropriate in this case.  As an initial matter, *Paragon* was based on a concern that the United States Trustee was somehow "double-dipping" in that case (*see id*. at 228 & 232), there is no such concern here, because no quarterly fee will be—or possibly could be—paid on the non-cash assets when they are transferred to the Trust.  Rather, the United States Trustee seeks only to ensure that the fee mandated by Congress is properly paid on all disbursements made in the Debtors' chapter 11 cases.  *See* 28 U.S.C. § 586(a)(3)(D) (requiring the United States Trustee to "tak[e] such action as [he] deems appropriate to ensure that all . . . fees required to be [paid] under" titles 11 and 28 are paid).  Quarterly fees will only be incurred once—albeit when the proceeds of non-cash assets are ultimately paid by the Trust, not when they are transferred to the Trust.  Furthermore, to the extent *Paragon* suggested that non-cash transfers can be included as "disbursements" for purposes of section 1930(a)(6) (*see id*. at 231-32), it was simply wrong; only payments of money are included in calculating the statutorily-mandated quarterly fee.

30.     In light of the foregoing, the Trust's post-confirmation payments must be included in calculating the quarterly fee mandated by section 1930(a)(6).  As Plan § XIV(B) would prevent this, the Plan cannot be confirmed.

> 5.  <u>Equitable and policy determinations cannot be used to alter the effect of the plain language of section 1930(a)(6).</u>

31.     The Debtors' attempt to rewrite section 1930(a)(6) into a statute more to their liking should not be countenanced by this Court.  The case law addressing the broad interpretation of "disbursements" under section 1930(a)(6) goes back more than two decades.  During that time, the United States Trustee, debtors, and liquidation trusts have had no problems applying section 1930(a)(6) as written by Congress and interpreted by the overwhelming majority of courts.  And, during that same time, Congress has amended section 1930(a)(6) multiple times without ever limiting "disbursements" in any way.  "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change[.]"  *See Lorrilard v. Pons*, 434 U.S. 575, 580 (1978).  As a result, Congress must agree with the judicial interpretation of the scope of "disbursements" as that term is used in section 1930(a)(6)—including the cases that have held that payments from a liquidation trust are included in calculating the quarterly fee.

32.     As the quarterly fee calculation is determined solely by operation of statute, it is not subject to the agreement of the parties or adjustment by the courts.  *See, e.g.*, *Jamko*, 240 F.3d at 1314 (noting that calculation of quarterly fee is mandated by statute); *U.S. Tr. v. CF&I Fabricators of Utah, Inc. (In re CF&I Fabricators of Utah, Inc.)*, 150 F.3d 1233, 1239-40 (10th Cir. 1998) (holding that "UST fees are not . . . the subject of negotiation," but instead "are purely creatures of statute" and so, regardless of what a plan provision might say, "are not a subject of contractual agreement"); *Office of the U.S. Tr. v. Hays Builders, Inc. (In re Hays Builders, Inc.)*,

14

144 B.R. 778, 779-80 (W.D. Tenn. 1992) (stating that quarterly fees are "not subject to the court's discretion in determining what is 'reasonable'").

33.     In addition, equitable considerations cannot be used to circumvent the clear intent of Congress as embodied in the plain language of a statute. *See U.S. Tr. v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.)*, 33 F.3d 294, 300 (3d Cir. 1994); *U.S. Tr. v. Price Waterhouse*, 19 F.3d 138, 141 (3d Cir. 1994). Specifically, "there is no language in section 1930(a)(6) indicating that Congress intended to create an 'inequitable' exception to payment of [quarterly] fees." *In re Kroy (Eur.) Ltd*., 244 B.R. 816, 819 (D. Ariz. 2000).

34.     Policy considerations also cannot be used to reconfigure section 1930(a)(6). This Court must presume that Congress took all relevant policy considerations into account when it enacted and amended section 1930(a)(6); any changes to the statute on policy grounds must be left to Congress. *Cf. United States v. Gilman*, 347 U.S. 507, 511-13 (1954) ("The selection of [a] policy which is most advantageous to the whole involves a host of considerations that must be weighed and appraised. That function is more appropriately for those who write the laws, rather than for those who interpret them."); *Genesis*, 402 F.3d at 422 ("While the result increases severalfold the quarterly fees the Debtors owe, any remedy is for Congress to fashion and not our Court.").

      6.  <u>Plan § XIV(B) contravenes 11 U.S.C. § 1141(a) and the Supreme Court's</u> <u>*Holywell* decision.</u>

35.     Plan § XIV(B) contravenes section 1141(a) and *Holywell Corp. v. Smith*, 503 U.S. 47 (1992). In that case, chapter 11 debtors confirmed a liquidating plan that put their assets into a liquidating trust. *Id*. at 50-51. The plan was silent about whether the liquidating trustee had to file tax returns or pay taxes, and the United States did not object to confirmation. *Id.* at 51. The liquidating trustee then took the position that he was not required to file or pay taxes. *Id*. The Supreme Court held that section 1141(a) did not preclude the United States from seeking payment

of taxes by the liquidating trustee, because "[e]ven if § 1141(a) binds creditors of the corporate and individual debtors with respect to claims that arose before confirmation, we do not see how it can bind the United States or any other creditor with respect to postconfirmation claims." 503 U.S. at 58; *see also U.S. Trustee v. Gryphon at Stone Mansion, Inc.*, 166 F.3d at 557 (characterizing post-confirmation quarterly fees as administrative claims that are similar to post-confirmation taxes and noting instructiveness of *Holywell*). Here, Plan § XIV(B) purports to bind the U.S. Trustee regarding quarterly fees post-confirmation (distributions of Liquidation Trust Assets "do not constitute 'disbursements' made by or on behalf of the Debtors for which the United States Trustee is entitled to assess Statutory Fees."). Such relief is unavailable under *Holywell*, exceeds the scope and authority of section 1141(a), and renders the Plan unconfirmable under section 1129(a)(1, 2) of the Bankruptcy Code, which require that the Plan and the Plan proponent comply with the applicable provisions of the Bankruptcy Code.

36.    In sum, Plan § XIV(B) contravenes the letter and intent of 28 U.S.C. § 1930(a)(6) because it would allow the Debtors' non-cash assets transferred to the Trust under the Plan to be liquidated post-confirmation, and the resulting moneys paid, without that payment being included as a "disbursement" in calculating the quarterly fee for the quarter in which the payment is made. Additionally, Plan § XIV(B) impermissibly attempts to modify a statutory claim arising postconfirmation, thereby making the Plan unconfirmable. Accordingly, confirmation of the Plan should be denied.

## CONCLUSION

WHEREFORE the U.S. Trustee requests that this Court enter an order denying confirmation of the Plan or granting other relief consistent with this objection.

Dated: August 24, 2021
      Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE,**
**REGIONS 3 AND 9**

By: */s/ Joseph J. McMahon, Jr.*
Joseph J. McMahon, Jr.
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491 (Phone)
(302) 573-6497 (Fax)
joseph.mcmahon@usdoj.gov

-and-

Robert J. Schneider, Jr.
Trial Attorney
United States Department of Justice
Office of the United States Trustee
One Newark Center
1085 Raymond Boulevard
Suite 2100
Newark, NJ 07102
(973) 645-3014 (Phone)
(973) 645-5993 (Fax)
robert.j.schneider@usdoj.gov