# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CL H WINDDOWN LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 21-10527 (JTD)<br><br>(Jointly Administered)<br><br>**Obj. Deadline: August 26, 2021 at 4:00 p.m. (ET)**<br>**Hearing Date: September 2, 2021 at 1:00 p.m. (ET)** |

### REPLY IN SUPPORT OF MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AND LOCAL BANKRUPTCY RULE 2004-1 DIRECTING THE PRODUCTION OF DOCUMENTS BY, AND THE EXAMINATION OF, LEON FARAHNIK AND HPC INDUSTRIES, LLC

The Official Committee of Unsecured Creditors of CL H Winddown LLC, *et al.* (the "Committee") hereby submits its reply (this "Reply") in support of the *Motion of the Official Committee of Unsecured Creditors for an Order Pursuant to Bankruptcy Rule 2004 and Local Bankruptcy Rule 2004-1 Directing the Production of Documents by, and the Examination of, Leon Farahnik and HPC Industries, LLC* [Docket No. 842] (the "Motion").[2]

1.  Despite the unfounded complaints in the objection (the "Objection") filed by Leon Farahnik and HPC (the "Farahnik Parties"), the Committee has engaged in an exemplary meet and confer process. Over a two-month period, the Committee has engaged in multiple telephone

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: CL H Winddown LLC (8957); CL I Winddown LLC (3596); CL PH Winddown LLC (8957); CL PA Winddown LLC (5453); CL PIH Winddown LLC (8957); CL PP Winddown LLC (8957); CL RH Winddown LLC (8957); CL Sub Winddown LLC (8957); PP PA Winddown LLC (8322); CL R Winddown LLC (3727); and PSS Winddown LLC (9948).

[2] Capitalized terms used but not defined in this Reply shall have the meanings ascribed to such terms in the Motion.

conferences and exchanges of correspondence with the Farahnik Parties in a successful effort to narrow the issues for the Court's determination. The correspondence attached to the Declaration of Kathleen M. Miller (the "Miller Declaration"), including two iterations of lists of search terms and explanations of document requests (*see, e.g.,* Miller Declaration, Ex. 2, pp. 24-29 and Ex. 8, pp. 63-68), bears witness to these efforts. Indeed, the Farahnik Parties have recognized that, as a result of the meet and confer process, only "[f]our issues remain open." Objection ¶ 2.

2. Two of the open issues — privilege (RFP 29) and the date for examination — can be disposed of quickly. As discussed below in Sections II and III, the privilege issue is not yet ripe and neither party has asked the Court for an adjudication of the dispute, which requires further factual development. With regard to the examination date, the Committee is reasonably requesting the establishment of milestones so the Rule 2004 process can proceed quickly and efficiently.

3. The other two open issues relate to whether the Committee has satisfied the "good cause" standard under Rule 2004, which has been broadly construed to allow for document requests and examinations regarding potential claims. Contrary to the Farahnik Parties' assertions, the Committee is not required to link its requests to detailed allegations supporting such claims. The whole purpose of Rule 2004 is to allow for the ***investigation*** of claims (which may or may not be brought ultimately), and not to support fully articulated claims. Here, the Committee has satisfied its minimal burden under Rule 2004 by demonstrating that the document requests were made in good faith and relate to legitimate concerns that the Committee has based on the available information and its investigation to date. Nothing more is required.

I.  **The Committee Has Shown "Good Cause" to Obtain Documents Relating to the Farahnik Parties' Financial Information (RFP Nos. 21-26) and Mr. Farahnik's New Ventures (RFP Nos. 27-28)**

   A.  **RFP Nos. 21-26**

   4. The Objection alleges that the Committee has failed to show "good cause" to obtain the Farahnik Parties' documents and communications described in RFPs 21 through 26. *See, e.g.,* Objection ¶¶ 7-9, 11, 29-32.[3] The Court should overrule this objection.

   5. *First*, the Farahnik Parties complain that "[t]here is no allegation in the Motion, or any documents upon which it relies, to suggest that money was stolen from the Debtors." *Id.* ¶ 8. However, it is well settled that no such allegation is required for purposes of Bankruptcy Rule 2004. For example, the court in *In re Symington*, 209 B.R. 678 (Bankr. D. Md. 1997) stated that:

   > Because it is normally requested before the filing of a complaint or contested matter, and indeed is independent of a complaint or contested matter, the examination need not be tied to specific factual allegations at issue between parties to a complaint or contested matter. For this reason alone, the bankruptcy examination is subject to fewer objections on grounds of relevance than would burden discovery filed in a lawsuit or contested motion.

   *Id.* at 684.

   6. Instead, a movant may establish "good cause" under Rule 2004 by articulating, in the motion itself, a basis for its requests for documents and an examination. Here, the Committee has pointed to, among other things: (1) the Debtors' history of significant accounting problems (including troubling issues regarding the tracing of funds); (2) Mr. Fahranik's relationship to the Debtors (as founder, CEO and director, and through the HPC management agreements) under which the Debtors made significant payments to HPC; and (3) the deep concerns of an outside director who played a critical role in seeking to uncover and rectify these enormous accounting

---

[3] Paragraphs 29 through 32 reference only RFPs 22 through 26. However, it appears from the Rule 2004 responses attached to the Miller Declaration as Exhibit 9 and from other comments in the Objection that the Farahnik Parties also object in part to RFP 21.

problems and who directly asked where the money went (which raises the possibility that it was funneled to Mr. Farahnik or an entity that he controls). *See* Motion ¶¶ 7, 30; Docket No. 842-5, McNeilly Declaration, Ex. 1. Thus, ample cause exists for the Committee to obtain the documents described in RFP Nos. 21 through 26.

7. *Second*, as the Objection acknowledges, Mr. Farahnik has already provided at least one personal financial statement to certain of the Debtors' creditors prior to the Petition Date. Objection ¶ 6 FN 2. As Mr. Farahnik has chosen to utilize his personal net worth in connection with the Debtors' business, he should not be permitted to cherry pick the financial statements that he is willing to share in a Rule 2004 examination. Mr. Farahnik's willingness to provide such statements to outside parties, when it suits him, also demonstrates that his personal finances were intertwined with the Debtors' business. The Committee should be permitted to investigate fully the extent of that relationship.

8. *Third*, Mr. Farahnik invokes Article I, section 1 of the California Constitution and several California state court cases as grounds for denying the Motion as to RFPs 21 through 26. Objection ¶ 30. The Court should disregard these arguments because California state law is irrelevant to the Motion and, in any event, provides no defense to the Committee's proper requests for documents and information within the scope of Bankruptcy Rule 2004.

9. Federal Rule of Evidence 501 states that the federal common law of privilege applies when federal law determines the substantive rights of the parties. Fed. R. Evid. 501; *accord United States v. Zolin*, 491 U.S. 554, 562 (1989); *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d 100, 103 (3d Cir. 1982) ("[I]n federal question cases the federal common law of privileges applies.") (denying claim of accountant-client privilege under state law as federal evidentiary rules applied). "An examination under Bankruptcy Rule 2004 is nonadversarial in

nature and aimed at discovering evidence upon which future causes of action may be based and is therefore governed by bankruptcy law rather than state substantive law." *In re N. Plaza, LLC*, 395 B.R. 113, 122 (S.D. Cal. 2008). Thus, if a subpoena is issued in connection with a Rule 2004 examination, federal common law rules of privilege will apply. *Id*; *see also In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 254–55 (Bankr. S.D.N.Y. 2005) (federal attorney-client privilege law applies where a subpoena duces tecum issues pursuant to a Rule 2004 examination); *In re Rafsky*, 300 B.R. 152, 154 (Bankr. D. Conn. 2003) (declining to recognize state martial privilege asserted by debtor's spouse in response to a subpoena duces tecum issued in connection with Rule 2004 examination where federal law did not provide for such privilege).; *In re: Bautista*, 2007 WL 4328802, \*\*1–2 (N.D. Cal. Dec. 10, 2007) (federal attorney-clint privilege law applies where movant is seeking to enforce an order of examination under Bankruptcy Rule 2004).

10. Several federal courts have determined that, in federal question cases, state financial privacy laws or state constitutional rights cannot be used to resist discovery as federal law recognizes no such evidentiary privilege. *See, e.g., Sneirson v. Chemical Bank*, 108 F.R.D. 159, 162 (D. Del. 1985) ("Assuming arguendo that both the state constitution and the common law of New Jersey create a right to privacy in financial records, such state privileges do not preclude discovery of relevant information in a federal court suit."); *In re Yassai*, 225 B.R. 478, 483 (Bankr. C.D. Cal. 1998) ("assuming that a state constitution creates "a right to privacy in financial records, such state privilege[ ] do[es] not preclude discovery" of bank records "in a federal court suit.") (citing *Sneirson v. Chem. Bank*, 108 F.R.D. 159, 162 (D. Del. 1985)) (citing *Wm. T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d at 103–04). Accordingly, Mr. Farahnik cannot rely on California law regarding the privacy of his financial information.

11. Moreover, to the extent that Mr. Farahnik's personal financial information is on the

Debtors' servers, California law is not implicated and Mr. Farahnik has waived any applicable protections. Mr. Farahnik chose to incorporate both the Debtors and HPC in Delaware, was Chief Executive Officer and Chairman of the Board while the Debtors expanded operations into Pennsylvania and Texas, and signed board resolutions causing the Debtors to file for bankruptcy in Delaware. Any privacy rights under California law have no bearing on the personal financial documents that Mr. Farahnik stored on the servers of Delaware limited liability companies doing business in multiple locations throughout the country. Mr. Farahnik also had no expectation of privacy as to those documents because the CarbonLite California Employee Handbook, which bound Mr. Farahnik as a CarbonLite employee, expressly stated that:

- "Employees have no right of privacy as to any information or file maintained in or on the Company's property or stored throughout the Company's computer voice mail or telephone systems." Supplemental Declaration of Edward J. McNeilly, Ex. 1, p. 44.

- "All information that is created sent or retrieved over the Company's technical resources is the property of the Company and should not be considered private or confidential. Employees have no right to privacy as to any information or file transmitted or stored through the Company's computer, voice mail or telephone systems." *Id.*, Ex. 1, p.45.[4]

    B.    **RFP Nos. 27-28**

    12.    In objecting to RFP Nos. 27 and 28, the Farahnik Parties state:

While he has had some communications to develop a plan for himself after confirmation, there is nothing in the Motion, or the documents upon which it relies, to suggest that Mr. Farahnik did not take any action asked of him by the CRO. While the Committee may investigate this potential claim, it made no showing that the documents it seeks will shed light on his alleged possible dereliction of duties.

---

[4] The Farahnink Parties note that Mr. Fahranik "has already agreed to provide the Committee with his publicly available information *i.e.* those materials that are on the Debtors (*sic*) servers that was provided to outside third parties." Objection ¶ 32. While the act of providing information to third parties results in a further waiver of Mr. Farahnik's claimed privacy interest (to the extent it is relevant here), such interest was already waived when Mr. Farahnik put the information on the Debtors' servers.

Thus, the focus is on what Mr. Farahnik did or did not do to maximize the Debtors' assets. The terms of any potential venture have no bearing on the claim the Committee wants to investigate.

Objection ¶ 11.

13. While the Farahnik Parties concede that the Potential New Ventures exist and the Committee may investigate a potential claim, it seeks to hinder such an inquiry by alleging that the requested documents are not tied to any "dereliction of duties" that was detailed in the Motion or accompanying documents. This objection is misplaced. It conflates the narrow standard for discovery in civil litigation with the broad discovery permitted by Rule 2004 and ignores multiple reasons why Mr. Farahnik's activities with respect to his Potential New Ventures are proper subjects for a Rule 2004 exam.

14. The Committee has been made aware of information, which Mr. Farahnik does not deny, that he is considering a new venture *in the very same industry in which the Debtors operated*. Whether or not the Debtors were able to take advantage of a corporate opportunity is irrelevant. What is highly relevant to the "acts, conduct, or property or to the liabilities and financial condition of the debtor" is whether Mr. Farahnik, at a time when the Debtors were seeking to maximize the value of their assets for the benefit of creditors through asset sales, acted in a way that may have depressed sale value by seeking to raise investors and capital and suppliers for a venture that would compete against the businesses being purchased in the section 363 sales. *See Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001) (holding that, when a company is up for sale, "the board must perform its fiduciary duties in the service of a specific objective: maximizing the sale price of the enterprise.") (citing *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 182 (Del. 1986)).

15. Mr. Farahnik suggests that the Committee is not entitled to these documents and

communications merely because the Committee has not articulated facts or conduct that are uniquely within Mr. Farahnik's knowledge and would be unavailable to the Committee absent receipt of these documents. That is not the law. "The scope of a Rule 2004 examination is exceptionally broad and the rule itself is peculiar to bankruptcy law and procedure because it affords few of the procedural safeguards that an examination under Rule 26 of the Federal Rules of Civil Procedure does. Examinations under Rule 2004 are allowed for the purpose of discovering assets and unearthing frauds and have been compared to a fishing expedition." *In re Duratech Indus., Inc.*, 241 B.R. 283, 289 (E.D.N.Y. 1999) (internal citations and punctuation omitted). They are "aimed at discovering evidence upon ***which future causes of action may be based***…." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 623 (Bankr. D. Del. 2016) (emphasis added).

16. As shown in the Motion, the Committee has articulated undisputed facts that demonstrate that Mr. Farahnik's Potential New Ventures are a legitimate source of inquiry for a Rule 2004 exam. RFP Nos. 27 and 28 and an examination of Mr. Farahnik, which will reveal the timing, nature and extent of Mr. Farahnik's communications and efforts with respect to the Potential New Ventures, are likely to provide probative evidence regarding whether the Debtors hold viable causes of action against Mr. Farahnik with respect to the Potential New Ventures.[5]

### C. Applicable Period for Requests

17. In the Objection, the Farahnik Parties complain that the Committee purportedly reneged on its agreement to limit the period for certain document requests. In particular, the Farahnik Parties repeatedly assert that the Committee is seeking eleven years' worth of financial records in breach of an agreement during the meet and confer process to limit the request to January

---

[5] As the Debtors were contemplating a restructuring process from late December 2020 onwards, which process contemplated a sale transaction, January 1, 2021 is an appropriate start date for RFPs Nos. 27 and 28.

1, 2016 to present. *See, e.g.*, Objection ¶¶ 6, 19, 22 n.9, 29-30. Contrary to these allegations, the Committee has not withdrawn, or reneged on, any agreements to limit the period of those requests.

18. When the Committee served the amended requests, it did so with the understanding that any previous agreed-upon time limitations would apply. If the Farahnik Parties believed that the Committee had violated those agreements, it would have been easy for them to contact the Committee's counsel and seek a clarification (or object to the alleged breach of the agreements). Instead, the Farahnik Parties chose to create an issue where none exists and to try to undermine the Committee's good-faith efforts at compromise.

19. For clarity, the Committee previously agreed to, and is willing to have the Court impose, the following: (1) the period for documents and communications sought in RFP Nos. 21 through 26 may be limited from January 1, 2016 to the present; and (2) solely with respect to RFP Nos. 1 through 20 and the electronic searches of the Debtors' servers, such electronic searches may be limited to the period January 1, 2018 through December 31, 2020.

## II. The Privilege Issue Is Not Yet Ripe

20. As noted in the Motion, "[t]he Committee has uncovered evidence that Mr. Farahnik has used the Debtors' servers and his @carbonliterecycling.com email address to communicate with his personal counsel and believes that Mr. Farahnik has waived attorney-client privilege, at a minimum with respect to communications with counsel sent from the Debtors' servers." Motion ¶ 15, n. 4. To gauge the scale of such communications, Committee counsel, following a meet and confer with the Farahnik Parties' counsel, requested that the Farahnik Parties run a targeted search on the CarbonLite/HPC servers (without time limits) against certain email addresses of known personal counsel to Mr. Farahnik.[6]

---

[6] See email from Edward McNeilly to Kathleen Miller, August 7, 2021, Miller Declaration, Ex. 8 at p. 60.

21. The Committee still expects the Farahnik Parties to conduct such searches as the results will be relevant to the determination of whether the Farahnik Parties have waived privilege with respect to communications with counsel requested pursuant to RFP No. 29. Any documents responsive to RFP No. 29 that the Farahnik Parties assert are privileged should be documented on a detailed privilege log that complies with the requirements of the Federal Rules of Civil Procedure. Any such assertion of privilege could apply, at most, only to communications with the Farahnik Parties' counsel, as no privilege applies to communications with the non-attorney "professional advisors" referenced in RFP No. 29.

22. If a dispute remains after the above process take places, the Committee reserves the right to bring the matter to the Court's attention. Thus, while the privilege issue remains "open," neither party is currently seeking any relief with regard to RFP No. 29.

### III. The Court Should Establish Dates for Production and Oral Examination

23. The Farahnik Parties complain that the Committee is seeking to "unilaterally set an examination date." Objection ¶ 4. The Committee established a date simply because the Farahnik Parties have rejected the Committee's repeated invitations to propose specific times and dates for an oral examination.[7]

24. The Farahnik Parties also assert that "we cannot agree to a date for the examinations until the documents have been collected, reviewed, and produced." Objection ¶ 4. However, the Farahnik Parties have also not committed to a date for document production, even a general time frame. Nothing prevents the Farahnik Parties from agreeing to a target date.

25. The Farahnik Parties acknowledge that "Rule 2004 allows for broad requests and

---

[7] *See*, *e.g.*, Declaration of Edward J. McNeilly, Motion, Docket No. 842-5, ¶ 9, referencing August 12, 2021 email from E. McNeilly to K. Miller; Miller Declaration, Ex. 1, p.2 (June 21, 2021 letter from P. Van Tol to J. White); Ex. 5, p. 37 (July 19, 2021 email from E. McNeilly to K. Miller).

examinations and that the Committee may investigate potential claims." *Id*. ¶ 13. They should not be permitted to slow-play production of documents and examinations. Given the extensive meet and confer process that the Committee has already undertaken and the fact that the Farahnik Parties are currently collecting responsive documents, it is entirely reasonable to expect that documents responsive to the Requests for Production will be produced within one week after the hearing date on the Motion (i.e., by September 9, 2021). An oral examination held two or three weeks after such production (i.e. between September 23, 2021 and September 30, 2021) would permit suitable preparation time for both the Committee and the Farahnik Parties.

## Conclusion

26. Based on the foregoing and on the arguments set forth in the Motion, the Court should overrule the Objection and enter an order, substantially as set forth in the Motion (and with the time limitations set forth above), directing the production of documents from, and the examination of the Fahranik Parties, pursuant to Bankruptcy Rule 2004.

Respectfully submitted,

Dated: August 30, 2021  **BLANK ROME LLP**

*/s/ Stanley B. Tarr*
Regina Stango Kelbon (DE No. 5444)
Stanley B. Tarr (DE No. 5535)
Jose F. Bibiloni (DE No. 6261)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
E-mail: Kelbon@BlankRome.com
Tarr@BlankRome.com
JBibiloni@BlankRome.com

-and-

**HOGAN LOVELLS US LLP**
Erin N. Brady
David P. Simonds
Edward McNeilly
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
Email: erin.brady@hoganlovells.com
david.simonds@hoganlovells.com
edward.mcneilly@hoganlovells.com

-and-

Kevin J. Carey
1735 Market St., Floor 23
Philadelphia, PA 19103
Telephone: (267) 675-4600
Facsimile: (267) 675-4601
Email: kevin.carey@hoganlovells.com

-and-

Pieter Van Tol
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
Email: pieter.vantol@hoganlovells.com

*Counsel to the Official Committee of Unsecured Creditors*